IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO: 3:19-CV-851-JRW

*Electronically filed*

CHELSEY NELSON PHOTOGRAPHY, LLC                                         PLAINTIFFS
AND CHELSEY NELSON

v.

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, ET AL.                    DEFENDANTS

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

The Defendants, Louisville/Jefferson County Metro Government ("Metro Government" or "Metro"), Louisville Metro Human Relations Commission-Enforcement, Louisville Metro Human Relations Commission, Advocacy, Kendall Boyd in his official capacity as Executive Director of the Louisville Metro Human Relations Commission, Marie Dever, Kevin Delahanty, Charles Lanier, Sr., Laila Ramey, William Sutter, Ibrahim Syed, and Leonard Thomas, in their official capacity as members for Louisville Metro Human Relations Commission-Enforcement, by counsel, (collectively "Defendants"), for their Response in Opposition to Plaintiffs' Motion for Preliminary Injunction, state as follows:

I. INTRODUCTION

Plaintiffs, Chelsey Nelson Photography, LLC ("Chelsey Photography, LLC") and its sole member, Chelsey Nelson ("Nelson") (jointly "Plaintiffs") have moved for a preliminary injunction seeking relief from the possibility that they may sometime in the future be charged with violating Metro Ordinance § 92.05 "Unlawful Practices in Connection with Public Accommodations" (hereinafter "Metro Ordinance"). Specifically, Plaintiffs seek to enjoin Metro Government, "its officers, agents, servants, employees, attorneys, and those persons in active concert or participating with …[Metro]" from enforcing the Metro Ordinance to compel Plaintiffs to provide wedding celebration services or editing to express messages

1

inconsistent with Plaintiffs' "beliefs in marriage between one man and one woman, such as providing these services for same-sex wedding ceremonies."   (See Plaintiffs' Preliminary Injunction Memorandum in Support of Preliminary Injunction Motion (hereinafter "Plaintiffs' Memorandum") at pp. 1-2).   Plaintiffs also seek to prohibit Metro Government from enforcing the ordinance in such a way to prohibit her from expressing these views on her business website (Dkt. 1 Complaint at Exs. 1-2) and from making similar statements.   Plaintiffs want to sell their wedding photography, editing and blogging services to the public, but Plaintiffs do not want to sell those same services to same-sex couples.   Plaintiffs allege First Amendment Rights and seek to enjoin Defendants from possibly someday enforcing the Metro Ordinance against this practice.

Plaintiffs cannot satisfy the rigid requirements necessary for injunctive relief.  First, Plaintiffs lack standing for their pre-enforcement action when Plaintiffs do not have an injury in fact nor a significant possibility of future harm.   The case is not ripe and this Court should refuse to opine on what might be. Further, Nelson, individually, does not have standing where the business at issue is a limited liability company and not a sole proprietorship.

Second, Plaintiffs are not likely to succeed on the merits because courts have long recognized there is no First Amendment right for a business to discriminate against customers based on their protected status, whether it be on the basis of race, national origin, sexual orientation, gender or religion.  Plaintiffs' business is an LLC and this business is a public accommodation as defined under the Ordinance. Plaintiffs' hypothetical intent or suppressed desire to violate the Ordinance is not a credible threat of harm. The alleged injury must be real and irreparable, not hypothetical or conjectural.  Further, the application of the Ordinance does not violate Plaintiffs' free speech and religious rights.   The Ordinance is narrowly tailored to achieve a compelling governmental interest in eliminating discrimination without violation of alleged competing rights.

2

Preliminary injunctions are extraordinary and drastic remedies and Plaintiffs have failed to carry their burden of justifying relief and Plaintiffs fail to show any irreparable harm they will suffer.  Further, the balance of harm and public interest weighs in favor of denying preliminary injunctive relief.

## II. BACKGROUND

1.   METRO'S PUBLIC ACCOMMODATIONS ORDINANCE

As the Sixth Circuit discussed In *Hyman v. City of Louisville*, 53 Fed. Appx.740, 742 (6th Cir. 2002):

> In 1999, after years of lobbying by a group called the Fairness Campaign, both the City of Louisville (the "City") and Jefferson County (the "County"), which encompasses the City and several other localities, amended their anti-discrimination ordinances to include "sexual orientation" and "gender identity" amongst the traits upon which employers are not permitted to discriminate.  The ordinances passed by the City and County are substantially the same:   both not only proscribe discrimination in employment but also prohibit employers from publishing any advertisement related to employment that expresses a "preference, limitation, [or] specification" on, among other things, the basis of sexual orientation or gender identity.   *See* Louisville Code Ord. § 98.17(D) (1999); Jefferson County Code Ord. § 92.06(E) (1999).

In 2003, when the City and County merged, Metro essentially adopted the City and County's ordinances pertaining to sexual orientation and gender identity as Ordinance 193, Series 2004, (Metro Ordinance § 92.05).   The Ordinance prohibits discrimination based on grounds of race, color, religion, national origin, disability, sexual orientation or gender identity.  Ordinance 92.05.

2.   PLAINTIFFS' ALLEGATIONS AND COUNTER-STATEMENT OF THE FACTS

Plaintiff Chelsey Nelson owns and is the single member of Chelsey Nelson Photography LLC, a Kentucky for profit limited liability company located in Louisville, Kentucky.[1]  (Dkt. 1 Complaint at para. 7-9, 55).  She claims in her Verified Complaint to be "a commissioned photographer, editor, and blogger who loves using photographs and words to tell stories that positively depict creation, truth, purity, beauty and excellence."  (Dkt. 1 Complaint at para. 26-27).  Plaintiffs claim the business offers wedding celebration

---

[1] In October 2019, Ms. Nelson formed Chelsey Nelson Photography LLC under Kentucky law and it is listed on the Kentucky Secretary of State's online website as an LLC. (Dkt. 1 Complaint at para. 48-49; see also Dkt. 3-2 Declaration of Chelsey Nelson at pp. 2-3, para. 11-15).

services and boutique editing services with an emphasis on wedding celebration services portraying engaged and married couples in a positive way.   The business is run currently as an LLC, not a sole proprietorship.   The photography business is run for profit. (Dkt. 3-2 Declaration of Chelsey Nelson at para. 6, 11-15, 54).   Nelson no longer has a personal Instagram page and placed all the content on her business Instagram site.   (*Id.* at para. 23-31).   The Complaint alleges the business "does not currently accept requests from the general public to personally photograph any subject matter except weddings."   (Dkt. 1 Complaint at para. 57-59, see also para. 60-62).   The business "solicits and receives requests for its services from the general public through her professional contacts, her website, and her other social media sites." (*Id.* at para. 46).

