## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVSION

CHELSEY NELSON PHOTOGRAPHY
LLC and CHELSEY NELSON,

                Plaintiffs,

v.

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, *et al.*,

                Defendants.

Case No. 3:19-cv-00851-JRW

---

### BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY AND AMERICAN CIVIL LIBERTIES UNION SUPPORTING DEFENDANTS

---

COREY M. SHAPIRO, Ky. Bar No. 96897
HEATHER GATNAREK, Ky. Bar No. 95113
American Civil Liberties Union
   Foundation of Kentucky
325 W. Main Street, #2210
Louisville, Kentucky 40202
Telephone: (502) 581-9746
corey@aclu-ky.org
heather@aclu-ky.org

LINDSEY KALEY, N.Y. Bar No. 5324983*
HILARY LEDWELL, N.Y. Bar No. 5585518*
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
lkaley@aclu.org
hledwell@aclu.org

* Motions to proceed Pro Hac Vice
forthcoming*

*Counsel for* Amici Curiae

# TABLE OF CONTENTS

STATEMENT OF *AMICI CURIAE* .............................................................. 1

SUMMARY OF ARGUMENT ...................................................................... 1

ARGUMENT ............................................................................................. 4

I. DISCRIMINATION BASED ON SEXUAL ORIENTATION IN THE
PROVISION OF A RETAIL SERVICE VIOLATES METRO ORDINANCE §
92.05 ............................................................................................... 4

II. THE FREE SPEECH CLAUSE DOES NOT AUTHORIZE A BUSINESS TO
ENGAGE IN DISCRIMINATION PROHIBITED BY A REGULATION OF
CONDUCT THAT INCIDENTALLY AFFECTS EXPRESSION ............................. 6

    A. Louisville's Ordinance Regulates Commercial Conduct and Affects Expression
Only Incidentally ........................................................................... 6

        1. Generally applicable laws that regulate commercial conduct and do not target
speech receive minimal First Amendment scrutiny ................................. 7

        2. The Ordinance is not content- or viewpoint-based, so there is no basis for
applying strict scrutiny ................................................................ 9

    B. Any "Compelled Expression" Is Incidental to the Ordinance's Regulation of the
Conduct of Providing Goods and Services and Does Not Alter the First
Amendment Analysis ....................................................................... 12

    C. The Free Speech Clause Does Not Protect a Public Accommodation's Right to
Publish Its Unlawful Policy of Discrimination ........................................ 16

III. THE ORDINANCE IS FULLY CONSISTENT WITH THE RELIGION
CLAUSES ........................................................................................ 17

IV. THE ORDINANCE SATISFIES EVEN STRICT SCRUTINY ............................. 18

    A. Louisville Has a Compelling Interest in Eradicating Discrimination in
Commercial Goods and Services ........................................................ 19

    B. Uniform Enforcement of the Ordinance Is the Least Restrictive Means for
Furthering the City's Compelling Interest in Eradicating Invidious Discrimination . 21

CONCLUSION ....................................................................................... 23

CERTIFICATE OF SERVICE ..................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Associated Press v. NLRB,*
  301 U.S. 103 (1937) ............................................................................... 7

*Associated Press v. United States,*
  326 U.S. 1 (1945) ................................................................................. 7

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte,*
  481 U.S. 537 (1987) ....................................................................... 10, 19

*Bob Jones Univ. v. United States,*
  461 U.S. 574 (1983) ....................................................................... 19, 21

*Bray v. Alexandria Women's Health Clinic,*
  506 U.S. 263 (1993) ............................................................................ 5

*Brush & Nib Studio, LC v. City of Phoenix,*
  448 P.3d 890 (Ariz. 2019) ........................................................... 10, 14, 20

*Burwell v. Hobby Lobby Stores, Inc.,*
  573 U.S. 682 (2014) ....................................................................... 19, 22

*Christian Legal Soc'y v. Martinez,*
  561 U.S. 661 (2010) ............................................................................ 5

*Citizen Publ'g Co. v. United States,*
  394 U.S. 131 (1969) ............................................................................ 7

*Daniel v. Paul,*
  395 U.S. 298 (1969) ........................................................................... 22

*EEOC v. Fremont Christian Sch.,*
  781 F.2d 1362 (9th Cir. 1986) ............................................................... 21

*Elane Photography, LLC v. Willock,*
  309 P.3d 53 (N.M. 2013) ......................................................... 5, 8, 13, 14

*Employment Division v. Smith,*
  494 U.S. 872 (1990) ........................................................................... 18

*Giboney v. Empire Storage & Ice Co.,*
  336 U.S. 490 (1949) ............................................................................ 7

*Groswirt v. Columbus Dispatch,*
  238 F.3d 421 (6th Cir. 2000) ................................................................. 13

*Heart of Atlanta Motel, Inc. v. United States*,
  379 U.S. 241 (1964) ........................................................................................ 3, 20, 21

*Heckler v. Mathews*,
  465 U.S. 728 (1984) ............................................................................................ 20, 21

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984) ................................................................................................ 2, 8

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
  515 U.S. 557 (1995) ........................................................................................... passim

*Janus v. American Federation of State, County, & Municipal Employees, Counsel 31*,
  138 S. Ct. 2448 (2018) ............................................................................................. 13

*Johari v. Ohio State Lantern*,
  76 F.3d 379 (6th Cir. 1996) ...................................................................................... 13

*Jones v. Alfred H. Mayer Co.*,
  392 U.S. 409 (1968) .................................................................................................. 20

*Lawrence v. Texas*,
  539 U.S. 558 (2003) ................................................................................................... 5

*Legal Servs. Corp. v. Velazquez*,
  531 U.S. 533 (2001) .................................................................................................... 8

*Madsen v. Women's Health Ctr.*,
  512 U.S. 753 (1994) .................................................................................................. 12

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
  138 S. Ct. 1719 (2018) .................................................................................. 14, 16, 18, 19

*Messenger v. State*,
  41 N.W. 638 (Neb. 1889) ............................................................................................ 4

