IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**Chelsey Nelson Photography LLC,**
and **Chelsey Nelson**,

             Plaintiffs,

      v.

**Louisville/Jefferson County Metro
Government**; **Louisville Metro
Human Relations Commission-
Enforcement; Louisville Metro
Human Relations Commission-
Advocacy; Kendall Boyd**, in his
official capacity as Executive Director of
the Louisville Metro Human Relations
Commission-Enforcement; and **Marie
Dever**, **Kevin Delahanty**, **Charles
Lanier**, **Sr.**, **Laila Ramey**, **William
Sutter**, **Ibrahim Syed**, and **Leonard
Thomas**, in their official capacities as
members of the Louisville Metro
Human Relations Commission-
Enforcement,

             Defendants.

**Case No. 3:19-cv-00851-JRW**


**Honorable Justin R. Walker**




**Plaintiffs' Response to Defendants'
Motion to Dismiss**

# TABLE OF CONTENTS

Index of Authorities ........................................................................................... iii

Introduction ....................................................................................................... 1

Argument ............................................................................................................ 3

I.    Chelsey has standing to challenge the Accommodations and
      Publication Provisions. ........................................................................... 4

      A.    Chelsey has standing to challenge the Accommodations and
            Publication Provisions because she faces a substantial risk and
            credible threat from both of them. ............................................. 5

      B.    Chelsey does not have to violate the Accommodations or
            Publication Provisions before challenging them. ................... 11

      C.    Chelsey has standing to challenge the Accommodations and
            Publication Provisions because they are intertwined. .......... 14

      D.    Louisville misreads *SBA List* and invokes inapplicable Sixth
            Circuit cases. ............................................................................. 16

II.   Chelsey has standing as an individual to recover her business losses. .......... 21

III.  Chelsey can obtain damages and attorneys' fees without violating state
      sovereign immunity. ............................................................................ 22

IV.   Chelsey can sue the Commissions for violating her rights. ........................... 23

Conclusion ....................................................................................................... 25

Certificate of Service ...................................................................................... 27

# Index of Authorities

## Cases

*ACLU of Illinois v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012) ............................................................ 12

*Arizona Right to Life Political Action Committee v. Bayless,*
    320 F.3d 1002 (9th Cir. 2003) .......................................................... 20

*Ark Encounter, LLC v. Parkinson,*
    152 F. Supp. 3d 880 (E.D. Ky. 2016) .............................................. 21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 3

*Babbitt v. United Farm Workers National Union,*
    442 U.S. 289 (1979) ................................................................... 11, 16

*Bigelow v. Virginia,*
    421 U.S. 809 (1975) ......................................................................... 15

*Bland v. Fessler,*
    88 F.3d 729 (9th Cir. 1996) ............................................................ 18

*Bowlby v. City of Aberdeen,*
    681 F.3d 215 (5th Cir. 2012) .......................................................... 19

*Brush & Nib Studio, LC v. City of Phoenix,*
    448 P.3d 890 (Ariz. 2019) ............................................. 2, 13, 15, 16

*Carey v. Piphus,*
    435 U.S. 247 (1978) ......................................................................... 23

*City of Revere v. Massachusetts General Hospital,*
    463 U.S. 239 (1983) ......................................................................... 14

*Clapper v. Amnesty International USA,*
    568 U.S. 398 (2013) ......................................................................... 12

*Commonwealth v. Kentucky Retirement Systems,*
    396 S.W.3d 833 (Ky. 2013) ............................................................ 23

*Cooksey v. Futrell,*
    721 F.3d 226 (4th Cir. 2013) ............................................................ 5

*Cutshall v. Sundquist,*
    193 F.3d 466 (6th Cir. 1999) ............................................................................ 13

*Doe v. Bolton,*
    410 U.S. 179 (1973) ................................................................................ 11, 13

*Epperson v. Arkansas,*
    393 U.S. 97 (1968) ......................................................................................... 16

*Estep v. City of Somerset,*
    Civ. A. No. 10-286-ART, 2010 WL 5391909 (E.D. Ky. Dec. 21, 2010) ............. 24

*Fletcher-Hope v. Louisville-Jefferson County Metro Government,*
    Civ. A. No. 3:18-cv-00469-RGJ, 2019 WL 498853
    (W.D. Ky. Feb. 8, 2019) .................................................................................. 22

*G & V Lounge, Inc. v. Michigan Liquor Control Commission,*
    23 F.3d 1071 (6th Cir. 1994) ............................................................................ 10

*Galaria v. Nationwide Mutual Insurance Co.,*
    663 F. App'x 384 (6th Cir. 2016) ...................................................................... 13

*Grace Community Church v. Lenox Township,*
    544 F.3d 609 (6th Cir. 2008) ...................................................................... 18, 19

*Green Party of Tennessee v. Hargett,*
    791 F.3d 684 (6th Cir. 2015) .............................................................................. 8

*Harrell v. Florida Bar,*
    608 F.3d 1241 (11th Cir. 2010) .......................................................................... 8

*Hedges v. Obama,*
    724 F.3d 170 (2d Cir. 2013) ........................................................................... 7, 8

*Hocker v. Pikeville City Police Department,*
    Civ. A. No. 7:11-122-EBA, 2013 WL 587897 (E.D. Ky. Feb. 13, 2013) ........... 24

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) .......................................................................................... 16

*Holtzman v. Schlesinger,*
    414 U.S. 1316 (1973) ...................................................................................... 14

*Hyman v. City of Louisville,*
    132 F. Supp. 2d 528 (W.D. Ky. 2001) .............................................................. 24

*Hyman v. City of Louisville,*
    53 F. App'x 740 (6th Cir. 2002)............................................................... 9, 19, 20

*Jefferson County Fiscal Court v. Peerce,*
    132 S.W.3d 824 (Ky. 2004)................................................................................ 22

*Kaplan v. California,*
    413 U.S. 115 (1973) ............................................................................................ 6

*Kentucky Employers' Mutual Insurance v. Ellington,*
    459 S.W.3d 876 (Ky. 2015)................................................................................ 22

*Kiser v. Reitz,*
    765 F.3d 601 (6th Cir. 2014) ............................................................................. 18

*Knick v. Township of Scott,*
    139 S. Ct. 2162 (2019) ...................................................................................... 19

*Lexington Fayette Urban County Human Rights Commission v.*
    *Hands on Originals, Inc.,*
    No. 2015-CA-000745-MR, 2017 WL 2211381 (Ky. Ct. App.
    May 12, 2017) .................................................................................................... 25

*Lexington-Fayette Urban County Human Rights Commission v.*
    *Hands on Originals,*
    ___ S.W.3d ___, 2019 WL 5677638 (Ky. Oct. 31, 2019)............................... 2, 20

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................ 4

*Lyons v. Stovall,*
    188 F.3d 327 (6th Cir. 1999) ............................................................................. 21

*Majors v. Abell,*
    317 F.3d 719 (7th Cir. 2003) ............................................................................. 11

*McGlone v. Bell,*
    681 F.3d 718 (6th Cir. 2012) ............................................................................. 11

*McKenzie v. Allconnect, Inc.,*
    369 F. Supp. 3d 810 (E.D. Ky. 2019) ................................................................ 10

