UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

CHELSEY NELSON PHOTOGRAPHY LLC,
ET AL.,                                                                         PLAINTIFFS


v.                                                            CIVIL ACTION NO. 3:19-CV-851-JRW


LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, ET AL.                                         DEFENDANTS

## ORDER

1.      The Court **GRANTS in part** and **DENIES in part** Louisville's motion to dismiss

(DN 14).[1]

2.      The Court **DISMISSES** without prejudice the damages claims filed by Chelsey

Nelson Photography, LLC and Chelsey Nelson (together, "Nelson").

3.      The Court **GRANTS in part and DENIES in part** Nelson's preliminary

injunction motion (DN 3).

---

[1] The Defendants are: Louisville/Jefferson County Metro Government; Louisville Metro Human Relations Commission – Enforcement; Louisville Metro Human Relations Commission – Advocacy; Kendall Boyd; Marie Dever; Kevin Delahanty; Charles Lanier, Sr.; Laila Ramey; William Sutter; Ibrahim Syed; and Leonard Thomas, all in their official capacities (together, "Louisville").

## PRELIMINARY INJUNCTION

The Court **PRELIMINARILY ENJOINS**[2] Louisville/Jefferson County Metro Government; Louisville Metro Human Relations Commission – Enforcement; Kendall Boyd; Marie Dever; Kevin Delahanty; Charles Lanier, Sr.; Laila Ramey; William Sutter; Ibrahim Syed; and Leonard Thomas (in their official capacities) from taking the following actions against Nelson:

1.      Invoking Metro Ordinance § 92.05(A) to compel Nelson to provide her wedding photography services to express messages inconsistent with Nelson's beliefs in marriage between one man and one woman, such as providing these services for same-sex wedding ceremonies; and

2.      Invoking Metro Ordinance § 92.05(B) to prohibit Nelson from posting her desired statements (DN 1-2; DN 1-3) on her website and from making materially similar statements on her studio's website, on her studio's social media sites, or directly to prospective clients.

Nelson is substantially likely to succeed on her Free Speech claim.  She doesn't need to post a bond.[3]

---

[2] Generally, a court's injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).
[3] *See* Fed. R. Civ. P. 65(c); *see Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).

## **MEMORANDUM OPINION**

A generation ago, ten Louisvillians founded the Fairness Campaign.[4]   At the time, discrimination against gay and lesbian people was legal in every Kentucky city.[5]   But with "extraordinary vision, tenacity, and grit — battling often steep odds in the legislative and judicial arenas, not to mention in their daily lives,"[6] the Fairness Campaign and its allies changed that.

In 1999, Louisville passed the Fairness Ordinance, which prohibits discrimination based on sexual orientation and gender identity in housing, public accommodations, and employment.[7] The Fairness Ordinance requires that companies serve gay and lesbian customers and refrain from advertising that they won't serve them.[8]   In the two decades since then, 19 Kentucky communities have passed similar laws.[9]

Chelsey Nelson is a wedding photographer.   Like many Americans, she believes that marriage is between one man and one woman.   She says the Fairness Ordinance infringes on her free speech and religious liberty rights because it requires her to photograph same-sex weddings just as she photographs opposite-sex weddings.

To cut to the chase, Nelson is likely to win by applying binding precedents and straightforward principles:

---

[4] *About Us,* FAIRNESS CAMPAIGN, https://www.fairness.org/about-us/.

[5] *Id.*

[6] *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1837 (2020) (Kavanaugh, J., dissenting); *see also* Joseph Lord, *Kentucky Fairness Campaign Director Chris Hartman's Car Damaged, Defaced With Swastika,* WFPL, https://wfpl.org/kentucky-fairness-campaign-director-chris-hartmans-car-damaged-defaced-swastika/ (Mar. 24, 2013).

[7] Metro Ordinance §§ 92.03, 92.05, & 92.06.

[8] *Id*. at § 92.05(A) & (B).

[9] *About Us,* FAIRNESS CAMPAIGN.

- Her photography is art.[10]

- Art is speech.[11]

- The government can't compel speech when it violates the speaker's religious or political principles.[12]

True, photography is wordless.  But so too is refusing to salute the flag.[13]  Or marching in a parade.[14]  And in the context of a public-accommodations law, when the law has "the effect of declaring [someone's] speech itself to be the public accommodation," the First Amendment applies.[15]  A unanimous Supreme Court made that clear twenty-five years ago in *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston* when it said the state can't require a private organization to include a gay-rights group in its St. Patrick's Day parade.[16]

The scope of *Hurley* aside, this case requires us to confront a larger question at the heart of our nation's promise: Is America wide enough both for you and "a man whose words make your blood boil, who's standing center stage and advocating at the top of his lungs that which you would spend a lifetime opposing at the top of yours"?[17]

Just as gay and lesbian Americans "cannot be treated as social outcasts or as inferior in dignity and worth,"[18] neither can Americans "with a deep faith that requires them to do things passing legislative majorities might find unseemly or uncouth."[19]  "They are members of the

---

[10] *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 924 (6th. Cir. 2003).

[11] *Id.*

[12] *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943).

[13] *Id.*

[14] *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995).

[15] *Id.* at 573.

[16] *Id.*

[17] *The American President* (Columbia Pictures 1995).

[18] *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S.Ct. 1719, 1727 (2018); *Bostock*, 140 S.Ct. at 1823 (Kavanaugh, J., dissenting).

[19] *Espinoza v. Montana Department of Revenue*, 140 S.Ct. 2246, 2277 (2020) (Gorsuch, J. concurring).

community too."[20]  And under our Constitution, the government can't force them to march for,[21] or salute in favor of,[22] or create an artistic expression that celebrates,[23] a marriage that their conscience doesn't condone.

America is wide enough for those who applaud same-sex marriage and those who refuse to.  The Constitution does not require a choice between gay rights and freedom of speech.  It demands both.

I.

Nelson is a photographer, editor, and blogger.[24]  She takes engagement and wedding photos with artistic skill.[25]  She professionally edits the photos she takes as well as those of other photographers.[26]  She also blogs about weddings.[27]  For each of these services, her expressive goal is "telling positive stories about weddings because weddings are such significant and joyous events and because she believes marriage is a gift from God that should be treasured and celebrated."[28]

Nelson is also a Christian.  Her faith shapes everything she does, including how she operates her photography studio.[29]  She believes that marriage is between one man and one woman.[30]  For that reason, she would decline to photograph a same-sex wedding, and she would

---

[20] *Id.* at 2262 (majority op.) (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2022 (2017)) (cleaned up).

[21] *Hurley*, 515 U.S. at 573.

[22] *Barnette*, 319 U.S. at 632 ("There is no doubt that, in connection with the pledges, the flag salute is a form of utterance.").

