# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **Chelsey Nelson Photography LLC** and **Chelsey Nelson,**<br><br>                    Plaintiffs,<br><br>v.<br><br>**Louisville/Jefferson County Metro Government; Louisville Metro Human Relations Commission-Enforcement; Louisville Metro Human Relations Commission-Advocacy; Verná Goatley,** in her official capacity as Executive Director of the Louisville Metro Human Relations Commission-Enforcement; and **Marie Dever, Kevin Delahanty, Charles Lanier, Sr., Leslie Faust, William Sutter, Ibrahim Syed,** and **Leonard Thomas,** in their official capacities as members of the Louisville Metro Human Relations Commission-Enforcement,<br><br>                    Defendants. | Case No. 3:19-cv-00851-BJB-CHL<br><br>**Plaintiffs' Response to Defendants' Motion for Protective Order** |

## Introduction

To challenge Chelsey's standing and justify its compelling interest, Louisville raises forty years of history and specific instances of past discrimination. *See* Pls.' Mot. to Compel Discovery ("Pls.' Mot.") at 2-3, 6-13, 19-21, ECF No. 63 (citing Louisville's briefs, affidavits, initial disclosures, and discovery responses). Yet Louisville now refuses to respond to Chelsey's requests for complaints and case files, enforcement data, and questions about Louisville's interests. Louisville can't have it both ways. Chelsey can't adequately prove her claims or defeat Louisville's defenses when Louisville can invoke history and past complaints to suit its needs while keeping Chelsey in the dark—denying her access to see and test that information. This result is unnecessary, unjustifiable, and unfair. So Louisville's motion for a protective order should be denied; Chelsey's motion to compel should be granted.

## Argument

As the party moving for a protective order, Louisville carries "[t]he burden of establishing good cause" for the order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). To meet this standard, Louisville must assert facts showing a "clearly defined and serious injury" and "cannot rely on mere conclusory statements." *Id.* "[I]nconvenience or expense" are not enough. *Bay Area Healthcare Advisors, LLC v. PremierTox 2.0, Inc.*, 2016 WL 4203594, at *2 (W.D. Ky. Aug. 9, 2016) (requiring "sound basis or legitimate need" to limit discovery (quotation marks omitted)).

Louisville has not met this standard to foreclose discovery about (I) all public-accommodations case files and all housing and employment discrimination complaints (with follow up from Chelsey) for Plaintiffs' First Set of Requests for Production to Defendants ("RFPs") 40-58; (II) "spreadsheets used by HRC to track open and closed cases" for RFPs 1-39; or (III) complete responses to Plaintiffs' First Set of Interrogatories to Defendants ("Interrogatories") 15-17.

1

## I. Louisville has not shown good cause to withhold documents about past complaints and case files.

RFPs 40-58 request past discrimination complaints and case files that (A) are relevant to Chelsey's standing, her claims, and Louisville's defenses; (B) should be produced even in the face of alleged "confidentiality laws"; and (C) are proportional to the needs of this case and not too burdensome to produce.

### A. Louisville has not shown that the requested documents are irrelevant to Chelsey's claims.

RFPs 40-58 request documents and information relevant to Chelsey's standing, to her constitutional and statutory claims, and to Louisville's alleged interest in applying its law to Chelsey. Pls. Mot. at 6-13, 19-21. Courts often compel defendants to produce third-party complaints or case files that are relevant to a plaintiff's civil-rights claims.[1] *Contra* Defs.' Mot. for Protective Order ("Defs.' Mot.") at 5, ECF No. 64 (stating no "precedent for [Chelsey's] requests"). The scope of production always comes down to relevance. Here, Louisville's previous enforcement and application of its law—as evidenced by complaints and case files—to employers, housing providers, and public accommodations based on any protected class are all

