# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **Chelsey Nelson Photography LLC** and **Chelsey Nelson,**<br><br>Plaintiffs,<br><br>v.<br><br>**Louisville/Jefferson County Metro Government; Louisville Metro Human Relations Commission-Enforcement; Louisville Metro Human Relations Commission-Advocacy; Verná Goatley,** in her official capacity as Executive Director of the Louisville Metro Human Relations Commission-Enforcement; and **Marie Dever, Kevin Delahanty, Charles Lanier, Sr., Leslie Faust, William Sutter, Ibrahim Syed,** and **Leonard Thomas,** in their official capacities as members of the Louisville Metro Human Relations Commission-Enforcement,<br><br>Defendants. | Case No. 3:19-cv-00851-BJB-CHL<br><br>Plaintiffs' Supplement to Their Motion to Compel Discovery and Response to Defendants' Motion for Protective Order |

## Introduction

About three months ago, Plaintiffs Chelsey Nelson Photography and Chelsey Nelson (collectively Chelsey) moved to compel Louisville to produce certain documents and information relevant to show whether Louisville could use its public accommodation law to force Chelsey to speak messages about marriage she disagreed with. *See* Pls.' Mot. to Compel Discovery ("MtC"), ECF No. 63. Now, after depositions last week, Louisville has doubled down on defending its law by citing past allegations of discrimination, past applications of its law, and an alleged compelling interest to enforce its law. *See id.* at 2-3, 6-13, 19-21, ECF No. 63 (moving to compel and outlining Louisville's arguments). During these depositions, Louisville disclosed that it will justify its alleged need to regulate Chelsey by relying on discrimination complaints from the 1980's and all past employment, housing, and public accommodations complaints. Ex. 7; Excerpts of 30(b)(6) Deposition, attached to Motion to Supplement as Ex. 8, at 182-83, 187-92, 212-13, 228-30. Meanwhile, Louisville has only produced one case file and no comprehensive statistics about these past incidents. And none of Louisville's witnesses could answer questions about past cases or statistics because they had not reviewed any case files or statistics.

Louisville should not be allowed to play a shell game by citing enforcement history and past complaints to defend against Chelsey's claims while denying Chelsey any access to this information. As the recent depositions show, Chelsey's earlier motion to compel should be granted and Chelsey should be permitted to re-depose Louisville's 30(b)(6) witness about Louisville's case files, enforcement statistics, and supplemental discovery responses.

1

## Supplemental Background

The following background supplements the information Chelsey provided in her motion to compel. *See* MtC at 1-4.

This Court set a new fact-discovery deadline on May 31, 2021, *see* Order, ECF No. 75, and Chelsey scheduled to depose Louisville's witnesses in late May to meet this deadline. In early May, Chelsey sent a Federal Rule of Civil Procedure 30(b)(6) ("30(b)(6)") deposition notice to Louisville and set that deposition for May 25, 2021. Bryan D. Neihart's Decl. in Supp. of Pls.' Suppl. to Their Mot. to Compel and Resp. to Defs.' Mot. for Protective Order ("Decl.") ¶ 6. On May 17, Chelsey sent her final 30(b)(6) deposition notice. *Id.* at ¶ 7.

But well before that final notice, Chelsey had already sent a similar 30(b)(6) notice to Louisville in February, two in March, and one in April to give Louisville time to review documents and prepare its witness.[1] *Id.* at ¶ 3-5. Because Louisville defends its law by citing to past incidents of discrimination, past applications of its law, and an alleged compelling interest in enforcing its law, *see* MtC at 1-3, Chelsey's 30(b)(6) notices addressed these topics. *See* Exs. 2, 6. Louisville never objected to any of these 30(b)(6) topics. Decl. ¶ 9.

On May 25, Chelsey's counsel deposed Louisville's 30(b)(6) witness, Kendall Boyd, the former Executive Director of Louisville Human Relations Commission's ("Commission"). Ex. 8. But Boyd did not review any case files, meeting minutes, or annual reports published by the Commission for his deposition. *Id.* at 14. He also did not review any of the case files for the noticed cases. *Id.* at 225-26 (asking about preparation for Topic 13). In total, he spent about "[f]ive or six hours" preparing for his deposition—including flipping through almost 1,200 pages of legislative history—at night after "watching baseball or something." *Id.* at 14, 16.

---

[1] The February and final notice contained mostly the same topics. *Compare* Ex. 2 *with* Ex. 6.

