IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**Chelsey Nelson Photography LLC,**
and **Chelsey Nelson,**

              Plaintiffs,

   **v.**

**Louisville/Jefferson County Metro
Government; Louisville Metro
Human Relations Commission-
Enforcement; Louisville Metro
Human Relations Commission-
Advocacy; Verná Goatley,** in her
official capacity as Executive Director of
the Louisville Metro Human Relations
Commission-Enforcement; and **Marie
Dever, Kevin Delahanty, Charles
Lanier, Sr., Leslie Faust, William
Sutter, Ibrahim Syed,** and **Leonard
Thomas,** in their official capacities as
members of the Louisville Metro Human
Relations Commission-Enforcement,

              Defendants.

**Case No. 3:19-cv-00851-BJB-CHL**

**Plaintiffs' Brief in Support of
Their Summary Judgment Motion**

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

Introduction ............................................................................................................... 1

Summary Statement of Facts .................................................................................... 1

Argument ................................................................................................................... 5

I.    The Accommodations Provision violates the First Amendment because it compels Chelsey to speak and infringes her editorial freedom ................... 6

    A.    Chelsey engages in protected speech ...................................................... 7

    B.    The Accommodations Provision compels Chelsey to speak ................... 8

    C.    The Accommodations Provision compels Chelsey to speak messages she disagrees with. ............................................................... 10

    D.    Compelling Chelsey to speak creates a dangerous and limitless principle ............................................................................................... 12

II.    The Accommodations Provision violates the First Amendment because it compels Chelsey to speak based on content and viewpoint ....................... 13

III.    The Publication Provision violates the First Amendment because it restricts Chelsey's speech based on content and viewpoint ........................... 14

IV.    The Accommodations and Publication Provisions violate the First Amendment because they are not neutral nor generally applicable and restrict a hybrid of historically protected rights ............................................... 15

V.    The Accommodations Provision violates the First Amendment because it compels Chelsey' to participate in and celebrate religious ceremonies she objects to ................................................................................................ 18

VI.    The Accommodations and Publication Provisions violates KRFRA because it substantially burdens Chelsey's religious belief ............................ 19

VII.    The Accommodations and Publication Provisions fail strict scrutiny ........... 20

VIII.    The Unwelcome Clause facially violates the First and Fourteenth Amendments because it is overbroad, vague, and allows unbridled discretion. .............................................................................................. 24

Conclusion .............................................................................................................. 25

# Table of Authorities

## **Cases**

*303 Creative LLC v. Elenis,*
    6 F.4th 1160 (10th Cir. 2021) .................................................................. 14, 25

*ACLU v. McCreary County,*
    607 F.3d 439 (6th Cir. 2010) .......................................................................... 6

*Anderson v. City of Hermosa Beach,*
    621 F.3d 1051 (9th Cir. 2010) ....................................................................... 7

*Apilado v. North American Gay Amateur Athletic Alliance,*
    792 F. Supp. 2d 1151 (W.D. Wash. 2011) ................................................. 12

*Ashcroft v. ACLU,*
    542 U.S. 656 (2004) ...................................................................................... 22

*Belle Maer Harbor v. Charter Township of Harrison,*
    170 F.3d 553 (6th Cir. 1999) ....................................................................... 25

*Bible Believers v. Wayne County,*
    805 F.3d 228 (6th Cir. 2015) .................................................................. 14, 15

*Billups v. City of Charleston,*
    961 F.3d 673 (4th Cir. 2020) ....................................................................... 23

*Brown v. Entertainment Merchants Association,*
    564 U.S. 786 (2011) ............................................................................ 7, 21, 22

*Brush & Nib Studio, LC v. City of Phoenix,*
    448 P.3d 890 (Ariz. 2019) ...................................................................... 10, 11

*Brush & Nib Studio, LC v. City of Phoenix,*
    418 P.3d 426 (Ariz. Ct. App. 2019) ............................................................ 25

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) ................................................................................ 15, 18

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,*
    6 F.4th 1247 (11th Cir. 2021) ....................................................................... 9

*Cressman v. Thompson,*
    798 F.3d 938 (10th Cir. 2015) ...................................................................... 6

*Employment Division, Department of Human Resources of Oregon v. Smith*,
    494 U.S. 872 (1990) ................................................................... 18

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123 (1992) ................................................................... 24

*Freedom Watch, Inc. v. Google Inc.*,
    816 F. App'x 497 (D.C. Cir. 2020) ........................................... 26

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) .......................................................... 16, 21

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ................................................................... 20

*Haight v. Thompson*,
    763 F.3d 554 (6th Cir. 2014) .................................................... 22

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ................................................................... 20

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) ....................................................... 6, 9, 10, 12

*Janny v. Gomez*,
    -- F. 4th --, 2021 WL 3439009 (10th Cir. Aug. 6, 2021) .................... 18

*Janus v. American Federation of State, County, & Municipal Employees,
Council 31*,
    138 S. Ct. 2448 (2018) .............................................................. 11

*Kaahumanu v. Hawaii*,
    682 F.3d 789 (9th Cir. 2012) .................................................... 18

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ................................................................... 24

*Lee v. Weisman*,
    505 U.S. 577 (1992) ................................................................... 18

*Marshall v. Duncan*,
    2010 WL 1418736 (W.D. Ky. Apr. 6, 2010) .............................. 9

*Maryville Baptist Church, Inc. v. Beshear*,
    957 F.3d 610 (6th Cir. 2020) .................................................... 19

*Masterpiece Cakeshop, Limited v. Colorado Civil Rights Commission,*
  138 S. Ct. 1719 (2018) ...................................................................... 18

*Matal v. Tam,*
  137 S. Ct. 1744 (2017) ...................................................................... 15

*McCullen v. Coakley,*
  573 U.S. 494 (2014) .......................................................................... 22

*Miami Herald Publishing Company v. Tornillo,*
  418 U.S. 241 (1974) ....................................................................... 6, 9

*Monclova Christian Academy v. Toledo-Lucas County Health Department,*
  984 F.3d 477 (6th Cir. 2020) ...................................................... 16, 18

*National Institute of Family & Life Advocates v. Becerra,*
  138 S. Ct. 2361 (2018) ...................................................................... 13

*Obergefell v. Hodges,*
  135 S. Ct. 2584 (2015) ...................................................................... 11

*Pacific Gas & Electric Co. v. Public Utilities Commission of California,*
  475 U.S. 1 (1986) .......................................................................... 6, 14

*Papachristou v. City of Jacksonville,*
  405 U.S. 156 (1972) .......................................................................... 25

*Prater v. City of Burnside,*
  289 F.3d 417 (6th Cir. 2002) ............................................................ 18

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ............................................................... 13, 20, 21

*Reno v. ACLU,*
  521 U.S. 844 (1997) ............................................................................ 7

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
  487 U.S. 781 (1988) .................................................................... 10, 13

*Rosenberger v. Rector & Visitors of University of Virginia,*
  515 U.S. 819 (1995) .......................................................................... 15

*Saieg v. City of Dearborn,*
  641 F.3d 727 (6th Cir. 2011) .......................................................... 5, 6

*Tandon v. Newsom,*
  141 S. Ct. 1294 (2021) ................................................................ 16, 17