Even though Metro has taken no action against Plaintiffs, Nelson alleges Metro "is using the threat of limitless damages . . . and court orders to force Chelsey to create photographs for, blog about, and participate in solemn ceremonies she disagrees with – same-sex wedding ceremonies." (Dkt. 1 Complaint at p. 2).   She complains that "Louisville even makes it illegal for Chelsey to explain on her studio's own website why she only believes in marriage between a man and a woman or why she only accepts requests consistent with this view." (Dkt. 1 Complaint at p. 2).   This is all hypothetical as Plaintiffs have not been asked to photograph a same-sex wedding. Plaintiffs also have not posted on any website their desired statements, attached to the Complaint as Exhibits 1 and 2. Nor has Nelson made statements about her belief that marriage should only be between one man and one woman, and that she will not photograph same-sex weddings.   She claims Metro's Ordinance § 92.05 (B) prohibits her from posting her desired statements on her website or other sites broadcasting to customers. (Plaintiffs' Preliminary Injunction Motion at p. 2)

Plaintiffs allege their only option is to file this lawsuit "to clarify and protect her freedoms under the First and Fourteenth Amendments and the Kentucky Religious Restoration Act—the freedoms to live out her faith, to speak her views, and to pursue her dream of running her photography studio while seeking for

others the same freedom."  (Dkt. 1 Complaint at pp. 3-4, and para. 208-09).  Nelson proclaims she "has ultimate editorial judgment and control over the photographs she takes, the photographs she edits, and the content of her blog, and she always retains discretion to reject any client suggestion if she deems it improper."  (Dkt. 1 Complaint at para. 149, 181; Dkt. 3-2 Declaration of Chelsey Nelson at para. 115-22, 163, 184-85).  Above all, she claims "she cannot tell certain stories or participate in certain ceremonies" and she "only accepts requests for services which are consistent with her editorial, artistic, and religious judgment."  (Dkt. 1 Complaint at para. 182, 185).  She believes "God created marriage to be an exclusive covenant between one man and one woman."  (Dkt. 1 Complaint at para. 190; Dkt. 3-2 Declaration of Chelsey Nelson at para. 58-59).  However, Nelson has not kept her affairs separate from the LLC and she wants to use her business website to express her personal views while discriminating against same-sex couples by posting Exhibits A and B to the Complaint and making similar statements.

As a result of her beliefs, Plaintiff Chelsey Nelson claims she would decline any request for her services for a same-sex wedding because that would violate her religious beliefs.  (Dkt. 1 Complaint at para. 191-92; Dkt. 3-2 Declaration of Chelsey Nelson at para. 218-221, 237, 251-52).  She proclaims she "does not want to leave the wedding industry because she is motivated by her religious beliefs to provide wedding celebration and boutique editing services for weddings so she can positively depict marriage between one man and one woman . . . ." (Dkt. 1 Complaint at para. 232).

Nelson claims she desires to expand her business and advertise but "she is refraining from doing so because of the law" and she claims she has lost and is continuing to lose business because of her fear of violating the subject Metro Ordinance.  (Dkt. 1 Complaint at para. 235-41).  She claims she "faces a credible threat and substantial risk that she will receive requests to provide wedding celebrations and boutique editing services for same-sex weddings, likely leading to prosecution" under Metro's Ordinance. (Dkt. 1 Complaint at para. 242).

Plaintiffs' claim unless Defendants are enjoined, they will suffer irreparable harm and economic injury. Plaintiffs allege their First Amendment rights of freedom of speech, association and press have been violated. Plaintiffs also claim their First Amendment rights of free exercise of religion have been violated. Additionally, Plaintiffs claim a violation of the First Amendment Establishment Clause and a purported violation of the Fourteenth Amendment Due Process Clause. Finally, Plaintiffs allege that Kentucky's Religious Freedom Act has been violated. (Dkt. 1 Complaint at pp. 41-50). Plaintiffs seek a preliminary injunction precluding enforcement of the subject Ordinance.

<u>III. APPLICABLE STANDARD OF REVIEW</u>

In determining whether a preliminary injunction should issue a district court must balance four factors:

"(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *American Civil Liberties Union Fund of Michigan v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015), quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). But in First Amendment cases, " 'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.' " *Livingston County*, 796 F.3d at 642 (citing and quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)). This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]." *Id.* (quoting *Hamilton's Bogarts*, 501 F.3d at 649); see *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014), *cert. denied*, ---- U.S. ----, 135 S.Ct. 950, 190 L.Ed.2d 831 (2015) ("[W]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.' " *Livingston County*, 796 F.3d at 642 (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012))."

In addition, "preliminary injunctions are extraordinary and drastic remedies … never awarded as of right." *Livingston County*, 796 F.3d at 642 (quoting *Platt v. Bd. of Comm'rs on Grievance & Discipline of Ohio Supreme* Court, 769 F.3d 447, 453 (6th Cir. 2014)). The party seeking a preliminary injunction bears the burden of justifying such relief." *Id.* (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012))."

<u>IV. ARGUMENT</u>

1. PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

   a. Plaintiffs Lack Standing

6

A predicate to the success of any action is legal standing. *Binno v. Am. Bar Ass'n*, 826 F.3d 338,344 (6th Cir. 2016) (internal citation omitted). This pre-enforcement suit was filed where Metro has not acted and was not about to act. (See Affidavit of Director Kendall Gill, attached as Exhibit 1). At the time of the filing of the Complaint Metro did not know who Nelson was. Plaintiffs have the burden of demonstrating standing and have failed to satisfy this requirement. *See Hyman v. City of Louisville*, 53 Fed. Appx. 740, 743 (6th Cir. 2002). Plaintiffs have not alleged a current injury and Plaintiffs' case is not ripe.

The power of the federal courts is limited to hearing actual cases and controversies. U.S. Const. Art. III, § 2, cl. 2; see also *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). Constitutional standing has three elements that serve as its irreducible minimum in all cases. *Lujan*, 504 U.S. at 560. The Plaintiffs must allege an injury in fact, causation resulting from the challenged issue, and the likelihood that a favorable result will redress the injury. Jurisdiction of the Court depends upon the state of things at the time the action is filed. *Newman Green, Inc. v. Alfonzo Larraign*, 490 U.S. 826, 830, 109 S.Ct. 2218 (1989). The Plaintiffs' Complaint fails in all of these respects and this failure is more fully illustrated at pp. 7-13 in the Defendants' Memorandum in Support of Motion to Dismiss which is contemporaneously filed with this motion. Because there is overlap in the application of the principles of the requirements for standing and for the necessary elements for injunctive relief, the standing argument is not repeated here but is incorporated herein by reference for consideration by the Court.

b.   Nelson Does Not Have Individual Standing to Assert The Corporate Business Interest

Chelsey Nelson is the sole member of Chelsey Nelson Photography LLC, a Kentucky limited liability company established this past year. Plaintiffs' Complaint, para. 7. The Supreme Court of Kentucky held in *Turner v. Andrew*, 413 S.W.3d 272, 275-76 (Ky. 2013) that no standing existed for an individual; the real party in interest in a suit for lost business income is the plaintiff's LLC and not the sole member. The *Turner* Court reasoned that a sole owner may not elect to personally pursue lost revenue in his or her own name while also defending any potential liability by then standing behind the protections a LLC provides.