*Miami Herald Publ'g Co. v. Tornillo*,
  418 U.S. 241 (1974) ................................................................................................ 7, 15

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
  460 U.S. 575 (1983) .................................................................................................... 7

*N.Y. State Club Ass'n, Inc. v. City of N.Y.*,
  487 U.S. 1 (1988) ...................................................................................................... 19

*National Institute of Family & Life Advocates v. Becerra* ("*NIFLA*"),
  138 S. Ct. 2361 (2018) ........................................................................................... 13, 14

*Newman v. Piggie Park Enters., Inc.*,
   390 U.S. 400 (1968) .................................................................................. 3, 21

*Norwood v. Harrison*,
   413 U.S. 455 (1973) ......................................................................................... 3

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978) ......................................................................................... 7

*Okla. Press Publ'g Co. v. Walling*,
   327 U.S. 186 (1946) ......................................................................................... 7

*Pacific Gas & Electric Co. v. Public Utilities Commission of California* ("*PG&E*"),
   475 U.S. 1 (1986) ........................................................................................... 15

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*,
   413 U.S. 376 (1973) ....................................................................................... 16

*Ragin v. N.Y. Times Co.*,
   923 F.2d 995 (2d Cir. 1991) ........................................................................... 17

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ....................................................................... 11, 19, 20, 23

*Romer v. Evans*,
   517 U.S. 620 (1996) ......................................................................................... 1

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.* ("*FAIR*"),
   547 U.S. 47 (2006) ................................................................................. passim

*Runyon v. McCrary*,
   427 U.S. 160 (1976) ....................................................................................... 20

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ....................................................................................... 14

*Swanner v. Anchorage Equal Rights Comm'n*,
   874 P.2d 274 (Alaska 1994) ...................................................................... 21, 22

*Telescope Media Group v. Lucero*,
   936 F.3d 740 (8th Cir. 2019) ........................................................... 9, 10, 14, 20

*United States v. Burke*,
   504 U.S. 229 (1992) ....................................................................................... 22

*United States v. Lee*,
   455 U.S. 252 (1982) ....................................................................................... 22

*United States v. O'Brien*,
    391 U.S. 367 (1968)..................................................................................... 6

*Wisconsin v. Mitchell*,
    508 U.S. 476 (1993)............................................................................... 9, 12

*Wolfson v. Concannon*,
    811 F.3d 1176 (9th Cir. 2016) ................................................................ 23

**Ordinances**

Metro Ordinance § 92.05 .............................................................. 1, 4, 5, 17

**Statutes**

42 U.S.C. § 3604(c) ......................................................................... 16

## STATEMENT OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with nearly two million members dedicated to defending the principles of liberty and equality embodied in the Constitution. The ACLU of Kentucky is one of the ACLU's statewide affiliates with over five thousand five hundred members. The ACLU and the ACLU of Kentucky (collectively, "*Amici*") submit this *amicus curiae* brief in support of Defendants. As organizations that advocate for First Amendment liberties as well as equal rights for lesbian, gay, bisexual, and transgender ("LGBT") people, *Amici* and their members have a strong interest in the application of proper standards when evaluating constitutional challenges to civil rights laws.

## SUMMARY OF ARGUMENT

This appeal seeks a constitutional right to deny equal service in violation of Louisville's Metro Ordinance § 92.05. Like many public accommodation laws, the Ordinance bars businesses that are open to the public from refusing to serve or contract with individuals based on certain aspects of their identity—including, in Louisville, their sexual orientation. Discrimination in the commercial marketplace causes harms ranging from the practical, in that denials restrict opportunities and access to goods and services that others can take for granted, to the deeply personal, in terms of the stigma and harm of discrimination in day-to-day life. For LGBT people, public accommodation laws ensure equal opportunity to participate in the "transactions and endeavors that constitute ordinary civic life in a free society." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

There is no question that Louisville has the authority to prohibit businesses that choose to operate within its boundaries from discriminating in their sales of goods and services to the general public. But Plaintiffs Chelsey Nelson Photography, and Chelsey Nelson (together, "Nelson

1

Photography") argue that because the services Nelson Photography sells involve "speech," and because Nelson objects to marriage for same-sex couples on religious grounds, the First Amendment entitles her business to flout the city's law and discriminate based on sexual orientation with respect to the wedding-related services it intends to offer for sale. What is more, Nelson Photography seeks a constitutional right to post a statement on its website—a literal sign in its virtual shop window—proclaiming that it provides wedding photography for heterosexuals only.

The Ordinance applies to businesses that choose to serve the public at large. It requires that once a business chooses to offer goods and services to the public, it may not refuse to provide those goods and services to customers, to contract with a person, or discriminate in the terms of their contracts based on enumerated personal characteristics, including race, religion, and sexual orientation. Nelson Photography's stated intent to offer wedding photography services for heterosexual couples—but not same-sex couples—violates those basic rules. At its core, Nelson Photography's objection is not to a particular *message* requested by any particular customer, but to providing a *service* to an entire class of customers who are not heterosexual. Nelson Photography must know who a prospective customer is before deciding whether it will refuse to serve that person. That is identity-based discrimination, not an objection to the provision of a specific product.

This is not the first time a business open to the public has sought to avoid an anti-discrimination law by invoking the First Amendment. In every prior case the Supreme Court has rejected such claims, whether framed as involving the freedom of expression, association, or religion. Discriminatory conduct by business entities "'has never been accorded affirmative constitutional protections.'" *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (quoting *Norwood*

*v. Harrison*, 413 U.S. 455, 470 (1973)); *see also Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 n.5 (1968); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258–60 (1964).

The Supreme Court has uniformly rejected First Amendment defenses to discrimination lodged by commercial entities that provide expressive goods or services. None of the ordinary reasons for applying heightened scrutiny are present here. The Ordinance is content- and viewpoint-neutral. Louisville is not attempting to restrain or alter the exchange of ideas, to compel businesses to speak any state-selected message, or to host any state-sanctioned speaker. Rather, the Ordinance is targeted to proscribing a particular form of conduct: discrimination in the provision of goods and services to the public.