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) .......................................................................................... 12

*Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.,*
    585 F.3d 917 (6th Cir. 2009) ............................................................................... 3

*Michigan State Chamber of Commerce v. Austin,*
    788 F.2d 1178 (6th Cir. 1986) ............................................................................. 8

*Miller v. City of Wickliffe,*
    852 F.3d 497 (6th Cir. 2017) ...................................................................... 18, 19

*Mobil Oil Corp. v. Attorney General of Virginia,*
    940 F.2d 73 (4th Cir. 1991) ................................................................................ 18

*Mt. Healthy City School District Board of Education v. Doyle,*
    429 U.S. 274 (1977) ............................................................................................ 22

*National Rifle Association of America v. Magaw,*
    132 F.3d 272 (6th Cir. 1997) ............................................................................. 10

*New Hampshire Right to Life Political Action Committee v. Gardner,*
    99 F.3d 8 (1st Cir. 1996) ................................................................................ 5, 8

*New York Republican State Committee v. SEC,*
    927 F.3d 499 (D.C. Cir. 2019) ........................................................................... 13

*Ohio Nat'l Life Ins. Co. v. United States,*
    922 F.2d 320 (6th Cir. 1990) ............................................................................... 3

*Peoples Rights Organization, Inc. v. City of Columbus,*
    152 F.3d 522 (6th Cir. 1998) ............................................................................... 8

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,*
    413 U.S. 376 (1973) ............................................................................................ 15

*Platt v. Board of Commissioners on Grievances & Discipline of Ohio*
    *Supreme Court,*
    769 F.3d 447 (6th Cir. 2014) ................................................................... 4, 5, 8, 9

*RK Ventures, Inc. v. City of Seattle,*
    307 F.3d 1045 (9th Cir. 2002) ........................................................................... 21

*Scherzinger v. Bolton,*
    Civ. A. No. 3:11-CV-11-H, 2013 WL 3166163 (W.D. Ky. June 20, 2013) ........ 22

*Sizova v. National Institute of Standards & Technology,*
    282 F.3d 1320 (10th Cir. 2002) ......................................................................... 21

*Steffel v. Thompson,*
    415 U.S. 452 (1974) .............................................................................................. 4

*Stilwell v. Office of Thrift Supervision,*
    569 F.3d 514 (D.C. Cir. 2009) .............................................................. 8

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) .............................................. 4, 5, 9, 12, 17, 18

*Tackett v. M & G Polymers, USA, LLC,*
    561 F.3d 478 (6th Cir. 2009) .............................................................. 3

*Telescope Media Group v. Lucero,*
    936 F.3d 740 (8th Cir. 2019) ....................................................... 2, 13, 15

*Terrace v. Thompson,*
    263 U.S. 197 (1923) ......................................................................... 18

*University of Kentucky v. Moore,*
    __ S.W.3d __, 2019 WL 5677931 (Ky. Oct. 31, 2019) ....................... 23

*Valle del Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013) ......................................................... 11

*Village of Euclid v. Ambler Realty Co.,*
    272 U.S. 365 (1926) ......................................................................... 18

*Virginia v. American Booksellers Association, Inc.,*
    484 U.S. 383 (1988) ........................................................................... 7

*Williamson County Regional Planning Commission v. Hamilton*
    *Bank of Johnson City,*
    473 U.S. 172 (1985) ......................................................................... 19

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) .............................................................. 3

*Wilson v. Stocker,*
    819 F.2d 943 (10th Cir. 1987) ......................................................... 23

*Winter v. Wolnitzek,*
    834 F.3d 681 (6th Cir. 2016) .............................................................. 4

*Woodhull Freedom Foundation v. United States,*
    __F.3d__, 2020 WL 398625 (D.C. Cir. Jan. 24, 2020) ....................... 17

## Rules, Statutes, Codes, and Ordinances

42 U.S.C. § 1988(b) ............................................................................. 23

Joint Local Rules of Civil Practice, Rule 7.1(f) ................................................................ 25

Joint Local Rules of Civil Practice, Rule 7.1(h) ............................................................... 21

K.R.S. § 65.200(3) ......................................................................................... 24, 25

K.R.S. § 344.230(3) ................................................................................................ 18

K.R.S. § 344.450 ..................................................................................................... 18

K.R.S. § 446.350 ..................................................................................................... 25

Louisville, Kentucky Metro Ordinance § 32.760(C) ...................................................... 24

Louisville, Kentucky Metro Ordinance § 32.761(B) ...................................................... 24

Louisville, Kentucky Metro Ordinance § 92.01 ............................................................... 6

Louisville, Kentucky Metro Ordinance § 92.02 ...................................................... 6, 7, 12

Louisville, Kentucky Metro Ordinance § 92.02(A) ......................................................... 17

Louisville, Kentucky Metro Ordinance § 92.05(A) .................................................... 6, 12

Louisville, Kentucky Metro Ordinance § 92.05(B) ........................................................... 6

Louisville, Kentucky Metro Ordinance § 92.08 ............................................................. 24

Louisville, Kentucky Metro Ordinance § 92.08(B) ........................................................ 18

Louisville, Kentucky Metro Ordinance § 92.09(A) .................................................... 9, 18

Louisville, Kentucky Metro Ordinance § 92.09(B) ........................................................... 9

Louisville, Kentucky Metro Ordinance § 92.09(D) ........................................................ 17

Louisville, Kentucky Metro Ordinance § 92.09(J) ......................................................... 24

Louisville, Kentucky Metro Ordinance § 92.09(K) ........................................................ 24

Louisville, Kentucky Metro Ordinance § 92.09(L) ........................................................ 24

Louisville, Kentucky Metro Ordinance § 92.09(M) ....................................................... 24

Louisville, Kentucky Metro Ordinance § 92.12 ............................................................. 24

Louisville, Kentucky Metro Ordinance § 92.13 ............................................................. 24

Louisville, Kentucky Metro Ordinance § 92.14 ........................................................... 24

## **Other Authorities**

*Christian bakers who refused to make wedding cake for lesbian couple forced to close after death threats*, Daily Mail, https://dailym.ai/3bnr7PD (last updated Sept. 3, 2013) .................................... 2

Ky. Op. Att'y Gen. 20-ORD-008 (2020), 2020 WL 416791 .................................. 17, 21

*Sole Proprietorship*, <u>Black's Law Dictionary</u> (8th ed. 2004) ...................................... 22

*Sweet Cakes by Melissa announces closure*, KGW8, https://bit.ly/2UHMANk (last updated Oct. 6, 2016)......................................... 2

## Introduction

Chelsey Nelson wants to live out her faith in what she creates, speaks about, and participates in through her photography, editing, and blogging.[1] To that end, Chelsey started her own photography studio to promote messages she believes in, and to avoid messages that contradict her beliefs—such as photographs or blogs demeaning others or celebrating same-sex marriage.

But Louisville's law makes it illegal for Chelsey to (1) promote only opposite-sex marriage through her photography, editing, and blogging; (2) post online statements honestly explaining what she can and cannot create; and (3) even hold policies memorializing her practice of only creating blogs and photographs consistent with her beliefs on marriage.[2] And if Chelsey fails to comply, she violates Louisville's law and exposes herself to damages, injunctions, administrative investigations, prosecutions, attorneys' fees, required notices, and other penalties.