[23] *Cf. Masterpiece Cakeshop*, 138 S.Ct. at 1743 (Thomas, J., concurring in part and concurring in the judgment); *but see Washington v. Arlene's Flowers, Inc.,* 441 P.3d 1203, 1226 (Wash. 2019) ("The decision to either provide or refuse to provide flowers for a wedding does not inherently express a message about that wedding."), *petition for cert. filed*, (Sept. 11, 2019) (No. 19-333).

[24] DN 1 ¶ 26.

[25] DN 1 ¶ 61.

[26] *Id.* ¶¶ 62, 167.

[27] *Id.* ¶ 64.

[28] *Id.* ¶ 38.

[29] *See id.* ¶¶ 20-25; *id.* ¶ 75, 77.

[30] *Id.* ¶ 190.

5

decline to edit photos from a same-sex wedding.[31]  She wants to explain these views on her website so she can be up front with potential customers about what she believes and what she will and won't do.[32]

Nelson fears that if she declines to photograph a same-sex wedding or declines to edit photos from a same-sex wedding, she will violate the Fairness Ordinance.[33]  She also fears that she will violate it if she explains her policy on her website.[34]  She asks this Court to block Louisville from enforcing the Fairness Ordinance against her.[35]

## II.

The Constitution limits the Court's jurisdiction to only "Cases" and "Controversies."[36]  So before it can decide anything in a case, the Court must determine if the question before it presents an actual case with an actual controversy.[37]

## A.

One could imagine a court system that prevented a party from challenging a law unless the law had already been enforced against that party.  If no enforcement, then no injury, so no case or controversy.  But that is not our system.  Nelson has standing to bring pre-enforcement challenges to the Fairness Ordinance's Accommodations Provision[38] and Publication Provision[39] — and those challenges are ripe[40] — if she alleges for each that (1) she intends to act in a way that implicates

---

[31] *Id.* ¶ 191.

[32] *See id.* ¶¶ 80, 252.

[33] *Id.* ¶¶ 221-225.

[34] *Id.* ¶ 226, 252; *see also* DNs 1-2 & 1-3.

[35] DN 1 ¶ 325.

[36] U.S. CONST. Art. III, § 2; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).

[37] *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived").

[38] Metro Ordinance § 92.05(A); *see* DN 15-3 at #803.

[39] Metro Ordinance § 92.05(B); *see* DN 15-3 at #803.

[40] *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016) ("The line between Article III standing and ripeness in preenforcement First Amendment challenges has evaporated.") (citing *Susan B. Anthony List*, 573 U.S. at 167-68).

constitutional rights; (2) the provision prohibits what she intends to do; and (3) her intended actions raise "a credible threat of prosecution" under the Fairness Ordinance.[41]

Nelson easily clears the first two hurdles for both provisions.  She wants to photograph and edit photographs of only opposite-sex weddings.[42]  She also wants to post messages on her website explaining her religious objections to photographing same-sex weddings and editing photographs of same-sex weddings.[43]  The First Amendment's scope includes blog posts.[44]  And as explained later, it also covers the photographs themselves.[45]

Next, what Nelson intends to do violates the Fairness Ordinance.[46]  Specifically, refusing to photograph same-sex weddings violates the Fairness Ordinance, which prohibits Nelson from denying the "full and equal enjoyment" of her photography service to same-sex couples "on the ground of . . . sexual orientation."[47]  So too, does refusing to edit photographs of same-sex

---

[41] *Susan B. Anthony List*, 573 U.S. at 159 (citing *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979)).

[42] DN 1 ¶ 191.

[43] DNs 1-2 & 1-3.

[44] *See Citizens United v. Federal Election Commission*, 558 U.S. 310, 364 (2010) (Kennedy, J.) ("Yet, § 441b would seem to ban a blog post expressly advocating the election or defeat of a candidate if that blog were created with corporate funds.  The First Amendment does not permit Congress to make these categorical distinctions based on the identity of the speaker and the content of the political speech.") (cleaned up); *cf. Kaplan v. California*, 413 U.S. 115, 119-20 (1973) ("As with pictures, films, paintings, drawings, and engravings, both oral utterance and the printed word have First Amendment protection").

[45] *See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569 (1995) ("the Constitution looks beyond written or spoken words as mediums of expression"); *ETW Corp. v. Jireh Publishing*, 332 F.3d 915, 924 (6th. Cir. 2003) ("The protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures.") (citing *Hurley*, 515 U.S. at 569); *see also United States v. Stevens*, 559 U.S. 460, 468 (2010) (finding a "statute [which] restricts visual and auditory depictions, such as photographs, videos, or sound recordings" unconstitutionally overbroad) (cleaned up); *Regan v. Time, Inc.*, 468 U.S. 641, 648 (1984) (White, J., plurality op.) ("A determination concerning the newsworthiness or educational value of a photograph cannot help but be based on the content of the photograph and the message it delivers.").

[46] *See, e.g.*, DN 15-1 at #773 ("An Expressed Policy To Refuse Service To Same-Sex Couples Would Amount to Discrimination").

[47] Metro Ordinance § 92.05(A); *see* DN 15-3 at #803.

weddings.[48]  Nelson's proposed blog posts also violate the Fairness Ordinance, which prohibits

her from advertising that she will refuse to photograph same-sex weddings or edit photographs of

same-sex weddings.[49]

The third hurdle is taller, but Nelson clears it too.  A "credible threat of prosecution"

requires an allegation of subjective chill, which Nelson has undeniably alleged,[50] and "some

combination of the following factors: (1) a history of past enforcement against the plaintiffs or

others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct;

and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such

as a provision allowing any member of the public to initiate an enforcement action."[51]  An

additional factor is (4) "a defendant's refusal to disavow enforcement of the challenged statute

against a particular plaintiff."[52]

The second factor cuts in Louisville's favor.  No same-sex couple has asked Nelson to

photograph their wedding.[53]  Likely because of that, Louisville hasn't acted against Nelson.[54]  In

fact, it says that until she filed this lawsuit, it had never even heard of her.[55]

But the other three factors cut decisively in Nelson's favor.  There is "a history of past

enforcement": Between 2010 and 2017, Louisville investigated 93 businesses for alleged

---

[48] *Id*.

[49] *Id*. § 92.05(B); *see* DN 15-3 at #803; Oral Argument, August 7, 2020 (conceding that Nelson has a stronger standing argument in challenging the Denial Clause).

[50] *See, e.g.*, DN 1 ¶ 259 ("If not for Louisville's Denial Clause and Unwelcome Clause, Chelsey would immediately post the statements in Exhibits 1 and 2 or materially similar statements on her studio's website.").

[51] *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016) (cleaned up).

[52] *Id*.

[53] DN 14-1 at #740; *see also* DN 14-2 ¶ 3.  Someone did once inquire into Nelson's editing services, which Nelson believed may have required her to edit photos from a same-sex wedding.  It's unclear how she handled that.  DN 1 ¶ 237.