---

[1] *See Virmani v. Novant Health Inc.*, 259 F.3d 284 (4th Cir. 2001) (producing other physicians' peer reviews over previous 20 years in civil rights employment case); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 303-308 (5th Cir. 1973) (producing information about all "white employees" over previous ten years in race discrimination case); *Groark v. Timek*, 989 F. Supp. 2d 378, 397-400 (D.N.J. 2013) (producing pre- and post-incident non-party complaints against police officers in Fourth Amendment case); *Dahmer v. W. Ky. Univ.*, 2019 WL 1781770, at *2 (W.D. Ky. Apr. 23, 2019) (producing "all other student complaints of sexual or gender-based discrimination" in Title IX case); *Adamov v. U.S. Bank Nat'l Ass'n*, 2015 WL 4512193, at *5 (W.D. Ky. July 24, 2015) (Lindsay, J.) (requiring employer to review 10,000 terminations to respond to discovery requesting comparator evidence in employment discrimination case); *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 471 (D.N.M. 2018) (producing female employee complaints in gender-discrimination case); *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 526 (D. Nev. 1997) (producing racial discrimination complaints in disparate treatment employment case); *Barfoot v. Boeing Co.*, 184 F.R.D. 642, 644-45 (N.D. Ala. 1999) (similar).

relevant because of Chelsey's claims and Louisville's defenses. Pls.' Mot. at 6-13, 19-21. So Louisville should produce those records.

But Louisville disagrees, claiming its admission that its law applies to Chelsey sidelines this information. *See* Defs.' Mot. at 4-5. Louisville is incorrect.

For example, Louisville argues that "there are no complicated or nuanced questions of interpretation … in this litigation" because Chelsey "carefully crafted" a statement describing her religious beliefs "with the assistance of litigation counsel." Defs.' Mot. at 2, 5.[2] But Louisville's law can clearly apply to Chelsey and the requested documents can still be relevant to her claims. Pls.' Mot. at 8-13 (explaining this point).

This is true for all of her claims, including free exercise. While Louisville argues that "there will be no evidence of any animus" because it has not enforced its law against Chelsey (Defs.' Mot. at 5), that's legally wrong. Louisville admits that Chelsey violates the law by making her message-based objection to creating same-sex photographs, Louisville refuses to provide her an exemption, Louisville has proclaimed a compelling need to enforce its law against Chelsey, and Louisville has vigorously defended its right to enforce its law against Chelsey in this litigation. *See* Pls.' Ex. 4 at 4-6; Defs.' Ex. 2 at #1632-34, ECF No. 64-2.[3] If Louisville interprets and applies its law this way against Chelsey but allows others to make non-religious "conscience-based objections," then that indicates religious hostility.

---

[2] Louisville suggests Chelsey and her counsel engaged in wrongdoing because Chelsey obtained legal advice about her business documents before filing this lawsuit. But it would be foolish for Chelsey to do otherwise. She "faces a credible threat of enforcement" if she operates her business consistent with her beliefs. *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't* (*CNP*), 479 F. Supp. 3d 543, 552 (W.D.K.Y. 2020). And Louisville can cite nothing to suggest that Chelsey lacks a sincere desire to engage in the activities she identifies—activities which are constitutionally protected.

[3] Citations to Louisville's exhibits refer to the CM/ECF stamped PageID numbers.

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1730 (2018). Indeed, Chelsey can show hostility through "the effect of a law in its real operation," including a law's "pattern of exemptions" and application in other contexts. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535-40 (1993) (finding religious hostility in pre-enforcement challenge to law). Louisville's past application of its law is relevant to that showing. VC ¶¶ 350-51.

Louisville's past application is also relevant to Chelsey's standing despites its admissions of actively enforcing its law and allowing anyone to file a complaint. Defs.' Mot. at 4-5. Louisville conceded these same points at the preliminary-injunction stage *but still* challenged Chelsey's standing. *See* Mot. for Prelim. Inj. Hr'g Trans. 9:20-13:19, ECF No. 52. And this Court's analysis highlighted the relevance of past enforcement to standing despite Louisville's concessions. *CNP*, 479 F. Supp. 3d at 551. This proves the requested information's relevance. Plus, standing "may be raised *sua sponte*" no matter "whether and how the issue [is] addressed by the City." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012). So even if Louisville stipulated to Chelsey's standing (which it hasn't), the requested documents would still be relevant. Pls.' Mot. at 6-7.