Chelsey's counsel also deposed Boyd the next day in his personal capacity and then deposed Verná Goatley—the Commission's current Executive Director—the next day on May 27. But when Chelsey's counsel asked Ms. Goatley questions about her affidavit—the affidavit she signed to support Louisville's motion for a protective order—she admitted she was not personally aware of most of the things she swore to. *See* Excerpts of Verná Goatley Deposition, attached to Motion to Supplement as Ex. 10, at 123-32; *infra* § II(B) (detailing this lack of knowledge).

Meanwhile, at the deposition two days before, Louisville's 30(b)(6) witness testified that Louisville relies on "the continuous complaints we receive in our office" and "[a]ny discrimination, race-based or otherwise" as a basis for applying Louisville's law against Chelsey. Ex. 8 at 187-92; *See also id.* at 182-83. Information about these complaints were "[a]bsolutely" contained in the case files. *Id.* at 191. Louisville's 30(b)(6) witness also testified that Louisville is "relying on discrimination that occurs in those areas, whether it's employment, housing, … or public accommodation" for its compelling interest. *Id.* at 212-13. And at the tail end of the 30(b)(6) witness's deposition, Louisville stated that its alleged compelling interest is also supported by Commission reports from 1981-1993, which reference employment, housing, and public accommodations cases. *Id.* at 230. *See also* Ex. 7 (excerpts of reports). Louisville produced these reports a few days before the 30(b)(6) depositions. Decl. ¶ 10.

But none of Louisville's witnesses could answer questions about enforcement statistics, past applications of Louisville's law, past incidents of discrimination, or Louisville's alleged compelling interest without looking at documents with these statistics or case files. In other words, the witnesses needed to see the documents Chelsey asked Louisville to produce. *See* MtC at 4 (requesting Louisville to produce case files and statistics referenced in RFP's 1-58).

3

Louisville's witnesses also could not answer questions about statistics without seeing documents containing those statistics. Chelsey asked Louisville's 30(b)(6) witness about enforcement statistics from 2004 to the present, including complaints alleging sexual-orientation discrimination against public accommodations. Ex. 8 at 176-77. The witness didn't know them. To answer, he would "have to have somebody pull all that together to give you a total number." *Id.* at 177. The witness also didn't know how many complaints had been filed "this year" or "last year." *Id.* at 188-89. He said the "new director" (meaning Ms. Goatley) "would know that information." *Id.* at 188. But Ms. Goatley did not know that information either—she "would have to look that up." Ex. 10 at 27, 32, 137.

Louisville's witnesses also could not answer questions about previous incidents of discrimination or how Louisville applied its law without reviewing the case files. For example, Louisville's 30(b)(6) witness did not know information about conciliation agreements published in the Commission's public annual reports without reviewing "the documents inside the file itself." Ex. 8 at 151-54. *See also id.* at 154-58 ("I wouldn't know anything about that particular cause of action without having to look at the file as to how it originated or what the final conciliation agreement was."). And Louisville's 30(b)(6) witness could not recall information from two sexual-orientation complaints that proceeded to a hearing "[w]ithout having the file in front of me." *Id.* at 138-41[2].

During his personal deposition, Mr. Boyd did not know any specifics about conciliation agreements that he approved, and he did not even know if he had ever signed off on agreements that involved public accommodations. Excerpts of Kendall Boyd Deposition, attached to Motion to Supplement as Ex. 9, at 50-52. And he could not recall any specific instances when he made reasonable-cause or no-reasonable-

---

[2] To comply with parties' confidentiality agreement, we have redacted certain information in this deposition transcript.

4

cause determinations in cases involving employment or public accommodations "without going back and reviewing any and all case files." Ex. 9 at 72. Mr. Boyd testified that he would need to review the case files to explain the reasoning behind conciliation agreements and reasonable-cause determinations. *Id.* at 72-74.

Invoking similar responses, Ms. Goatley did not know information about when she dismissed complaints, who filed particular complaints with the Commission during her tenure, why she approved conciliations, or when she issued probable-cause determinations. Ex. 10 at 36, 78-88, 90-91. To recall this information, Ms. Goatley would have to "look at the document" or "review what I have signed off on." *Id.* at 88, 91.

And even if the witnesses might have known about previous discrimination cases, they were often instructed not to answer due to "confidentiality restrictions." Ex. 8 at 152-53. *See also* Ex. 9 at 51, 123-25; Ex. 10 at 78-83.