*Telescope Media Group v. Lucero*,
  936 F.3d 740 (8th Cir. 2019) ............................................................ 10, 11, 14, 18

*Turner Broadcasting System, Inc. v. F.C.C.*,
  512 U.S. 622 (1994) ...................................................................... 14

*United States v. Playboy Entertainment Group, Inc.*,
  529 U.S. 803 (2000) ...................................................................... 23

*United States v. Stevens*,
  559 U.S. 460 (2010) ...................................................................... 25

*United Specialty Ins. Co. v. Cole's Place, Inc.*,
  936 F.3d 386 (6th Cir. 2019) ............................................................ 6

*Wedgewood Limited Partnership I v. Township Of Liberty*,
  610 F.3d 340 (6th Cir. 2010) ............................................................ 6

## Rules

Federal Rule of Civil Procedure 56 ................................................................ 5

## Statutes

29 C.F.R. § 1604.2 .................................................................................... 23

42 U.S.C. § 2000a(b) ................................................................................ 23, 24

42 U.S.C. § 2000e– 2(e)(1) ........................................................................ 23

Ann Arbor, Michigan Code of Ordinances § 9:151 ........................................ 12

Colorado Revised Statutes § 24-34-601 .................................................... 23

Florida Statute § 760.02(11)...................................................................... 24

Kentucky Revised Statutes § 446.350.......................................................... 19, 20

Lansing, Michigan Code of Ordinances § 297.02 ........................................ 12

Lansing, Michigan Code of Ordinances § 297.04 ........................................ 12

Madison, Wisconsin Code of Ordinances § 39.03 ........................................ 12

Louisville Metro Ordinance § 37.65 .......................................................... 23

Louisville Metro Ordinance § 92.01 ............................................................................ 16

Louisville Metro Ordinance § 92.02 ...................................................................... 16, 17

Louisville Metro Ordinance § 92.04 ............................................................................ 22

Louisville Metro Ordinance § 92.05 .............................................................. 4, 5, 8, 17

Louisville Metro Ordinance § 92.06 ...................................................................... 22, 23

Louisville Metro Ordinance § 92.07 ............................................................................ 23

Louisville Metro Ordinance § 92.08 .............................................................................. 5

Louisville Metro Ordinance § 92.12 .............................................................................. 5

Mississippi Code § 11-62-5 ......................................................................................... 23

Seattle, Washington Municipal Code § 14.06.020 ..................................................... 12

Seattle, Washington Municipal Code § 14.06.030 ..................................................... 12

## Other Authorities

Susan Selasky, *Lesbian baker in Detroit got homophobic cake order: Why she
        made it anyway*, Detroit Free Press (Aug. 13, 2020),
        http://bit.ly/freeparticle ................................................................................. 12

Brief for Nebraska, et. al. as Amici Curiae in Support of Plaintiffs at 16,
        *Emilee Carpenter Photography LLC v. James*, Case No. 6:21-cv-06303
        (W.D.N.Y. June 4, 2021) ......................................................................... 21, 23

## Introduction

Plaintiff Chelsey Nelson is a Christian photographer, editor, and blogger who runs Chelsey Nelson Photography, LLC, which creates photographs and blogs about weddings and businesses. She's happy to work with everyone. She just can't create works promoting certain messages that violate her beliefs for anyone. But through its public-accommodations law, Louisville is trying to force Chelsey to offer and create photographs and blogs celebrating ceremonies she objects to—same-sex wedding ceremonies. And Louisville does so via threats of injunctions, compliance reports, and uncapped fines that would cost Chelsey her studio.

Louisville has it wrong. This Court granted Chelsey a preliminary injunction after finding that Louisville tramples the First Amendment when it compels speech and silences dissent. *See* Order 2, ECF No. 47. Since then, Chelsey has posted statements explaining why she cannot create certain photographs or blogs and continued to operate her studio. Louisville has no evidence that this has caused any problems. The facts have only become clearer that Louisville's law violates Chelsey's rights under the First Amendment and Kentucky's Religious Freedom Restoration Act (KRFRA). So Chelsey asks this Court to stop Louisville from threatening and chilling her freedoms so that she can speak only messages she believes in and participate in only those ceremonies consistent with her faith.

## Summary Statement of Facts

*Chelsey and her studio.* Chelsey is a Christian whose religious beliefs "shape every aspect of [her] life." Chelsey Nelson's Decl. in Supp. of Pls.' Mot. for Summ. J. (Decl.) ¶¶ 2-4. That includes her photography.

Chelsey's passion for photography began when she was a child. *Id.* at ¶¶ 13-21. As an adult, Chelsey started her studio to fulfill her passion for storytelling and to publicly promote images and ideas she values. *Id.* at ¶¶ 75-99. Chelsey began her

studio to tell positive stories about engagements and weddings between one man and one woman. *Id.* Chelsey offers two types of services. *Id.* at ¶ 100.

First, she offers wedding-celebration services—creating and editing photographs and writing blogs that promote engagements and weddings. *Id.* at ¶¶ 151-90; App. to Pls.' Br. in Support of Summ. J. Mot. (App.) 32-80, 200-75 (photograph and blog examples). Whenever Chelsey photographs a wedding, she attends and participates in the wedding by witnessing the union of the bride and groom, obeying the officiant's instructions, bowing her head in prayer, and praying along. Decl. ¶¶ 167-72. Chelsey always bundles the engagement, wedding, and reception together and always blogs about these events. *Id.* at ¶¶ 268-71; App. 110. Chelsey's blog is vital to her business because it allows her to tell a unique story about the couple's engagement or wedding, to publicly encourage her clients, to publicly promote her services to a wider audience, and to advocate for her beliefs about marriage. Decl. ¶¶ 272-94. Chelsey's blog also provides her clients with a unique service by allowing them to associate with her, giving them easy access to treasured moments, and offering a convenient way for them to quickly share those images and stories. *Id.* at ¶¶ 284-90. Chelsey sometimes posts her photographs and writes comments on her studio's social media sites. *Id.* at ¶¶ 295-98.

Second, she offers boutique-editing services—editing other photographers' photographs promoting weddings and other content. *Id.* at ¶¶ 191-207; App. 118.

*Chelsey's editorial discretion.* Chelsey uses her artistic judgment to take photographs, to edit those photographs, and to write blogs to tell positive stories about marriages between one man and one woman, to convey the beauty of such marriages, and to present the subject of her photographs in the best light possible. Decl. ¶¶ 151-272 (explaining artistic process for photographing, editing, and blogging); App. 401-10 (same for photographing and editing).

Each of these artistic expressions—photographing, editing, and blogging—promotes uplifting stories about marriage. Decl. ¶¶ 151, 195-96.  Chelsey ensures she has final say over all her artwork by retaining "ultimate editorial judgment and control" in her service agreements. *Id.* at ¶¶ 217-18; App. 113, 121.

*Other photographers' editorial discretion.* Other wedding photographers in Louisville offer engagement and wedding photographs for opposite-sex and same-sex engagements and weddings. *See, e.g.*, App. 533, 607, 657. Louisville does not dispute this. *Id.* at 384-85. These photographers use their online platforms to promote their views on marriage and other topics through their blogs, websites, and social media sites. *Id.* at 540, 551-83, 616-17, 629-52, 689-708. Louisville even hosts the Fair Events Vendors Alliance, a network that connects "the LGBTQ community with Louisville … area wedding" professionals, like photographers. *Id.* at 585-603.