The company and its solitary member are not legally interchangeable nor is this distinction trivial or supertechnical.  *Id.*, 413 S.W.3d at 276 (citing *Miller v. Paducah Airport Corp.*, 551 S.W.2d 241 (Ky. 1977)).[2]  *See also In re Howland*, 579 B.R. 411, 415 (E.D. Ky. 2016) (recognizing under Kentucky law a limited liability company is a legal entity distinct from its members).  "Moreover, an LLC is not a legal coat that one slips on to protect the owner from liability but then discards or ignores altogether when it is time to pursue a damage claim."  *Turner*, 413 S.W.3d at 276.  The *Turner* Court concluded that a solitary member and owner must bring a claim for business losses in the name of the company.  Chelsey Nelson individually lacks standing.

c.   The Ordinance Secures Rights, It Does Not Impair Rights

The purpose and effect of the Ordinance is to prohibit discrimination against a protected class. Because of its narrow scope, enforcement of the Ordinance would not infringe upon any First Amendment rights as alleged by the Plaintiffs.  In the subsections that follow it is demonstrated that Plaintiffs' business is subject to the Ordinance, their proposed business model is discriminatory against a protected class of persons, and the freedoms of speech and religion protected by the First Amendment would not be curtailed by enforcement of the Ordinance to prohibit discrimination.  As a result, Plaintiffs have no likelihood of success on the merits.

i. Plaintiffs' Business Is A Public Accommodation Business Under The Ordinance

A commercial photography business such as Chelsey Nelson Photography, LLC (hereinafter "Chelsey LLC") falls squarely within the plain meaning and intent of the Metro Ordinance prohibition of discrimination by public accommodations as it offers its services to the public.  The Metro Ordinance prohibits discrimination by any individual "which supplies goods or services to the general public."  *See* Metro Ordinance 92.02.  (Exhibit 2).  The LLC is therefore a public accommodation under the clear terms of the Ordinance.

---

[2] The *Turner* court collected cases from other jurisdictions supporting this position.

Courts, including the U.S. Supreme Court, and legislatures across the country have found that businesses that are equally "nonessential" and "discretionary" are covered by similar statutes or ordinances that prohibit discrimination by public accommodations.  Such businesses range from lawyers' offices, *see* e.g., *Nathanson v. Mass. Comm 'n Against Discrimination*, 16 Mass.L.Rptr. 761 (Mass. Super. 2003), to dentists' offices, *see* e.g. *Bragdon v. Abbott*, 524 U.S. 624, 629, 118 S. Ct. 2196 (1998), to accountants, *see* e.g. 42 U.S.C. § 12818 (7)(F)(Americans with Disabilities Act), to photography businesses, *see Elane Photography*, *LLC v. Willock*, 309 P.3d 53 (N.Mx. 2013), *cert. denied* 134 S. Ct. 1787 (2014), to operators of wedding facilities, *see Gifford v. McCarthy*, 23 N.Y. S.3d 422, 137 A.D.3d 30 (2016).

While the earliest public accommodations laws reflected an expectation that covered businesses would interact with customers in a single physical location, modern realities of commerce in which businesses serve their customers by telephone or Internet or from varying locations are covered.  *See* e.g. *Elane Photography, LLC*, 309 P.3d 53 (N.Mx. 2013), cert. denied. 134 S.Ct. 1787 (2014) (photography business); *James v. Tean Washington, Inc.*, 1997 WL 633323 *2 (D.D.C. Oct. 7, 1997) (pizza delivery service); *Nat'l Org. for Women Essex County Chap. v. Little League Baseball, Inc.*, 127 N.J. Super. 522, 318 A.2d 33.37 (N.J. App. Div. 1974) (youth baseball league).

Interpreting the subject Ordinance to include a commercial photography business that provides services to the public and advertises on the Internet is squarely in line with the modern understanding of what businesses constitute "public accommodations" in which the public should be protected from arbitrary and invidious discrimination.

ii. An Expressed Policy To Refuse Service To Same-Sex Couples Would Amount To Discrimination

Courts across the country have recognized that a policy or law that excludes same-sex couples by definition discriminates against gay and lesbian individuals on the basis of their sexual orientation.  *See*, e.g., *Varnum v. Brien*, 763 N.W.2d 862, 906 (Iowa 2009) (discrimination against same-sex couples by the state constitutes impermissible discrimination based on sexual orientation); *Kerrigan v. Comm 'r of Public*

*Health*, 289 Conn. 135, 173 n.24, 957 A.2d 407, 431 n.24 (2008) (statutes limiting certain rights to different-sex couples "cannot be understood as having merely a disparate impact on gay persons, but instead properly must be viewed as directly classifying and prescribing distinct treatment on the basis of sexual orientation") (quoting In *re Marriage Cases*, 43 Cal.4th 757, 839-40, 183 P.3d 384, 440-41 (2008)) (superceded by constitutional amendment); *See also Devlin v. City of Philadelphia*, 580 Pa. 564, 586, 862 A.2d 1234, 1247 (2004) (ordinance prohibiting discrimination against same-sex couples was redundant because "any such discrimination was already prohibited as discrimination based on sexual orientation").

Plaintiffs claim even though they have not been asked to photograph a same-sex marriage, they simply cannot photograph the ceremony of any same-sex couple being married.  This is a hypothetical situation. Nelson's claim that she would not photograph polygamous (polygamists do not fall within a protected class, their religious convictions notwithstanding) wedding ceremonies or other certain wedding services/ceremonies is irrelevant and does not negate the fact that Nelson states the business would deny same-sex couples the services that it provides to different-sex couples because of their sexual orientation. Such a hypothetical policy is discriminatory.

Plaintiffs attempt to argue that this potential policy does not facially discriminate on the basis of sexual orientation but rather on a couple's conformance or nonconformance to Plaintiff's understanding of traditional marriage, and that the policy therefore constitutes merely declining to convey messages she disagrees with.  (Plaintiffs' Memorandum at pp. 2, 22).  Plaintiffs cannot escape the plainly discriminatory nature of their hypothetical policy by attempting to put a label on it that avoids invoking the impermissible classification of the Ordinance.  It is well established that a policy that treats individuals differently depending on their membership in a protected class is the clearest direct evidence of discrimination.  *See Jones v. United Parcel Service, Inc.*, 502 F.3d 1176, 1188 (10th Cir. 2007) ("proof of an existing policy which constitutes discrimination would constitute direct evidence.")

In *City of Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 715, 98 S. Ct. 1370, 1379 (1978), the U.S. Supreme Court found that an employer's policy requiring female employees to make larger contributions toward pension benefits than male employees was facially discriminatory.  While the employer "argue[d] that the different contributions exacted from men and women were based on the factor of [statistical] longevity rather than sex," the court held that one cannot 'say that an actuarial distinction based entirely on sex is 'based on any other factor other than sex.'  Sex is exactly what it is based on." *Id.*

Similarly, here, Plaintiffs' attempt to describe this hypothetical policy and Nelson's religious beliefs as based on factors other than sexual orientation. Nelson's hypothetical policy ignores the fact that this policy against photographing the weddings of same sex couples intentionally effects the complete exclusion of gay and lesbian couples who seek Plaintiffs' wedding-photography services.   As in *Manhart*, Plaintiffs' policy creates two classes of would-be customers, distinguished solely by their sexual orientation: Heterosexual couples in committed relationships, whose weddings Plaintiffs will photograph, and gay and lesbian couples in committed relationships, whose weddings Plaintiffs will not photograph if she were asked to do so.  On its face, then, Plaintiffs' hypothetical policy discriminates based on sexual orientation.