The application of the Ordinance to Nelson Photography likewise fails to trigger strict scrutiny or otherwise bar the application of the Ordinance under the Religion Clauses. It does not require Nelson to participate in religious ceremonies, or compel agreement with any state-sanctioned religious exercise. It requires only that Nelson Photography offer the same services to same-sex couples that it would to different-sex couples.

Even if heightened scrutiny were applied, applying the Ordinance to Nelson Photography's provision of commercial services would be constitutional. The law furthers Louisville's compelling interest in eradicating invidious discrimination, as similar public-accommodations laws have for over a century. Uniform enforcement of such laws is the least restrictive means of achieving that goal.

The implications of Nelson Photography's arguments are not limited to sexual-orientation discrimination or weddings. If the First Amendment bars a locality from applying an anti-discrimination law to the provision of wedding photography because it involves expression, then photography companies could refuse to photograph an interracial or interfaith couple's wedding.

Indeed, photographers could refuse to provide photography services for women, Muslims, African Americans, or any other group the company's owner does not wish to serve. Because numerous sellers provide goods or services that involve expression (including stationers, printers, and artisans of all kinds), a wide range of businesses could claim a First Amendment exemption from generally applicable regulations of commercial conduct.

As the Supreme Court of Nebraska explained in one of the earliest public accommodation decisions:

> A barber, by opening a shop, and putting out his sign, thereby invites every orderly and well-behaved person who may desire his services to enter his shop during business hours. The statute will not permit him to say to one: "You are a slave, or a son of a slave; therefore I will not shave you."

*Messenger v. State*, 41 N.W. 638, 639 (Neb. 1889). To recognize either of Nelson Photography's asserted First Amendment objections would run counter to the basic principle, reflected in over a century of public accommodation laws, that all people, regardless of status, should be able to receive equal service in American commercial life.

## ARGUMENT

## I. DISCRIMINATION BASED ON SEXUAL ORIENTATION IN THE PROVISION OF A RETAIL SERVICE VIOLATES METRO ORDINANCE § 92.05.

Metro Ordinance § 92.05 applies to businesses that are open to the public. Its Accommodations Provision bars businesses from denying anyone "the full and equal enjoyment" of "goods, services, . . . and accommodations . . . on the ground of . . . sexual orientation." Louisville/Jefferson Cty. Metro Gov't, Ky., Ordinance § 92.05(A) ("Metro Ordinance"). The Publication Provision makes it unlawful for businesses to "publish" or "display" a "communication, notice, or advertisement which indicates" that "services" will be "denied . . . on account of" someone's "sexual orientation." *Id.* § 92.05(B). Nelson Photography's stated plan to

offer wedding photography services to the public at large but refuse them to same-sex couples violates these basic principles.

Nelson Photography asserts that its refusal is not based on sexual orientation because it will provide other services to lesbian, gay, and bisexual customers, but not photography for their weddings. Nelson Br. 14.   Yet offering a limited set of services based on a customer's characteristics *is* discrimination.  As the Supreme Court of New Mexico explained in a virtually identical case, "[I]f a restaurant offers a full menu to male customers, it may not refuse to serve entrees to women, even if it will serve them appetizers." *Elane Photography, LLC v. Willock*, 309 P.3d 53, 62 (N.M. 2013).

Nelson Photography seeks a blanket right to refuse service to any same-sex couple seeking photography services for their wedding, regardless of the requested style or format. If a business needs to know *who* the service is for to decide whether it will provide those services, that is identity-based discrimination. A company that refused to provide wedding photography for interracial or Jewish couples would be discriminating based on race or religion, not making a decision about any "message" inherent in the product itself, even if it said it did so because it disapproved of those unions. Indeed, the Supreme Court has rejected the notion that discrimination against gay people who marry can be separated from discrimination based on the status of being gay. *See Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 689 (2010); *Lawrence v. Texas*, 539 U.S. 558, 583 (2003); *cf. Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews.").[1]

---

[1] Nelson Photography resists this conclusion by comparing discrimination against LGBT people to other (hypothetical) business interactions that do not actually implicate the Ordinance because they are not examples of denials of service because of a protected characteristic like race, religion or sexual orientation. For example, the Ordinance would not compel "a gay tattoo designer to ink

## II.   THE FREE SPEECH CLAUSE DOES NOT AUTHORIZE A BUSINESS TO ENGAGE IN DISCRIMINATION PROHIBITED BY A REGULATION OF CONDUCT THAT INCIDENTALLY AFFECTS EXPRESSION.

### A.   Louisville's Ordinance Regulates Commercial Conduct and Affects Expression Only Incidentally.

A law that regulates commercial conduct and affects speech only incidentally does not trigger strict scrutiny. When confronted with First Amendment challenges to laws that aim to regulate commercial conduct regardless of what it communicates, the Supreme Court has applied minimal scrutiny and upheld the law.[2]

Laws prohibiting invidious discrimination by businesses open to the general public regulate commercial operations, not speech, and do not violate free speech rights—even if they require public accommodations to provide goods or services involving speech to customers on a nondiscriminatory basis. Likewise, public accommodations do not have a free speech right to publish or advertise their intention to engage in unlawful conduct by discriminating against their customers.

---

a tattoo" with an anti-LGBT message or an "LGBT t-shirt design company to print a t-shirt critical of the LGBT community," Nelson Br. 15, because wishing to have an anti-LGBT tattoo or t-shirt is not protected under the Ordinance. It is not a service the business would offer to some customers but not others based on the identity of the customer. And "progressive bar associations" are free to decline to "publish statements promoting Israel," Nelson Br. 15, as long as they would not do so no matter the identity of the requester. Nor could the Ordinance be read to "forc[e] a Democratic speechwriter to write speeches supporting Republican politicians," Nelson Br. 16, since it covers only public accommodations. Even if speechwriters could be considered public accommodations in some circumstances, the Ordinance still would not cover any refusal of service based on a business's disagreement with the *message* a product would convey, as long as its refusal of service is not based on a customer's *status*.