Despite all this, Louisville challenges Chelsey's Article III standing because Louisville has not yet enforced its Accommodations or Publication Provisions against Chelsey. Louisville also denies Chelsey's ability to recover her business losses individually, to recover damages and attorneys' fees (invoking state sovereign immunity), and to sue the Commissions.

But Louisville is wrong. Chelsey can recover individually for the time she operated her business as a sole proprietorship, while her LLC can recover its own subsequent losses; state sovereign immunity does not bar relief for violating federal constitutional rights; and Chelsey can sue the Commissions because she has alleged their independent enforcement authority.

---

[1] "Chelsey" refers to Plaintiffs collectively.

[2] "Louisville" refers to Defendants collectively; "Metro Government" refers to the entity defendants; "Commissions" refers to the Louisville Metro Human Relations Commission-Enforcement and Commission-Advocacy; and "Commission members" refers to the individual defendants.

Louisville's Article III standing argument fares no better. Chelsey does not have to violate the law and suffer its penalties to challenge it. She only needs to prove a substantial *risk* of harm. And Chelsey has done so. Louisville *has conceded* that Chelsey violates the law if she acts the way she wants and has declared its "compelling" interest to prosecute her. Meanwhile, Louisville receives, investigates, and prosecutes hundreds of discrimination complaints each year. And Louisville's law allows anyone to file administrative complaints or lawsuits against Chelsey. In this, Louisville is no outlier. Across the country and even in Kentucky, governments have used laws like Louisville's to threaten speakers like Chelsey. *See Telescope Media Grp. v. Lucero* (*TMG*), 936 F.3d 740 (8th Cir. 2019); *Brush & Nib Studio, LC v. City of Phoenix* (*Brush & Nib*), 448 P.3d 890 (Ariz. 2019); *Lexington-Fayette Urban Cty. Human Rights Comm'n v. Hands On Originals*, __ S.W.3d __, 2019 WL 5677638 (Ky. Oct. 31, 2019). Those who have violated these laws suffered severely—facing prosecutions, receiving death threats, losing 40% of their business income, firing employees, and even shutting down. Pet. for Writ of Cert. at 5, 37, *Arlene's Flowers, Inc. v. Washington*, No. 19-333 (U.S. Sept. 11, 2019), 2019 WL 4413355, *5, *37; Br. for Pet'rs at 28, *Masterpiece Cakeshop, Ltd v. Colorado Civil Rights Comm'n*, No. 16-111 (U.S. Aug. 31, 2017), 2017 WL 3913762, *2.[3]

Considering this context, Chelsey would be foolish to speak her desired message and operate her business as her faith compels without first seeking clarity and protection from this Court. So she filed this lawsuit to get precisely that. Courts don't close their doors to these types of challenges. In fact, other courts have heard cases like this in the same pre-enforcement posture. *See TMG*, 936 F.3d at 749-50; *Brush & Nib*, 448 P.3d at 900-02. This Court should too.

---

[3] *Sweet Cakes by Melissa announces closure*, KGW8, https://bit.ly/2UHMANk (last updated Oct. 6, 2016); *Christian bakers who refused to make wedding cake for lesbian couple forced to close after death threats*, Daily Mail, https://dailym.ai/3bnr7PD (last updated Sept. 3, 2013).

## Argument

Louisville brings a Rule 12(b)(1) motion to dismiss for lack of standing and a Rule 12(b)(6) motion for failure to state a claim.

A Rule 12(b)(6) motion attacks the allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). A complaint overcomes this motion if it states a plausible claim for relief when a court views the complaint most favorably to the plaintiff and takes all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

A Rule 12(b)(1) motion, however, comes in "two varieties"—a facial or a factual attack. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack considers only the complaint and accepts its allegations as true. *Id*. A factual attack considers evidence from both parties. *Id*.

Louisville's standing motion mounts a factual attack since it cites evidence beyond the complaint. *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("MTD") 1-5, ECF No. 14-1. But Louisville's evidence does not contradict any fact in Chelsey's complaint. Because there is no dispute, the allegations in Chelsey's complaint may be taken as true. *See Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919 (6th Cir. 2009) (reviewing undisputed facts as a matter of law). For jurisdiction, Chelsey relies on her verified complaint, evidence submitted before this response, and evidence attached to her preliminary injunction reply. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (courts can rely on "the complaint supplemented by undisputed facts evidenced in the record" in a factual attack).

Chelsey satisfies these standards because she alleges ongoing harms and plausible claims. As for ongoing harms, Chelsey has standing because the Accommodations and Publication Provisions pose a substantial risk to her. As for plausible claims, Chelsey has individual standing to recover business losses she sustained while operating her company as a sole proprietorship. Chelsey may also

3

recover damages and attorneys' fees because Louisville is a municipal corporation and state-law sovereign immunity does not apply to federal claims. And finally, Chelsey can sue the Commissions because they are suable entities under federal and state law. So Louisville's motion to dismiss should be rejected entirely.

## I.   Chelsey has standing to challenge the Accommodations and Publication Provisions.

Louisville promises to punish Chelsey if she only celebrates and participates in opposite-sex weddings through her photography, photograph editing, and blogging. Louisville will also punish Chelsey if she posts her religious beliefs about marriage or her inability to photograph or edit photographs of same-sex weddings. Chelsey has reasonably chilled her speech to avoid this punishment. This grants her standing to challenge the Accommodations and Publication Provisions.

To bring suit, plaintiffs must have standing, and their claims must be ripe. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 157 n.5 (2014). For Article III standing, a plaintiff must show an injury-in-fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In pre-enforcement First Amendment cases, the line between "standing and ripeness … has evaporated." *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016).

Louisville only contests Chelsey's injury-in-fact for standing and ripeness. MTD 7-13. Both standing and ripeness in Chelsey's pre-enforcement challenge come to the same question: whether Chelsey has suffered an injury. *See Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) (pre-enforcement cases are ripe when there is an injury-in-fact).

For an injury-in fact, Chelsey need not "first expose [her]self to actual arrest or prosecution" to challenge laws deterring "the exercise of [her] constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). And particularly in cases like this—where Chelsey wants to "engag[e] in protected speech" that Louisville says

4

violates the law—"courts do not closely scrutinize the plaintiff's complaint for standing." *Platt*, 769 F.3d at 451 (citation omitted). This "leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact." *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013).

To prove injury-in-fact in a pre-enforcement suit, Chelsey need only prove a "substantial risk" of Louisville's law harming her. *SBA List*, 573 U.S. at 158 (internal quotation marks omitted). And Chelsey has done that because she intends "to engage in a course of conduct arguably affected with a constitutional interest," her conduct is arguably "proscribed by" Louisville's law, and there is a "credible threat" of being "prosecut[ed]." *SBA List*, 573 U.S. at 159 (citation omitted). So Chelsey meets this "quite forgiving" test. *N.H. Right to Life PAC v. Gardner* (*N.H. Right to Life*), 99 F.3d 8, 14 (1st Cir. 1996).

Chelsey meets this test because (A) she faces a substantial risk and credible threat from Louisville's law; (B) Chelsey does not need to violate the law before challenging it; and (C) the Accommodations and Publication Provisions are intertwined. In arguing otherwise, (D) Louisville misreads cases and cites inapplicable cases.