[54] *See Clapper v. Amnesty International USA*, 568 U.S. 398, 414 n.5 (2013) ("In addition, plaintiffs bear the burden of pleading and proving concrete facts showing that the defendant's *actual action* has caused the substantial risk of harm.") (emphasis added).

[55] DN 14-1 at #740; *see also* DN 14-2 ¶ 3.

violations of the Fairness Ordinance.[56]  Louisville refuses "to disavow enforcement of the challenged statute against" Nelson.[57]  And the Fairness Ordinance has "a provision allowing any member of the public to initiate an enforcement action."[58]

Other civil rights agencies can also refer complaints to the Enforcement Commission.[59]  In addition, commissioners can "file a complaint without ever receiving a complaint from an aggrieved person."[60]  Those roads all lead to the same destination: a detailed administrative process that resembles what happens in traditional courtrooms.[61]

Meanwhile, Nelson alleges that a different route bypasses the administrative process altogether.  If customers are unlawfully denied service, they can go directly to state court.[62]  There, plaintiffs suing for violations of the Fairness Ordinance may recover damages, attorneys' fees, and costs.[63]

---

[56] *McKay,* 823 F.3d at 869; *see* DN 1 ¶ 304; DN 39-1 at #1155 (Louisville has "received a total of 173 complaints based on sexual orientation discrimination" since 2002); *cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) ("The Government tells us that it has charged about 150 persons with violating § 2339B, and that several of those prosecutions involved the enforcement of the statutory terms at issue here."); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015) (finding a plaintiff's fear of prosecution reasonable "especially where the agency tasked with enforcing the statute receives complaints on a relatively frequent basis").

[57] *McKay,* 823 F.3d at 869.  *See* DN 39 at #1147 ("Further, the fact that Metro or the other Defendants have not disavowed future action is not determinative of whether standing exists."); Oral Argument, August 7, 2020 (When asked if it was refusing to promise not to enforce the Fairness Ordinance against Nelson, Louisville replied, "That's right."); *see also Susan B. Anthony List*, 573 U.S. at 165 ("Moreover, respondents have not disavowed enforcement if petitioners make similar statements in the future."); *Humanitarian Law Project*, 561 U.S. at 16 ("The Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do."); *United Farm Workers*, 442 U.S. at 302 ("Moreover, the State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices.").

[58] *McKay,* 823 F.3d at 869 (cleaned up).  *See* DN 1 ¶ 277 (citing Metro Ordinance § 92.09(A)).

[59] DN 1 ¶ 280 (citing Metro Ordinance § 92.09(C)).

[60] *Id.* ¶ 279 (citing Metro Ordinance § 92.09(A)).

[61] *See Susan B. Anthony List*, 573 U.S. at 165 ("We take the threatened Commission proceedings into account because administrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review.").

[62] DN 1 ¶¶ 301, 302 (citing Metro Ordinance § 92.09(A)).

[63] *Id.* ¶ 302 (citing Metro Ordinance § 92.09(A)).

In short, Louisville's Fairness Ordinance has real teeth. That has undoubtedly made it more effective in achieving its worthy goals. But it also means Nelson faces a credible threat of enforcement.[64]

In addition, no "practical obstacles keep us from considering" Nelson's challenges of the Fairness Ordinance's application to her refusal to photograph same-sex marriages and her plan to post that policy on her website.[65] "The parties have described their conduct with plenty of detail."[66] Louisville has said the Fairness Ordinance proscribes Nelson's policy and its publication. And Louisville has refused to disavow enforcement. Nelson has therefore "laid the foundation" for that challenge.[67]

Nelson's claims for injunctive and declaratory relief may therefore go forward.[68] So can her claim for attorneys' fees.[69]

B.

The Court does not, however, have jurisdiction to consider Nelson's claims for nominal and compensatory damages.[70] Even assuming her company lost money it otherwise would have made if Nelson had felt free to speak her mind, it's too speculative to blame the Fairness Ordinance

---

[64] *See McKay*, 573 U.S. at 158 ("An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.") (cleaned up).

[65] *Winter*, 834 F.3d at 687.

[66] *Id.*

[67] *Id.* at 688.

[68] At oral argument, Louisville said Nelson might have standing to challenge the Denial Clause. *See* Oral Argument, August 7, 2020 (Louisville: "I concede on the denial clause. It's a much stronger case for standing."); *but see* DN 14-1 at #743 ("Plaintiffs have not met their burden of proving standing to file suit."). Of course, the Court must assess standing regardless of any concessions, and the Court must do so for each claim, independent of a plaintiff's other claims. But assume for the sake of argument that Nelson has standing to challenge only the Publication Provision's Denial Clause. In that case, although the Court would have no jurisdiction to enjoin Louisville from enforcing the Accommodation Provision, the Court would still need to consider its constitutionality because, as explained later, its constitutionality affects the constitutionality of the Publication Provision.

[69] *See* 42 U.S.C. § 1988(b) (Louisville may be liable for Nelson's attorneys' fees if she prevails).

[70] DN 1 at #51.

for that lost business, so she hasn't alleged a "sufficient causal connection" between the chilling effect and the lost business.[71]

Dismissing Nelson's claim for compensatory damages without prejudice is thus appropriate.[72]   And because "[n]o readily apparent theory emerges as to how nominal damages might redress past chill," Nelson's nominal damages claim also fails.[73]

### III.

Louisville cannot enforce the Fairness Ordinance against Nelson without unconstitutionally "abridging the freedom of speech."[74]

### A.

The First Amendment generally prohibits the government from suppressing expression "because of its message, its ideas, its subject matter, or its content."[75]   A "core" First Amendment

---

[71] *McKay*, 573 U.S. at 158 (cleaned up); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.") (cleaned up).

[72] Because the Court agrees with Louisville that Nelson can't recover damages, it doesn't also need to address Louisville's immunity argument.  *See* DN 14-1 at #745.

[73] *Morrison v. Board of Education of Boyd County*, 521 F.3d 602, 610 (6th Cir. 2008).

[74] U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech."); U.S. CONST. amend. XIV, § 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (the "government" includes a "municipal government vested with state authority").