**B. Louisville cannot justify an across-the-board refusal to produce documents based on "confidentiality laws."**

Louisville withholds documents responsive to RFPs 40-58 based on three types of "confidentiality laws": (1) Equal Employment Opportunity Commission ("EEOC") laws, regulations, and contracts; (2) Department of Housing and Urban Development ("HUD") regulations and contracts; and (3) Louisville's own law. Defs.' Mot. at 7-12. But these laws do not apply to most of the documents requested by RFPs 40-58. In fact, many requests seek publicly filed documents or court orders, Pls.' Ex. 3 at 15-17 (RFPs 46-49, 52-58), or documents that Louisville already has a duty to publish, Metro Ord. § 92.08(B)(7) (publishing conciliation agreements); Pls.'

4

Ex. 3 at 15-16 (RFPs 45, 50-51 requesting conciliation agreements). The parties agree that confidentiality restrictions do not attach to these documents. Pls.' Ex. 7 at 2 (agreeing "files that relate to public proceedings … are not subject to the Confidentiality Laws"). For the remaining requests (RFPs 40-44), the confidentiality laws either do not apply or could be produced under a protective order or the parties' existing confidentiality agreement or following redactions.

### 1. EEOC laws, regulations, and contracts do not apply to or prohibit production of responsive documents.

Louisville invokes one EEOC contract, some EEOC laws and regulations, and two cases to argue that all its employment complaints and case files are confidential. Defs.' Mot. at 8-9. But these authorities either support Chelsey's arguments, do not apply, or do not prohibit production of the requested documents.

For starters, Louisville cites nothing that prevents it from producing public hearing documents responsive to RFPs 46-49 and 52-58. Quite the opposite. Louisville concedes these documents are not confidential. *See* Pls.' Ex. 7 at 2 (agreeing "public proceedings … are not subject to the Confidentiality Laws"). EEOC regulations and Louisville's EEOC contract confirm this. Section 1601.22, which Louisville relies on (Defs.' Mot. at 8), only prohibits disclosure of documents "prior to the institution of any proceeding." 29 C.F.R. § 1601.22. Likewise, the EEOC's contract does not restrain Louisville from producing documents if a "lawsuit has been instituted." Defs.' Ex. 3A at #1670 (§ H.1), ECF No. 64-3. The implication is that after a lawsuit is filed, no confidentiality attaches. This implication mirrors Louisville's own law, which holds hearings "open to the public." Metro Ord. § 92.09(I). So, at the very least, Louisville should produce all employment case files for complaints that progressed to a hearing.

Many other reasons undercut Louisville's reliance on these laws, regulations, and contract. According to the EEOC contract § H.1, the EEOC laws and

5

regulations only apply "if said information was obtained from the EEOC." Defs.' Ex. 3A at #1670. But the EEOC's workshare agreement with Louisville tasks Louisville with "tak[ing] all charges alleging a violation of" federal employment law and referring a subset of those charges to the EEOC.[4] *Id.* at #1680 (§ II.B). In other words, the EEOC contract—and the incorporated laws and regulations—do not prohibit Louisville from producing complaints filed first with its commission. Those originate with Louisville, not the EEOC—Louisville does not "obtain[]" them "from the EEOC." *Id.* So Louisville should also produce all employment complaints originally filed with Louisville.

Similarly, § III.A.2 of the EEOC's workshare agreement charges Louisville with "initially process[ing]" complaints "where at least one basis is not covered by the laws administered by the EEOC but is covered by the FEPA Ordinance." *Id.* at #1682. This section entrusts Louisville with initially processing two types of cases.