The witnesses were even confused about the status of particular cases without the records in front of them. For example, in a public accommodations complaint filed under Louisville's law against a restaurant (Scooter's Triple B's), Louisville's 30(b)(6) witness said "[y]ou would have to ask the [current Commission] where they are on that." Ex. 8 at 147. Then during his personal deposition, Boyd said he did not "know what ultimately came out from that complaint" even though he brought the incident to the enforcement board's attention when he was executive director, Ex. 9 at 119. But Ms. Goatley said she did not "know anything … about the case." Ex. 10 at 101. She said that the complaint would have been "Mr. Boyd's responsibility." Ex. 10 at 101-10.

## Certificate of Conferral

The parties' counsel made good faith efforts to resolve this dispute. MtC at 4 (detailing attempts to resolve the disputes). Louisville still objects to Chelsey's

5

motion to compel. And Louisville currently objects to re-deposing its 30(b)(6) witness (although Louisville indicated its position may be influenced by whether it is required to produce the documents and information Chelsey requests).

## Argument

Louisville should be compelled to produce the case files and statistics Chelsey requested. Then Chelsey should be able to re-depose Louisville's 30(b)(6) witness about these documents. To effectively litigate her claims, Chelsey must have access to and question Louisville officials about the very documents Louisville is relying on for its defense.

**I.   Louisville's 30(b)(6) witness testimony and its reliance on annual reports from the 1980's proves Louisville should be compelled to produce documents responsive to RFP numbers 1-58.**

Since Chelsey moved to compel and responded to Louisville's protective order, it has become even more apparent that the documents responsive to RFP numbers 1-58 (case files and statistics) are (A) relevant and (B) not overly burdensome to produce. *See* MtC at 5-13, 17-19 (making this point); Pls.' Resp. to Defs.' Mot. for Protective Order ("MPO") at 2-4, 10-14, ECF No. 65 (same). And "confidentiality laws" do not give Louisville an across-the-board excuse to produce nothing, as Chelsey has already explained. *See* MtC at 14-16 (making this point and providing alternatives); Pls.' Resp. to MPO at 4-10 (same).

**A.   RFP numbers 1-58 are relevant because Louisville relies on all past discrimination complaints to support its alleged compelling interest in this case.**

Louisville's 30(b)(6) witness testified that all past complaints of discrimination in employment, housing, and public accommodations justify its alleged compelling interest in applying its law to Chelsey. *See* Ex. 8 at 182-83, 187-92, 212-13. The information about past complaints is "[a]bsolutely" in Louisville's

6

case files. *Id.* at 191. And Louisville now relies on statistics and discrimination complaints from the 1980's and 1990's to support its compelling interest too. *Id.* at 230; Ex. 7. So under Louisville's own legal theory, Louisville believes that past discrimination complaints are relevant. Otherwise, Louisville would not rely on them to support its interest.

But none of the witnesses could answer questions about these past complaints or about statistics about complaints without reviewing the case files or the actual statistics. *See* Ex. 8 at 138-41, 145, 151-58, 177; Ex. 9 at 50-52, 72-74; Ex. 10 at 6, 27, 32, 78-88, 90-91, 137. So Chelsey needs these case files and statistics to test Louisville's compelling-interest argument, among other reasons. *See* MtC at 6-13. Louisville cannot rely on all past complaints of discrimination to support its compelling interest, then hide documents with that information, and then offer witnesses who do not know the specifics about those documents or the information contained in those documents.

### B. RFP numbers 1-58 are not overly burdensome because Louisville depends on cases and information from the 1980's.

Chelsey's request for case files and statistics from the 2000's is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). *See* MtC at 6-13, 19-21; Pls.' Resp. to MPO at 10-13. This is now especially true because Louisville relies on all past complaints of discrimination (including complaints more than 40 years old) to support its alleged compelling interest in applying its law to Chelsey. Ex. 7; Ex. 8 at 182-83, 187-92, 212-13, 228-30.

Plus, Louisville has failed to prove that Chelsey's request is burdensome. Pls.' Resp. to MPO at 10-13. To try to prove its burden, Louisville cited Ms. Goatley's affidavit. *See id.* This failed to show an undue burden then. *Id.* But to make matters worse now, Ms. Goatley has admitted in her deposition that she has never knew most of the things she swore to in her affidavit. For example, Ms. Goatley admitted