*Chelsey promotes certain messages and objects to others.* Chelsey's services convey her view of the world, which comes from her Christian beliefs. *E.g.*, Decl. ¶¶ 208-15. Chelsey cannot separate her beliefs and vocation—she seeks to honor God in what she creates, promotes, and participates in. *Id.* at ¶ 77. For example, Chelsey's boutique-editing services always depict her subjects favorably because she believes God declared His creation to be "very good." *Id.* at ¶ 9. Chelsey also believes that God designed marriage to be a union of one man and one woman. *Id.* at ¶83. So Chelsey always depicts engagements and weddings "in a positive and uplifting way" to celebrate God's design for marriage and to convince others that this type of marriage should be pursued and valued. *Id.* at ¶¶ 84, 151.

Likewise, Chelsey cannot create, promote, or participate in anything that dishonors God. *Id.* at ¶¶ 328-94. So Chelsey will not create works that demean others, condone racism, or contradict biblical principles. *Id.* at ¶ 333. Chelsey also will not promote all messages about marriage or participate in all wedding ceremonies, such as Game of Thrones-themed ones. *Id.* at ¶ 368-70. Nor will she

photograph or blog to promote or participate in same sex-weddings. *Id.* at ¶ 377. Of course, Chelsey is happy to serve those in the LGBT community. *Id.* at ¶¶ 396-405. She just cannot promote certain messages or participate in certain religious ceremonies for anyone, no matter their status. *Id.* at ¶¶ 345-376, 395. And Chelsey wants to be honest with prospective clients and the public. *Id.* at ¶ 98. So she wants to post (and after the preliminary injunction issued has posted) a statement on her studio's website explaining her religious beliefs and why she cannot promote anything that violates her beliefs. *Id.* at ¶¶ 443-54.

*Louisville's law.* But Louisville's law forbids all of this. Two provisions regulate Chelsey's studio. The Accommodations Provision (§ 92.05(A)) forbids Chelsey from denying someone "the full and equal enjoyment" of goods, services, and accommodations because of "sexual orientation." Next, the Publication Provision (§ 92.05(B)) makes it illegal for Chelsey to "publish" or "display" a "communication" which "indicates" that (A) "services" will be "denied" because of someone's "sexual orientation" (the Denial Clause) or (B) someone's "patronage of, or presence at" a business is "objectionable, unwelcome, unacceptable, or undesirable" because of "sexual orientation" (the Unwelcome Clause).

These provisions affect Chelsey in several ways. First, the Accommodations Provision forces Chelsey to offer and provide her photography services to celebrate and participate in same-sex weddings because she will do the same for opposite-sex weddings. *E.g.*, App. 352-54, 383, 760-63. This requirement applies to Chelsey's photographs, editing, and blogging. *Id.* Second, the Accommodations Provision prohibits Chelsey from having a policy or practice of only celebrating opposite-sex marriages consistent with her faith. *Id.* at 356-59.[1] Third, the Publication Provision prohibits Chelsey from publishing her desired statements about why she will create

---

[1] *See* App. 759 (policy can be discriminatory); *id.* at 762-63 (Chelsey's policy is "discrimination"); *id.* at 842 (admitting policies can be "a form of discrimination").

stories for and participate in weddings between a man and a woman but not for same-sex weddings. *Id.* at 360-62. And the vaguely worded Unwelcome Clause bans Chelsey from even discussing her beliefs about marriage on her studio's website because someone might take that message as "unwelcoming." Metro Ord. § 92.05(B).

Violating these provisions exposes Chelsey to severe penalties like injunctions forcing her to promote messages and participate in ceremonies she objects to; posting a notice dictated by Louisville; sending compliance reports to Louisville; and paying uncapped damages. *See* Metro Ord. §§ 92.08(B)(8) (incorporating remedies), 92.12(B); App. 753-54 (discussing penalties).

Without a permanent injunction, Louisville's law will continue to harm Chelsey. She will chill her speech in response to the law by taking down her statements explaining her religious beliefs. Decl. ¶¶ 492-95. This has caused and will continue to cause reputational harm by preventing Chelsey from explaining her views to prospective clients and the public. *Id.* Chelsey will refrain from growing her business for fear of violating the law. *Id.* at ¶¶ 500-01. And Chelsey will be put to the choice of running her business under its current faith-based policies with the constant threat of prosecution or closing her business altogether. *Id.* at ¶¶ 496-503.

## Argument

Chelsey is entitled to summary judgment because her claims can be decided "as a matter of law" with "no genuine dispute as to any material fact." F.R.C.P. 56.[2] The undisputed facts show that Chelsey deserves a permanent injunction because she suffers a constitutional violation with ongoing irreparable injury without an adequate legal remedy. *See infra* § I-VIII (outlining violations); *Saieg v. City of Dearborn*, 641 F.3d 727, 733 (6th Cir. 2011) (injunctive factors met after free speech

---

[2] This Court recently compelled Louisville to produce more discovery and respond to interrogatories. *See* Mem. Op. and Order, ECF No. 89. Chelsey reserves the right to supplement the record based on Louisville's production and responses.

violation); *ACLU v. McCreary Cnty.*, 607 F.3d 439, 449 (6th Cir. 2010) (same for Establishment Clause violation); *Wedgewood Ltd. P'ship I v. Twp. Of Liberty*, 610 F.3d 340, 355 (6th Cir. 2010) (same for due process violation). For similar reasons, Chelsey also deserves a declaratory judgment—it settles the case between the parties, creates no federalism or "fencing" issues, and provides effective relief. *See Utd. Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397-402 (6th Cir. 2019).

Chelsey deserves this relief because Louisville's law (I) compels her to speak a message she disagrees with, (II) compels speech based on content and viewpoint, (III) restricts speech based on content and viewpoint, (IV) is not neutral or generally applicable, (V) forces her to participate in religious ceremonies she objects to, (VI) burdens her religious exercise, (VII) triggers and fails strict scrutiny, and (VIII) is vague, overbroad, and gives officials unbridled discretion.

## I.   The Accommodations Provision violates the First Amendment because it compels Chelsey to speak and infringes her editorial freedom.

The First Amendment safeguards speakers' "autonomy to choose the content of [their] own message," *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bost.*, 515 U.S. 557, 573 (1995), and exercise "editorial control and judgment" over that message, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). *See* Pls.' Br. in Supp. of Prelim. Inj. Mot. (MPI) 4-5, ECF No. 3-1 (collecting more cases).

But Louisville violates this principle by compelling Chelsey's speech. A compelled-speech claim has three elements: (A) speech, (B) the government compels, (C) and the speaker objects to. *See Hurley*, 515 U.S. at 572-73 (applying elements); *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015) (identifying elements). Chelsey satisfies each element and that triggers strict scrutiny. *See Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.* (*PG&E*), 475 U.S. 1, 19 (1986) (plurality) (applying strict scrutiny to law compelling speech).

A.     **Chelsey engages in protected speech.**

The First Amendment protects mediums like "books, plays, and movies [that] communicate ideas." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011). This standard covers Chelsey's photography, photography edits, and blogs.