<u>iii. The Ordinance Does Not Regulate the Content of Plaintiffs' Speech.</u>

Plaintiffs argue that its photographs are entitled to First Amendment protection.   While it undoubtedly is true that photographs may in some instances constitute "speech" and are entitled to protection from unconstitutional restrictions on their content, that fact is irrelevant for purposes of this case. The subject Metro Ordinance (92.05, copy attached as Exhibit 2) does not regulate the content of Plaintiffs' photographs in any way.  Nor does it prevent Plaintiffs from speaking on any subject or Nelson expressing her own personal views, whether through photographs or otherwise.  All that the subject Metro Ordinance regulates is Plaintiffs' conduct in its selection of clients when offering its commercial photography services to the public.  It does not regulate Plaintiffs' speech or expression.

Plaintiffs' business offers services to the public and takes photographs of weddings because she is being paid to do so, not because she has exercised her artistic discretion in selecting which subjects to photograph.  The photographs memorialize events that are meaningful to her clients, but they do not express Plaintiffs' own personal views any more than the photographs taken for passports, school yearbooks, company directories, high school graduations or the like represent the personal views of commercial photographers who provide those services.  Plaintiffs cite cases in their memorandum for the proposition that commercial photography is entitled to First Amendment protection.  These cases involved legal restrictions that were imposed on the content or distribution of original works created by speakers on subjects of their own choosing. *See* e.g. *Kaplan v. California*, 413 U.S. 115, 116 (1973) (criminal prohibition on sale of "obscene matter"); *Riley v. National Fed'n of the Blind*, 487 U.S. 781, 786 (1988) (statute requiring professional charitable fund-raising solicitations to contain specified disclosures); *Bery v. City of New York*, 97 F.3d 689, 691-93 (2d Cir. 1996) (prohibition on exhibiting or selling visual art in public places without a vendors license, where the small number of licenses available created a lengthy wait time of 3-5 years); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 919 (6th Cir. 2003) (statutory and common law restrictions on unauthorized sale and distribution of images of celebrities).

None of the cases upon which Plaintiffs rely involved the application of anti-discrimination statutes to a business that was involved in the commercial enterprise of selling photographic services to clients for a fee.  Indeed, in this case, there has been no regulation of speech at all.  The subject Ordinance regulates only Plaintiffs' business conduct in the commercial marketplace, and because it chooses to offer its services to the public, it may not refuse to provide such services on the basis of a prospective client's sexual orientation.  This case is strikingly similar to the case of *Elane Photography, LLC*, 309 P.3d 53, where the New Mexico Supreme Court considered a situation involving a commercial photography business that refused to photograph a same-sex marriage and found the public accommodation statute did not violate Elane Photography's first amendment rights involved.  *See also Gifford v. McCarthy*, 137 A.D.

12

3d 30, 41 (N.Y. 2016) (finding operators guilty of discriminatory practice based on sexual orientation when they refused to host same-sex wedding at their wedding facilities and finding no First Amendment violations; *State v. Arlene's Flowers, Inc.*, 193 Wash.2d 469 (2019), on remand in light of *In Masterpiece Cakeshop, Ltd v. Colorado Civil Rights Com'n*, 138 S.Ct. 1719 (2018), (finding Washington statute did not violate flower shop owner's constitutional rights, including right to free speech, where case involved refusing order for custom floral arrangements for same-sex wedding where owner was cited for discrimination).  In *Masterpiece Cakeshop*, the Supreme Court recognized "gay persons and gay couples cannot be treated as social outcasts or as inferior . . ." *Id.* at 1727.

It does not matter that Plaintiffs' photography services require the exercise of artistic judgment and involve selection and editing of images.  The United States Supreme Court repeatedly has upheld anti-discrimination statutes against First Amendment challenge, even when the business or activity that was regulated by these statues undeniably involved elements of creative or social expression, intellectual inquiry, or individualized professional judgment.  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623-24, 104 S.Ct. 3244 (1984) (rejecting First Amendment challenge where antidiscrimination statute was applied to club dedicated to professional and social networking and charitable purposes); *Hishon v. King & Spalding*, 467 U.S. 69, 78, 104 S.Ct. 2229 (1984) (law firm had no First Amendment right to discriminate against woman candidate for partnership, notwithstanding the legal professions "distinctive contribution . . . to the ideas and beliefs of our society"); *Runyon v. McCrary*, 427 U.S. 160, 176, 96 S.Ct. 2586 (1976) (even if parents have a right to teach their children that segregation is desirable, it does not follow that the practice of excluding racial minorities from schools is protected by the First Amendment).

The Supreme Court has made clear that the First Amendment does not create a roving exception to anti-discrimination statutes that may be invoked by any business simply by asserting that its services involve speech or expressive activities.  *See Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*, 547

U.S. 47, 66, 126 S.Ct. 1297 (2006) ("If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it.").

The First Amendment does not entitle Plaintiffs to discriminate on the basis of sexual orientation when it offers its commercial services to the public at large, even if those services include an expressive element.  As the Supreme Court has repeatedly held, such discriminatory actions in the commercial sphere constitute conduct that is entitled to no First Amendment protection.    *See Rumsfeld,* 547 U.S. at 62; *Hishon*, 467 U.S. at 78; *Runyon*, 427 U.S. at 176; *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 695 S.Ct 684 (1949) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by mean soft language, either spoken, written, or printed.").

<u>iv. The Metro Ordinance Does Not Compel Speech.</u>

Plaintiffs contend that the application of Metro's Ordinance violates the First Amendment because it compels her business to convey a message with which she disagrees.  In *Rumsfeld* the Supreme Court distinguished all of the "compelled speech" cases on which Plaintiffs now rely, and the Supreme Court's discussion shows why application of the subject Metro Ordinance to Plaintiffs' photography business does not unconstitutionally compel Plaintiffs to speak.  The Court divided its "compelled speech" precedents into two categories.  First, the Court addressed cases in which the government directly compelled individuals to speak a message dictated by the government. *Id*. 547 U.S. at 61 (citing *West Virginia Bd. Of Ed. v. Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178 (1943) (holding unconstitutional a state law requiring schoolchildren to recite the Pledge of Allegiance); *Wooley v. Maynard*, 430 U.S. 705, 717, 97 S.Ct. 1428 (1977) (holding unconstitutional a law requiring New Hampshire motorists to display the state motto, "Live Free or Die," on their license plates).  The Supreme Court held in *Rumsfeld* that the Solomon Amendment's requirement that the schools engage in certain speech in order to provide equal military recruiting access was "a far cry from the compelled speech in *Barnette* and *Wooley*."  *Rumsfeld*, 547 U.S. at 62.  The Court

observed that "The Solomon Amendment, unlike the laws at issue in those cases does not dictate the content of the speech at all, which is only 'compelled' if, and to the extent, the school provides such speech for other recruiters." *Id.* The requirement of equal access involved nothing remotely resembling "a Government-mandated pledge or motto that the school must endorse." *Id.*

The same analysis applies here.  Metro's Ordinance does not compel Plaintiffs to speak a government-mandated message, or indeed to say anything at all. Like the Solomon Amendment, the Metro Ordinance requirement of equal access "compels" Plaintiffs to speak only if, and to the extent, it provides similar services to other clients.  Here, as in *Rumsfeld*, compelling Plaintiffs to provide its services without discriminating on the basis of a prospective customer's sexual orientation is simply not the same as forcing a student to pledge allegiance, or forcing a Jehovah's Witness to display the motto "Live Free or Die." Indeed, it trivializes the freedom protected in *Barnette* and *Wooley* to suggest that it is.  *Rumsfeld*, 547 U.S. at 62.