[2] Even outside the commercial context, the Supreme Court has applied the deferential test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), to determine whether regulation of expressive conduct violates the Constitution. *Id.* at 377. Whether the Ordinance is evaluated under the commercial conduct cases or *O'Brien*, the result is the same: The law is a permissible regulation of conduct that does not violate the First Amendment.

### 1. Generally applicable laws that regulate commercial conduct and do not target speech receive minimal First Amendment scrutiny.

As an initial matter, "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978).

Moreover, the First Amendment is not infringed when the government enforces a generally applicable regulation of commercial conduct against a business that is "expressive." Even newspaper publishers, whose very product is protected speech, can be subject "to generally applicable economic regulations" without implicating the First Amendment. *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 581 (1983). "The fact that the publisher handles news while others handle food does not . . . afford the publisher a peculiar constitutional sanctuary in which he can with impunity violate laws regulating his business practices." *Associated Press v. United States*, 326 U.S. 1, 7 (1945); *Associated Press v. NLRB*, 301 U.S. 103, 132 (1937); *see also Citizen Publ'g Co. v. United States*, 394 U.S. 131, 139–40 (1969) (no First Amendment immunity from antitrust laws); *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 192–93 (1946) (no First Amendment immunity from Fair Labor Standards Act). In contrast, a law specifically requiring a newspaper to print particular content (or forbidding it from printing such content) directly intrudes on the First Amendment. *See, e.g.*, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Accordingly, the Supreme Court has uniformly rejected businesses' challenges to laws barring discrimination, even where those businesses dealt in "expressive" goods or services. For example, in *Hishon v. King & Spalding*, a law firm argued that applying Title VII to require it to

consider a woman for partnership "would infringe [its] constitutional rights of expression or association." 467 U.S. at 78. Although a law firm's work product constitutes "speech," *see, e.g.*, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001), the *Hishon* Court dismissed the law firm's First Amendment defense, holding that there is "no constitutional right . . . to discriminate." 467 U.S. at 78. By contrast, a law that specifically targeted a law firm's speech by, for example, preventing it from bringing cases that "challenge existing welfare laws," would "implicat[e] central First Amendment concerns." *Velazquez*, 531 U.S. at 547–48.

Nelson Photography asserts that its photographs and editing constitute speech. Nelson Br. 5, 8–9. But the Ordinance does not tell the company how to frame its shots or edit its photographs; it regulates only the sale of its services to the public. Businesses that provide photographs to the public at large are just as subject to generally applicable regulations of their commercial conduct as newspapers and law firms. As the Supreme Court of New Mexico held—in an essentially identical case that is noticeably absent from Nelson Photography's briefing—where "[a photography business] is a public accommodation, its provision of services can be regulated" consistent with the First Amendment, "even though those services include artistic and creative work." *Elane Photography*, 309 P.3d at 66 (N.M. 2013); *see also id.* at 59, 71 ("[T]here is no precedent to suggest that First Amendment protections allow such individuals or businesses to violate antidiscrimination laws."). A video-game business cannot claim an exemption from the Fair Labor Standards Act to allow it to hire child laborers, and a tattoo parlor cannot claim an exemption from a general health code regulation governing the disposal of needles, simply because video games and tattoos are artistic expression protected by the First Amendment. Such businesses are likewise not exempt from anti-discrimination laws.

Thus, even though Nelson Photography's work product involves decisions relating to

"message, mood, and emotional impact" of the photographs, Nelson Br. 7, that "hardly means" that any regulation of its business operations "should be analyzed as one regulating [Nelson Photography's] speech rather than conduct." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.* ("*FAIR*"), 547 U.S. 47, 62 (2006). Although Nelson Photography relies on *Telescope Media Group v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019), for the proposition that its photographs "deserve [First Amendment] protection" as speech, *FAIR* demonstrates why that analysis misses the mark. The question is not the nature of a business's product, but whether the Ordinance prohibits a course of conduct. Here, the Ordinance proscribes a course of conduct: discriminating in the provision of goods and services. "[I]t has never been deemed an abridgment of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language." *FAIR*, 547 U.S. at 62 (internal quotation marks and citation omitted).

> **2.    The Ordinance is not content- or viewpoint-based, so there is no basis for applying strict scrutiny.**

Seeking to avoid the minimal scrutiny the Supreme Court has applied to generally applicable regulations of commercial conduct, Nelson Photography argues that strict scrutiny should apply because the Ordinance is content- and viewpoint-based. Nelson Br. 16–18.

To the contrary, "federal and state anti-discrimination laws" are "an example of a permissible content-neutral regulation of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993). As the Supreme Court explained in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), public accommodation laws do not, on their face, "target speech or discriminate on the basis of its content, the focal point of [their] prohibition being rather on the act of discriminating against individuals in the provision of publicly available goods, privileges, and services on the proscribed grounds." *Id.* at 572; *see also Bd. of Dirs. of Rotary Int'l*

*v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) (public accommodations laws "make[] no distinctions on the basis of [an] organization's viewpoint").

Nelson Photography nonetheless contends that the Ordinance is content-based because its application is triggered by a business's decision to offer wedding photography as opposed to photographs for other purposes, like those about Louisville basketball. Nelson Br. 17. To the contrary, the Ordinance is triggered not by the topic of marriage (or by any topic at all), but by refusals of service based on identity (race, color, creed, religion, disability, national origin, marital status, sexual orientation, and sex). Strict scrutiny would apply if the government passed a law prohibiting companies from creating photographs depicting crosses or with imagery critical of the President. It does not apply when the government prohibits a photography company from discriminating against members of the public in its provision of services.