### A. Chelsey has standing to challenge the Accommodations and Publication Provisions because she faces a substantial risk and credible threat from both of them.

Chelsey faces a substantial risk from Louisville's law because if she exercises her constitutional freedoms by applying her editorial discretion as she wants and by posting her desired statements, (1) Chelsey arguably violates Louisville's law (as Louisville admits) and (2) Louisville is likely to enforce its law against her.

Chelsey wants to post statements explaining her religious beliefs that marriage is between one man and one woman and why she can only promote and celebrate opposite-sex engagements and weddings based on those beliefs. Verified

5

Complaint ("VC") ¶¶ 250-60, ECF No. 1; VC Exs. 1-2, ECF Nos. 1-2, 1-3. This is pure speech protected by the First Amendment. *See Kaplan v. California*, 413 U.S. 115, 119-20 (1973) ("[B]oth oral utterance and the printed word have First Amendment protection ….").

But Louisville's Publication Provision makes it unlawful to publish certain statements. Metro Ordinance § 92.05(B). As Louisville concedes in its preliminary injunction response, Louisville's Publication Provision bans Chelsey's desired statements: "[i]f Plaintiffs wish to publish their position on their business website that they will not photograph same-sex marriages then Plaintiffs *have violated* the Metro Ordinance, Sec. 92.05(B)," i.e., the Publication Provision. Defs.' Br. in Resp. to Prelim. Inj. ("Defs.' Resp.") 19, ECF No. 15-1 (emphasis added).

Next, Chelsey also wants to create photographs and write blogs celebrating opposite-sex engagements and weddings, and to participate in religious ceremonies consistent with her beliefs. VC ¶¶ 91-92, 191-92. These are protected by the First Amendment too. *See* Pls.' Br. for Prelim. Inj. 5-9, ECF No. 3-1.

But Louisville's Accommodations Provision prohibits Chelsey from exercising her editorial discretion and operating her business this way. Although Chelsey serves all people regardless of their status and merely declines to convey certain messages, Louisville interprets her practice as illegal discrimination under its Accommodations Provision. *See* Metro Ordinance § 92.05(A) ("unlawful practice" to "deny an individual the full and equal enjoyment of" services of public accommodation on the ground of sexual orientation).

Indeed, Louisville says its law's "purpose and effect … is to prohibit discrimination" and that Chelsey's very "business model is discriminatory." Defs.' Resp. 8. *See also* Metro Ordinance § 92.01 (declaring it Louisville's "policy" to "safeguard all individuals within Jefferson County from discrimination" and that "[c]ertain practices must be prohibited"); *id*. at § 92.02 (defining "discrimination" as

6

any "practice of exclusion, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation"). Again and again in its preliminary injunction response, Louisville declares that its law applies to Chelsey and forbids Chelsey's desired actions as illegal discrimination. Defs.' Resp. 8-11.

In other words, if Chelsey declines to create blogs or photographs celebrating same-sex weddings or even if she holds a "policy" intending to do so, she violates the Accommodations Provision. *Id.* at 10 (calling Chelsey's policy "discriminatory"; noting that "policy that treats individuals differently depending on their membership in a protected class is the clearest direct evidence of discrimination"); *id.* at 11 (noting Chelsey's policy "intentionally effects the complete exclusion of gay and lesbian couples who seek Plaintiffs' wedding-photography services"); *id.* (noting that "[o]n its face …[Chelsey's] policy discriminates based on sexual orientation").

To be sure, Louisville calls Chelsey's policy "hypothetical." *Id.* at 10. But that is incorrect. Chelsey states her policy in her operating agreement. Appendix ("App.") 3-4, ECF 3-4. Nor are Chelsey's desired statements or intent to post them hypothetical either. Chelsey attached these exact statements to her complaint and verified her desire to post them under oath. VC ¶ 259; VC Exs. 1-2. So Louisville has conceded that its law forbids what Chelsey wants to do and how she wants to operate her business.

And finally, Chelsey can prove a credible threat of enforcement. Six factors confirm this.

First, as explained above, Louisville agrees its law covers Chelsey's desired activities. Courts assume a credible threat in this situation. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); *Hedges v. Obama*, 724 F.3d 170, 200 (2d Cir. 2013) (noting that in credible threat analysis "we

7

have presumed that the government will enforce the law"); *N.H. Right to Life*, 99 F.3d at 15 (when "statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence").

Second, Louisville has declared its intent to enforce its law against Chelsey. Defs.' Resp. 8 (labeling Chelsey's business "discriminatory"). This alone justifies standing. *See Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998) (standing because the "City clearly states in its answer that it fully intends to prosecute anyone who violates the provisions of the ordinance"); *Mich. State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1184 (6th Cir. 1986) (similar).

Third, Louisville has not disavowed an intent to enforce the law against Chelsey. *See Green Party of Tenn. v. Hargett*, 791 F.3d 684, 696 (6th Cir. 2015) (finding standing because state did "not explicitly disavow[] enforcing [its law] in the future"); *Platt*, 769 F.3d at 452 (same).

Fourth, Louisville has defended its authority to enforce its laws against Chelsey and even declared a compelling interest in doing so. Defs.' Resp. 21-25; *Harrell v. Florida Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010) ("[I]f the enforcing authority is defending the challenged law or rule in court, an intent to enforce the rule may be inferred."); *Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009) (finding it "more than a little ironic that [government] would suggest Petitioners lack standing and then, later in the same brief, label [Petitioners] as a prime example of ... the very problem the Rule was intended to address") (cleaned up).

Fifth, Louisville has actively enforced its law against others. Between 2010 and 2017, Louisville received, investigated, and prosecuted at least ninety-three complaints against places of public accommodation. VC ¶ 304. So, when Louisville

8

says Chelsey "ha[s] not shown … that Metro has a history of prosecuting" its laws (MTD 11), Louisville just overlooks the facts and Chelsey's allegations.[4]

Sixth, Louisville makes it easy to initiate an enforcement action against Chelsey. Anyone, including Commission members, can file an administrative complaint against Chelsey. Metro Ordinance § 92.09(A)-(B). And anyone can file a lawsuit against Chelsey in state court too. *Id.* at § 92.09(A). As the Supreme Court and Sixth Circuit have recognized, this mechanism makes enforcement easier and the threat of harm more credible. *See SBA List*, 573 U.S. at 164 (standing where "any person" could file complaint); *Platt*, 769 F.3d at 452 (same).

These multiple enforcement mechanisms are not optional. As Executive Director Boyd explains about Louisville's administrative process, Louisville "*must* attempt to informally resolve or conciliate every complaint it receives," which includes investigating each complaint. Aff. of Kendall Boyd ("Aff.") 1, ECF No. 14-2 (emphasis added). Whenever an administrative complaint is filed, the respondent must answer the allegations in the complaint under oath. Metro Ordinance § 92.09(D). This would in turn require Chelsey "to hire legal counsel and respond to discovery requests," taking her valuable time away from running her business and creating positive expression. *SBA List*, 573 U.S. at 165-66 (noting burdens caused by administrative process).