[75] *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020) (plurality op.); *National Institute of Family & Life Advocates (N.I.F.L.A.) v. Becerra*, 138 S. Ct. 2361, 2371 (2018); 576 U.S. at 163; *McCullen v. Coakley*, 573 U.S. 464, 477 (2014); *United States v. Alvarez*, 567 U.S. 709, 716 (2012) (plurality op.); *Brown v. Entertainment Merchants Association*, 564 U.S. 786, 791 (2011); *United States v. Stevens*, 559 U.S. 460, 468 (2010); *R.A.V. v. St. Paul*, 505 U.S. 377, 384 n.4 (1992); *Simon & Schuster, Inc. v. Members of New York State Crime Victims Board*, 502 U.S. 105, 126 (1991) (Kennedy, J., concurring); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229 (1987); *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 65 (1983); *Consolidated Edison Co. v. Public Service Commission*, 447 U.S. 530, 537 (1980); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 776 (1976) (Stewart, J., concurring); *Erznoznik v. Jacksonville*, 422 U.S. 205, 215 (1975); *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

principle is that "[t]he government may not discriminate against speech based on the ideas or opinions it conveys."[76]

As bad as content-based restrictions on expression are, viewpoint-based restrictions are worse.[77] "Viewpoint discrimination is poison to a free society."[78] It occurs when the government suppresses "particular views on a subject" because it disapproves of the message.[79] Louisville can't ban expression just because it finds the expression offensive.[80]

Worst of all is when the government compels citizens to express "views they find objectionable."[81] Forcing citizens to express ideas "contrary to their deepest convictions"[82] is "always demeaning."[83] It doesn't matter if most people agree with the expression the government compels.[84] Free thought "includes both the right to speak freely" and to say nothing at all.[85]

---

[76] *Iancu v. Brunetti*, 139 S.Ct. 2294, 2299 (2019).

[77] *Reed*, 576 U.S. at 163; *see also Iancu*, 139 S.Ct. at 2299.

[78] *Iancu*, 139 S.Ct. at 2302 (Alito, J., concurring).

[79] *Matal v. Tam*, 137 S.Ct. 1744, 1766 (2017) (Kennedy, J., concurring in the judgment); *see also Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 511 (1969) ("Clearly, the prohibition of expression of one particular opinion … is not constitutionally permissible.").

[80] *Tam*, 137 S.Ct. at 1751 (Alito, J., plurality op.); *see also id.* at 1763 ("We have said time and again that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'") (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)); *Masterpiece Cake Shop, Ltd. v. Colorado Human Rights Commission*, 138 S.Ct. 1719, 1731 (2018) ("it is not, as the Court has repeatedly held, the role of the State or its officials to prescribe what shall be offensive"); *Spence v. Washington*, 418 U.S. 405, 412 (1974) (per curiam); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

[81] *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S.Ct. 2448, 2463 (2018) ("Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned."); *id.* at 2464 ("When speech is compelled, however, additional damage is done."); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citing *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 633-34 (1943)); *Barnette*, 319 U.S. at 633 ("It is also to be noted that the compulsory flag salute and pledge requires affirmation of a belief and an attitude of mind.").

[82] *N.I.F.L.A.*, 138 S.Ct. at 2379 (Kennedy, J., concurring).

[83] *Janus*, 138 S.Ct. at 2464.

[84] *Maynard*, 430 U.S. at 715 ("The fact that most individuals agree with the thrust of New Hampshire's motto [Live Free or Die] is not the test; most Americans also find the flag salute acceptable. The First Amendment protects the right of individuals to hold a point of view different from the majority and to refuse to foster, in the way New Hampshire commands, an idea they find morally objectionable.").

[85] *Janus*, 138 S.Ct. at 2463 (quoting *Maynard*, 430 U.S. at 714).

To sum up: A content-based limit on speech on topics outside politics and religion is highly suspect;[86] a content-based limit on political or religious speech is worse;[87] a viewpoint-based limit on such speech is even worse than that;[88] and a viewpoint-based compulsion to speak on politics or religion is the worst of all.[89]

## B.

Nelson challenges the Accommodations Provision of Louisville's Fairness Ordinance. The Accommodations Provision prohibits a business from denying its service to an individual based on that individual's sexual orientation.[90] When applied to Nelson's photographs, the key question is whether those photographs are "speech" protected by the First Amendment's "freedom of speech."

---

[86] *Entertainment Merchants Association*, 564 U.S. at 791; *Virginia State Board of Pharmacy*, 425 U.S. at 776 (Stewart, J., concurring).

[87] *Citizens United v. Federal Election Commission*, 558 U.S. 310, 340 (2010) ("political speech must prevail against laws that would suppress it"); *id.* at 349 ("If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech.").

[88] *Reed*, 576 U.S. at 156 ("Government discrimination among viewpoints is a 'more blatant' and 'egregious form of content discrimination.'") (quoting *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995)); *see also Tam*, 137 S.Ct. at 1766 (Kennedy, J., concurring in the judgment) (viewpoint discrimination goes "further" than content discrimination).

[89] *Barnette*, 319 U.S. at 642 ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."); *Janus*, 138 S.Ct. at 2464 ("Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our landmark free speech cases said that a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence.") (quoting *Barnette*, 319 U.S. at 633).

[90] "Except as otherwise provided herein, it is an unlawful practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort or amusement as defined in § 92.02, on the ground of race, color, religion, national origin, disability, sexual orientation or gender identity." Metro Ordinance § 92.05(A); DN 15-3 at #803; *compare*, *Telescope Media Group v. Lucero*, 936 F.3d 740, 748 (8th Cir. 2019) (similar).

13

1.

"The protection of the First Amendment is not limited to written or spoken words."[91]   It "includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures."[92]   The "content of [a] photograph" conveys a "message," often with "newsworthiness or educational value."[93]  And in America, the government can neither censor nor compel a speaker's message.[94]

Of course, most conduct is not speech, even if it has expressive elements.  The Supreme Court has "rejected the view that an apparently limitless variety of conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea."[95]  For example, there's plenty expressive about road rage, but it's not speech.  Neither is cooking barbecue[96] or running a motel.[97]

Other conduct, however, is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments."[98]  Examples include:

- nude dancing;[99]

---

[91] *ETW Corp. v. Jireh Publishing*, 332 F.3d 915, 924 (6th Cir. 2003); Oral Argument, August 7, 2020 (conceding that the First Amendment's speech protections cover more than just words).

[92] *Id.*; *see also United States v. Stevens*, 559 U.S. 460, 468 (2010) (the First Amendment covers "visual and auditory depictions, such as photographs, videos, or sound recordings") (cleaned up).

[93] *Regan v. Time, Inc.*, 468 U.S. 641, 648 (1984) (White, J., plurality op.).

[94] *See, e.g., Citizens United*, 558 U.S. at 354 ("The censorship we now confront is vast in its reach."); *Janus*, 138 S.Ct. at 2464 ("Because the compelled subsidization of private speech seriously impinges on First Amendment rights, it cannot be casually allowed.").

[95] *Johnson*, 491 U.S. at 404 (cleaned up); *see also Masterpiece Cakeshop*, 138 S.Ct. at 1742 (Thomas, J., concurring) ("Of course, conduct does not qualify as protected speech simply because the person engaging in it intends thereby to express an idea.") (cleaned up).