First, Louisville must process sexual-orientation and gender-identity complaints. Until recently, the EEOC lacked jurisdiction over these complaints. *See id.* at #1679 (§ I.A) (noting Louisville's, but not the EEOC's, jurisdiction over sexual orientation and gender identity claims). *Cf. Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1743 (2020). Second, Louisville processes claims against employers with "two or more employees." Metro Ord. § 92.02 (defining "employer"). The EEOC cannot—it lacks jurisdiction over claims against employers with fifteen or fewer employees. *See* 42 U.S.C. § 2000e(b) (Title VII employer definition); 42 U.S.C. § 12111(5)(A) (ADA definition); 29 U.S.C. § 630(b) (ADEA definition). So the EEOC does not (or did not) have jurisdiction over employment claims (1) based on sexual orientation or gender identity or (2) against employers with 15 or fewer employees. Without jurisdiction, EEOC's laws and regulations about confidentiality cannot govern these complaints

---

[4] The workshare agreement mentions the "FEPA." Defs.' Ex. 3A at #1680 (§ II.B). That means Louisville. 29 C.F.R. § 1601.80 (designating Louisville as a FEPA).

or case files kept by Louisville. Louisville should therefore produce these employment complaints and case files falling within these categories.

The lingering EEOC statues and regulations do not help Louisville either. *See* Defs.' Mot. at 8-10 (citing these). For example, § 1610.17(e) prohibits the *EEOC* "Commission" from making "charges" public, not Louisville. 29 C.F.R. § 1610.17(e). Section 1610.17(e) also bars production of what is "said or done" during settlement negotiations. *Id.* But Chelsey is not seeking that information (just the final agreement). Pls.' Ex. 3 at 15-16 (RFPs 45, 50-51). Section 1611.10 meanwhile incorporates 5 U.S.C. § 552a(b), which authorizes production under "the order of a court," 5 U.S.C. § 552(a)(b)(11). 29 C.F.R. § 1611.10. And 42 U.S.C. § 2000e-8 is a "narrowly read" criminal statute that only governs the EEOC, not Louisville. *Sears, Roebuck & Co. v. Gen. Servs. Admin.*, 384 F. Supp. 996, 1002 (D.D.C. 1974).

Because there are many ways Louisville can respond to RFPs 40-58 without violating EEOC's contract, statutes, or regulations, Louisville's "funding" is not threatened. *Contra* Defs.' Ex. 3, Verná Goatley Aff. ¶ 20, ECF No. 64-3.

That just leaves Louisville's two cited cases. Defs.' Mot. at 9. But *EEOC v. Associated Dry Goods Corp.* explains how Congress limited the EEOC's "authority … to make public disclosure of information" and evaluates the EEOC's authority to disclose complaints. 449 U.S. 590, 592, 603-04 (1981). This opinion says nothing about producing cases files that have gone to hearings, nothing about complaints originally filed with local agencies, and nothing about case files over which the EEOC lacks jurisdiction.

Next, *American Centennial Ins. Co. v. EEOC* supports Chelsey's position, not Louisville's. As this case noted, "[t]he non-disclosure statutes pertain *only to the EEOC* and do not prohibit disclosure by a charged employer to its insurance carrier." 722 F. Supp. 180, 184 (D.N.J. 1989) (emphasis added). "[T]he intent of the nondisclosure section" can also be achieved by a protective order or confidentiality

7

agreement. *Id.* So this case proves that the EEOC's disclosure requirements do not hinder Louisville's ability to disclose here.

For all these reasons, nothing stops Louisville from disclosing employment complaints or case files responsive to RFPs 40-58. Louisville should do so.