7

she has never knew how the Commission has organized its case files, what documents the Commission includes in its case files, what documents are organized in paper versus electronic form, how archives organizes its files, or how long documents remain at the Commission before being sent to archives. Ex. 10 at 124-27, 131-33. What she did know contradicted her affidavit. Ms. Goatley testified that "[i]t could take a couple of days to a couple of weeks" to retrieve documents from archives, *id.* at 127, not "2-4 weeks," Verná Goatley Affidavit ¶ 7. In short, Louisville cannot rely on this deficient affidavit to demonstrate burden. *Cf. France v. Lucas*, 836 F.R.D. 612, 622 (6th Cir. 2016) (explaining that under the sham affidavit doctrine, in the summary judgment context, affidavits directly contradicting sworn testimony should be stricken). And Louisville has not offered any other evidence of burden. *See* Pls.' Resp. to MPO at 10-13. *See also Little Hocking Water Assn., Inc. v. E.I. Du Pont Nemours & Co.*, 2013 WL 608154, at *19 (S.D. Ohio Feb. 19, 2013) ("Where there is no evidence that searching for responsive documents in the files of the P & S group imposes a burden on DuPont, the Court cannot conclude, under these circumstances, that DuPont has fulfilled its discovery obligations.").

## II. Chelsey should be allowed to re-depose Louisville's 30(b)(6) on the limited issue of the content of RFP numbers 1-58 if produced.

To comply with the new fact-discovery deadline, Chelsey deposed Louisville's witnesses without the documents she requested. If Louisville is required to produce these documents, Chelsey requests an opportunity to re-depose Louisville's 30(b)(6) witness after reviewing those documents. The court "must grant leave to [reopen the deposition] to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2). And re-deposing Louisville's 30(b)(6) witness is appropriate here because witnesses could not answer (or were instructed not to answer) questions about enforcement statistics, past discrimination complaints, and past application of

Louisville's law. *See Troutman v. Louisville Metro Dep't of Corr.*, 2018 WL 3041079, at *4-5 (W.D. Ky. June 19, 2018) (Lindsay, J.) (permitting re-deposition of a witness on certain unanswered topics). Courts routinely grant requests to re-depose witnesses after more documents are produced after the original deposition. *See Builders Insulation of Tennessee, LLC v. Southern Energy Solutions*, 2020 WL 265297, *9 (W.D. Tenn. Jan. 17, 2020); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 389 (W.D. Tenn. 1999); *ADT Services AG v. Brady,* 2012 WL 12828182, *2 (W.D. Tenn. Jan. 20, 2012); *Laethem Equipment Co. v. Deere and Co.*, 2007 WL 2897848, *10 (E.D. Mich. Sept. 28, 2007); *Disney v. State Farm Life and Cas. Co.*, 2004 WL 784509, *2 (W.D. Tenn. Feb. 26, 2004). Chelsey should be given the same chance here.

## Conclusion

For the reasons stated in Chelsey's previously filed motion and response and the additional reasons in this supplement, Chelsey respectfully asks this Court to order Louisville to produce the requested case files, statistics, and information and to make a 30(b)(6) witness knowledgeable about documents produced available for re-deposition.

Respectfully submitted this 1st day of June, 2021.

By: s/ Bryan D. Neihart

| | |
|---|---|
| Jonathan A. Scruggs<br>AZ Bar No. 030505*<br>Katherine L. Anderson<br>AZ Bar No. 033104*<br>Bryan D. Neihart<br>AZ Bar No. 035937*<br>**Alliance Defending Freedom**<br>15100 N. 90th Street<br>Scottsdale, AZ  85260<br>Telephone: (480) 444-0020<br>jscruggs@adflegal.org<br>kanderson@adflegal.org<br>bneihart@adflegal.org | Joshua D. Hershberger<br>KY Bar No. 94421<br>**Hershberger Law Office**<br>P.O. Box 233<br>Hanover, IN 47243<br>Telephone: (812) 274-0441<br>josh@hlo.legal<br><br>*Attorneys for Plaintiffs* |

Hailey M. Vrdolyak
IL Bar No. 6333515*
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
hvrdolyak@adflegal.org

David A. Cortman
GA Bar No. 188810*
**Alliance Defending Freedom**
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@adflegal.org

* Admission *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 1, 2021, I electronically filed the foregoing document with the Clerk of Court and that the foregoing document will be served via the CM/ECF system on all counsel of record.

      By: s/ Bryan D. Neihart

      Bryan D. Neihart
      AZ Bar No. 035937*
      Alliance Defending Freedom
      15100 N. 90th Street
      Scottsdale, AZ 85260
      Telephone: 480-444-0020
      bneihart@ADFlegal.org

      *Attorney for Plaintiffs*
      * Admitted *Pro Hac Vice*