*Photographs.* Chelsey's photographs are speech because she uses her "artistic talents … to tell a story about the beauty and joy of marriage." Order 16; *id.* at 7 n.45 (collecting cases). Chelsey exercises "ultimate editorial judgment and control" to select, choreograph, and manipulate each photograph she takes through a series of artistic decisions. Decl. ¶¶ 217-18, 318-27; App. 113, 404-10. Chelsey does this to "create aesthetically beautiful photographs that" promote her view of "God's design for marriage." Decl. ¶ 220. Even Louisville's Executive Director believes Chelsey's photographs "communicate[] a message of celebration." App. 850.

*Blogging.* Chelsey's blogs combine words and images to convey the beauty and joy of marriages, celebrate the joy of marriage between a man and a woman to the public, and tell positive stories promoting marriage between a man and a woman. Decl. ¶¶ 305-07. These blogs are speech. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (protecting online communications); Order 7 n.44 (collecting cases).

*Creating and Editing Photographs and Blogs.* Because Chelsey's photographs and blogs deserve protection, the process of creating them deserves protection too. Decl. ¶¶ 254-262 (describing process). The reason is simple. Chelsey's creative process is "inextricably intertwined" with her final photographs and blogs. *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010). *See also* MPI 6 (citing cases involving newspapers, cast selections, and search engines).

Take Chelsey's editing. Chelsey edits her photographs in a "light, bright, and airy" style (Decl. ¶¶ 428-49) rather than a "dark, moody, [and] radder" style as other photographers do (App. 658). That choice alters the message, mood, and emotional impact of her photos. *See* MPI 7 (comparing edited photographs). *Compare* App.

7

215-70 *with id.* at 709-19. And Chelsey edits other photographers' photographs with an eye towards creating positive and uplifting images while retaining full editorial control. Decl. ¶¶ 308-27; App. 279-94 (comparing before and after images). So Chelsey's works and the process of creating them deserve protection.

### B.    The Accommodations Provision compels Chelsey to speak.

Because Chelsey speaks through her wedding-celebration and boutique-editing services, Louisville compels her to speak and infringes on her editorial discretion when compelling her to offer or provide these services.

The Accommodations Provision requires public accommodations to provide "the full and equal enjoyment" of all goods, services, and accommodations regardless of sexual orientation. Metro Ord. § 92.05(A). Louisville interprets the law to require Chelsey to create photographs and write blogs "on the exact same terms and conditions for … same-sex and opposite-sex weddings." App. 383.[3] Louisville also bars Chelsey from having a policy or practice of only photographing, editing, and blogging about opposite-sex weddings. *See id.* at 356-59; *supra* n.1; Order 7 n.46 (explaining this point).

Chelsey's services always include depicting opposite-sex couples "in a positive and uplifting way," photographing the couple "kissing before the attendees," writing blogs "encouraging the couple and promoting marriage," and celebrating the union. Decl. ¶¶ 151, 153, 166. Louisville's rule forces Chelsey to offer, create, and post the "exact same" photographs and blogs celebrating same-sex couples because she does so for opposite-sex weddings. This rule also bans Chelsey from continuing her current practice of only celebrating engagements and weddings between one man and one woman. *See e.g.*, *id.* at ¶ 395. And this rule outlaws Chelsey's current operating agreement which binds her company to decline "any request that violates

---

[3] *See* App. 352-54; *id.* at 760-65 (explaining exact same service rule as to Chelsey).

its artistic and religious beliefs." App. 3. Without an injunction, Chelsey would be forced to decide between living under a constant threat of prosecution for operating her studio consistent with her beliefs or shuttering her studio. Decl. ¶¶ 496-503. This transforms Chelsey's photographs and blogs into a public accommodation, strips her of her editorial discretion over what to say and what not to say, and forces Chelsey to promote messages contrary to her conscience. That is compelled speech.

But the "Government cannot compel a person to talk about same-sex marriages simply because she chooses to talk about opposite-sex marriages." Order 18 (cleaned up). The Supreme Court made this clear in *Hurley*. 515 U.S. at 572-73. There, an LGBT group tried to apply a public-accommodations law to a parade. *Id*. at 561. But *Hurley* rebuffed this effort because the parade was expressive. *Id*. at 578. The Court held that forcing the parade organizers to admit the LGBT group would alter the parade's content, infringe the organizers' right to speak their desired message, and treat "speech itself" as a public accommodation. *Id*. at 572-73.

The same logic applies here. Louisville may not constitutionally apply its public-accommodations laws to Chelsey's photographs and blog to force her to create content celebrating same-sex weddings. This would alter the content of her photographs and blogs and burden her editorial freedom to convey her desired message. *See Tornillo*, 418 U.S. at 258 (requiring newspapers to publish op-eds affected "[t]he choice of material to go into a newspaper" and "content of the paper," which stifled the paper's "editorial control and judgment").

This Court already said so. Order 13-18. And other federal courts often stop anti-discrimination laws from burdening editorial freedom and compelling speech like this. *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254-56 (11th Cir. 2021) (Amazon could not be compelled to include charities in its donation program); *Marshall v. Duncan*, 2010 WL 1418736, at *2 (W.D. Ky. Apr. 6, 2010) (newspaper cannot be forced to publish content); MPI 10-11 (collecting cases).

Still, Louisville argues that the Accommodations Provision regulates "conduct," not speech, and attributes Chelsey's photographs and blogs to her clients, not her "own personal views. Defs.' Resp. in Opp'n to Pls.' Mot. for Prelim. Inj. (MPI Resp.) 11-12, 14, 16, ECF No. 15-1. Not so. This Court already rejected Louisville's conduct argument because the Accommodations Provision applies to Chelsey's "'speech itself.'" Order 4 (quoting *Hurley*, 515 at 573); *id.* at 18 n.22 (rejecting argument that law applies to conduct here).[4] Likewise, this Court rejected Louisville's "client speech" argument. Chelsey "unlike many wedding vendors … tells a story." *Id.* at 17.[5] Courts routinely reject arguments like Louisville's. *See Telescope Media Grp. v. Lucero* (*TMG*), 936 F.3d 740, 751-52 (8th Cir. 2019) (rejecting conduct and customer speech arguments); *Brush & Nib Studio, LC v. City of Phoenix* (*B&N*), 448 P.3d 890, 910-11, 913-14 (Ariz. 2019) (same).

Under Louisville's theory, government officials could compel every paid writer, publisher, designer, newspaper, or internet company to speak any message. That is not the law. "A government can no more compel [Chelsey's] speech than it can compel a freelance speechwriter to write for a political candidate she opposes." Order 18. *Cf. Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 (1988) ("[A] speaker is no less a speaker because he or she is paid to speak.").

### C. The Accommodations Provision compels Chelsey to speak messages she disagrees with.

More than just compelling Chelsey's speech, the Accommodations Provision "coerces [her] into abandoning [her] convictions, and compels [her] to communicate celebratory messages [she] disagrees with." Order 18 (cleaned up).

---

[4] *See, e.g.*, App. 352-54 (admitting law applies to Chelsey's photographs, edits, and blogs); *id.* at 383 (same); *id.* at 764-65 (same).

[5] *See* Decl. ¶¶ 208-327 (explaining artistic process); App. 401-10 (same).