*Rumsfeld* also addressed a second category of "compelled speech" cases: Those in which the government "force[s] one speaker to host or accommodate another speaker's message."  *Id.* 547 U. S. at 63 (citing *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 566, 115 S.Ct. 2338 (1995); *Pacific Gas & Elec. Co. v. Public Util Comm'n of Cal*, 475 U.S. 1, 20-21, 106 S.Ct. 903 (1986) (plurality opinion); accord, *Id.*, at 25 (Marshall, J., concurring in judgment); *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258, 94 S.Ct. 2831 (1974). The *Rumsfeld* Court found these cases readily distinguishable, because each of them involved a speaker whose ability to disseminate its own message was directly impaired by the speech it was forced to accommodate.  *Id.* 547 U.S. at 63.  In *Hurley*, for example, because the parade at issue was intended to disseminate the organizers' own preferred message, the inclusion of a contingent that wished to express an inconsistent message would have directly interfered with the organizers' speech.

*Hurley* involved a "peculiar" application of a public accommodation law to a privately organized St. Patrick's Day parade that the U.S. Supreme Court emphasized was "inherent[ly] expressive."  *Hurley*, 515 U.S. at 572.  The Court found this application to be impermissible because, instead of regulating conduct with only an incidental effect on expression, it directly regulated nothing but expression – the content of the private parade sponsor's speech.  *Id.* at 573.  *Hurley* itself distinguished the standard application of public accommodation laws to commercial businesses as constitutional.  *Id.* at 578; see also *Butler v. Adoption Media, LLC*, 486 F.Supp. 2d 1022, 1059-60 (N.D. Cal. 2007).

 In contrast, as noted above, the photographs at issue in this case are not intended to express Plaintiffs' own personal views but to provide a commercial service akin to photographs taken for passports, school yearbooks, company directories, proms, birthday parties, graduations, and the like.  While there undoubtedly is an element of artistic expression and skill involved in such photographs, they are not intended to be – and are not perceived by others – as an expression of the photographer's own beliefs, preferences or views.  *See also Elane Photography, LLC*, 309 P.3d at 63-69.

In *Rumsfeld*, the Court held that, unlike *Hurley*, the Solomon Amendment's requirement of equal access, even if it necessarily mandated some speech by the schools, did not interfere with the schools' ability to speak their own message concerning the military's policies.  *Id.* 547 U.S. at 64.  The Court also rejected the contention that hosting military recruiters would implicitly send the message that the law school endorsed the military's policies and saw nothing wrong with them. It held: "Nothing about recruiting suggests that law schools agree with any speech by recruiters, and nothing in the Solomon Amendment restricts what the law schools may say about the military's policies." *Id.* at 65.

This analysis from *Rumsfeld* fully applies here and demonstrates why Plaintiffs' free speech claim must be rejected.  Metro's Ordinance does not prevent Nelson from speaking her own message on same-sex marriage, homosexuality, or any other topic.  Plaintiffs' proposed postings are not "expressive speech."  Plaintiffs' business is a commercial for-profit enterprise.   Metro is not seeking to place restrictions on

Plaintiffs' speech or to compel Plaintiffs to say anything.  She may publish that she believes marriage is between one man and one woman.  Like the recruiting assistance at issue in *Rumsfeld*, Metro Ordinance's requirement that Plaintiffs make the photography services available to clients on a non-discriminatory basis does not constitute "compelled speech" because Plaintiffs are not "speaking on [their] own behalf when [they] provide such services to clients for a fee." *Id.* at 64.

Moreover, as in *Rumsfeld*, there is nothing about providing event photography services that expressly or implicitly suggests that the photographer agrees with, endorses, or has any particular opinion about the event being photographed.  Although Plaintiff attempts to equate photographing a same-sex commitment ceremony with an "endorsement" of that ceremony, the simple fact is that no reasonable viewer of photos of the event would conclude that the photographer has any particular opinions about anything depicted. *See Id.* at 65 (citing *Prune Yard Shopping Center v. Robins*, 447 U.S. 74, 88, 100 S. Ct. 2035 (1980) (upholding state statute requiring private shopping center owner to permit third parties to engage in expressive activity in shopping center and stating that there was little likelihood that the views of those engaging in expression would be identified with the owner).

Indeed, because Plaintiffs' photographs are shown and sold only to participants in the event itself and are not displayed to the public except if Plaintiffs chose to post them online, it is even less likely in this case than in *Rumsfeld* and *Prune Yard* that any member of the public would incorrectly believe that Plaintiffs endorse or agree with its clients' speech.  Nelson remains free to express her views on same-sex marriage on a personal website.  Because Plaintiffs have numerous channels to express opinions that are in no way impacted or diminished by the subject Ordinance, the requirement that it provide access to its photography services on a non-discriminatory basis does not unconstitutionally "compel speech."  *See Rumsfeld*, 475 U.S. at 65; *Prune Yard*, 447 U.S. at 88; *Arlene's Flowers, Inc.*, 193 Wash.2d at 510-18 (Washington statute does not violate First Amendment speech protections).

17

At its heart, Metro's Ordinance serves a governmental interest that has been recognized as compelling: The eradication of discrimination.  *See*, e.g., *Roberts*, 468 U.S. 609, 623 (sex discrimination); *Bob Jones Univ. v. United States*, 461 U.S. 574, 604, 103 S.Ct. 2017 (1983) (race discrimination); *Elane Photography*, 309 P.3d at 60-64 (sexual orientation discrimination).  The *Elane* Court agreed "that when a law prohibits discrimination on the basis of sexual orientation, that law protects conduct that is inextricably tied to sexual orientation."  *Id.* at 64.  Plaintiffs cite *Hurley* for the proposition that combating discrimination is not a legitimate interest when an anti-discrimination statute is applied in such a way that it serves only to require speakers to modify the content of their expression to whatever extent beneficiaries of the law choose to alter it with messages of their own. *Hurley*, 515 U.S. at 578.  (*See* Plaintiffs' Memorandum at p. 22).  But the Supreme Court's analysis in *Hurley* was tied to the peculiar way in which the law was applied in that case: To permit a contingent to march in a parade and express messages that were contrary to the preferred message of the parade's organizers.  No such unusual circumstances are present here.  Here, the interest that is being asserted is non-discrimination in its purest sense: Ensuring that business establishments are open to the public on an equal basis without regard to race, sex, religion, disability, sexual orientation or other protected categories.  Thus, the application of Metro's Ordinance plainly serves a legitimate interest by providing access to business services which are unrelated to the regulation of speech or the expression of ideas and which serves a compelling interest of the highest order by seeking to eradicate discrimination.

Plaintiffs also claim their free speech rights warrant application of strict scrutiny.  (Plaintiffs' Memorandum at p. 16).  While weddings may be expressive, it is Plaintiffs' customers who are engaged in expression.  The exclusion of same-sex couples from wedding related goods and services deprives the same-sex couples of the critical means to seek to celebrate their commitment.  Metro's Ordinance reasonably advances the same-sex couples' critical interest in ensuring equal dignity in the eyes of the law.