Nelson Photography's reliance on *Telescope Media*, 936 F.3d at 753, and *Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890, 912–14 (Ariz. 2019), is unavailing. Nelson Br. 16–17. Those cases reasoned that antidiscrimination laws applied to a videography company and a calligraphy studio were content-based compulsions because they required that those businesses create particular products related to the topic of same-sex weddings. To begin with, the analysis of *Brush & Nib* was "limited" to only one product: the "custom wedding invitations" that were "materially similar" to those contained in the record; the court did not confer a "blanket exemption" for all of the studio's "business operations," notwithstanding that it created other custom paper products for weddings. *See Brush & Nib*, 448 P.3d at 895–96, 916. By contrast, Nelson Photography has not limited its objection to particular photographs, but objects generally to offering photography services to same-sex couples wedding—regardless of the content of the photographs. Nelson Br. 2. In any case, those cases not only miss the mark, they upend decades of

jurisprudence treating antidiscrimination laws as regulating conduct, even where the product at issue involves speech.

The relevant inquiry is not whether application of the law would result in businesses having to create products reflecting content to which they had previously objected. The question is whether the *law* draws distinctions based on content. The Ordinance does not. It is an example of a public accommodations law that does not "target speech or discriminate on the basis of its content," but rather has as its "focal point" a "prohibition . . . on the act of discriminating against individuals in the provision of publicly available goods, privileges, and services on the proscribed grounds." *Hurley*, 515 U.S. at 572. The Ordinance does not require Nelson Photography to photograph weddings or capture them in any particular way. But once the business opts in to offering a service, it must make that service equally available to all customers.

Nelson Photography next suggests that the Ordinance is viewpoint-based because it compels only a "celebratory viewpoint" of same-sex marriage. Nelson Br. 16–17. But the Ordinance does nothing of the kind. It prohibits businesses from refusing to provide goods and services on grounds of customers' sexual orientation, regardless of a business's views on marriage or any other subject. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("On its face, the . . . Act . . . does not distinguish between prohibited and permitted activity on the basis of viewpoint . . . .").

Under the Ordinance, it is just as unlawful to refuse to provide photographs because a couple is heterosexual as it is to refuse to do so because the couple is gay. Nelson Photography's argument would invalidate not only Louisville's law, but all such laws as "viewpoint-based": a law prohibiting race discrimination could be said to favor businesses that support integration, while a law prohibiting sex discrimination could be said to favor businesses that support women's work

outside the home. The Supreme Court has rightly rejected that position. *See, e.g.*, *Mitchell*, 508 U.S. at 487; *see also Madsen v. Women's Health Ctr.*, 512 U.S. 753, 763 (1994) (holding that an injunction prohibiting abortion protesters from picketing outside a clinic was not viewpoint discriminatory because "the fact that the injunction covered people with a particular viewpoint does not itself render the injunction content or viewpoint based").

**B.     Any "Compelled Expression" Is Incidental to the Ordinance's Regulation of the Conduct of Providing Goods and Services and Does Not Alter the First Amendment Analysis.**

Nelson Photography's contention that the Ordinance compels it to express a message with which it disagrees, Nelson Br. 12–14, does not alter the constitutional analysis or result. As shown above, the Ordinance is a neutral regulation of commercial conduct. It does not require Louisville businesses to convey a state-mandated message. It does not require any business to convey any particular message at all. And it certainly does not "force[]" Nelson Photography to post any particular photographs "on [its] blog." Nelson Br. 5, 9. The pleadings contain no suggestion that Nelson Photography's blogging about its work is a service included in contracts with opposite-sex couples, or uniformly presented to all customers as a service offered for a fee. Given the facts Nelson Photography has alleged, there is no basis to conclude the Ordinance applies to its blog at all. As long as Nelson Photography offers the same services to same-sex couples as it does to opposite-sex couples, it complies with the Ordinance, whatever it might subsequently post on its blog.

The Ordinance does not unconstitutionally compel speech any more than a law that prohibits a commercial photography studio that offers corporate headshots to the public at large from providing headshots for men but not women. Louisville does not impermissibly "compel speech" by prohibiting Nelson Photography from refusing to provide same-sex couples with the

same service that it provides for heterosexual couples. *See also Elane Photography*, 309 P.3d at 64 (reasoning that nondiscrimination in public accommodations law does not compel speech because it does not require photography business to "recite any message" or indeed to "take photographs" at all but only to serve customers on an equal basis).

Nelson Photography's reliance on *Hurley*, Nelson Br. 10–11, is misplaced. *Hurley* involved a "peculiar" application of a public accommodation law to a privately organized St. Patrick's Day parade that the Court emphasized was "inherent[ly] expressive[]." 515 U.S. at 568, 572. The Court found this application to be impermissible because, instead of regulating conduct with only an incidental effect on expression, it directly regulated nothing *but* expression—the content of the private parade sponsor's speech. *Id.* at 573. Here, Nelson Photography is not a private expressive association, but a commercial establishment that provides services to the general public. *Hurley* itself distinguished the standard application of public accommodation laws to commercial businesses as constitutional. *Id.* at 578.[3]

---

[3] The Sixth Circuit cases on which Nelson Photography relies are not on point. They hold only that a newspaper generally has a First Amendment interest in deciding what it will publish. No antidiscrimination law was at issue, and in both cases the court found that there was no adequate allegation that the papers had declined to publish the content at issue because of the identity of the writer. *See Groswirt v. Columbus Dispatch*, 238 F.3d 421, at *2 (6th Cir. 2000) (unpublished); *Johari v. Ohio State Lantern*, 76 F.3d 379, at *1 (6th Cir. 1996) (unpublished). Nelson Photography's reliance on other compelled-speech cases is equally unavailing. *National Institute of Family & Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361 (2018), involved a challenge to a California law requiring "crisis pregnancy centers" to express a specific, state-selected message about publicly funded contraception and abortion services. *Id.* at 2378. *Janus v. American Federation of State, County, & Municipal Employees, Counsel 31*, 138 S. Ct. 2448 (2018), was a challenge to an Illinois law that allowed public unions to collect fees from non-members on whose behalf the union would negotiate. The law targeted speech and therefore triggered heightened scrutiny. But that case does not address the question of whether the challenged Ordinance targets speech or conduct. Here, the Ordinance is directed towards conduct. It does not target speakers or speech, or require businesses in Louisville to "personally speak the government's message," *FAIR*, 547 U.S. at 63—it requires only equal treatment of customers. Further, *NIFLA* reaffirmed that "'[t]he First Amendment does not prevent restrictions directed at commerce or conduct from