Once the time-consuming and expensive administrative process ends, Chelsey faces stern penalties, such as being forced to create photographs celebrating messages she opposes, submitting compliance reports, and paying damages for "humiliation and embarrassment." VC ¶ 297.

---

[4] Louisville cites the 18-year anniversary of *Hyman v. City of Louisville*, 53 F. App'x 740 (6th Cir. 2002), to support its nonenforcement argument. MTD 11. But *Hyman* was the last time Louisville "addressed a constitutional challenge" to its law, not the last time Louisville enforced its law. *Id.*

Chelsey faces equal harms if someone sues her in state court. Chelsey would again have to defend herself and expend time and resources. And Chelsey could also face additional penalties that are not available through Louisville's administrative process, like more damages, costs, and attorneys' fees. *Id.* at ¶ 302.

Faced with this credible threat of enforcement and the severe harm from being investigated and prosecuted under Louisville's law, Chelsey reasonably chills her exercise of constitutional rights. She can't post her statements or exercise her artistic judgment to freely create consistent with her beliefs. That chills her speech and violates her rights. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994) ("It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.").

Chelsey already incurred costs to mitigate the harms caused by Louisville's law—not advertising as much, not promoting her business in social media and throughout her professional network, and not responding to professional opportunities in an online professional photography group. VC ¶¶ 236-38, 282. While Louisville claims these limitations "make[] no sense" (MTD 12 n.2), they make complete sense. Chelsey cannot reasonably go out and promote her business, promote her expressive works, or try to expand when her very business model violates the law and makes future violations more likely. *See McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 815 (E.D. Ky. 2019) (explaining that "reasonably incurred mitigation costs" can bolster standing). *See also Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 281 (6th Cir. 1997) (finding standing where law caused firearm dealers to "refrain from sales and marketing"). So no matter how Louisville cuts it, Louisville's law harms Chelsey in numerous ways that deter her from exercising her constitutional freedoms. That gives Chelsey standing.

10

**B.      Chelsey does not have to violate the Accommodations or Publication Provisions before challenging them.**

Turning a blind eye to its own concessions and the harms caused by its law, Louisville rejects Chelsey's standing because it had been "unaware" of her, "has not threatened, initiated, or resolved a civil action" against her, and has not yet "closed down [Chelsey's] business." MTD 5, 10. But none of that matters. Plaintiffs "have standing even if they have never been prosecuted or threatened with prosecution." *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012). *See also Doe v. Bolton*, 410 U.S. 179, 188 (1973) (physicians had standing even though none of them had "been prosecuted, or threatened with prosecution"); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 n.5 (9th Cir. 2013) (rejecting argument that plaintiff lacked standing "because she has not been prosecuted, or directly threatened with prosecution … we have never held that a specific threat is necessary to demonstrate standing").

This is especially true for First Amendment cases because the mere risk of prosecution forces speakers to "curtail" and "forgo full exercise" of their speech. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301 (1979). *See also Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) ("A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him ….").

Just as Chelsey need not violate the law or suffer prosecution to have standing, she does not need to receive a request "to photograph or edit a same-sex marriage" either. MTD 8. For one thing, Louisville's law makes it illegal for Chelsey to post her desired statements and outlaws Chelsey's very business model and her policies declining to create photographs and blogs celebrating same-sex weddings. *See supra* § I.A. None of this turns on Chelsey receiving an objectionable request. So even without any request, Chelsey faces an imminent threat that prevents her from doing what she wants to do and endangers what she is currently doing.

11

Next, Louisville's wait-and-see approach would force Chelsey to violate the law to challenge it, which could bar her from federal court under abstention doctrines. Under Louisville's law, Chelsey must provide "the full and equal enjoyment" of goods and services to those celebrating same-sex weddings. Metro Ordinance § 92.05(A). That means Chelsey must respond to requests seeking such services like she would respond to requests to celebrate opposite-sex weddings. Nor can Chelsey simply "not respond" to such requests. That constructive denial would violate Louisville's law too. *See id*. at § 92.02 (defining discrimination as including any "differentiation" in "treatment").

So, by forcing Chelsey to wait for a request for services celebrating same-sex weddings, Louisville would put Chelsey to an impossible and immediate choice: either (a) decline or not respond to that request and immediately violate the law or (b) shut down her business entirely. Article III does not require this impossible choice. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat ....").

Louisville's arguments simply ignore the proper standing test and make pre-enforcement suits impossible. But Chelsey does not have to receive an objectionable request, decline that request, violate the law in some other way, or suffer prosecution. She need only show a "substantial risk that the harm will occur," *SBA List*, 573 U.S. at 158 (cleaned-up), not a "literal[] certain[ty]" of future harm, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). *See also ACLU of Ill. v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) ("Preenforcement suits always involve a degree of uncertainty about future events.").

And Chelsey meets this test because Louisville's law targets her business, chills her speech right now by making it illegal for her to exercise her editorial

discretion or post her desired statements right now, and forbids her from exercising her editorial discretion in situations that have a substantial risk of occurring. *See Bolton*, 410 U.S. at 188 (physicians could challenge abortion restriction even though they could not violate law without request to perform abortion); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (standing because plaintiffs alleged substantial risk that personal data would be misused after data stolen even though data had not yet been misused); *Cutshall v. Sundquist*, 193 F.3d 466, 471-72 (6th Cir. 1999) (standing for sex offender to challenge state law allowing disclosure of personal information if requested by local officials even though offender did not identify any pending request for information). *Cf. N.Y. Republican State Comm. v. SEC*, 927 F.3d 499, 504-05 (D.C. Cir. 2019) (political party could challenge solicitation restriction on investment agents without identifying anyone who had donated through that agent because the "single inference" that someone would donate through agent was "eminently reasonable").

Courts find standing in cases just like this—where speakers brought pre-enforcement challenges to public accommodation laws for compelling them to create artwork celebrating same-sex weddings. For example, two Minnesota filmmakers had standing to challenge Minnesota's public accommodation law requiring them to produce videos celebrating same-sex weddings because Minnesota "made clear" that a "refus[al] to film same-sex weddings" would violate the law. *TMG*, 936 F.3d at 749-50. Likewise, a Phoenix art studio had standing to challenge a city's public accommodation law requiring the studio to create custom wedding invitations for same-sex weddings because the city claimed its law applied to the invitations. *Brush & Nib*, 448 P.3d at 901-02.

Standing in these cases did not turn on whether anyone had already enforced the law against a creative professional or even whether these professionals had received an objectionable request. Instead, these courts considered whether the

13

professionals faced a substantial risk from the challenged laws and particularly whether the government said it could enforce its laws against these artists.

This Court should not depart from this consensus. Chelsey is reasonably likely to suffer harm if she operates consistent with her policies and only creates photographs for and blogs about marriage between a man and a woman or if she posts her desired statements explaining her choice and her religious beliefs about marriage on her studio's website or social media site or directly to prospective clients. She does not have to risk violating the law, especially with Louisville's guarantee of prosecution.

### C.   Chelsey has standing to challenge the Accommodations and Publication Provisions because they are intertwined.

In addition to meeting the standing requirements to independently challenge the Publication and Accommodations Provisions, Chelsey can challenge the latter provision for another reason: Chelsey has standing to challenge the Publication Provision and it is intertwined with the Accommodations Provision.