[96] *Katzenbach v. McClung*, 379 U.S. 294, 296 (1964).

[97] *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 243 (1964); *cf.* Oral Argument, August 7, 2020 (Court: "And the 1964 Civil Rights Act is constitutional as applied, at least for most – most applications?" Nelson: "Yes.").

[98] *Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 409); *see also Telescope Media Group*, 936 F.3d at 752 ("Speech is not conduct just because the government says it is.").

[99] *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66, 572 (1991) (nude dancing is expressive, although the city's law survives constitutional scrutiny).

- flag-burning in protest of the 1984 Republican National Convention;[100]

- displaying swastikas;[101]

- taping a peace sign on an upside-down flag to protest the invasion of Cambodia and the killings at Kent State University;[102]

- dressing up as a soldier to criticize the government in an anti-Vietnam War skit;[103]

- wearing a black armband to oppose the Vietnam War;[104]

- conducting a sit-in to protest segregation;[105]

- refusing to salute the flag;[106] and

- flying a red flag in support of international communism.[107]

Each of those examples conveyed, without words, a "particularized message."[108]

Many of those decisions were controversial and required difficult line drawing.  What, for example, is the difference between burning a draft card (not speech) and burning an American flag (speech)?[109]  But the line Nelson asks this Court to draw here isn't a difficult one because the First Amendment "unquestionably" protects art, music, and literature.[110]  And among those expressive

---

[100] *Johnson*, 491 U.S. at 420.

[101] *Cf. National Socialist Party of American v. Skokie*, 432 U.S. 43 (1977) (per curiam).

[102] *Spence*, 418 U.S. at 406, 408 (per curiam).

[103] *Schacht v. United States*, 398 U.S. 58, 63 (1970).

[104] *Tinker*, 393 U.S. at 514.

[105] *Brown v. Louisiana*, 383 U.S. 131, 141-42 (1966) (plurality op.).

[106] *Barnette*, 319 U.S. at 642.

[107] *Stromberg v. California*, 283 U.S. 359, 369-70 (1931).

[108] *Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 410-11); *see Tinker*, 393 U.S. at 514 ("They wore it to exhibit their disapproval of the Vietnam hostilities and their advocacy of a truce, to make their views known, and, by their example, to influence others to adopt them."); *Spence*, 418 U.S. at 410 ("A flag bearing a peace symbol and displayed upside down by a student today might be interpreted as nothing more than bizarre behavior, but it would have been difficult for the great majority of citizens to miss the drift of appellant's point at the time he made it."); *see also* Oral Argument, August 7, 2020 (Court: "Speech does not have to have words?"  Louisville: "That's correct.").

[109] *Compare United States v. O'Brien*, 391 U.S. 367 (1968), *with Johnson*, 491 U.S. at 401.

[110] *Hurley,* 515 U.S. at 569.

art forms, long-protected by the First Amendment, is photography.

Photos send messages, and sometimes tough ones.[111]  A child runs as she wails from her Napalm burns.  An unknown protester confronts a tank.  Sure, we could just read about them, but the photos trigger outrage in a way that words can't.

Photos also send messages of humor, happiness, and beauty.  That's why we display snapshots at our desks, in our homes, and on Instagram.  They remind us of our travels to faraway places, loved ones who have gone before us, and yes, the unbridled joy of a wedding day.

Photography can also say as much about the picture-taker as it does about the person whose picture is being taken or the person displaying it.[112]  When we use our iPhone camera to capture a moment, we reveal something about ourselves.  In the same way, when we crop, frame, and add filters, we make a great memory even better by focusing on what we want to emphasize and taking out what we don't.

2.

The Court need not declare that all photography, always and anywhere, is speech.  Perhaps there's no speech when a baby accidentally presses the red button in the camera app on her parent's phone.  And maybe there's no speech when a photobooth malfunctions and takes a picture of nothing.  But photography is speech when the photographer's artistic talents are combined to tell a story about the beauty and joy of marriage.  That — not the baby, not the photobooth — is this case.[113]

---

[111]  TIME MAGAZINE, 100 PHOTOS: THE MOST INFLUENTIAL IMAGES OF ALL TIME, http://100photos.time.com/.

[112] *Cf. Masterpiece Cakeshop*, 138 S.Ct. at 1744 n.3 (Thomas, J., concurring) ("Nor does it matter that the couple also communicates a message through the cake.  More than one person can be engaged in protected speech at the same time.").

[113] DN 1 ¶ 95 (Nelson wants to counteract the current "cultural narrative" through her pictorial storytelling.).

Here, Nelson's Complaint explains several messages of her wedding photography.[114]  For example, she "believes that by capturing and conveying engagements, weddings, and marriages between one man and one woman, she can show the beauty and joy of marriage as God intends it and she can convince her clients, their friends, and the public that this type of marriage should be pursued and valued."[115]

At oral argument, Louisville emphasized that Nelson's photographs might mean different things to different people.  They surely do.  In fact, they might mean different things to the same people at different times — more perhaps to a newly married couple than to the same couple when newly divorced.  Likewise, a painting by Jackson Pollock can mean 100 different things to 100 different people.[116]  Ambiguity about the meaning of a message — from "Yes We Can" to "Make America Great Again" — doesn't mean the message has no meaning.[117]

So too for Nelson's message.  The meaning of her photos is open to interpretation.  But through them, she — unlike many wedding vendors[118] — tells a story.  And storytelling is speech.

---

[114] *See, e.g.*, *id.* ¶ 151 ("Each component of Chelsey's wedding celebration services — her photography, editing, and blogging — separately and in combination, is expressive in nature, as it involves either text, images, symbols, or other modes of expression.").

[115] *Id.* ¶ 93.

[116] *Hurley*, 515 U.S. at 569.

[117] *See id.* (a "particularized message" is not required for First Amendment protection); *Masterpiece Cakeshop*, 138 S.Ct. at 1742 (Thomas, J., concurring) (same).

[118] Nelson represented at Oral Argument that many goods and services for weddings are *not* speech. According to her, as a general matter, the following wedding vendors are not speakers: the wedding venue operator; the wedding insurance salesperson; the tailor for the tux; the baker that sells a plain white pre-designed cake; the seller of generic stationary; the jeweler with non-custom wedding rings; the blow dry bar stylist; the makeup artist; the manicurist; the on-site chef for the reception; the waiters there; the limo driver for the married couple; the Uber driver for wedding guests; and the travel agent for the honeymoon. Oral Argument, August 7, 2020.  The Court takes no position on these hypotheticals, which are not at issue here.