### 2. Louisville waived reliance on HUD regulations and contracts, and they do not apply to RFP numbers 40-58.

Moving from employment to housing, Louisville says it cannot produce housing complaints or case files because of HUD regulations and HUD's contract with Louisville. Defs.' Mot. at 10-11. But Louisville waived this argument by not identifying these objections in its initial responses. *See* Pls.' Ex. 3 at 2, 14. *See, e.g.*, *Word Music, LLC. v. Lynns Corp. of Am.*, 2010 WL 11614142, at *2 (M.D. Tenn. May 21, 2010) (collecting cases finding waiver of any objections "if a party does not raise timely objections to discovery requests under Rule 34"). Louisville cannot resuscitate these objections now. *Mayes v. City of Oak Park*, 2007 WL 328929, at *2 (E.D. Mich. Jan. 30, 2007) (finding party waived discovery objections made for first time in response brief to motion to compel); *Ramirez v. Cnty. of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) ("[T]he court will not consider any objections that were not asserted in the responding party's original discovery responses ….").

Even beyond that, the HUD regulations do not prevent disclosure of the requested housing complaints or case files. *Contra* Defs.' Mot. at 10-11. Section 103.330(a) only applies to information "said or done in the course of conciliation." 24 C.F.R. § 103.330(a). This does not apply. Chelsey only asks for the conciliation agreements themselves, not the conciliation conduct. Pls.' Ex. 3 at 15-16 (RFPs 45, 50-51). And conciliation agreements are public anyway, unless an "aggrieved person" requests "nondisclosure." 24 C.F.R. § 103.330(b). Louisville has identified no such person; so the agreements "shall be made public." *Id.* Louisville also does not explain why a protective order or a confidentiality agreement would fail to "protect

8

the confidentiality of any informant or complainant when desired" by them. 24 C.F.R. § 103.204(c). Likewise, Louisville does not explain why redacting personal information would fail to protect people's confidentiality.

The HUD contract does not prohibit production either. This contract only prohibits disclosure of information "while the complaint is open." Goatley Aff. ¶ 14 (citing Ex. 3B at #1723 (§ 26)). So Louisville should, at a minimum, produce all closed housing complaints for Chelsey to evaluate and identify specific case files to produce. Or Louisville could just produce all closed housing case files now. Neither approach jeopardizes any "funding" because the disclosures would adhere to the contract. *Contra* Defs.' Mot. at 11. And production would not risk "public disclosure," *id.*, because Louisville could produce the documents under court order or the parties' confidentiality agreement or after redaction.

### 3. Louisville's law does not apply to or does not prohibit producing responsive documents, and complainants do not have a reasonable expectation of privacy.

Under Kentucky law and by its own terms, Louisville's law does not prohibit Louisville from producing documents responsive to RFPs 45-58 because these documents are either conciliation agreements or publicly filed documents. *See, e.g.*, Metro Ord. § 92.08(B)(7) (publishing conciliation agreements); § 92.09(I) (hearings open to public); Pls.' Mot. at 16 (citing Kentucky Attorney General opinion); Pls.' Ex. 7 at 2 (agreeing "public proceedings … are not subject to the Confidentiality Laws").

For the remaining requests, Chelsey's needs for the documents outweigh Louisville's interest in protecting complainant privacy. *See* Pls.' Mot. at 15-16. To be sure, Executive Director Goatley makes conclusory allegations about the importance of confidentiality in Louisville's enforcement process. Goatley Aff. ¶ 20. But she does not reconcile this with how Louisville undermines that interest. For example, Director Goatley claims that confidentiality "has the effect of encouraging

9

parties accused of discrimination to conciliate complaints against them." *Id.* But Louisville publishes conciliation agreements—including the names of the accused party, the settlement, and other remedial measures—online. Pls.' Ex. 10. How does Louisville encourage respondents to settle by linking their names to discrimination in a public, easily accessible, online report? Louisville doesn't say. Director Goatley also claims that confidentiality "makes some complainants more comfortable" without explaining why a protective order or confidentiality agreement or redaction could not ameliorate these concerns. Goatley Aff. ¶ 20. *See also* Pls.' Ex. 2.

In sum, Louisville's law does not apply to most of Chelsey's requests. And a protective order or confidentiality agreement or redaction would address any remaining confidentiality concerns. Indeed, these alternatives give complainants more privacy than Louisville offers. That in turn justifies disclosure.