Louisville's "exact same terms and conditions" requirement has practical consequences. *See supra* I.B (explaining this requirement). For one, the requirement changes the content of Chelsey's photographs. *Compare, e.g.*, App. 200-75 (Chelsey's photographs) *with* 551-74, 631-48, 690-707.

This requirement also forces Chelsey to change the content of her blogs—from celebrating "Mr. and Mrs." or "Kelsey and Andrew" (App. 37) to celebrating "Mrs. and Mrs." (*id.* at 580) or "Will & Nate" (*id.* at 631) or "Deanna & Audrey" (*id.* at 551). The change in content, message, purpose, and effect is obvious. *See TMG*, 936 F.3d at 752-53 (requiring studio to create films conveying "the same 'positive' message" about same-sex weddings as opposite-sex weddings is compelled speech); *B&N*, 448 P.3d at 909 (explaining how even one name change "clearly does alter the overall expressive content of [studio's] wedding invitations.").

By forcing Chelsey to promote messages she objects to, Louisville commits the "[w]orst of all" First Amendment violations—"compel[ling] citizens to express views they find objectionable." Order 12 (cleaned up). This type of compulsion is "universally condemned" because it is "always demeaning." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463-64 (2018). That's why the "First Amendment" protects messages on both sides of the debate—"those who oppose same-sex marriage" and "those who believe allowing same-sex marriage is proper or indeed essential." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2607 (2015).

And it is *messages* Chelsey objects to, not people. Decl. ¶ 409. Chelsey will happily provide her boutique editing services to LGBT photographers or business owners. *Id.* at ¶¶ 402-03. And she will provide wedding photography to LGBT clients too, whether that be LGBT wedding planners or LGBT parents requesting photographs celebrating their child's opposite-sex wedding. *Id.* at ¶¶ 396-401. But Chelsey will not convey certain messages for anyone—messages promoting certain themed weddings or encouraging vulgarity, racism, or violence. *Id.* at ¶¶ 332-76.

11

The Supreme Court drew the same message/status distinction in *Hurley* by allowing parade organizers to decline parade access to disfavored messages when they did not exclude "homosexuals as such…" from the parade. 515 U.S. at 572, 574-75. *See* MPI 14-15 (collecting cases affirming message/status distinction). Chelsey is no different. She opposes ideas, not people.

### D.  Compelling Chelsey to speak creates a dangerous and limitless principle.

America is "wide enough" to permit speakers of all views—including "words [that] make your blood boil" and ideas that "you would spend a lifetime opposing." Order 4. Louisville disagrees and tries to whitewash this pluralism.

Under Louisville's theory, newspapers can be forced to run adds with words they disagree with. App. 769-70 (explaining newspaper's refusal to run ad with word "transsexual" was discriminatory); *id.* at 808 (same). Environmentalist "speech writer[s] would have to provide" their promotional services "to the climate change deniers." Tr. of Prelim. Inj. Hearing (Tr.) 66-68, ECF No. 52. "[D]emocratic speechwriter[s]" must "write speeches for a republican." *Id.* at 76:7-9. Indeed, nothing stops Louisville from adding political speech as a protected class.[6] But that's not all. Louisville could force an LGBT cake artist to create cakes saying "Homosexual acts are gravely evil. (Catholic Catechism 2357)."[7] Or a gay softball league to admit heterosexuals. *See Apilado v. N. Am. Gay Amateur Athletic All.*, 792 F. Supp. 2d 1151 (W.D. Wash. 2011). Or a custom printing company to make yard signs declaring "White Lives Matter." The possibilities are endless. MPI 15-16.

---

[6] Other jurisdictions already have. *See, e.g.*, Ann Arbor, Mich. Code of Ordinances § 9:151; Lansing, Mich. Code of Ordinances §§ 297.02, .04; Madison, Wisc. Code of Ordinances §§ 39.03(2), (5); Seattle, Wash. Mun. Code §§ 14.06.020(L), .030(B).
[7] Susan Selasky, *Lesbian baker in Detroit got homophobic cake order: Why she made it anyway*, Detroit Free Press (Aug. 13, 2020), http://bit.ly/freeparticle.

Thankfully, the First Amendment stops Louisville from heading down this path. Free speech and religious diversity are "our national strength." Order 25 (cleaned up). "America is wide enough" for different opinions. *Id.* at 4. In our pluralistic society, "[t]he solution" to disagreement "is more dialogue, not less." *Id.* at 27. Chelsey welcomes that dialogue. Louisville silences it.

## II.   The Accommodations Provision violates the First Amendment because it compels Chelsey to speak based on content and viewpoint.

Not only does Louisville compel Chelsey's speech, but it does so "because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). This content-and-viewpoint based regulation triggers strict scrutiny. *Id.* at 164-65. The Accommodations Provision regulates the content and viewpoint of speakers in four ways. *See* App. 762 (considering "content of the photographs"). *Cf. id.* at 769-70 (declining "particular word" was discrimination).[8]

First, the law's "exact same terms and conditions" requirement compels Chelsey to speak a message she disagrees with—celebrating same-sex marriage. *See supra* § I.B (explaining rule). This "necessarily alters the content" of Chelsey's speech and changes her desired message. *Riley*, 487 U.S. at 795; *see also Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (same); *supra* § I.C (comparing photographs and blog posts).

Second, Louisville compels Chelsey to speak because of the content that she creates. If Chelsey only photographed pets instead of weddings, she'd be safe. It is only because Chelsey creates photographs and blogs celebrating opposite-sex marriage that she must create photographs celebrating same-sex marriage. *See, e.g.*, App. 352-54, 383, 760-63. So the law's application to Chelsey is triggered by the

---

[8] *See* App. 807 (refusing to create "Celebrate Gay Pride" t-shirt because of its content violates law); *id.* at 808 (probable cause could "consider the content of the shirt"); *id.* at 846 (probable cause can depend on "denial because of … content").

content of her other speech. *See id.*; *supra* n.8; *PG&E*, 475 U.S. at 13-14 (law regulates content if "it [is] triggered by a particular category of ... speech"); *TMG*, 936 F.3d at 753 (law regulated content because it treated films on opposite-sex marriage "as a trigger for compelling them to talk about … same-sex marriages …."); *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1176-78 (10th Cir. 2021) (similar).

Third, Louisville's law is viewpoint-based because it favors some photographers over Chelsey and "is designed to exclude" Chelsey's "particular point of view from the marketplace of ideas." *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 248 (6th Cir. 2015). Photographers that celebrate same-sex and opposite-sex weddings are allowed; Chelsey is banned. App. 365.

Finally, the law confers access to Chelsey's speech to those seeking to express opposing viewpoints—"the worst of all" types of compulsion. Order 13. If Chelsey creates content celebrating opposite-sex weddings, she does not have to create content for "the public at large" about every message (e.g., pet photography). *PG&E*, 475 U.S. at 12. Nor must Chelsey accept all opposite-sex wedding requests. App. 429 (acceptable for Chelsey to decline request for "non religious" ceremony). The law only requires her to create content for those seeking to celebrate *one view*— promoting same-sex weddings. That creates a viewpoint-based access requirement. *PG&E*, 475 U.S. at 13 (law regulates content if it awards access "only to those" with contrary "views"); *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 654 (1994) (law in *PG&E* content based because it "conferred benefits to speakers based on viewpoint, giving access only to a consumer group opposing the utility's practices").