18

Metro's Ordinance does not trigger strict scrutiny.   However, under either a lesser standard or strict scrutiny, Metro's Ordinance is proper.   Metro's Ordinance would survive a strict scrutiny analysis.

The Ordinance does not aim at the suppression of speech.   If Plaintiffs make a statement that they intend to discriminate by not providing services, then that speech may be limited because of the compelling interest involved. Metro has advanced its interests though the least restrictive means.   *Roberts*, 468 U.S. at 626-29.   If Plaintiffs wish to publish their position on their business website that they will not photograph same-sex marriages then Plaintiffs have violated the Metro Ordinance, Sec. 92.05 (B).   The guarantee of free speech or freedom of religion is not absolute and where there is a competing, compelling interest involved, namely in protecting against discrimination, then free speech may be regulated or narrowly restricted.   At most, Metro Ordinance Sec. 92.05 (B) narrowly and properly restricts speech as it relates to business services.

Contrary to Plaintiffs' assertions citing *Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019) and *Brush & Nib Studio*, 247 Ariz. 269, 448 F.3d 890 (2019) (Plaintiffs' Memorandum at pp. 9-10), the relevant inquiry should be whether the Ordinance draws distinctions based on the content of the product.  The Metro Ordinance does not.  The courts in *Telescope* and *Brush & Nib* incorrectly focus on the nature of the product.  These decisions should not be relied upon.  In any event, it does not follow that the policy of excluding gays and lesbians is protected by the First Amendment.  *Runyon*, 427 U.S. at 176; *Arlene's Flowers, Inc.*, 193 Wash. 2d at 511, 12.  The Metro Ordinance does not compel Plaintiffs to offer wedding photography services or to take particular photographs, the Ordinance simply requires that once Plaintiffs opt into providing a service, they must make it equally available to customers.   That is not compelled speech.   Additionally, a test based on the type of product at issue is both inconsistent with precedent and unworkable.  *Hishon v. King & Spalding*, 467 U.S. 69, 78, 104 S.Ct. 2229, 2235 (1984).[3]

---

[3] For example, in *Hishon*, a law firm argued that applying Title VII to require it to consider a woman for partnership "would infringe [its] constitutional rights of expression or association."  476 U.S. at 78.  Although a law firm's work

<u>v. The Application of the Ordinance Does Not Violate the Free Exercise Clause</u>

Metro's Ordinance is a valid and neutral law of general applicability and therefore its application to Plaintiffs must be upheld even when it is claimed that 'the law proscribes (or prescribes) conduct that [Plaintiffs'] religion prescribes (or proscribes)." *Employment Div. Dep't of Human Resources of Ore. v. Smith*, 494 U.S. 872, 879 (1990) (superceded by statute) (quoting *United States v. Lee*, 455 U.S. 252, 262, n.3, 102 S.Ct. 1051 (1982) (Stevens, J., concurring judgment).  Plaintiffs claim Metro's Ordinance compels Nelson to violate her rights to freely exercise her religion by "compelling her to participate in and attend religious ceremonies she objects to."   Plaintiffs' Injunction Memorandum at pp. 19-21.

Charging a fee to provide photography services for a wedding (which may or may not have a religious component) is not analogous to attending a worship service.  Plaintiffs (like a florist or a caterer or a business which provides wedding facilities) are not present at a wedding ceremony as a participant but as a provider of a commercial service.  Because the exercise of religion or abstention thereof is not the object of the Metro Ordinance, but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment is not offended.  Moreover, the business at issue here is an LLC and not a sole proprietorship.  Even if Nelson's LLC has a constitutionally protected right to exercise its religion the business is not offended by enforcement of Metro's Ordinance.  *See Elane Photography*, 309 P.3d at 72-73; *Gifford*, 23 N.Y. S.3d at 429-30 (the right of free exercise does not relieve an individual from compliance with a valid and neutral law of general applicability, citing *Employment Div. Dept of Human Resources of Ore v. Smith*, 494 U.S. 872, 879, 110 S. Ct. 1595 (1990) (internal citations omitted); *State v. Arlenes Flowers, Inc*., 193 Wash. 2d 469, 524-28, 441 P.3d 1203 (2019); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152-59 (3d. Cir. 2019) (denying motion for preliminary injunction finding establishment of a reasonable

---

product constitutes "speech," see, e.g., *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545-47, 121 S.Ct. 1043 (2001), the *Hishon* Court dismissed the law firm's First Amendment defense, holding that there is "no constitutional right . . . to discriminate." 467 U.S. at 78.

likelihood of success on the merits not shown with respect to religious freedom protection and free exercise claims).

There is no hostility in the subject Ordinance to religion or disfavored treatment because of religion in any limited exception.  The Metro Ordinance applies to equally to everyone regardless of religious belief or affiliation.

Metro's Ordinance also does not trigger strict scrutiny as Plaintiffs claim.   *See* Plaintiffs' Memorandum at p. 21.  The Sixth Circuit has rejected the hybrid rights theory.  *Prater v. City of Burnside*, Ky. 289 F.3d 417, 430 (6th Cir. 2002); *Kissinger v. Bd. Of Trustees of Ohio State Univ.*, 5 F.3d 177, 180 (6th Cir. 1993) (hybrid rights doctrine is "completely illogical").  This case does not present a genuine issue regarding two constitutional law claims.  No valid constitutional claims are presented.  Further, Sixth Circuit law is controlling where it is on point, and reliance on noncontrolling decisions of courts outside the Sixth Circuit is misplaced in light of controlling Sixth Circuit law "directly on point."  *Peltier v. MaComb County*, Mich., 2011 WL 4596051 *4 (E.D.M. Sept. 30, 2011).

<u>vi. Even if Heightened Scrutiny Applies, the Application of Metro's Ordinance in this Case is Justified by a Compelling Interest.</u>

Even if this Court determines that a higher level of scrutiny should apply as Plaintiffs' claim (*See* Plaintiffs' Memorandum at pp. 21-22.), the application of the Ordinance in this case survives heightened scrutiny.  *See Arlene's Flowers, Inc.*, 193 Wash. 2d at 524-28. (Even if strict scrutiny standard applied, the Washington statute did not violate strict scrutiny).  A law that burdens religious practices in a way that is not religion-neutral and generally applicable "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *City of Hialeah*, 508 U.S. at 531-32.  The Metro Ordinance's prohibition of sexual orientation discrimination by businesses that serve the public satisfies that test, because the law promotes Metro Government's compelling interest in ending discrimination based on sexual orientation in public accommodations, and the law is narrowly tailored to advance that interest.

21

Plaintiffs appear to argue that the Ordinance is not sufficiently narrowly tailored because the interest in stopping discrimination must yield to Nelson's beliefs. The argument evolves from Nelson's skewed belief that her proposed or hypothetical conduct does not discriminate against anyone. (Plaintiffs' Memorandum at p. 22). According to Nelson, she should be able to convey messages others disagree with and to publish her position that the LLC will not provide services to same-sex marriages. Again, this policy is hypothetical.