The Court in *Hurley* emphasized that "[p]rovisions" like the Ordinance mandating nondiscrimination in public accommodations are "well within the [government's] usual power to enact" and "do not . . . violate" the First Amendment because they "do[] not . . . target speech" but "foc[us]" instead on prohibiting discrimination in the provision of goods and services. *Hurley*, 515 U.S. at 568, 572. To expand *Hurley*'s holding beyond its application to a private association would put courts in the impossible "business of deciding which businesses are sufficiently artistic to warrant exemptions from antidiscrimination laws." *Elane Photography*, 309 P.3d at 71. Not only would such a result be contrary to Supreme Court precedent, it would create a standard that could not withstand long term application.[4]

Even where, unlike here, a content- and viewpoint-neutral law requires entities to speak particular words or to provide access for third-party speakers, the Supreme Court has rejected First Amendment challenges where the law regulates conduct and any compulsion to speak is incidental. In *FAIR*, for example, the Court rejected a First Amendment challenge to the Solomon Amendment, which required law schools to provide equal access both to military and non-military recruiters on campus. 547 U.S. at 54. A coalition of law schools argued that the Solomon Amendment compelled the schools to endorse the military recruiters' message of discrimination

---

imposing incidental burdens on speech,'" as the law at issue here does. 138 S. Ct. at 2373 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011)).

[4] The decisions in *Telescope Media*, 936 F.3d 740, and *Brush & Nib*, 448 P.3d 890, mistakenly invite courts to apply different First Amendment standards based not on the conduct prohibited by the law at issue, but rather based on the nature of the product sold by the public accommodation. However, such a standard is neither consistent with First Amendment precedents, nor is it susceptible to clear or uniform application. Indeed, advocates for treating wedding cakes as protected speech failed to articulate a workable test when questioned at oral argument, and the Supreme Court declined to grant them such an exemption. *See* Oral Argument Transcript 11–19, *Masterpiece Cakeshop Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719 (2018).

embodied in the Don't Ask, Don't Tell policy. *Id.* at 52–53. The schools specifically objected that they would be required to engage in speech by sending e-mail messages and posting notices on a bulletin board on behalf of the military. *Id.* at 61–62. The Supreme Court rejected the law schools' claim, reasoning that "[a]s a general matter, the Solomon Amendment regulates conduct, not speech. It affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*," *id.* at 60, and concluding that "[t]he compelled speech . . . is plainly incidental to the Solomon Amendment's regulation of conduct." *Id.* at 62.

Moreover, because the Ordinance is content- and viewpoint-neutral, this case is also dramatically different from two cases in which the Supreme Court struck down content-based laws that required businesses to publish particular messages of others with whom they disagreed. In *Tornillo*, 418 U.S. 241, a right-of-reply statute required newspapers that published articles attacking the character of a political candidate to afford the candidate free space for a written reply. And in *Pacific Gas & Electric Co. v. Public Utilities Commission of California* ("*PG&E*"), 475 U.S. 1 (1986), a state agency ordered a utility company to include in its billing envelope the newsletter of an environmental group with which the utility disagreed. In both instances, the state regulation favored opposing speech in a content-based way: The right of reply was triggered by certain content (editorials critical of political candidates in *Tornillo*; utility's newsletters in *PG&E*), and the regulation imposed a content-based penalty (replies to the criticism in *Tornillo*; environmental newsletters in *PG&E*). Here, the Ordinance has merely told all Louisville businesses open to the public that whatever goods and services they offer to heterosexual couples they must also offer to lesbian and gay customers and vice versa. That is true whether the product offered is wedding photography, t-shirts, tattoos, or signs. *See* Nelson Br. 11. The obligation to serve customers equally is determined by the identity of the customer, not the content of the

product. Any effect on speech is entirely incidental.

**C.    The Free Speech Clause Does Not Protect a Public Accommodation's Right to Publish Its Unlawful Policy of Discrimination.**

Nelson Photography wishes to post a notice online stating that it "[does not] photograph same-sex weddings." Compl., Exh. 1; *see* Nelson Br. 3. Yet, just as there is no constitutional right to discriminate, there is no concomitant right to advertise an illegal policy of discrimination. The U.S. Supreme Court has explicitly disapproved of businesses posting signs saying "no goods or services will be sold if they will be used for gay marriages," as such signs would "impose a serious stigma on gay persons." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1728–29 (2018). In *FAIR*, the Court explained that the government "can prohibit employers from discriminating in hiring on the basis of race. The fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." 547 U.S. at 62. Were it otherwise, longstanding bans on discriminatory advertisements in employment, housing, and public accommodations throughout the country would have to be struck down on free speech grounds. *See, e.g.*, 42 U.S.C. § 3604(c). No court has countenanced such a result.

For example, in *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973), the Supreme Court held that Pittsburgh could constitutionally enforce its anti-discrimination ordinance to prevent a newspaper from publishing help wanted advertisements in separate, sex-designated columns. *Id.* at 389 ("Any First Amendment interest . . . is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity."); *see also Ragin v. N.Y. Times Co.*, 923 F.2d 995, 1003 (2d Cir. 1991) (holding that a newspaper's "publication of real estate advertisements that indicate a racial preference is . . . not protected commercial speech," and stating that "Congress's power to

prohibit speech that directly furthers discriminatory sales or rentals of housing" is "unquestioned").