When standing and the merits are intertwined, courts reach the merits. *See Holtzman v. Schlesinger*, 414 U.S. 1316, 1319 (1973) ("If applicants are correct on the merits they have standing," because "[t]he case in that posture is in the class of those where standing and the merits are inextricably intertwined."); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243 n.5 (1983) (addressing constitutional challenge because "we could not resolve the question … [of] standing without addressing the constitutional issue").

This principle applies here. Chelsey has standing to challenge Louisville's Publication Provision to ensure she can post her desired statements. *See supra* § I.A-B. But in deciding whether Chelsey can post her desired statements declining to create photographs and blogs celebrating same-sex weddings, this Court will need to determine whether Chelsey can constitutionally decline to create these

14

photographs and blogs. In other words, Chelsey's ability to post turns on the constitutionality of what she is posting about. If Chelsey's statements seek to do an illegal and constitutionally unprotected activity (declining to work with someone because of their protected status), Louisville can ban them. But if Chelsey's statements seek to do a constitutionally protected activity (declining to convey a message she disagrees with), Louisville cannot ban them. *Compare Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 387-89 (1973) (upholding restriction on advertisement seeking to engage in employment discrimination) *with Bigelow v. Virginia*, 421 U.S. 809, 822 (1975) (invalidating restriction on abortion advertisement because "the activity advertised pertained to constitutional interests").

In this sense, Chelsey's challenge to the Publication and Accommodations Provisions are intertwined, something even amici concede. Br. of Amici Curiae Am. Civil Liberties Union of Ky. & Am. Civil Liberties Union Supporting Defs. ("ACLU") 16, ECF No. 18-1 (arguing "just as there is no constitutional right to discriminate, there is no concomitant right to advertise an illegal policy of discrimination").

Two other courts recently affirmed this principle when they found standing for speakers to bring pre-enforcement challenges to public accommodation laws for compelling their speech and banning statements like Chelsey's. *TMG*, 936 F.3d 740 (wedding filmmakers); *Brush & Nib*, 448 P.3d 890 (wedding calligrapher and painter). As these cases explain, whether someone can publish statements declining to create speech turns on whether they can constitutionally decline that speech in the first place. So it makes sense for courts to decide these two intertwined questions together. *TMG*, 936 F.3d at 757 n.5 ("If creating videos were conduct that Minnesota could regulate, then the State could invoke the incidental-burden doctrine to forbid the Larsens from advertising their intent to engage in discriminatory conduct. But in this case, Minnesota cannot compel the Larsens to

15

speak, so it cannot force them to remain silent either.") (cleaned up); *Brush & Nib*, 448 P.3d at 926 (art studio could post statement because its "intended refusal to make custom wedding invitations celebrating a same-sex wedding is legal activity").

This logic applies here. While Louisville and amici claim that Chelsey's desired statements are "discriminatory" under the Publication Provision, that assumes Chelsey's decision to create only photographs and blogs about opposite-sex marriage is illegal discriminatory conduct under the Accommodations Provision. Defs.' Resp. 19; ACLU 16-17. But that puts the cart before the horse. This Court must first decide whether Chelsey's decision to not create is illegal discrimination or protected speech under Louisville's Accommodations Provision. So Chelsey's challenges to Louisville's two provisions are intertwined. Because Chelsey can challenge the Publication Provision, she necessarily has standing to challenge the Accommodations Provision too.

### D.   Louisville misreads *SBA List* and invokes inapplicable Sixth Circuit cases.

Louisville also tries to highlight differences between Chelsey's case and others in which courts found standing. But these factual differences do not undermine Chelsey's standing argument.

First, Louisville emphasizes that the commission in *SBA List* handled "about 20 to 80" complaints each year. MTD 11. But the Supreme Court did not make standing turn on the number of complaints filed. The Supreme Court has found standing when a law has rarely been enforced and never been enforced. *See Epperson v. Arkansas*, 393 U.S. 97, 98 (1968) (challenge to 40-year-old statute that had never been enforced); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (standing even though government had only prosecuted "several" others under law); *Babbitt*, 442 U.S. at 302 (standing to challenge provision that "has not yet been applied and may never be applied").

16

Louisville's argument also overlooks Chelsey's allegation that Louisville processed ninety-three complaints against public accommodations from 2010 to 2017. VC ¶ 304. This does not even include complaints Louisville investigated in other areas (like housing or employment) or complaints filed by individuals in state court. Taking these categories into account increases the total number of complaints more than twenty-fold. *See* Ky. Op. Att'y Gen. 20-ORD-008 (2020), 2020 WL 416791, *2 (noting Louisville claims to have processed "2,153 discrimination" cases since 1999).

Next, Louisville distinguishes its system from that in *SBA List* because it supposedly has a "process for weeding out frivolous complaints." MTD 11. *See also id*. at 11-12 (arguing that "every complaint does not lead to prosecution" and that "frivolous allegations do not result in prosecution."). But that misstates the harm. Louisville may vet administrative complaints before issuing a penalty, but anyone can file an administrative complaint. And Louisville must "resolve or conciliate, *every complaint it receives*" and every complaint compels the respondent to defend themselves by answering the allegations under oath. Aff. 1; Metro Ordinance § 92.09(D). This burden and harm occurs well before Louisville issues its final penalties and without Louisville engaging in much if any vetting process.

What's more, Louisville does not vet any complaint filed in state court. Metro Ordinance § 92.02(A). So in multiple venues, anyone can file a complaint unconstrained by "explicit guidelines or ethical obligations" and expect the complaint to be thoroughly investigated, which reasonably causes Chelsey to limit her speech. *SBA List*, 573 U.S. at 164. *See also Woodhull Freedom Found. v. United States*, __F.3d__, 2020 WL 398625, at *6 (D.C. Cir. Jan. 24, 2020) (private right of action bolstered standing under *SBA List*); VC ¶¶ 282-83.

Louisville also distinguishes its system for not imposing criminal penalties, unlike that in *SBA List*. But *SBA List* itself noted that civil penalties—a

17

commission's investigation and enforcement proceedings—are enough for standing. 573 U.S. at 165-66. *See also Terrace v. Thompson*, 263 U.S. 197, 214 (1923) (standing when government "threatens and is about to commence proceedings, either civil or criminal, to enforce such a law against parties affected"); *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386 (1926) (standing to bring pre-enforcement challenge against law that imposed only civil penalties).

The Sixth Circuit agrees. The "threat" sufficient for standing "need not stem from a criminal action." *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) (standing based on potential administrative procedure). So do other courts. *See Bland v. Fessler*, 88 F.3d 729, 736 n.11 (9th Cir. 1996) (standing even though plaintiffs "do not face criminal penalties").

This conclusion applies with particular force here because Louisville's law imposes severe civil penalties, including an injunction forcing Chelsey to create photographs and blogs violating her beliefs, uncapped damages "for humiliation and embarrassment," and "other costs actually incurred by the complainant as a direct result of the unlawful practice." Metro Ordinance § 92.08(B)(8)(a) (incorporating remedies of K.R.S. 344.230(3)(h)). While Louisville says its "civil fines are capped," nothing in the law imposes a limit. MTD 12. Meanwhile, anyone can still sue Chelsey in state court and recover injunctions, damages, costs, and attorneys' fees. Metro Ordinance § 92.09(A) (incorporating remedies of K.R.S. 344.450).