A government can no more compel that speech than it can compel a freelance speechwriter to write for a political candidate she opposes.[119]

The Eighth Circuit reached the same conclusion as this Court in a case about wedding videography: The Government cannot compel a person "to talk about . . . same-sex marriages" simply because she chooses "to talk about . . . opposite-sex marriages."[120]  And the Arizona Supreme Court reached the same conclusion with regard to custom wedding invitations: Applying a public-accommodations law there "coerces" individuals into "abandoning their convictions, and compels them to [communicate] celebratory messages" they disagree with.[121]

Other state courts have read the First Amendment more narrowly.[122]  But for the reasons already explained in this opinion, the Eighth Circuit and Arizona Supreme Court have the better reading.

3.

Because the Accommodations Provision compels Nelson to express herself in a manner contrary to her conscience, the Court presumes that the provision — as applied to Nelson — is unconstitutional.[123]  Thus, Louisville must at least prove that the Accommodations Provision is narrowly tailored to serve a compelling interest.[124]  And even if Louisville *could* satisfy that

---

[119] *Cf.* Oral Argument, August 7, 2020 (Louisville: The First Amendment would not stop a government from compelling a freelance speechwriter or photographer "to provide that service to the climate change deniers" even if she wants to work only for environmentalist causes.).

[120] *Telescope Media Group*, 936 F.3d at 752-53.

[121] *Brush & Nib*, 448 P.3d at 914; *see also id.* ("the Ordinance, as applied to Plaintiffs' custom wedding invitations, operates as a content-based law").

[122] *See Arlene's Flowers*, 441 P.3d at 1225-26; *Elane Photography, LLC v. Willock*, 309 P.3d 53, 59 (N.M. 2013).

[123] *See Reed*, 576 U.S. at 163 (content-based restrictions); *Tam*, 137 S.Ct. at 1766 (Kennedy, J., concurring in the judgment) (viewpoint-based restrictions).

[124] *See Reed*, 576 U.S. at 163 (content-based restrictions); *Tam*, 137 S.Ct. at 1765 (Kennedy, J., concurring in the judgment) (viewpoint-based restrictions).

standard, it might still lose here, where it is attempting to compel religious speech at the core of the First Amendment.[125]

For the same reason the public accommodations law in *Hurley* did not survive strict scrutiny,[126] it's highly unlikely that applying the Accommodations Provision to Nelson can survive it either. Here, as in *Hurley*, "the object of the law is to ensure by statute for gays and lesbians desiring to make use of public accommodations what the old common law promised to any member of the public wanting a meal at the inn, that accepting the usual terms of service, they will not be turned away merely on the proprietor's exercise of personal preference."[127] And outside the context of requiring or restricting expressive activity, that government interest is unquestionably compelling. But "[w]hen the law is applied to expressive activity in the way it was done here, its apparent object is simply to require speakers to modify the content of their expression to whatever extent beneficiaries of the law choose to alter it with messages of their own."[128] That government interest is not compelling because "in the absence of some further, legitimate end, this object is merely to allow exactly what the general rule of speaker's autonomy forbids."[129]

To be sure, without discovery or even an Answer from Louisville, it's premature to say Nelson will definitely prevail. But it's highly likely. And because she is substantially likely to succeed on her Free Speech claim, it's unnecessary to address her other as-applied challenges to

---

[125] *See Janus*, 138 S.Ct. at 2464; *Citizens United*, 558 U.S. at 340 ("it might be maintained that political speech simply cannot be banned or restricted as a categorical matter") (citing *Simon & Schuster*, 502 U.S. at 124 (Kennedy, J., concurring in judgment)).
[126] *Hurley*, 515 U.S. at 578.
[127] *Id*.
[128] *Id.*
[129] *Id.*

the Accommodations Provision.[130]

Likewise, because "[p]reliminary injunctions in constitutional cases often turn on likelihood of success on the merits," it's "unnecessary to dwell on the remaining three factors."[131] "The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."[132] The Court will therefore preliminarily enjoin Louisville from requiring Nelson to photograph same-sex weddings.[133]

---

[130] *See* DN 1 ¶¶ 343-59 (Free Exercise Clause Claim); *id.* ¶¶ 360-65 (Establishment Clause Claim); *id.* ¶¶ 373-81 (Kentucky Religious Freedom Restoration Act Claim).

[131] *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) (per curiam); *cf. Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

[132] *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989).

[133] Nelson's suit does not present two questions that would undoubtedly be more difficult for a plaintiff to prevail on — questions on which the Court takes no position.

The first is a hypothetical with all the same facts as Nelson's case, except the same-sex couple lives in a small town without another photographer. *See* Oral Argument, August 7, 2020 (Court: "So maybe in that small town [where there is only one vendor for a wedding service, you think] the government would survive the strict scrutiny analysis. Is that what you're saying?" Nelson: "I'd say perhaps, Your Honor.").

The second is a hypothetical case with all the same facts as Nelson's case, except the photographer refuses to photograph an interracial wedding. *See id.* (Nelson: "I think that would be different. . . . *Loving* said that objections to interracial marriage are inherently based on invidious racial discrimination designed to maintain white superiority. That's a quote. Versus we look at *Obergefell* where it said that objections to same-sex marriage are based on decent and honorable religious and philosophical principles. . . . [T]hen you go to . . . *Peña-Rodriguez versus Colorado*, where it specifically said racial bias is a unique constitutional harm. . . . So I think the interest analysis would be much stronger for the state . . . ."); *see also id.* (Louisville: "It would be erroneous to suggest that somebody like Miss Nelson, who has the views that she has, should be viewed in the same way as somebody who opposed mixed-race marriage. So the position of [Louisville] Metro is not to build up any type of equivalence there or to cast aspersions and say that you're as bad as a racist if you believe in traditional marriage. That's not a position that we need to endorse here."); *but see id.* (Louisville: "I don't think there's any principled basis to distinguish how compelling is the state interest in rooting out invidious racial discrimination versus evaluating how compelling is a state or local government's interest in eradicating invidious discrimination against sexual orientation.").

C.

In addition to challenging the Fairness Ordinance's Accommodations Provision, Nelson also challenges its Publication Provision.

The Publication Provision has two parts: the Denial Clause and the Unwelcome Clause. The Denial Clause prohibits a business from advertising that it will deny its services to an individual based on that individual's sexual orientation.[134]  The Unwelcome Clause prohibits a business from advertising that an individual's presence at that business is "objectionable, unwelcome, unacceptable, or undesirable" based on the individual's sexual orientation.[135]

The Publication Provision is a content-based restriction on Nelson's expression.  That's because the legality of Nelson's blog posts depends on what they say.[136]  If Nelson advertises that she will refuse her wedding photography services for same-sex weddings, her posts violate both the Denial Clause and the Unwelcome Clause.  But if another wedding photographer advertises her willingness to photograph same-sex weddings, those posts would comply with both clauses.[137]

Here, the constitutionality of the Publication Provision (as applied to Nelson) depends on the constitutionality of the Accommodations Provision (again, as applied to Nelson).  In most other

---

[134] "It is an unlawful practice for a person, directly or indirectly, to publish, circulate, issue, display, or mail, or cause to published, circulated, issued, displayed, or mailed, a written, printed, oral or visual communication, notice, or advertisement, which indicates that the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort or amusement, will be refused, withheld, or denied an individual on account of his race, color, religion, national origin, disability, sexual orientation or gender identity." Metro Ordinance § 92.05(B); DN 15-3 at #803.  At oral argument, Nelson conceded that the Denial Clause is facially constitutional.