### C. Louisville has not proven an undue burden to produce the requested documents.

Requiring Louisville to produce documents responsive to RFPs 40-58 is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The requested documents are central to Chelsey's standing and claims. Pls.' Mot. at 6-13, 19-21. For this reason, the benefits of the documents to Chelsey outweigh Louisville's alleged production burden. *See* Fed. R. Civ. P. 26(b)(1). Plus Louisville waived this argument. *See* Pls.' Mot. at 17.

Even now though, Louisville still presents no evidence to prove any burden. *See, e.g., Brown v. Tax Ease Lien Servicing, LLC*, 2016 WL 10788070, at *8 (W.D. Ky. Oct. 11, 2016) ("[P]arty resisting discovery … bears the burden to show that the discovery sought is disproportionate."). But Louisville (belatedly) tries.

According to Louisville, it cannot easily produce the requested documents because it maintains "hard copy, paper file[s]" and "does not maintain a separate file of complaints." Goatley Aff. ¶¶ 3, 8. But bad filing systems don't create undue

burdens. *See Adamov*, 2015 WL 4512193, at *4, *7 (finding "cumbersome" "recordkeeping" does not impose a burden). In any event, other laws and obligations require Louisville to meticulously track its own records. For example, a Louisville department "[p]rovid[es] systematic records management rules, regulations, procedures, policies and forms for … agencies, consistent with the requirements of KRS 171.410 through 171.40." Metro Ord. § 22.02(A). *See also, e.g.*, 725 KAR 1:061 (governing records retention schedules). And Louisville tracks complaints and case files for its contracts with the EEOC and HUD. *See* Defs.' Ex. 3A at #1671 (§ H.9) (requiring production of "a hard inventory" of charges if requested by the EEOC); *id.* at # 1683 (§§IV-V); Defs.' Ex. 3B at #1721, 1724 ECF No. 64-3 (§§ 18, 27) (listing "[m]aintenance of [r]ecords" and "cause determination[]" criteria). If Louisville already organizes its records to comply with local and state laws and federal contracts, it can surely produce records to Chelsey without too much trouble.

  Louisville also objects that it must "identify the case file by its unique case number" and retrieval "takes 2-4 weeks." Goatley Aff. ¶ 7. But Louisville's spreadsheet (the one Chelsey requests, *see infra* § II) contains the "Complaint No.," making identification easy. Defs.' Mot. at 14. And retrieval duration poses no burden either. *Mitchell v. Universal Music Grp. Inc.*, 2018 WL 1573233, at *3 (W.D. Ky. Mar. 30, 2018) (Lindsay, J.) (overruled in part on other grounds) (rejecting argument that "several weeks of concentrated work" amounted to undue burden). This is especially true here because Louisville has already had almost four months to produce the documents. Bryan D. Neihart's Decl. in Supp. of Pls.' Mot. to Compel ("Decl.") ¶ 3, ECF No. 63-1. Any time crunch now is attributable to Louisville's delay, not the requests.

  Louisville next complains that it must "manually review the file[s] to find the complaint[s]" and "manual[ly] review" files "to segregate confidential files from those which could be disclosed." Goatley Aff. ¶¶ 8, 19. But a "manual review"

11

objection—unsupported by facts like the number of labor hours, the actual number of records to review, or the cost of the review—does not to prove burden. *See, e.g.*, *Burris v. Dodds*, 2019 WL 6251340, at *5 (S.D. Ohio Nov. 22, 2019) (compelling defendants to "manually search the files of inmates" in civil-rights case).

Louisville's "manual review" worry also flounders on Louisville's financial realities. Louisville's former Department of Information Technology (now the Office of Civic Innovation and Technology[5]) is responsible for "[r]etrieving records for agencies … from its records storage center." Metro Ord. § 22.02(H). Likewise, Louisville's Office of Management and Budget "[e]ffectively maintain[s] archived Metro records" and ensures "[r]ecords [c]ompliance." *Budget*, 186. Together, these offices *have a budget of over $60 million* and employ hundreds of employees, including several archival specialists. *Id.* at 188-91, 206-08. Surely Louisville can spend a few dollars of that budget on retrieving a few documents.