## III. The Publication Provision violates the First Amendment because it restricts Chelsey's speech based on content and viewpoint.

Besides compelling speech based on content and viewpoint, Louisville's law also restricts speech based on content and viewpoint. The Publication Provision does so by banning Chelsey from posting her desired statements (App. 318-19) on

her website and social-media sites based on their content and viewpoint, thereby triggering strict scrutiny. *See Bible Believers*, 805 F.3d at 248.

As this Court explained, the Publication Provision "is a content-based restriction on" Chelsey's expression because the legality of her desired statements "depends on what they say." Order 21. If Chelsey "advertises that she will refuse her wedding photography services for same-sex weddings, her posts violate" the Publication Provision. *Id. See also* App. 360-61, 428-29. "But if another wedding photographer advertises her willingness to photograph same-sex weddings, those posts would comply with both clauses." Order 21. *Cf.* App. 365.

For these same reasons, the Publication Provision acts as a viewpoint-based restriction. Chelsey cannot promote only opposite-sex marriage or state that she will celebrate only opposite-sex marriages. App. 360-61, 428-29. But other photographers can support same-sex marriage without consequence. *See, e.g.*, App. 616 ("[I] love working with LGBTQIA+ folks").[9] By favoring some views over others, Louisville bans viewpoints. *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (registration ban on just disparaging trademarks was viewpoint-based); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("target[ing] … particular views taken by speakers on a subject" is viewpoint discrimination).

## IV. The Accommodations and Publication Provisions violate the First Amendment because they are not neutral nor generally applicable and restrict a hybrid of historically protected rights.

Louisville's law violates Chelsey's free-exercise rights because it is not neutral or generally applicable as applied to her.

Courts look past a law's facial neutrality to "the effect … in its real operation." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534-35 (1993). To decipher effect, courts evaluate whether laws "treat *any*

---

[9] *See also* App. 540, 551-83, 629-52, 689-708, 722-27.

comparable secular activity more favorably than religious exercise." *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Comparability "is measured against the *interests* the State offers in support of its restrictions on conduct." *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 480 (6th Cir. 2020). For that reason, "religious and secular conduct" need not "involve similar forms of activity" or appear in the same "statutes or decrees." *Id.* at 480-81. Instead, strict scrutiny applies if a law "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).

Louisville interprets its law to do just that. Start with Louisville's interests. Louisville claims an interest in "rooting out all forms of discrimination." App. 390. And that, as Louisville admits, extends equally to sexual orientation, age, sex, and familial-status discrimination. *Id.* at 421-22.[10] But Louisville undermines these interests many times over through unwritten and written exemptions.

Louisville has an unwritten "formal mechanism" for granting exemptions for activities that affect but do not discriminate against protected classes. *Fulton*, 141 S. Ct. at 1879. Louisville allows public accommodations to decline services for business-related reasons—low staffing or lost contact information. App. 802. Louisville would exempt parades from "includ[ing] a unit of gay pride individuals." Tr. 42:4-9. Louisville exempts photographers from "polygamous … wedding ceremonies" even if such ceremonies include LGBT persons. MPI Resp. 10. *See* Metro Ord. § 92.02 (defining sexual orientation to include bisexuality). And Louisville exempts some public accommodations from creating goods they have

---

[10] *See also* Metro Ord. § 92.01 (treating all discrimination equally); App. 767 (relying on "[a]ny discrimination" to compel Chelsey); *id.* at 772-73 (confirming "[s]trong and compelling" interest in ending all discrimination against protected characteristics); *id.* at 822 (interest applies to "all forms of discrimination").

never made in the past.[11] This prior-goods exception permits gay tattoo artists to refuse to ink tattoos with religious messages, LGBT t-shirt design companies to decline t-shirts critical of the LGBT community, and progressive bar associations to refuse to promote Israel. *See* Br. of Amici Curiae Am. Civil Liberties Union of Ky. & Am. Civil Liberties Union Supporting Defs. 5 n.1, ECF No. 18-1. If Louisville can exempt these behaviors, it can protect Chelsey's religious choices over her speech.

Louisville's written exemptions are even more damaging to its anti-discrimination interests. For starters, Louisville excludes some "rooming or boarding house[s]." Metro Ord. § 92.02 (defining public accommodation). Next, Louisville's law does not cover most cases of sex-discrimination or any case of age or familial-status discrimination. *See id.* at § 92.05(A)-(B), (C); App. 774. So restaurants can ban senior citizens, hotels can evict pregnant women, amusement parks can advertise "No Foster Children Allowed," and photography studios can refuse women without penalty. *See* Metro Ord. § 92.02 (defining "familial status").

But Louisville admits its interests in ending sexual-orientation discrimination are the same as its interests in eliminating age, sex, or familial status discrimination. *See supra* n.10. So these forms of discrimination do not "pose a lesser risk" to Louisville's stated interests. *Tandon*, 141 S. Ct. at 1297. If anything, age, sex, and familial-status discrimination threaten Louisville's anti-discrimination interests more. *See, e.g.*, App. 883 (listing twenty-four age, sex, and familial status complaints against one sexual orientation complaint). By contrast, Chelsey doesn't pose any risk to Louisville's anti-discrimination interests—she doesn't discriminate at all but objects to messages, not people. Decl. ¶¶ 395, 409.

---

[11] *See* Tr. 67:8-16 ("What has the vendor provided in the past?"); App. 803 (explaining photographer's refusal to photograph an image photographer wouldn't create for anyone could be "legitimate, nondiscriminatory reason" to decline service); *id.* at 846 (testifying t-shirt designer could decline "God bless gay marriage" shirt unless it already "had that template").

Louisville's exemptions are comparable to Chelsey's activities because the exempted conduct "endanger[s]" Louisville's interests to a "greater degree than" Chelsey's religious activity. *Lukumi*, 508 U.S. at 543. And Louisville's law is not neutral or generally applicable because it "treat[s] religious exercises worse than comparable secular activities." *Monclova*, 984 F.3d at 480 (cleaned up). So Louisville's law must pass strict scrutiny. *Id.* It cannot. *See infra* § (applying test).

Louisville's law also triggers strict scrutiny under the hybrid-rights doctrine. *Emp't Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872, 881-82 (1990) (applying strict scrutiny to "hybrid situation[s]"). The Sixth Circuit does not recognize this doctrine. *Prater v. City of Burnside*, 289 F.3d 417, 430 (6th Cir. 2002). Other circuits do. *TMG*, 936 F.3d at 759-60. Chelsey wishes to preserve this issue.

## V. The Accommodations Provision violates the First Amendment because it compels Chelsey' to participate in and celebrate religious ceremonies she objects to.

By compelling Chelsey to photograph same-sex wedding ceremonies, the Accommodations Provision also violates the First Amendment by forcing Chelsey to participate in and attend ceremonies she objects to.

The First Amendment's Establishment and Free Exercise Clauses prevent governments from "coerc[ing] anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 577 (1992) (grounding principle in Establishment Clause); *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018) (forcing clergy to officiate wedding ceremonies violates Free Exercise Clause).