Plaintiffs have failed to show an unreasonable burden on their religious exercise. To the contrary, the subject Metro Ordinance guarantee of equal access to public accommodations directly advances the compelling governmental interest in eliminating "the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307-08 (1969). "[A]cts of invidious discriminations in the distribution of publicly available goods, services, and other advantages cause unique evils that government has a compelling interest to prevent." *Roberts*, 468 U.S. at 628. A discriminatory denial of equal access not only "deprives a person of their individual dignity," but also "denies society the benefits of wide participation in political, economic, and cultural life." *Id.* at 625; *see also Heart of Atlanta Motel, Inc. v. U.S.* 379 U.S. 241; 250, 85 S. Ct. 348 (1964) (identifying purpose of federal public accommodations law as preventing the "deprivation of personal dignity that surely accompanies denials of equal access to public establishments") (citing legislative history; internal quotation marks omitted). Accordingly, as the U.S. Supreme Court has squarely recognized, "assuring [a State's] citizens equal access to publicly available goods and services . . . plainly serves compelling state interests of the highest order." *Roberts*, 468 U.S. at 624.

Sexual orientation discrimination has long caused the same stigmatizing injury and denial of equal opportunities that the Metro Ordinance was intended to address. Sexual orientation prejudice has fostered a general climate of hostility and distrust, leading in some instances to physical violence against those perceived to be homosexual or bisexual. The Metro Ordinance was extended to prohibit sexual orientation

discrimination and gender identity discrimination because the failure to provide equal protection due to discrimination "menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants." *Id.*

Requiring public accommodations to provide equal access without regard to sexual orientation reasonably serves Metro's compelling interest in preventing the social harms caused by sexual orientation discrimination.  There simply is no less restrictive way to ensure equal access to public accommodations than to require businesses to provide such access.  As the U.S. Supreme Court recognized in upholding the application of a state public accommodations law to compel an organization  to accept women as members, prohibiting exclusion on the basis of protected classifications "responds precisely to the substantive problem" that anti-discrimination laws seek to address – namely, the denial of equal access to public accommodations—and thus burdens First Amendment rights no more "than is necessary to accomplish that purpose.  *Roberts*, 468 U.S. at 629.

By their nature, laws prohibiting discrimination in public accommodations require businesses and their employees to spend time and energy serving customers whom they might prefer not to serve.  But this personal interaction with members does not violate any right they may have including the right to free exercise of religion or association.  As the New Mexico Supreme Court observed in rejecting an identical claim by a wedding photographer "[i]t is well known to the public that wedding photographers are hired by paying customers and that a photographer may not share the happy couple's views." *Elane Photography, LLC*, 309 P.3d at 69.  In that case the Court wisely stated that to adopt photographer's argument that she should be able to convey messages she disagrees with and refrain from serving those whom she desires not to:

> "would allow a photographer who was a klan member to refuse to photograph an African-American customer's wedding, graduation, newborn child, or other event if the photographer felt that the photographs would cast African-Americans in a positive light or be interpreted as the photographer's endorsement of African-Americans. A holding that the First Amendment mandates an exception to public accommodations laws for commercial photographers would license

23

commercial photographers to freely discriminate against any protected class on the basis that the photographer was only exercising his or her right not to express a viewpoint with which he or she disagrees. Such a holding would undermine all of the protections provided by antidiscrimination laws."

*Id.* at 72.  Further, as the dissenting judge in the 2-1 decision of *Telescope Media Group v. Lucero*, 936 F.3d 740, 764 (8th Cir. 2019), (Kelly, concurring in part and dissenting in part), recognized "[p]ublic accommodations law enforce the basic and fundamental right to be treated as an equal in American Society. Private discrimination 'sap[s] the moral fiber of the Nation,' . . . and mars the atmosphere of a united classless society in which the Nation rose to greatness." (internal citations omitted).  Judge Kelly recognized that the majority opinion, which involved a videographer, was dangerous because the court's holding could not be easily limited.  As such Judge Kelly recognized "[i]ts logic would apply with equal force to any business that desires to treat customers differently, based on any protected characteristic including sex, race, religion, or disability.  And what may start in the wedding business – 'we don't do interracial wedding,' 'we don't film Jewish ceremonies' and so on – likely will not end there.  Nothing stops a business owner from using today's decision to justify new forms of discrimination tomorrow." *Id.* at 780.  The majority *Telescope Media Group* decision carves out a limited exception which represents a major step backward.

Permitting what Plaintiffs' hypothetically desire to do would devastate the compelling goal of ending discrimination based on sexual orientation.  Any business that wished to discriminate against gays and lesbians could allege a religious motivation for doing so and there would be no justifiable way for the government to test the validity of such a claim without impermissibly intruding on religious affairs.  *See Employment Div. Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 886-87, 110 S. Ct. 1595 (1990); (rejecting argument that heightened scrutiny should apply to free exercise claims where the conduct at issue is "central" to a person's faith, because "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds") (internal citation omitted).

Nondiscrimination laws are the most direct and effective means possible of ending discrimination in public accommodations.  *See Roberts*, 468 U.S. at 626, 628 (public accommodation's nondiscrimination law "responds precisely to the substantive problem which legitimately concerns the State," and any intrusion on the rights of others "is no greater than is necessary to accomplish the State's legitimate purposes").  Exempting businesses that assert a religious motivation for discrimination would unavoidably result in harm to individuals by subjecting them to discrimination without redress.  *See Smith v. Fair Employment & Housing Comm 'n*, 12 Cal.4th 1143, 1175, 913 P.2d 909, 928 (1996).  Courts have recognized that even a limited exemption permitting a single individual to discriminate would "directly conflict" with the state's "interest in preventing discrimination based on irrelevant characteristics."  *Swanner v. Anchorage Equal Rights Com'n*, 874 P.2d 274, 282-283 (Alaska 1994).  "Voluntary commercial activity does not receive the same status accorded to directly religious activity.  *Id.*  As the Court noted the burden on *Swanner's* conduct falls on his conduct and not his beliefs.

The subject Ordinance is tailored narrowly so as to accomplish the goal of ending discrimination based on sexual orientation without infringing other individual rights.  The Plaintiffs cannot demonstrate a likelihood of success on the merits.

2.   PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE INJURY

Plaintiffs allege Metro's Ordinance violates their First Amendment rights and other constitutional rights, both facially and as applied, by banning, chilling, or compelling Plaintiffs' speech.  Plaintiffs also allege the ordinance impermissibly limits their Free Exercise of Religion, violates the Establishment Clause, their Due Process rights, and their Religious Freedom.  Plaintiffs allege these violations have led to unspecified economic harm and economic harm to be incurred in the future which entitle them to declaratory and injunctive relief.

Here, Plaintiffs attempt to create a concrete harm.  Plaintiffs allege that Ordinance § 92.05 "forces Chelsey to decide between continuing to offer wedding celebration [photography] services and boutique

editing services exclusively for marriages between a man and a woman under the constant threat of prosecution under the law or leaving the wedding industry altogether." Plaintiffs' Complaint, para. 227. Plaintiffs attempt to present this choice as a concrete and particularized damage, an injury-in-fact. However, the plain language of Plaintiffs' statement shows that no injury has yet occurred. Plaintiffs do not allege that Metro has closed down their business, nor that Metro is even contemplating such an action. Nelson claims that the Ordinance forces her to make a such a drastic choice, not that a choice has been made, one with redressable consequences. There is nothing at all concrete and particularized about this choice. Plaintiffs' Complaint does not allege an actual and imminent injury. Rather, Plaintiffs allege in the Complaint conjectural and hypothetical scenarios that might happen if they engage in unlawful conduct and the Ordinance is applied to them.