This case is even more straightforward than *Pittsburgh Press* and *Ragin*. The question here is simply whether a business has a free speech right to publish its own policy of unlawful discrimination. No such right exists. Federal, state, and local governments undoubtedly have the power to prevent invidious discrimination, regardless of whether it comes in the form of individual discriminatory acts or a publicized discriminatory policy.[5]

## III.   THE ORDINANCE IS FULLY CONSISTENT WITH THE RELIGION CLAUSES.

Nelson Photography contends that the Ordinance "compel[s] [Nelson] to participate in and attend religious ceremonies" to which she "objects," in violation of both the Establishment and Free Exercise Clauses. Nelson Br. 19. The law, however, does no such thing. It does not require that Nelson "actively participate in same-sex wedding ceremonies by serving as a witness, greeting guests, congratulating and directing the couple for photographs and standing in recognition of the marriage." Nelson Br. 20. It does not mandate that she "stay[] silent at . . . ceremonies when officiants ask if anyone objects to the marriage or bow[] her head during communion, prayers, and scriptural readings." Nelson Br. at 20–21. It requires that she offers the same service to same-sex couples—wedding photography—that she offers to opposite-sex couples. As the Supreme Court explained in *Employment Division v. Smith*, 494 U.S. 872 (1990), "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 879 (internal quotation marks omitted).

---

[5] Nelson Photography is free to post a notice saying that it does not support or endorse customer events for which it has provided photography services. *See FAIR*, 547 U.S. at 65. What Nelson Photography may not do is enjoy the advantages of being open to the public at large while advertising that it categorically will not serve certain members of the public because of their sexual orientation. Even the Ordinance's Accommodations Provision, Metro Ordinance § 92.05(A), bars such a practice to the extent it prohibits the denial of equal enjoyment of goods and services.

Nelson Photography's citation of *Masterpiece Cakeshop*, 138 S. Ct. at 1727—for the proposition that requiring clergy to perform the wedding of any couple, whether same-sex or different-sex, violates the Free Exercise Clause—demonstrates this point. The Ordinance does not apply to clergy on its own terms. Neither Nelson nor the photography business is a member of the clergy performing a marriage ceremony. Nelson Photography is a commercial enterprise offering its services to the public. And the Court in *Masterpiece Cakeshop* anticipated and rejected the argument that its reasoning applies beyond clergy: To hold that Nelson Photography's services qualify as "participat[ion] in sacred ceremonies" would raise a host of issues "that seem all but endless." *Masterpiece Cakeshop*, 138 S. Ct. at 1723. Adopting such a broad definition of "participation"—and extending the rules applicable to clergy, who certainly may choose which weddings they will perform, to all businesses—would, as the Supreme Court has noted, mean that "a long list of persons who provide goods and services for marriages and weddings might refuse to do so for gay persons, thus resulting in a community-wide stigma inconsistent with the history and dynamics of civil rights laws that ensure equal access to goods, services, and public accommodations." *Masterpiece Cakeshop*, 138 S. Ct. at 1727.[6] The Religion Clauses do not require that result.

## IV. THE ORDINANCE SATISFIES EVEN STRICT SCRUTINY.

The Ordinance fails to trigger strict scrutiny under the Free Speech or Religion Clauses. But even if strict scrutiny applied, application of the law would be constitutional.

---

[6] At the very least, the allegations in the complaint are insufficient to conclude that the services Nelson Photography highlights in this regard are considered services that all customers are offered. While Nelson Photography must serve all customers equally, it is not evident that any customer is contracting for her participation in the wedding services (as would be the case with a religious officiant), as opposed to her photography of such services.

A.   **Louisville Has a Compelling Interest in Eradicating Discrimination in Commercial Goods and Services.**

Anti-discrimination laws ensure "society the benefits of wide participation in political, economic, and cultural life." *Roberts*, 468 U.S. at 625; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733–34 (2014). In *Masterpiece Cakeshop*, the U.S. Supreme Court affirmed that such laws are a "valid exercise of state power," and that it is "unexceptional" that the "law can protect gay persons, just as it can protect other classes of individuals, in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public." 138 S. Ct. at 1724, 1728.

The Supreme Court has recognized repeatedly that the government has a compelling interest in "eliminating discrimination and assuring its citizens equal access to publicly available goods and services." *Roberts*, 468 U.S. at 624; *see also id.* at 628 (discrimination "cause[s] unique evils that government has a compelling interest to prevent"); *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 n.5 (1988) (recognizing the "State's 'compelling interest' in combating invidious discrimination"); *Duarte*, 481 U.S. at 549; *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983). No court considering the issue has concluded otherwise. *See, e.g.*, *Telescope Media*, 936 F.3d at 777 ("[P]ublic accommodations laws further compelling state interests of eradicating discrimination and ensuring residents have equal access to publicly available goods and services."); *Brush & Nib*, 448 P.3d at 914 (reasoning that "ensuring equal access to publicly available goods and services for all citizens, regardless of their status" is a "compelling interest").[7]

---

[7] Although those cases recognize the eradication of discrimination as a compelling government interest, both err in conflating the compelled speech analysis with the compelling interest analysis by suggesting that no compelling interest is present where a business's product involves speech. *See Telescope Media*, 936 F.3d at 755; *Brush & Nib*, 448 P.3d at 914–15. The compelling interest in ending discrimination, however, remains, even if the product at issue is expressive. Were it otherwise, a court conducting strict scrutiny analysis would never find a compelling interest once

Public accommodation laws protect "the State's citizenry from a number of serious social and personal harms." *Roberts*, 468 U.S. at 625. Being turned away from public accommodations like restaurants, doctor's offices, and retail stores because of one's identity "deprives persons of their individual dignity." *Id.* The Ordinance thus seeks to "vindicate the deprivation of personal dignity that surely accompanies denials of equal access to public establishments." *Heart of Atlanta Motel*, 379 U.S. at 250 (internal quotation marks omitted); *see also Runyon v. McCrary*, 427 U.S. 160, 179 (1976) (anti-discrimination laws "guarantee that 'a dollar in the hands of a Negro will purchase the same thing as a dollar in the hands of a white man'" (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 443 (1968)). Further, the harm of being refused service because of one's identity is not erased just because a customer can obtain goods elsewhere. "[D]iscrimination itself, . . . by stigmatizing members of the disfavored group[,] . . . can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group." *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984); *see also Heart of Atlanta Motel*, 379 U.S. at 292 (Goldberg, J., concurring).