All this easily clears the bar to deter Chelsey's rights and provide her standing to challenge Louisville's law. *Mobil Oil Corp. v. Att'y Gen. of Va.*, 940 F.2d 73, 75 (4th Cir. 1991) (standing to challenge law that created a "stiff civil remedy": $2,500 in liquidated damages, actual damages, and attorneys' fees).

Louisville finds no help in the Sixth Circuit either. First, Louisville cites *Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017) and *Grace Community Church v. Lenox Township*, 544 F.3d 609 (6th Cir. 2008) to say Chelsey must ask

18

Louisville for an exemption before challenging its law. MTD 8-11. But *Grace Community* involved a land-use permit that did not burden any First Amendment freedoms and that denied standing based on a now-overturned "finality requirement." *See* 544 F.3d at 617-18 (relying on *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), *overruled by Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2169-70 (2019)). *See also Bowlby v. City of Aberdeen*, 681 F.3d 215, 223 (5th Cir. 2012) (declining to apply *Williamson* finality rules outside takings and land-use context).

*Wickliffe* meanwhile involved a challenge to a permitting system where someone could have, but did not, apply to operate a nightclub and the government never indicated its intent to deny that application. 852 F.3d at 502-07. Here, in contrast, Chelsey is not challenging a permitting scheme, Louisville's law has no process for seeking an exemption, and any exemption request would be futile anyway because Louisville admits its law forbids what Chelsey wants to do.

Faced with these facts, *Wickliffe* conceded there would be standing. *Id*. at 504-05 (agreeing with another Sixth Circuit case that found standing to challenge liquor license requirement because "city made clear" that plaintiff's desired action "would result in the revocation of its licenses"). Contrary to Louisville's assumptions, Chelsey need not ask for permission before exercising her First Amendment freedoms.

Second, Louisville cites *Hyman v. City of Louisville*, 53 F. App'x 740 (6th Cir. 2002), which rejected a physician's standing to challenge part of Louisville's law requiring employers to hire regardless of sexual orientation. MTD 10-11. But that physician did not control who his practice would hire, did not have "an immediate or projected need to hire a new employee," a homosexual applicant had never applied to work for the doctor "during his thirty-two years of practice," and the doctor "did

not have any real expectation that he would have any homosexual applicants for employment in the future." *Hyman*, 53 F. App'x at 744.

In contrast, Chelsey alleges ongoing speech and chilling injuries not triggered by laws regulating employment conduct. *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." (citation omitted)).

Chelsey also began operating her business recently, in 2016, not 32 years ago. VC ¶ 41. And Chelsey wants to post statements, exercise editorial control over her speech, promote her business through advertising, and maintain policies about her expressive choices that Louisville's law currently forbids; Chelsey alone determines how she exercises these expressive choices; and Chelsey regularly creates blogs and photographs about weddings. *See supra* § I.A.

All these factors establish Chelsey's standing and make this case much more like *Telescope Media* and *Brush & Nib* than *Hyman*.

And though Chelsey does not need it for standing, she also faces a greater risk of receiving objectionable requests than the doctor in *Hyman*. This risk has even increased after Chelsey's position became "well known." MTD 11. For example, a Kentucky LGBT group asked an outspoken Christian promotional printing company to print a shirt promoting the group's pride festival. *See Hands On Originals*, 2019 WL 5677638, at *1. And since the Supreme Court's decision in 2018, the Colorado Civil Rights Commission and a private individual have repeatedly accused Masterpiece Cakeshop of violating Colorado's anti-discrimination law. Complaint, *Scardina v. Masterpiece Cakeshop Inc.*, Case No. 2019CV32214 (Colo. Dist. Ct. June 5, 2019) (individual complaint); Notice of H'rg & Formal Complaint, *Scardina v. Masterpiece Cakeshop Inc.*, Charge No. CP2018011310 (Colo. Civil

Rights Div. Oct. 9, 2018) (Commission complaint).[5] This targeting, then, underscores the substantial risk commissioned speakers face in the current marketplace. Chelsey should not have to face these risks, violate Louisville's law, and risk suffering its penalties before challenging it in court.[6]

## II.   Chelsey has standing as an individual to recover her business losses.

Besides Article III standing, Chelsey also has individual standing. While Louisville denies Chelsey's ability to individually obtain lost business income (MTD 13-14), Chelsey and her business still have standing to vindicate their constitutional rights. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 & n.7 (9th Cir. 2002) (shareholders and corporation asserted constitutional and common law violations); *Ark Encounter, LLC v. Parkinson*, 152 F. Supp. 3d 880, 888 n.2 (E.D. Ky. 2016) (LLC and its sole member asserted constitutional violations). So neither party should be dismissed from this case.

Nor does Louisville question whether Chelsey's business can obtain lost income. Rather, the sole question is whether Chelsey can individually do so. While Louisville says no, it overlooks that Chelsey operated her business as a sole proprietorship from 2016 until October 2019 when she formed an LLC. VC ¶¶ 47-48. Because a sole proprietorship, unlike an LLC, "is not an entity separate from the proprietor," Chelsey can individually recover damages for losses she sustained

---

[5] Copies of these complaints are attached as Exhibit A. Joint Local Rules of Civil Practice, Rule 7.1(h). They are judicially noticeable. *See Lyons v. Stovall*, 188 F.3d 327, 332 (6th Cir. 1999) (courts may take judicial notice of state court pleadings).
[6] The above justifies Chelsey's standing. Even so, Louisville's motion should still be denied so that Chelsey can conduct discovery about jurisdictional facts, such as Louisville's past enforcement of its law. *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant…."). Louisville's law harms Chelsey and Louisville recently indicated it enforces its law more actively than Chelsey now knows. *See* Ky. Op. Att'y Gen. 20-ORD-008 (2020), 2020 WL 416791, *2 (reviewing "2,153 discrimination" complaints since 1999).

before forming the LLC. *Ky. Emp'rs' Mut. Ins. v. Ellington*, 459 S.W.3d 876, 882 (Ky. 2015). *See also Sole Proprietorship*, <u>Black's Law Dictionary</u> 1427 (8th ed. 2004) (defining sole proprietorship as where "one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity").

### III.   Chelsey can obtain damages and attorneys' fees without violating state sovereign immunity.

Chelsey can also obtain compensatory and nominal damages and attorneys' fees against all defendants for violating her First and Fourteenth Amendment rights under 42 U.S.C. § 1983.

Louisville's contrary argument simply confuses Kentucky state sovereign immunity with Eleventh Amendment sovereign immunity. MTD 14-16 (citing only state cases barring state claims). Although Eleventh Amendment sovereign immunity sometimes bars federal claims, that immunity does not apply to municipalities like Louisville or to municipal officials sued in their official capacities. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Scherzinger v. Bolton*, Civ. A. No. 3:11-CV-11-H, 2013 WL 3166163, at *12-13 (W.D. Ky. June 20, 2013) (Louisville and its officials liable under 42 U.S.C. § 1983).