[135] "It is an unlawful practice for a person, directly or indirectly, to publish, circulate, issue, display, or mail, or cause to be published, circulated, issued, displayed, or mailed, a written, printed, oral or visual communication, notice, or advertisement, which indicates that . . . patronage of, or presence at, a place of public accommodation, resort or amusement, of an individual, on account of his race, color, religion, national origin, disability, sexual orientation or gender identity is objectionable, unwelcome, unacceptable, or undesirable."  Metro Ordinance § 92.05(B); DN 15-3 at #803.

[136] *American Association of Political Consultants*, 140 S.Ct. at 2346 ("As relevant here, a law is content-based if a regulation of speech on its face draws distinctions based on the message a speaker conveys.") (quoting *Reed*, 576 U.S. at 163) (cleaned up).

[137] *See* DN 1 ¶ 310.

contexts, where the Accommodations Provision doesn't violate the First Amendment, the Publication Provision merely prohibits a business from engaging in "commercial speech related to illegal activity."[138]   When "commercial speech concerns unlawful activity," it "is not protected by the First Amendment."[139]

But as applied to Nelson's policy on same-sex weddings, the Publication Provision prohibits "the dissemination of concededly truthful information about entirely lawful activity."[140] It prohibits Nelson from truthfully advertising that she will not abide by an Accommodations Provision that itself cannot be validly applied to her wedding photography.   To hold otherwise would allow Louisville to ban Nelson from saying she will refuse to photograph weddings that she has a constitutional right not to photograph.[141]   Bans on truthful commercial speech about lawful activity require the government to show more than that it assumes the public can't handle the truth.[142]

Here, at this early stage, Louisville has not made that showing.   Nelson is thus likely to succeed on the merits of her as-applied challenge to the Publication Provision.   And since that challenge rests on free-speech grounds, Nelson has shown "irreparable injury sufficient to justify

---

[138] *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 564 (1980) (citing *Pittsburgh Press Co. v. Human Relations Commission*, 413 U.S. 376, 388 (1973)).

[139] *Thompson v. Western States Medical Center*, 535 U.S. 357, 367 (2002); *Central Hudson*, 447 U.S. at 566 ("For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.").

[140] *Virginia State Board of Pharmacy*, 425 U.S. at 773.

[141] *See Thompson*, 535 U.S. at 374 ("We have previously rejected the notion that the Government has an interest in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with the information.").

[142] *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (opinion of Stevens, J.) ("[B]ans against truthful, nonmisleading commercial speech . . . usually rest solely on the offensive assumption that the public will respond irrationally to the truth.   The First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good.") (cleaned up).

injunctive relief."[143]  The Court will preliminarily enjoin Louisville from penalizing Nelson for publishing her policy against photographing same-sex weddings.[144]

D.

Nelson seeks other remedies that the Court can't provide at this time.  Generally, a court's injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."[145]

First, Nelson seeks an injunction barring Louisville from requiring her to "participate" in same-sex weddings.  But that injunction is unnecessary because Nelson provides no wedding services other than photography.[146]  Blocking Louisville from forcing her to photograph same-sex weddings means that she won't have to attend same-sex weddings.[147]

Second, it's also unnecessary to enjoin the Advocacy Commission, as Nelson proposes.[148] The Advocacy Commission's goal is "to promote and secure mutual understanding and respect among all economic, social, religious, ethnic, and social groups" in Louisville.[149]  It's unclear how exactly its unpaid commissioners go about doing that,[150] but it doesn't sound like they have the power to enforce the Fairness Ordinance (or anything else).  Nelson thus hasn't shown why the

---

[143] *Newsom*, 888 F.2d at 378.

[144] Because the Publication Provision is likely an unconstitutional content-based restriction on Nelson's speech, it is unnecessary to decide if it is also an unconstitutional viewpoint-based restriction.  Likewise, it's unnecessary to decide Nelson's other as-applied challenges to the Publication Provision.  *See* DN 1 ¶¶ 343-59 (Free Exercise Clause Claim); *id.* ¶¶ 366-72 (Due Process Clause Claim); *id.* ¶¶ 373-81 (Kentucky Religious Freedom Restoration Act Claim).

[145] *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

[146] *See* DN 1 ¶¶ 122, 194; DN 3-5 at #672.

[147] Oral Argument, August 7, 2020 (Court: "I would think if you get a preliminary injunction [saying] Louisville can't fine – Louisville can't make Chelsey Nelson photograph a gay wedding, then you don't need an injunction that says Louisville can't make her attend a gay wedding.  Because she is a wedding photographer, there's no reason for her to be at a wedding other than to photograph it.  I mean, weddings are private events."  Nelson: "That's correct, Your Honor.").

[148] *See* DN 3-5 at #670-72.

[149] Metro Ordinance § 32.761(B).

[150] Metro Ordinance § 32.761(A)(3).

Court should stop the Advocacy Commission from enforcing a law that it isn't even clear it enforces.

Third and finally, Nelson asks the Court to block Louisville from enforcing the Unwelcome Clause against anyone, not just her.[151]  But as noted earlier, when "commercial speech concerns unlawful activity," it "is not protected by the First Amendment."[152]  And because most commercial conduct covered by the Accommodations Provision is unprotected by the Free Speech Clause,[153] most advertisements covered by the Unwelcome Clause are likewise unprotected.[154]

In *Masterpiece Cakeshop*, the Supreme Court cautioned that "any decision in favor of the baker [who would not create a custom-made cake for a same-sex wedding] would have to be sufficiently constrained, lest all purveyors of goods and services who object to gay marriages for moral and religious reasons in effect be allowed to put up signs saying 'no goods or services will be sold if they will be used for gay marriages,' something that would impose a serious stigma on gay persons."[155]  Thus, this Court will not block Louisville from enforcing the Unwelcome Clause against businesses that must welcome customers regardless of their sexual orientation or gender identity, including restaurants, hotels, and common carriers.

---

[151] DN 1 ¶¶ 334, 366-72; DN 3-5 at #672.

[152] *Thompson*, 535 U.S. at 367; *see also Central Hudson,* 447 U.S. at 566.

[153] Oral Argument, August 7, 2020 (Nelson conceded that most applications of public accommodations laws are constitutional).

[154] *See United States v. Stevens*, 559 U.S. 460, 473 (2010) ("In the First Amendment context . . . this Court recognizes 'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'") (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

[155] *Masterpiece Cakeshop*, 138 S.Ct. at 1728-29.