Louisville can also reduce any alleged burden in many ways. For one thing, Louisville could produce the entire case file for employment, housing, and public accommodations under a confidentiality agreement or protective order. This would avoid manual review.

Or Louisville could produce (a) all case files for public-accommodations complaints (regardless of resolution) under a confidentiality agreement or protective order while also producing (b) all closed housing case files and (c) all case files of employment complaints that went to a hearing. Doing so would reduce manual review of employment cases because the "vast majority of complaints … are resolved without any public hearing or trial." Goatley Aff. ¶ 5. Louisville could also quickly identify which housing cases closed and which employment cases proceeded to a hearing because Louisville's spreadsheets contain information on "Hearing

---

[5] *See* Louisville Metro Government, *Approved Executive Budget for 2019-2020* (*Budget*) 75 n.1 (2019), https://bit.ly/3rD7JFR.

12

Date/Outcome of Hearing." Defs.' Mot. at 14. And doing this would avoid any confidentiality concerns because (a) Louisville's law does not prohibit a federal judge from compelling production of public-accommodations case files, (b) the HUD regulations and contracts allow disclosure of closed case files, and (c) the EEOC laws, regulations, and contracts permit disclosure of documents related to a hearing. *See supra* § I.B.

Lastly, Louisville could stipulate that it will not rely on past specific incidents of discrimination, legislative testimony about past discrimination, or any other history of discrimination other than the statistics in its publicly available document and spreadsheets (if produced). Although this is not ideal (because this information is still relevant to Chelsey's case), Louisville probably would not agree to this anyway. And for good reason. The law's history and enforcement are important for Louisville's defenses. But if Louisville intends to use this history as a sword, then it cannot raise undue burden as shield to avoid producing documents that allow Chelsey to counter Louisville's arguments. *See, e.g.*, Pls.' Mot. at 11-13.

## II. Louisville has not shown good cause to withhold spreadsheets containing relevant data responsive to RFP numbers 1-39.

Chelsey requests that Louisville produce the "spreadsheets used by HRC to track open and closed cases."[6] These spreadsheets are relevant to Chelsey's standing and her claims. *See* Pls.' Mot. at 19. Louisville first objected to RFPs 1-39 based on overbreadth, undue burden, relevance, and "confidentiality laws." Pls.' Ex. 3 at 3. But Louisville waived its boilerplate overbreadth, undue burden, and relevance objections. *See* Pls.' Mot. at 17 (citing cases on this point for another discovery issue). Louisville does not press these objections now anyway. So Louisville withholds the spreadsheets based solely on "confidentiality laws." But the

---

[6] Chelsey is not currently asking Louisville to produce the other withheld reports. *See* Pls.' Ex. 3 at 3.

13

solution here is easy: Louisville could produce the spreadsheets after redacting "the identity of charging parties, respondents, or persons supplying" information. 29 C.F.R. § 1601.22. Louisville already did this for EEOC data. *See* Defs.' Mot. at 13-14. Louisville offers no reason why it can't do the same for the spreadsheet.

### III. Louisville has inadequately responded to Interrogatories 15-17 by not identifying material facts about alternatives it considered while passing and applying its law.

Interrogatories 15-17 ask Louisville to identify the alternatives it considered before passing its law. Pls.' Ex. 4 at 5-6. At first, Louisville did not respond to this part of the question at all. *Id.* But now, Louisville claims it has "adequately responded" because it produced "transcripts and minutes of those legislative sessions" where it allegedly considered alternatives. Defs.' Mot. at 15.