Just as officials may not compel someone to "attend religious programming" or "prayer or worship services," Louisville may not compel Chelsey to attend or participate in wedding ceremonies. *See Janny v. Gomez*, 2021 WL 3439009, at *16-18 (10th Cir. Aug. 6, 2021); MPI 20 (collecting other cases). Like many, Chelsey

considers all weddings to be religious ceremonies, events celebrating an institution created by God. Decl. ¶ 379. *See also* MPI 20 (collecting cases confirming this view).

But Louisville's "exact same terms" rule forces Chelsey to attend and actively participate in same-sex wedding ceremonies to the same extent she does so when photographing opposite-sex weddings. *Supra* § I.B (explaining rule); Decl. ¶¶ 167-72, 380-82. In turn Chelsey must serve as witness to the union, stand to recognize the marriage, obey the officiant, and bow her head in prayer—things she always does for opposite-sex weddings too. *Id.* at ¶ 171.

But Chelsey cannot do these things at same-sex wedding ceremonies—events devoted to celebrating same-sex marriage—without compromising her belief in celebrating marriage only between a man and woman. *See* MPI 21 (citing *Lee* and *Kaahumanu v. Hawaii*, 682 F.3d 789, 799 (9th Cir. 2012)). So Louisville cannot force Chelsey to participate in these events.

## VI.   The Accommodations and Publication Provisions violates KRFRA because it substantially burdens Chelsey's religious beliefs.

Louisville's law also infringes Chelsey's KRFRA rights.  KRFRA protects (1) the "right to act or refuse to act" on a "sincerely held religious belief" from (2) being "substantially burdened" by the government unless (3) the government can show the burden passes strict scrutiny. K.R.S. § 446.350; *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 613 (6th Cir. 2020) (KRFRA "impos[es] strict scrutiny"). Chelsey meets the first two elements; Louisville fails the third.

Chelsey is religiously motivated to offer and create photographs only for and participate in weddings between one man and one woman because of her beliefs that God designed marriage to be between one man and one woman. *See, e.g.*, Decl. ¶ 306. Chelsey is also religiously motivated to publish statements on her studio's website explaining and advocating her beliefs about marriage and why she can only provide services consistent with those beliefs. *Id.* at ¶¶ 441-44.

19

Louisville's law substantially burdens Chelsey's faith. Louisville's law imposes fines and other penalties if Chelsey creates photographs, writes blogs, or posts statements consistent with her faith. *See supra* §§ I-V (explaining this point); K.R.S. § 446.350 (burdens include "assessing penalties"). Worse still, Louisville's law compels Chelsey to violate her conscience by creating photographs and blogs celebrating same-sex marriage and participating in same-sex wedding ceremonies. *See supra* §§ I-V (explaining these points). That "easily" qualifies as a substantial burden. *Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (overturning prison grooming policy forcing Muslim inmate to shave his beard or risk penalties).

Because Louisville's law substantially burdens Chelsey's sincerely held religious beliefs, it must pass strict scrutiny. It does not. *See infra* § VII.

## VII.   The Accommodations and Publication Provisions fail strict scrutiny.

Because Louisville's law violates Chelsey's constitutional and KRFRA rights, the law must pass strict scrutiny. Louisville must prove that applying its law to Chelsey is narrowly tailored to serve a compelling interest. *Reed*, 576 U.S. at 171. Louisville can do neither.

Louisville asserts a compelling interest in "rooting out all forms of discrimination." App. 390. But that interest dead-ends. Chelsey does not discriminate. She only declines to speak messages she disagrees with while she serves clients regardless of their status. *See supra* § I.C (explaining this distinction). So Louisville can stop discrimination without compelling Chelsey to create objectionable messages. That explains why Louisville cannot cite "discrimination" to justify regulating Chelsey's editorial discretion. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006) (looking "beyond broadly formulated interests" to "the asserted harm" for "specific exemptions").

Plus, antidiscrimination laws do not serve legitimate interests when they compel speech. *See, e.g.*, Order 19 (making this point). Kentucky agrees. States cannot force photographers "to engage in expression" they "deem[] objectionable." *See* Br. for Neb. et. al. as Amici Curiae in Supp. of Pls. (States' Br.) at 16, *Emilee Carpenter Photography LLC v. James*, Case No. 6:21-cv-06303 (W.D.N.Y. filed June 4, 2021) (joined by Kentucky's Attorney General), https://bit.ly/2W7oVZv.

Just as problematic, Louisville cannot identify an "actual problem" that justifies regulating Chelsey. *Brown*, 564 U.S. at 799. Louisville "is not aware of any specific instance" where "a person has been denied access to wedding photography services" because of sexual orientation before or after this Court issued an injunction. App. 385.[12] Even so, Louisville argues that it need not "identify discrimination exactly like the discrimination Chelsey Nelson intends to engage in … in order to justify applying the law to" her. Defs.' Resp. to Pls.' Mot. for Leave to Supp. Mot. to Compel 3, ECF No. 83. That's incorrect. Louisville must prove a compelling interest in "denying an exception" *to Chelsey*. *Fulton*, 141 S. Ct. at 1881.

There is no such interest. Louisville "do[es] not contend that there are no wedding photographers" in Louisville willing to photograph same-sex engagements and weddings. App. 363. And for good reason. The Fair Event Vendors Alliance offers a directory of Louisville photographers for "the LGBTQ+ community." *Id.* at 585. Many other photographers in Louisville gladly provide services celebrating same-sex engagements and weddings. *Id.* at 531-727. Forcing Chelsey to do so despite so many alternatives makes little sense.

What's more, Louisville's law is also underinclusive. *See Reed*, 576 S. Ct. at 172 (law underinclusive "when it leaves appreciable damage to that supposedly

---

[12] *See also* App. 847 (no knowledge that Chelsey "exercising her constitutional rights cause any problems in Louisville"); *id.* at 849 (no knowledge of increased complaints since injunction issued); *id.* at 775 (same).

vital interest unprohibited") (cleaned-up); *Brown*, 564 U.S. at 802 (underinclusivity "is alone enough" to defeat law). Chelsey can "declin[e] to pursue a prospective client" if she determines the "requested services could require her to edit photographs celebrating same-sex marriages." App. 429. Chelsey can also decline "non religious" ceremonies. *Id*. Public accommodations generally can refuse to serve anyone (and publicize such refusals) because of age, sex, and familial status without penalty. *See supra* § IV (making this point). Private homeowners can discriminate in the rental or sale of their homes. Metro Ord. § 92.04(A)(1)-(2), (4). Employers may "indicate a preference" for certain characteristics in a job posting if the preference is "a bona fide occupational qualification." *Id.* at § 92.06(E). These exceptions undermine Louisville's interest in compelling Chelsey to celebrate same-sex weddings or restricting her from explaining her religious beliefs to the public.

Moving to narrow tailoring, Louisville must prove that regulating Chelsey is "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Louisville claims compelling Chelsey is narrowly tailored to its interests because otherwise others would be "permitted to discriminate on grounds of a sincere religious belief." App. 391. *See id.* at 423.