Plaintiffs fail to show an actual injury or imminent injury with proper causation under the Ordinance for their claimed loss of business. Plaintiffs allege the subject Ordinance acts to limit Plaintiffs' advertising and therefore Plaintiffs cannot expand its business. However, no evidence is provided to support this claim. Plaintiffs also have not shown how the Ordinance directly causes Plaintiffs a business loss – such as demonstrating that heterosexual couples would be more likely to use their services if Plaintiffs could publicly refuse to accommodate and serve same-sex couples. Plaintiffs proactively limit their business, not only just to weddings, but weddings solely between one man and one woman. Such a limited business model just as likely results in the economic loss of which the Plaintiffs complain.

Any alleged loss of business is compensable at law and is likely not irreparable. *Port City Properties v. Union Pacific Railroad Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008) ("Economic harm" usually does not, in and of itself, constitute irreparable harm . . . ." *quoting Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)) (citing C. Wright, A. Miller, M. Kana Fed. Prac. & Procedure § 2948.1 at 152-53 (2d ed. 1995)). The Defendants' immunity notwithstanding, Plaintiffs' cannot demonstrate irreparable injury from loss of business and further have not demonstrated any loss of business.

26

In a similar way, as demonstrated in the arguments above, Plaintiffs have not shown a violation of any constitutional right.  There is merely speculation as to what might happen at some unknown point in the future.   Irreparable injury is characterized as both "certain and great."   See *City of Benton Harbor v. Richardson*, 429 F.Supp. 1096 1101 (W.D. Mi. 1977).[4]  This has not been demonstrated here.

3.   REMAINING ELEMENTS FOR INJUNCTIVE RELIEF CANNOT BE SATISFIED

The third factor the court must look when considering a Motion for Preliminary Injunction is whether injunction may cause substantial harm to others.  *American Civil Liberties Union of Michigan v. National Security Agency/Central Security Service*, 467 F.3d at 590, 591 (6th Cir. 2002).  In arguments addressing the merits of Plaintiffs claims, it is clearly demonstrated that injunction opens an entire community of people in a protect class to discrimination.  The invidious employment and accommodation forms of discrimination that begot the Ordinance amount to substantial harm to others.

In a similar way, injunction would not satisfy that fourth and final element of the remedy, whether injunction would serve the public interest.  *Id.* It goes without saying that discrimination against an entire protected faction of our society does not serve the public interests.

4.   THE PUBLICATION CLAUSE OF THE SUBJECT METRO ORDINANCE, § 92.05 (B), IS NOT VAGUE OR OVERLY BROAD AND DOES NOT VIOLATE PLAINTIFFS' RIGHTS.

Plaintiffs claim in their Memorandum in Support of Motion for Preliminary Injunction that Metro's Ordinance 92.05 (B) (the Publication Provision's Unwelcome Clause) "prohibits speech that indicates someone's patronage of" or "presence at" a public accommodation "is objectionable, unwelcome, or undesirable."  (Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction at p. 24).  According to Plaintiffs this clause violates due process because it is vague and overbroad. Plaintiffs claim "[o]ther courts have invalidated the Unwelcome Clause's problematic language as overbroad."  *Id.* at 24-25, citing *Brush & Nib Studio, LC v. City of Phoenix*, 418 p.3d 426, 442-43 (Ariz. Ct. App. 2018).  But this opinion was

---

[4] Irreparable injury has been described as "one of the elusive terms of legal art defying reduction to a more black-letter definition." Id. (internal citations omitted).

vacated in part on appeal and the Supreme Court of Arizona based its divided, limited opinion on what it perceived to be greater protection available under the First Amendment to the Arizona State Constitution. *Brush C. Nib Studio, LC. V. City of Phoenix*, 247 Ariz. 269 448 P.2d 890, 916 (2019).  Therefore, *Brush C. Nib Studio's* vacated opinion does not support Plaintiffs position that Metro's Ordinance 92.05 (B) is vague and overbroad.

The other cases cited by Plaintiffs for support that 92.05 (B) is overly broad or vague are not on point.  Metro's Ordinance is not overly broad and the Unwelcome Clause is not vague or violative of the due process clause.  To render a law unconstitutional on overly broad grounds, the overbreadth must be "not only real but substantial, judged in relation to the statute's plain legitimate sweep."   *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908 (1973).  Further while certain words in isolation may appear vague or overbroad that alone does not render an ordinance overbroad and therefore unconstitutional. Even if some words are deemed overbroad, the remainder of the ordinance is kept intact.

<u>V. CONCLUSION</u>

To prevail on a motion for preliminary injunction, Plaintiffs must not only show a reasonable likelihood of success but also that it is more likely that not they will suffer irreparable harm without an injunction.  Here, Plaintiffs business was not cited for discrimination.  Nor have Plaintiffs been requested to photograph or provide any services with respect to some future same-sex wedding. Plaintiffs simply filed suit on speculation.  There is no present injury and Plaintiffs have not carried their burden to show standing or ripeness, nor do they demonstrate that they are more likely than not to suffer an injury.  Plaintiffs have not met the requisites to obtain a preliminary injunction.  Plaintiffs also have not shown a likelihood of success on the merits or that the public interest would favor granting an injunction here.  Therefore, this Motion for Preliminary Injunction should be denied.

For the reasons stated herein, Defendants, Metro Government, Human Relations Commission - Enforcement, Human Relations Commission - Advocacy, Kendall Boyd, Marie Dever, Kevin Delahanty,

Charles Lanier, Sr., Laila Ramey, William Sutter, Ibrahim Syed and Leonard Thomas respectfully request this Court deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

MIKE O'CONNELL,
JEFFERSON COUNTY ATTORNEY

/s/ John F. Carroll
JOHN F. CARROLL
JASON D. FOWLER
Assistant Jefferson County Attorneys
531 Court Pl., Ste. 900
Louisville, KY  40202
(502) 574-6333 (phone)
(502) 574-4215 (fax)
john.carroll2@louisvilleky.gov
jason.fowler@louisvilleky.gov
*Counsel for Defendants*

CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing Response in Opposition to Plaintiffs' Motion for Preliminary Injunction with tendered Order Denying was electronically mailed on this 16th day of January, 2020, via the Court's electronic mail system which in turn will email this Response in Opposition to the following:

Joshua D. Hershberger
Hershberger Law Office
P.O. Box 233
Hanover, IN 47243
josh@h10.legal

Jonathan A. Scruggs
Katherine L. Anderson
Bryan Neihart
Alliance Defending Freedom
15100 N. 90th Street

Scottsdale, AZ 85260
jscruggs@adflegal.org
kanderson@adflegal.org
bneihart@adflegal.org

David A. Cortman
Alliance Defending Freedom
1000 Hurricane Shoals R. NE, Ste. D-1100
Lawrenceville, GA 30043
dcortman@adflegal.com

/s/ John F. Carroll
JOHN F. CARROLL