The government's interest in enforcing the Ordinance cannot be reduced to access to photography services. Nelson Br. 22. "Discrimination is not simply dollars and cents, hamburgers and movies; it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public . . . ." *Heart of Atlanta Motel*, 379 U.S. at 292 (Goldberg, J., concurring) (internal quotation marks omitted).

Similarly, the harm of being refused service because of one's identity is not erased by obtaining a good elsewhere. "The government views acts of discrimination as independent social

---

it determined that the government had impermissibly infringed on a free-speech right and that strict scrutiny applied.

evils even if the prospective [customers] ultimately find" the goods or services they sought. *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 283 (Alaska 1994). "[D]iscrimination itself, . . . by stigmatizing members of the disfavored group[,] . . . can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group." *Heckler*, 465 U.S. at 739–40.

Nelson Photography's contention that Louisville has no compelling interest in prohibiting its refusal to provide wedding-related services to same-sex couples amounts to a disagreement with the conclusion that its conduct is discriminatory in the first place. But Nelson Photography *does* discriminate against LGBT clients if it refuses to offer them wedding video services on the same basis that they are available to other clients. Additionally, that the owner's sincerely held religious beliefs are in tension with an anti-discrimination law that governs their business undoubtedly creates difficulty. That is the case whenever people hold religious objections to complying with anti-discrimination laws or any other generally applicable business regulations. *See Bob Jones Univ.*, 461 U.S. 574 (religious objection to racial integration); *Piggie Park Enterprises*, 390 U.S. at 402 n.5 (same); *EEOC v. Fremont Christian Sch.*, 781 F.2d 1362 (9th Cir. 1986) (religious belief that only a man could be the "head of household" entitled to health insurance as employment benefit); *cf. United States v. Lee*, 455 U.S. 252, 261 (1982) (religious opposition to paying Social Security taxes). But that does not negate in any way Louisville's compelling interest in eradicating discrimination and furthering equal treatment in the commercial marketplace.

### B.   Uniform Enforcement of the Ordinance Is the Least Restrictive Means for Furthering the City's Compelling Interest in Eradicating Invidious Discrimination.

The Ordinance is "precisely tailored" to achieve its interest, and therefore would satisfy even strict scrutiny's narrow tailoring requirement. *See Burwell*, 134 S. Ct. at 2783. Every single

instance of discrimination "causes grave harm to its victims." *United States v. Burke*, 504 U.S. 229, 238 (1992); *see also Daniel v. Paul*, 395 U.S. 298, 307–08 (1969) (describing "the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public" (internal quotation marks omitted)). Because of the harms associated with each instance of invidious discrimination, there is simply no "numerical cutoff below which the harm is insignificant." *Swanner*, 874 P.2d at 282.

Nelson Photography contends that the Ordinance is not narrowly tailored because Louisville could choose, as other jurisdictions have done, to exempt businesses that "participate in weddings" or generally "exclude expressive businesses." Whether or not *other* jurisdictions permit discrimination in the provision of wedding services, the Ordinance is tailored to *Louisville's* interest, which it achieves by applying the law only to the extent that a business offers goods and services to the general public. The law thus focuses on activities that affect the broader commercial marketplace and carry with them an invitation to the public at large. By seeking a carve-out for itself, Nelson Photography "misperceives the breadth of the compelling interest" in eliminating discrimination against LGBT people, and "though that interest may be implicated to varying degrees in particular contexts, the interest remains." *Wolfson v. Concannon*, 811 F.3d 1176, 1182 (9th Cir. 2016) (internal quotation marks omitted).[8]

Nelson Photography also maintains that the Ordinance is not narrowly tailored because it could be interpreted not to cover message-based objections to service. Nelson Br. 22–23. Nelson

---

[8] Nelson Photography contends also that Louisville's limited exemptions for sex-based classifications in single-sex facilities like restrooms and dorms somehow suggests that Louisville must exempt "expressive businesses" from other nondiscrimination provisions. Nelson Br. 23. But Nelson Photography does not explain—nor could it—why it is arbitrary for Louisville to exempt a certain narrow class of historically sex-segregated facilities from its nondiscrimination Ordinance but not to write a blank check to a limitless range of so-called "expressive" businesses.

Photography's objection, however, is not a message-based one. It is based on the identity of its customers. *See*, *supra*, Section I. And, in any case, the Ordinance already does not cover such objections. A business is free, under the Ordinance, to refuse to create a product it would not create for any customer. What it is not free to do is decide whether or not to provide a service based on a customer's status.[9]

Because it is narrowly tailored to serve a compelling interest in eradicating discrimination in the commercial market, the Ordinance satisfies strict scrutiny.

## CONCLUSION

Nelson Photography's motion for a preliminary injunction should be denied.

Dated this 23rd day of January, 2020

Respectfully Submitted,

**/s/ Corey M. Shapiro**
COREY M. SHAPIRO, Ky. Bar No. 96897
Heather Gatnarek, Ky. Bar No. 95113
American Civil Liberties Union Foundation of Kentucky
325 W. Main Street, #2210
Louisville, Kentucky 40202
Telephone: (502) 581-9746
corey@aclu-ky.org
heather@aclu-ky.org

Lindsey Kaley, N.Y. Bar No. 5324983*
Hilary Ledwell, N.Y. Bar No. 5585518*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
lkaley@aclu.org
hledwell@aclu.org

*Counsel for Amici Curiae*

* *Motions to proceed Pro Hac Vice forthcoming*

---

[9] There is no merit to Nelson Photography's claim that the Ordinance is not narrowly tailored because Title VII permits classifications outside of the public accommodations context. Nelson Br. 23. Title VII does not set the limit of anti-discrimination law or narrow tailoring. *See Roberts*, 468 U.S. at 625–26; *Hurley*, 515 U.S.at 572.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2020, I electronically filed this document with the

Clerk of the Court by using the CM/ECF system. Notification of this filing will be sent by e-mail

to all parties by operation of the Court's electronic filing system.

Dated this 23rd day of January, 2020

Respectfully Submitted,

**/s/ _Corey M. Shapiro_**
COREY M. SHAPIRO

_Counsel for Amici Curiae_