Likewise, Kentucky state sovereign immunity may sometimes bar state-law claims. But it cannot bar any of Chelsey's federal claims because of the Supremacy Clause. *Fletcher-Hope v. Louisville-Jefferson Cty. Metro Gov't*, Civ. A. No. 3:18-cv-00469-RGJ, 2019 WL 498853, at *4 (W.D. Ky. Feb. 8, 2019) (explaining difference between Eleventh Amendment and state sovereign immunity); *Jefferson Cty. Fiscal Ct. v. Peerce*, 132 S.W.3d 824, 836 (Ky. 2004) ("[S]tate treatment of sovereign immunity is not relevant to … whether a party is immune from § 1983 liability because only federal jurisprudence is controlling on this issue.").

Because Chelsey can sue Louisville for violating federal constitutional rights under 42 U.S.C. § 1983, Chelsey may also recover damages and fees from it. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 256-57, 266-67 (1978) (damages); 42 U.S.C. § 1988(b) (fees).

Nor can Louisville avoid this conclusion because the named officials "did not enact" Louisville's law. MTD 16. That's irrelevant. They still administer and enforce the law, perform investigations, and can even initiate complaints. VC ¶¶ 14, 17, 276-86. That is enough. *See supra* § I.A-C (establishing Chelsey's injuries caused by the Officials). *Cf. Wilson v. Stocker*, 819 F.2d 943, 947 (10th Cir. 1987) ("[A] controversy exists not because the state official is … a source of injury, but because the official represents the state whose statute is being challenged as the source of injury."). So Chelsey's federal claims correctly ask for compensatory and nominal damages and attorneys' fees against all defendants.

That only leaves Chelsey's Kentucky Religious Freedom Restoration Act ("KRFRA") claim. And Chelsey does not seek damages or fees for any KRFRA violation, only declaratory and injunctive relief as Kentucky law allows. *See Univ. of Ky. v. Moore*, __ S.W.3d __, 2019 WL 5677931, at *10 (Ky. Oct. 31, 2019) (recognizing "the declaratory and injunctive relief exceptions to [state-law] sovereign immunity"); *Commonwealth v. Ky. Ret. Sys.*, 396 S.W.3d 833, 840 (Ky. 2013) ("There simply can be no sovereign immunity when it is the propriety of the governmental act that is being reviewed….").

## IV.   Chelsey can sue the Commissions for violating her rights.

Finally, Chelsey can bring her constitutional and statutory claims against the Commissions because they are suable entities under federal and state law.

While Louisville says the Commissions cannot be sued because they lack "independent authority" and "are not separate legal entities" (MTD 17), Kentucky

law disagrees. Kentucky law authorizes suits against "agencies" of cities. K.R.S. § 65.200(3). And the Commissions are suable as "administrative agenc[ies]" within Louisville, according to the undisputed facts in the complaint. VC ¶¶ 11-12. *See Hyman v. City of Louisville*, 132 F. Supp. 2d 528, 531 n.4 (W.D. Ky. 2001) (listing the Commissions as a defendant).

In addition to those allegations, courts generally evaluate how much control counties or cities exercise over an agency to determine if the agency has independent authority. *See Hocker v. Pikeville City Police Dept.*, Civ. A. No. 7:11-122-EBA, 2013 WL 587897, at*4 (E.D. Ky. Feb. 13, 2013). And here, the Commissions exercise their own independent authority: they adopt regulations, policies and procedures, have "full operating" power to enforce the law, can eliminate "discriminatory practices," refer complaints for investigation, conciliate disputes, determine whether someone has violated the law and assess severe penalties, file suit in circuit court to enforce orders, and possess other significant authority. *See* Metro Ordinance §§ 32.760(C), 32.761(B), 92.08, 92.09(J)-(M), 92.12-14; VC ¶¶ 276-300; Aff. 2 (Commissions "monitor[]" and "enforce" the law).

In light of these allegations, the Commissions are proper defendants at this early stage. *See Estep v. City of Somerset*, Civ. A. No. 10-286-ART, 2010 WL 5391909, at *8 (E.D. Ky. Dec. 21, 2010) (Thapar, J.,) (denying motion to dismiss police department when it failed to show it was "not an independent entity").

Louisville's cited cases do not say otherwise. They discussed entities different from Louisville's Commissions—like police and correction departments. MTD 17-18. Whether other city departments lack independent authority does not prove Louisville's Commissions lack this authority too.

Louisville also does not argue that Chelsey's KRFRA claim should be dismissed against the Commissions. *See* MTD 16-18. And for good reason. The KRFRA prevents the "[g]overnment" from "substantially burden[ing] a person's

24

freedom of religion." K.R.S. § 446.350. The Commissions are the "government," able to be sued under the KRFRA. *Cf.* K.R.S. § 65.200(3) (defining local government). As just noted, the Commissions have significant enforcement, investigative, and policy-making authority. Because the Commissions are the government, they cannot burden Chelsey's exercise of religion as they do here. *Cf. Lexington Fayette Urban Cty. Human Rights Comm'n v. Hands on Originals, Inc.*, No. 2015-CA-000745-MR, 2017 WL 2211381, at *8 (Ky. Ct. App. May 12, 2017) (Lambert, J., concurring) (applying KRFRA against a local commission). And Chelsey can name them as defendants.

## Conclusion

All Chelsey wants is to exercise her constitutional freedoms and operate her business consistent with her faith. But if Chelsey does so, she violates Louisville's law and faces stiff penalties from injunctions to damages to attorneys' fees. Chelsey cannot possibly exercise her freedoms or live out her faith with such severe penalties hanging over her head, particularly while others in Kentucky and across the country are being sued for exercising similar freedoms. Other courts have already found standing for speakers to bring lawsuits exactly like Chelsey's. This Court should do the same. Chelsey therefore respectfully requests that this Court deny Louisville's motion to dismiss and give her the opportunity to protect her constitutional rights.

Chelsey requests oral argument to be heard at a time and date set by the Court. Joint Local Rules of Civil Practice, Rule 7.1(f).

Respectfully submitted this 13th day of February, 2020.

By:  s/ Bryan Neihart

Jonathan A. Scruggs
AZ Bar No. 030505*
Katherine L. Anderson
AZ Bar No. 033104*
Bryan Neihart
CO Bar No. 47800*
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ  85260
Telephone: (480) 444-0020
jscruggs@ADFlegal.org
kanderson@ADFlegal.org
bneihart@ADFlegal.org

Joshua D. Hershberger
KY Bar No. 94421
**Hershberger Law Office**
P.O. Box 233
Hanover, IN 47243
Telephone: (812) 274-0441
josh@hlo.legal

David A. Cortman
GA Bar No. 188810*
**Alliance Defending Freedom**
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

ATTORNEYS FOR PLAINTIFFS

\* Admitted *Pro Hac Vice*

26

## <u>Certificate of Service</u>

I hereby certify that on February 13, 2020, I electronically filed the foregoing document with the Clerk of Court via the CM/ECF system and that the foregoing document will be served via the CM/ECF system on all counsel of record.

By: <u>s/ Bryan Neihart</u>

Bryan Neihart
CO Bar No. 47800*
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ  85260
Telephone: (480) 444-0020
bneihart@ADFlegal.org

ATTORNEY FOR PLAINTIFFS

* Admitted *Pro Hac Vice*

27