* * *

Five years ago, in *Obergefell v. Hodges*, the Supreme Court ruled in favor of same-sex

marriage. In doing so, it said:

> Finally, it must be emphasized that religions, and those who adhere to religious
> doctrines, may continue to advocate with utmost, sincere conviction that, by divine
> precepts, same-sex marriage should not be condoned. **The First Amendment
> ensures that religious organizations and persons are given proper protection
> as they seek to teach the principles that are so fulfilling and so central to their
> lives and faiths, and to their own deep aspirations to continue the family
> structure they have long revered.** The same is true of those who oppose same-
> sex marriage for other reasons. In turn, those who believe allowing same-sex
> marriage is proper or indeed essential, whether as a matter of religious conviction
> or secular belief, may engage those who disagree with their view in an open and
> searching debate.[156]

Those words were written by Justice Kennedy, the author of *Romer*,[157] *Lawrence*,[158] and

*Windsor*.[159] And they were joined by Justices Ginsburg, Breyer, Sotomayor, and Kagan.

We would do well to heed them. They affirm that the same Constitution held by *Obergefell*

to guarantee the right of same-sex couples to marry also protects religious and philosophical

objections to same-sex marriage.[160] That our society has largely accepted same-sex marriage "is

all the more reason to protect the First Amendment rights of those who wish to voice a difference

view."[161] Although a sometimes "hazardous freedom," free speech is a "basis of our national

strength."[162]

So too is our religious diversity. While some have criticized recent Supreme Court

---

[156] *Obergefell v. Hodges*, 135 S.Ct. 2584, 2607 (2015) (emphasis added).

[157] *Romer v. Evans*, 517 U.S. 620 (1996).

[158] *Lawrence v. Texas*, 539 U.S. 558 (2003).

[159] *United States v. Windsor*, 570 U.S. 744 (2013).

[160] *See Obergefell*, 135 S.Ct. at 2605; *Windsor*, 570 U.S. at 775; *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S.Ct. 1719, 1727 (2018).

[161] *Boy Scouts of America v. Dale*, 530 U.S. 640, 660 (2000); *see Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890, 896 (Ariz. 2019) ("Duka and Koski's beliefs about same-sex marriage may seem old-fashioned, or even offensive to some. But the guarantees of free speech and freedom of religion are not only for those who are deemed sufficiently enlightened, advanced, or progressive. They are for everyone.").

[162] *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 508-9 (1969).

majorities for securing the rights of religious Americans "to the *n*th degree,"[163] a solid majority on the Court appears unphased.[164]

To be clear, most applications of antidiscrimination laws — including Louisville's Fairness Ordinance — are constitutional.[165]  Today's ruling is not a license to discriminate.  Nor does it allow for the "serious stigma" that results from a sign in the window announcing that an owner won't serve gay and lesbian customers.[166]

In Louisville, since 1999 and still today, Marriott cannot refuse a room to a same-sex couple.[167]  McDonald's cannot deny a man dinner simply because he is gay.[168]  Neither an empty

---

[163] *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 2400 (2020) (Ginsburg, J., dissenting).

[164] *See id.* (majority op.);  *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S.Ct. 2049 (2020); *Espinoza v. Montana Department of Revenue*, 140 S.Ct. 2246 (2020);  *American Legion v. American Humanist Association*, 139 S.Ct. 2067 (2019);  *Masterpiece Cakeshop*, 138 S.Ct. 1719 (2018);  *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012 (2017);  *Holt v. Hobbs*, 574 U.S. 352 (2015); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Town of Greece v. Galloway*, 572 U.S. 565 (2014); *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012).

[165] *See* Oral Argument, August 7, 2020 (Court: "[M]ost applications of an anti-discrimination law are constitutional?"  Nelson: "Your Honor, that's correct."); *Telescope Media Group v. Lucero*, 936 F.3d 740, 758 (8th Cir. 2019) ("our holding leaves intact other applications of the [Minnesota Human Rights Act] that do not regulate speech based on its content or otherwise compel an individual to speak"); *Brush & Nib*, 448 P.3d at 916 ("Our holding today is limited to Plaintiffs' creation of one product: custom wedding invitations that are materially similar to the invitations contained in the record.  These invitations, unlike most commercial products and services sold by public accommodations, are unique because they consist of protected pure speech.") (cleaned up); *Lexington-Fayette Urban County Human Rights Commission v. Hands On Originals*, 592 S.W.3d 291, 294 (Ky. 2019) ("The ability of federal, state and local governments to protect individuals from discrimination by places of public accommodation is beyond question.").

[166] *See Masterpiece Cakeshop*, 138 S.Ct. at 1729; *see also Telescope Media Group*, 936 F.3d at 757 ("An employment-discrimination law, for example, can unquestionably require an employer to take down a sign reading 'White Applicants Only.'") (quoting *Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (F.A.I.R.)*, 547 U.S. 47, 62 (2006)) (cleaned up).

[167] *See* Oral Argument, August 7, 2020 (Court: "So, for example, like a Marriott hotel can constitutionally be fined by the government if it says, 'I won't rent a gay couple a room for the night,' correct?"  Nelson: "Of course.").

[168] *See id.* (Court: "And McDonald's can [constitutionally] be fined if they say to a gay couple, 'I'm not going to sell you a hamburger'?"  Nelson: "Yes.").

hotel room, nor a Big Mac, is speech.[169]   And it is unnecessary today to decide any questions unrelated to speech.

"Millions of gay and lesbian Americans have worked hard for many decades to achieve equal treatment in fact and in law."[170]   Our nation is better because of it.   But their progress depended on the First Amendment's protection of expressive conduct that was once far less popular than it is today, from marching in pride parades to flying rainbow flags.   That same First Amendment also protected the storytelling behind *La Cage Aux Folles*, *Philadelphia*, *Will & Grace*, and *Born This Way*.   Now is no time to weaken that protection.

Challenging questions remain unanswered at the intersection of free speech, religious liberty, and equal treatment.   Courts must navigate these difficult issues without imposing indignities on religious believers when they engage in expressive conduct and "without subjecting gay persons to indignities when they seek goods and services in an open market."[171]

The solution is more dialogue, not less.[172]

Justin R. Walker, District Judge
United States District Court

8/14/2020

---

[169] *Cf. F.A.I.R.*, 547 U.S. at 60 (withholding funds from law schools that deny military recruiters access to empty hotel rooms and other venues for job interviews "neither limits what law schools may say nor requires them to say anything").

[170] *Bostock v. Clayton County*, 140 S.Ct. 1731, 1837 (2020) (Kavanaugh, J., dissenting).

[171] *Masterpiece Cakeshop*, 138 S.Ct. at 1732.

[172] *See Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring) ("If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence.").