But Louisville does not adequately respond to interrogatory requests asking for material facts by pointing to hundreds of pages filled with irrelevant facts. "A party that attempts to rely upon Rule 33(d) with a mere general reference to a mass of documents or records has not adequately responded." *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514 (W.D. Ky. 2010). Louisville's production of the "legislative sessions" includes hundreds of pages of hearing testimony and other evidence and may also include many news articles. Decl. ¶¶ 19, 21. Louisville also claims a compelling interest to enforce its law against Chelsey based in part on "LOU METRO 00001-1166." Pls.' Ex. 4 at 4. Given this volume, Louisville should be compelled to "specify where in the records the answer can be found." *Advantage Indus. Sys., LLC v. Aleris Rolled Prod., Inc.*, 2020 WL 4432415, at *8 (W.D. Ky. July 31, 2020) (requiring supplemental interrogatory responses for production of "131 documents"). *See also Mullins*, 267 F.R.D. at 516 (insufficient "passing reference to the claims file" containing "1,300 pages").

14

And contrary to Louisville's suggestion, Louisville does indeed know about the requested information. *Contra* Defs.' Mot. at 15 (suggesting that it cannot provide discovery about alternatives because "[n]one of Defendants were legislators at the time the" law passed). After all, Interrogatories 15-17 ask Louisville—the government entity, not individual council members—questions about material facts related to Louisville's own law and defenses. Such questions are properly addressed to governmental entities like Louisville. *See* Pls.' Mot. at 20 (citing cases requiring government to prove it considered alternatives). Louisville is also in a much better position than Chelsey to answer these interrogatories because the information relates to Louisville's strict-scrutiny defense. *See* Pls.' Mot. at 19-21. *Cf. In re Savitt/Adler Litig.*, 176 F.R.D. 44, 50 (N.D.N.Y. 1997) (plaintiffs better suited to identify records because the burden bore "a direct relationship to the extent of the allegations made" in plaintiffs' complaint).

And Louisville bears the burden to show it pondered alternatives. Pls.' Mot. at 19-21. So Louisville must identify where in the legislative record (or elsewhere) it considered other options and what alternatives it considered. If Louisville did not consider any alternatives, then it should be required to respond to Interrogatories 15-17 by conceding as much.

## Conclusion

Chelsey requests that this Court deny Louisville's motion for protective order. Chelsey further requests that this Court grant Chelsey's motion and compel Louisville to produce the requested documents. Pls.' Mot. at 5 (listing four topics of requested documents). Alternatively, as to Chelsey's second topic of documents (housing and employment discrimination complaints), Chelsey requests that this Court compel Louisville to produce a combination of documents consistent with some or all of the options Chelsey suggests in this response.

15

Respectfully submitted this 12th day of March, 2021.

By: s/ Bryan D. Neihart

| | |
|---|---|
| Jonathan A. Scruggs | Joshua D. Hershberger |
| AZ Bar No. 030505* | KY Bar No. 94421 |
| Katherine L. Anderson | **Hershberger Law Office** |
| AZ Bar No. 033104* | P.O. Box 233 |
| Bryan D. Neihart | Hanover, IN 47243 |
| AZ Bar No. 035937* | Telephone: (812) 274-0441 |
| **Alliance Defending Freedom** | josh@hlo.legal |
| 15100 N. 90th Street | |
| Scottsdale, AZ  85260 | *Attorneys for Plaintiffs* |
| Telephone: (480) 444-0020 | |
| jscruggs@adflegal.org | |
| kanderson@adflegal.org | |
| bneihart@adflegal.org | |

David A. Cortman
GA Bar No. 188810*
**Alliance Defending Freedom**
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@adflegal.org

* Admission *Pro Hac Vice*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2021, I electronically filed the foregoing document with the Clerk of Court and that the foregoing document will be served via the CM/ECF system on all counsel of record.

By: s/ Bryan D. Neihart

Bryan D. Neihart
AZ Bar No. 035937*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: 480-444-0020
bneihart@ADFlegal.org

*Attorney for Plaintiffs*
* Admitted *Pro Hac Vice*