But Louisville has the burden to show that "it considered different methods" to stop public-accommodation discrimination—i.e., that it "seriously undertook to address these various problems with less intrusive tools." *McCullen v. Coakley*, 573 U.S. 494-96 (2014). *See also Haight v. Thompson*, 763 F.3d 554, 564 (6th Cir. 2014) (government must "consider[] and reject[] alternatives more tailored to its … interest"). Louisville admits it "cannot provide discovery regarding what alternative measures … legislators considered, other than transcripts and minutes" which contain no discussion about limiting the law's free speech or free exercise effects. Defs.' Mot. for Prot. Order 15, ECF No. 64. So Louisville cannot meet this burden.

And many better, less-restrictive alternatives exist. *Cf. United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) (government must prove alternatives "will be ineffective"). First, Louisville could apply its laws to stop actual status discrimination, not message-based objections. Other governments (including Kentucky) do this without problem. *See supra* § I.B (collecting cases); States Br. 16. And this exception wouldn't undermine Louisville's interests because Louisville hasn't seen an uptick in complaints since this Court's injunction. *See supra* n.12.

Second, Louisville could exempt activity protected by the First Amendment from its law. Louisville already does this for housing complaints—it does not "investigate or prosecute any activity" related to housing "that may be protected by the First Amendment." Defs.' Mot. for Protective Order, Ex. 3B #1723, ECF 64-3.

Third, Louisville could create a "bona fide relationship" exemption for public accommodations, like it does for employment advertising and hiring. Metro Ord. §§ 92.06(E), 92.07(A)(1)-(3), (B). *See also* C.R.S. § 24-34-601(3); 42 U.S.C. § 2000e–2(e)(1); 29 C.F.R. § 1604.2(a) (giving studios a BFOQ exemption when "necessary for the purpose of authenticity or genuineness … e.g., [selecting] an actor or actress").

Fourth, Louisville could exempt individuals and small businesses that celebrate weddings. *See* Miss. Code § 11-62-5(5)(a) (exempting photographers that decline to provide wedding services that violate their sincere religious beliefs).

Fifth, Louisville could create a voluntary certification system where it certifies wedding photographers and other businesses who will promote same-sex marriage. *See Billups v. City of Charleston*, 961 F.3d 673, 689-90 (4th Cir. 2020) (discussing similar option for tour guides). Louisville already has a certification process for other businesses. *See* Metro Ord. §§ 37.65-.71; App. 849.

Sixth, Louisville could define public accommodations narrowly to apply only to essential, non-expressive, or non-internet-based businesses with storefronts. Many jurisdictions already do this. *See* 42 U.S.C. § 2000a(b) (defining public

23

accommodations as hotels, restaurants, entertainment venues, and gas stations);
Fla. Stat. § 760.02(11) (same); *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497,
501 (D.C. Cir. 2020) (excluding online businesses from antidiscrimination law). So
does Louisville for sex-based classifications. *See* Metro Ord. § 92.05(C) (banning sex-
discrimination in only some facilities). In sum, Louisville has many options to
achieve its goal without compelling Chelsey or restricting her speech.

**VIII.  The Unwelcome Clause facially violates the First and Fourteenth Amendments because it is overbroad, vague, and allows unbridled discretion.**

The Publication Provision's Unwelcome Clause prohibits speech that
indicates someone's "patronage of" or "presence at" a public accommodation is
"objectionable, unwelcome, unacceptable, or undesirable." Metro Ord. § 92.05(B).
This language is facially vague, overbroad, and grants unbridled discretion.

*Vagueness and unbridled discretion.* Due process requires laws to give
adequate notice of what is prohibited and at least minimal guidelines for
enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The First Amendment
also forbids laws that "delegate overly broad … discretion" to government officials
or "allow[] arbitrary application," because "such discretion" can "becom[e] a means
of suppressing a particular point of view." *Forsyth Cnty. v. Nationalist Movement*,
505 U.S. 123, 130 (1992). The Unwelcome Clause is vague because it fails to define
its terms and gives officials arbitrary power to enforce. *See* App. 811-12 (confirming
Louisville has no policy defining Unwelcome Clause terms).

Take an example. Former Executive Director Kendall Boyd couldn't answer
whether a sign saying "There are No Transgender Restrooms" violated the
Unwelcome Clause. App. 815-16, 826. That question required "[l]egal conclusion[s],"
"legal analysis," and "facts and evidence." *Id.* at 815. Still, he referred the business

for prosecution. *Id.* at 815, 819-20. Meanwhile, the current Executive Director said she "[p]robably wouldn't have paid [the sign] no attention." *Id.* at 844, 861.

This disagreement amongst officials proves the Unwelcome Clause is vague. *See Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 558-59 (6th Cir. 1999) (term "reasonable" vague when enforcement officials could not define it). And Louisville's unfettered discretion is a "convenient tool for harsh and discriminatory enforcement against particular groups deemed to merit their displeasure." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972) (cleaned up).

*Overbreadth.* A statute is overbroad when a "substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *U.S. v. Stevens*, 559 U.S. 460, 473 (2010) (cleaned up). The Unwelcome Clause is overbroad because terms like "objectionable, unwelcome, unacceptable, or undesirable" are too elastic and ban too much speech. These terms could cover any critical statement related to protected classes on a public accommodation's website. Louisville even investigates social-media posts generating "anger, and angst." App. 820. By restricting speech like this, the Unwelcome Clause bars too much. *See Brush & Nib Studio, LC v. City of Phoenix*, 418 P.3d 426, 442-43 (Ariz. Ct. App. 2018) (striking "unwelcome," "objectionable," "unacceptable," and "undesirable" language as overbroad); *303 Creative LLC*, 6 F.4th at 1213-14 (Tymkovich, C.J., dissenting) (explaining how words identical to the Unwelcome Clause were overbroad and providing examples explaining why).

## Conclusion

Louisville threatens everyone's First Amendment freedoms when it forces Chelsey to promote and participate in ceremonies she disagrees with. To stop this violation, Chelsey asks this Court to grant her summary-judgment motion, declare her constitutional and statutory rights, and permanently enjoin Louisville's actions.

Respectfully submitted this 1st day of September, 2021.


By:  s/ Bryan D. Neihart

Ryan Bangert
TX Bar No. 24045446*
Jonathan A. Scruggs
AZ Bar No. 030505*
Katherine L. Anderson
AZ Bar No. 033104*
Bryan D. Neihart
AZ Bar No. 035937*
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ  85260
Telephone: (480) 444-0020
rbangert@adflegal.org
jscruggs@adflegal.org
kanderson@adflegal.org
bneihart@adflegal.org


Hailey M. Vrdolyak
IL Bar No. 6333515*
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202 393-8690
hvrdolyak@adflegal.org

David A. Cortman
GA Bar No. 188810*
**Alliance Defending Freedom**
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@adflegal.org

Joshua D. Hershberger
KY Bar No. 94421
**Hershberger Law Office**
P.O. Box 233
Hanover, IN 47243
Telephone: (812) 274-0441
josh@hlo.legal

*Attorneys for Plaintiffs*


* Admission *Pro Hac Vice*


Attorneys for Plaintiffs


26

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of September, 2021, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record who are registered users of the ECF system.

By: s/ Bryan D. Neihart

Bryan D. Neihart
AZ Bar No. 035937*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: 480-444-0020
bneihart@ADFlegal.org

*Attorney for Plaintiffs*
* Admitted *Pro Hac Vice*

27