## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **Chelsey Nelson Photography LLC,** and **Chelsey Nelson,** | |
| Plaintiffs, | |
| **v.** | |
| **Louisville/Jefferson County Metro Government; Louisville Metro Human Relations Commission-Enforcement; Louisville Metro Human Relations Commission-Advocacy; Verná Goatley,** in her official capacity as Executive Director of the Louisville Metro Human Relations Commission-Enforcement; and **Marie Dever, Kevin Delahanty, Charles Lanier, Sr., Leslie Faust, William Sutter, Ibrahim Syed,** and **Leonard Thomas,** in their official capacities as members of the Louisville Metro Human Relations Commission-Enforcement, | Case No. 3:19-cv-00851-BJB-CHL  <br><br><br> **Plaintiffs' Combined Response to Defendants' Cross-Motion for Summary Judgment and Reply in Support of Their Summary Judgment Motion** |
| Defendants. | |

# TABLE OF CONTENTS

Table of Authorities ...............................................................................iii

Introduction ......................................................................................... 1

Argument ............................................................................................. 2

I.    Chelsey has standing to challenge Louisville's law.......................... 3

        A.    Chelsey has standing because Louisville's law credibly
              threatens and chills her religiously motivated speech. ......................... 3

              1.    Chelsey intends to engage in activities protected by
                     the First Amendment. ..................................................... 3

              2.    Louisville's law arguably covers Chelsey's desired
                     activities. ..................................................................... 6

              3.    Chelsey faces a credible threat of enforcement. ........................... 8

              4.    Many other factors confirm the credible threat. ....................... 13

        B.    Chelsey has standing to challenge the Accommodations and
              Publication Provisions because they are intertwined.......................... 15

        C.    Chelsey has competitor standing because Louisville's law
              burdens her compared to her competitors............................................ 16

        D.    Chelsey brings ripe challenges against the Accommodations
              and Publication Provisions because they forbid her activities
              according to Louisville. ..................................................................... 17

II.    Louisville's law violates the First Amendment by compelling and
       restricting Chelsey's speech based on content and viewpoint......................... 19

        A.    The Accommodations Provision compels Chelsey's speech ................. 20

        B.    The Accommodations and Publication Provisions compel and
               restrict Chelsey's speech based on content and viewpoint.................. 23

        C.    Louisville does not dispute its law endangers all speakers.................. 24

III.    The Accommodations and Publication Provisions violate the First
      Amendment because they are not neutral nor generally applicable .............. 25

i

IV.   The Accommodations Provision violates the First Amendment
      because it compels Chelsey' to participate in and celebrate religious
      ceremonies she objects to ...................................................................... 28

V.    Chelsey can challenge Louisville's law under KRFRA because it
      substantially burdens her religious beliefs ...................................... 30

VI.   The Accommodations and Publication Provisions fail strict scrutiny ........... 31

VII.  The Unwelcome Clause is facially overbroad, vague, and allows
      unbridled discretion ........................................................................... 35

Conclusion .................................................................................................... 35

# Table of Authorities

<u>**Cases**</u>

*303 Creative LLC v. Elenis,*
    6 F.4th 1160 (10th Cir. 2021) ................................................................*passim*

*Act Now to Stop War & End Racism Coalition & Muslim American Society*
    *Freedom Foundation v. District of Columbia,*
    846 F.3d 391 (D.C. Cir. 2017) ........................................................... 35

*Babbitt v. United Farm Workers National Union,*
    442 U.S. 289 (1979) ........................................................................... 8

*Bigelow v. Virginia,*
    421 U.S. 809 (1975) ...................................................................... 15, 16

*Boos v. Barry,*
    485 U.S. 312 (1988) ........................................................................... 33

*Braunfeld v. Brown,*
    366 U.S. 599 (1961) ........................................................................... 29

*Brennan v. Township of Northville,*
    78 F.3d 1152 (6th Cir. 1996) ............................................................ 16

*Brown v. Entertainment Merchants Association,*
    564 U.S. 786 (2011) ........................................................................... 31

*Brush & Nib Studio, LC v. City of Phoenix,*
    448 P.3d 890 (Ariz. 2019) .............................................................*passim*

*Burwell v. Hobby Lobby Stores, Inc.,*
    573 U.S. 682 (2014) ....................................................................... 4, 29

*Cantwell v. Connecticut,*
    310 U.S. 296 (1940) ........................................................................... 20

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) ........................................................................... 26

*City of Richmond v. J.A. Croson Company,*
    488 U.S. 469 (1989) ........................................................................... 32

*Cohen v. California,*
    403 U.S. 15 (1971) ............................................................................ 20

*Elane Photography, LLC v. Willock,*
    309 P.3d 53 (N.M. 2013) ................................................................. 21

*Evers v. Dwyer,*
    358 U.S. 202 (1958) ...................................................................... 5, 6

*Fields v. City of Tulsa,*
    753 F.3d 1000 (10th Cir. 2014) ........................................................ 29

*Fletcher-Hope v. Louisville-Jefferson County Metro Government,*
    2019 WL 498853 (W.D. Ky. Feb. 8, 2019) ......................................... 30

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) ................................................... 25, 27, 28, 33

*G & V Lounge, Inc. v. Michigan Liquor Control Commission,*
    23 F.3d 1071 (6th Cir. 1994) .............................................................. 9

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ........................................................................ 33

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) ........................................................................ 16

*Green Party of Tennessee v. Hargett,*
    791 F.3d 684 (6th Cir. 2015) ...................................................... 10, 15

*Groswirt v. Columbus Dispatch,*
    238 F.3d 421 (6th Cir. 2000) ............................................................ 20

*Harrell v. Florida Bar,*
    608 F.3d 1241 (11th Cir. 2010) ........................................................ 13

*Hess v. Indiana,*
    414 U.S. 105 (1973) ........................................................................ 20

*Hobbie v. Unemployment Appeals Commission,*
    480 U.S. 136 (1987) ........................................................................ 29

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) ..................................................... 13, 20, 23, 35

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,*
    565 U.S. 171 (2012). ....................................................................... 29

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,*
    515 U.S. 557 (1995) ............................................ 20, 21, 23, 32, 33

*Hyman v. City of Louisville,*
53 F. App'x 740 (6th Cir. 2002).............................................................. 11

*Jian Zhang v. Baidu.com Inc.,*
10 F. Supp. 3d 433 (S.D.N.Y. 2014)...................................................... 20

*Johari v. Ohio State Lantern,*
76 F.3d 379 (6th Cir. 1996).................................................................. 20

*Kiser v. Reitz,*
765 F.3d 601 (6th Cir. 2014)......................................................... 12, 13

*Kissinger v. Board of Trustees of Ohio State University,*
5 F.3d 177 (6th Cir. 1993).................................................................... 28

*Korte v. Sebelius,*
735 F.3d 654 (7th Cir. 2013)................................................................ 30

*Lexington Fayette Urban County Human Rights Commission v. Hands on*
*Originals, Inc.,*
2017 WL 2211381 (Ky. Ct. App. May 12, 2017)................................. 31

*Marrero-Méndez v. Calixto-Rodríguez,*
830 F.3d 38 (1st Cir. 2016) ................................................................. 29

*Masterpiece Cakeshop, Limited v. Colorado Civil Rights Commission,*
138 S. Ct. 1719 (2018)................................................................... 29, 33

*McKay v. Federspiel,*
823 F.3d 862 (6th Cir. 2016)............................................................... 13

*Miami Herald Publishing Company v. Tornillo,*
418 U.S. 241 (1974)....................................................................... 24, 33

*Michigan State Chamber of Commerce v. Austin,*
788 F.2d 1178 (6th Cir. 1986).............................................................. 15

*Mobil Oil Corporation v. Attorney General of Virginia,*
940 F.2d 73 (4th Cir. 1991).................................................................. 12

*Monclova Christian Academy v. Toledo-Lucas County Health Department,*
984 F.3d 477 (6th Cir. 2020)................................................................ 26

*Mount Healthy City School District Board of Education v. Doyle,*
429 U.S. 274 (1977).............................................................................. 30

*NAACP v. Button,*
 371 U.S. 415 (1963) ...................................................................... 2, 6

*National Institute of Family & Life Advocates v. Becerra,*
 138 S. Ct. 2361 (2018) ...................................................................... 22

*National Rifle Association of Ameria v. Magaw,*
 132 F.3d 272 (6th Cir. 1997) ...................................................... 16, 17

*Netchoice, LLC v. Moody,*
 2021 WL 2690876 (N.D. Fla. June 30, 2021) .................................. 28

*New York State Club Association, Inc. v. City of New York,*
 487 U.S. 1 (1988) .............................................................................. 10

*Obergefell v. Hodges,*
 135 S. Ct. 2584 (2015) ...................................................................... 34

*On Fire Christian Center, Inc. v. Fischer,*
 453 F. Supp. 3d 901 (W.D. Ky. 2020) ............................................. 30

*Online Merchants Guild v. Cameron,*
 995 F.3d 540 (6th Cir. 2021) ...................................................... 13, 15

*Pacific Gas & Electric Company v. Public Utilities Commission of California,*
 475 U.S. 1 (1986) .............................................................................. 24

*Pena-Rodriguez v. Colorado,*
 137 S. Ct. 855 (2017) ........................................................................ 34

*Peoples Rights Organization, Inc. v. City of Columbus,*
 152 F.3d 522 (6th Cir. 1998) ........................................................... 15

*Pierson v. Ray,*
 386 U.S. 547 (1967) ............................................................................ 5

*Planned Parenthood Association of Cincinnati, Inc. v. City of Cincinnati,*
 822 F.2d 1390 (6th Cir. 1987) ........................................................... 8

*Platt v. Board of Commissioners on Grievances & Discipline of Ohio Supreme Court,*
 769 F.3d 447 (6th Cir. 2014) ............................................... 8, 13, 18

*Plunderbund Media, L.L.C. v. DeWine,*
 753 F. App'x 362 (6th Cir. 2018) ................................................ 9, 10

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
 487 U.S. 781 (1988) ........................................................................... 21

*Rumfseld v. Forum for Academic & Institutional Rights, Inc. (FAIR)*,
 547 U.S. 47 (2006 ............................................................................... 22

*Ruplinger v. Louisville/Jefferson County Metro Government*,
 607 S.W.3d 583 (Ky. 2020)........................................................... 30, 31

*Scardina v. Masterpiece Cakeshop Inc.*,
 No. 19CV32214 (Colo. Dist. Ct. June 15, 2021) ................................. 1

*Schultz v. United States*,
 529 F.3d 343 (6th Cir. 2008)............................................................. 16

*Sherbert v. Verner*,
 374 U.S. 398 (1963) ........................................................................... 28

*Sherley v. Sebelius*,
 610 F.3d 69 (D.C. Cir. 2010) ............................................................ 17

*Smith v. Jefferson County Board of School Commissioners*,
 788 F.3d 580 (6th Cir. 2015)............................................................. 29

*Smith v. YMCA of Montgomery, Inc.*,
 462 F.2d 634 (5th Cir. 1972) .............................................................. 6

*Steffel v. Thompson*,
 415 U.S. 452 (1974) ........................................................................... 10

*Stilwell v. Office of Thrift Supervision*,
 569 F.3d 514 (D.C. Cir. 2009) ............................................................ 8

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) ...................................................................*passim*

*Ted Cruz for Senate v. Federal Election Commission*,
 2019 WL 8272774 (D.D.C. Dec. 24, 2019) ......................................... 6

*Telescope Media Group v. Lucero*,
 936 F.3d 740 (8th Cir. 2019)......................................................*passim*

*Town of Greece v. Galloway*,
 572 U.S. 565 (2014) ........................................................................... 29

*Turner Broadcasting System, Inc. v. F.C.C.*,
 512 U.S. 622 (1994) ........................................................................... 24

*Tweed-New Haven Airport Authority v. Tong*,
    930 F.3d 65 (2d Cir. 2019) ................................................................ 10

*United States v. Securities & Exchange Commission*,
    963 F.3d 244 (2d Cir. 2020) ............................................................ 17

*United States v. Williams*,
    553 U.S. 285 (2008) .................................................................... 24, 25

*Updegrove v. Herring*,
    2021 WL 1206805 (E.D. Va. Mar. 30, 2021) ................................... 9

*Virginia v. American Booksellers Association, Inc.*,
    484 U.S. 383 (1988) .................................................................... 8, 10

*Ward v. Polite*,
    667 F.3d 727 (6th Cir. 2012) ........................................................... 28

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) ........................................................................ 22

*Winter v. Wolnitzek*,
    834 F.3d 681 (6th Cir. 2016) ....................................................... 3, 18

*XY Planning Network, LLC v. United States Securities & Exchange Commission*,
    963 F.3d 244 (2d Cir. 2020) ............................................................ 17

## Rules

Fed. R. Civ. P. 10(c) ............................................................................. 32

## Statutes

Kentucky Revised Statutes § 344.230 .................................................. 12

Kentucky Revised Statutes § 446.350 .................................................. 31

Louisville Metro Ordinance § 92.02 ..................................................... 14

Louisville Metro Ordinance § 92.04 ..................................................... 29

Louisville Metro Ordinance § 92.05 ....................................... 7, 27, 33

Louisville Metro Ordinance § 92.07 ..................................................... 29

Louisville Metro Ordinance § 92.08 ................................................ 12, 19

Louisville Metro Ordinance § 92.09 .................................................... 11, 12, 13, 14, 15

## **Other Authorities**

Carl H. Esbeck, *Do Discretionary Religious Exemptions Violate the Establishment Clause?*, 106 Ky. L.J. 603 (2018)............................................... 29

Eugene Volokh, *Bans on Political Discrimination in Places of Public Accommodation and Housing*, Reason (Oct. 18, 2021), https://bit.ly/3AXf2vL......................................................................... 25

Expert Declaration of Professor Dennis Burk, *Arlene's Flowers, Inc. v. Ferguson*, No. 13-cv-05094-RMP, https://bit.ly/3jgOL5I ................................. 28

Petition for Rehearing, *Arlene's Flowers, Inc. v. Washington*, No. 19-333 (U.S. July 27, 2021), https://bit.ly/3BY9Uss.................................................. 1

Richard Wolf, *Same-sex marriage foes stick together despite long odds*, USA Today (Nov. 15, 2017), https://bit.ly/3m2czwk .................................................. 1

## Introduction

Plaintiff Chelsey Nelson wants to live out her faith in her photography, editing, and blogging. To that end, Chelsey started her own photography studio to promote messages she believes in. But Chelsey ran into a problem. Louisville's public-accommodations law compels her to speak contrary to her faith, censors speech inspired by her faith, and selectively targets her religious views on marriage. After Chelsey learned about this law, she asked this Court for protection.

She did so for good reason. As Louisville now concedes, its law does *exactly* what Chelsey feared: bans her from photographing and blogging consistent with her faith, forbids her from binding her company to act consistent with her faith, and outlaws her proposed statement explaining this policy. As Louisville also concedes, it has and will aggressively enforce its law—calling its need to regulate Chelsey "compelling" and defending its right to do so in this litigation *for the past two years*. Meanwhile, any individual, commission member, organization, or tester can file complaints against Chelsey (*infra* § I.A) while many other creative professionals like Chelsey have been prosecuted in Kentucky and elsewhere.[1] Chelsey Nelson's Decl. in Supp. of Pls.' Mot. for Summ. J. (Decl.) ¶¶ 411–15, ECF No. 92–2. This Court already found that Chelsey has standing to challenge Louisville's law and that Louisville's law violates Chelsey's First Amendment rights. Order 2, ECF No. 47. The undisputed facts only bolster that ruling.

In arguing otherwise, Louisville ignores Chelsey's facts, its own admissions, and this Court's prior ruling. In their place, Louisville creates an upside-down world where Chelsey's sworn and *undisputed* facts are "manufactured," her speech is

---

[1] Pet. for Reh'g at 11, *Arlene's Flowers, Inc. v. Washington*, No. 19-333 (U.S. July 27, 2021), https://bit.ly/3BY9Uss (potential personal bankruptcy); *Scardina v. Masterpiece Cakeshop Inc.*, No. 19CV32214 (Colo. Dist. Ct. June 15, 2021), https://bit.ly/3vaQ3UH (judgment); Richard Wolf, *Same-sex marriage foes stick together despite long odds*, USA Today (Nov. 15, 2017), https://bit.ly/3m2czwk.

conduct, her editorial discretion is discrimination, her religious beliefs are bigotry, and her decision to employ legal counsel to protect her rights is detestable.

Throughout this litigation, Louisville has consistently tried to re-label constitutional rights—free speech, religious freedom, consultation with counsel, public-advocacy litigation—as both illegal and immoral. But Louisville "cannot foreclose the exercise of constitutional rights by mere labels." *NAACP v. Button*, 371 U.S. 415, 429 (1963). And "[s]peech is not conduct just because the government says it is." *Telescope Media Grp. v. Lucero* (*TMG*), 936 F.3d 740, 752 (8th Cir. 2019). In reality, citizens have standing to challenge laws that restrict their rights. Individuals can access counsel and courts to protect their rights. And laws cannot permissibly compel speech, censor viewpoints, or infringe religious liberty, no matter what labels officials use. This Court should therefore look past Louisville's labels and stop Louisville from violating Chelsey's rights under the First Amendment and Kentucky's Religious Freedom Restoration Act (KRFRA).

## Argument

Summary judgment for Chelsey is appropriate because Louisville doesn't dispute any of her facts. Nor does Louisville dispute her entitlement to injunctive or declaratory relief if she wins on the merits. *See* Pls.' Br. in Supp. of Their Summ. J. Mot. (MSJ) 5–6, ECF No. 92–1 (outlining factors for this relief). And Chelsey wins on the merits for seven reasons: she (I) has standing to challenge Louisville's law which (II) compels and restricts her speech based on content and viewpoint, (III) is not neutral or generally applicable, (IV) forces her to participate in religious ceremonies she objects to, (V) substantially burdens her religious exercise, (VI) triggers and fails strict scrutiny, and (VII) is vague, overbroad, and gives officials

unbridled discretion. So this Court should grant Chelsey's summary-judgment motion, deny Louisville's, and provide all the relief requested in Chelsey's motion.[2]

## I.   Chelsey has standing to challenge Louisville's law.

For standing, Chelsey must show injury, causation, and redressability. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 157–58 (2014). Chelsey must also show ripeness. *Id.* at 157 n.5. Louisville only contests Chelsey's injury-in-fact for standing and ripeness. Defs.' Cross-Mot. for Summ. J. (Defs.' MSJ) 8–14, ECF No. 97. And Chelsey can show this because (A) she faces a credible threat from Louisville's law; (B) the law's provisions are intertwined; and (C) Louisville's law gives her competitors an unfair advantage. Chelsey's claims are also (D) ripe because the line between "standing and ripeness … has evaporated." *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016).

### A.   Chelsey has standing because Louisville's law credibly threatens and chills her religiously motivated speech.

This Court found that Chelsey has standing. Order 8–9. Louisville completely ignores this. For injury-in-fact, Chelsey need only prove a "substantial risk" of Louisville's law harming her. *SBA List*, 573 U.S. at 158. Chelsey makes this showing because (1) she intends to "to engage in a course of conduct arguably affected with a constitutional interest;" (2) her conduct is arguably "proscribed by" Louisville's law; (3) there is a "credible threat" of being "prosecut[ed];" and (4) many factors prove the credible threat Chelsey faces. *Id.* at 159.

#### 1.   Chelsey intends to engage in activities protected by the First Amendment.

Chelsey "easily" shows that she wants to engage in conduct affected with a constitutional interest because she wants to offer and create photographs and blogs

---

[2] Chelsey reserves the right to supplement this record. *See* MSJ 5 n.2.

celebrating only opposite-sex weddings, explain this choice publicly, and bind her company to this policy. Order 7; *SBA List*, 573 U.S. at 159; MSJ 6–20 (proving this).

Chelsey does more than "intend" to do these activities—she *actually* does them. Chelsey "focus[es] on telling positive stories … about weddings between a man and a woman." Decl. ¶76. She regularly creates photographs and blogs to promote opposite-sex marriages "in a positive and uplifting way" and participates in those weddings. *Id.* at ¶¶ 151, 169–73; *id.* at ¶¶ 208–327 (prior photographs and blogs); App. to Pls.' Br. in Supp. of Summ. J. Mot. (App.) 401–10 (same). Chelsey follows her editorial policy of only promoting messages consistent with her belief, and now binds her company to that policy. Decl. ¶¶ 51–54; App. 2–3. And Chelsey posted statements with a "comprehensive expression of [her] religious beliefs about God designing marriage" after this Court enjoined Louisville. Decl. ¶¶ 452, 475.

Louisville never addresses (nor disputes) Chelsey's *intent* and actual practice. Instead, Louisville questions (without evidence) Chelsey's *motives* for filing this suit. Defs.' MSJ 4–7. But her motives are pure, and she acted reasonably.

For years, Chelsey watched other speakers risk their business because of their beliefs and worried about her own fate. Decl. ¶¶ 411–14. But like most non-lawyers, Chelsey was unaware of how she could protect herself. *Id.* at ¶ 414. When she learned about Louisville's law and its penalties, she reasonably decided to take steps to safeguard herself and her business. *Id.* at ¶¶ 455–57. She also decided to protect her right to post statements explaining her religious beliefs about marriage and what she can and cannot create, something she had previously refrained from doing to avoid prosecution. *Id.* at ¶¶ 450–54. These steps were reasonable. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 703 (2014) (plaintiffs wanted to "run the businesses in accordance with the family's religious beliefs").

Louisville questions Chelsey's motives by claiming she "was scaling back" her business just before this case. Defs.' MSJ 6 (citing Chelsey's deposition). But the

cited testimony just explains that Chelsey stopped accepting photography requests for anything *other* than wedding photography. Decl. ¶¶ 118–24 (explaining personal reasons for this choice). Focusing on wedding photography—Chelsey's goal "[f]rom the outset" of her business—is not the same as "scaling back" her business. *Id.* at ¶ 76. In fact, Chelsey was actively trying to grow her business just before learning about Louisville's law. *Id.* at ¶¶ 416–22. And Chelsey has been trying to grow her business after the injunction issued. *Id.* at ¶¶ 478–88. Louisville—not Chelsey—is trying to "downsiz[e]" her business. *Contra* Defs.' MSJ at 6.

Louisville also faults Chelsey for "not immediately post[ing]" her statements on her website and then for seeking "legal advice" about these statements. *Id.* at 5–6. But it would have been foolish for Chelsey to do otherwise. She reasonably feared being prosecuted under Louisville's law. Decl. ¶¶ 450–54; Order 10. And it is undisputed that Chelsey drafted her statement to express her sincerely held beliefs. Defs.' MSJ Ex. 7 PageID #3990, ECF No. 97–7 (Chelsey wrote statements); Decl. ¶ 448 (Chelsey wrote statements according to her beliefs).

Louisville next cries foul that this case is "manufactured." Defs.' MSJ at 1, 4, 7–8, 11, 14. But there is nothing manufactured about Chelsey's business or her intent. She testified under oath to intending to engage in her desired activities and did them after her injunction win. Meanwhile, Louisville cannot dispute that Chelsey operates her business in line with her faith. Decl. ¶¶ 51–54, 75–99, 208–327, 452, 475. Indeed, she's pursued this litigation despite harms to business and reputation and horrible name-calling by people she's never met. *Id.* at ¶¶ 459–74. No one would endure this if they weren't sincere or didn't want to follow through.

Beyond all this, Louisville's attacks are completely irrelevant. Courts allow civil-rights litigants to challenge unjust laws no matter their motives. *Pierson v. Ray*, 386 U.S. 547, 558 (1967) (ministers could enter "bus terminal for the sole purpose of testing their rights to unsegregated public accommodations"); *Evers v.*

*Dwyer*, 358 U.S. 202, 204 (1958) (per curiam) (black citizen could board segregated bus he had never ridden "for the purpose of instituting" a lawsuit ).[3] Intent matters, not motives. And no one questions Chelsey's intent.

As a last-ditch effort, Louisville moves from attacking Chelsey to her counsel for a "national strategy" of preserving "religious exemptions." Defs.' MSJ 11. But Louisville is no historian. Advocacy groups have often used litigation to pursue their goals—from stopping segregation, to ensuring gun access, to ending affirmative action, to protecting the environment.[4] These activities aren't just permissible; they're constitutionally protected. *NAACP*, 371 U.S. at 429–45. Louisville just doesn't like the *particular* rights Chelsey and her counsel seek to protect. But Louisville's disdain for these rights does not undercut Chelsey or her counsel's right to exercise them. In the end, Louisville provides no reason to doubt Chelsey's sincerity or motives, much less her intent. And the latter is all standing requires.

### 2.    Louisville's law arguably covers Chelsey's desired activities.

Louisville's law also prohibits Chelsey's desired activities. Order 7. *See SBA List*, 573 U.S. at 158. Louisville does not dispute this. Again and again, Louisville repeats that its law applies to Chelsey, forbids her desired actions, and converts her religious beliefs into illegal "discrimination."

---

[3] *See Ted Cruz for Senate v. Fed. Election Comm'n*, 2019 WL 8272774, at *6 (D.D.C. Dec. 24, 2019) (standing for injury caused by "transparent tailor[ing]" injury to violate law); *Smith v. YMCA of Montgomery, Inc.*, 462 F.2d 634, 645 (5th Cir. 1972) (black plaintiffs could apply to camp "for the sole purpose of integrating" it). Louisville's "manufactured" defense is also ironic. Louisville uses testers—people with no sincere desire for services—to make fake requests to businesses for Louisville to prosecute. *Infra* § I.A.4 (detailing testers). Yet Louisville faults Chelsey for *earnestly* engaging in constitutionally protected activities.

[4] Ironically, Louisville cites nationwide advocacy organizations that oppose Chelsey's relief. Defs.' MSJ 15 (citing Br. of Amici Curiae Am. Civil Liberties Union of Ky. & Am. Civil Liberties Union Supporting Defs. (ACLU Br.) ECF No. 35).

Louisville's law requires Chelsey to participate in and offer and create photographs and blogs "on the exact same terms and conditions for" same-sex and opposite-sex weddings. App 383. According to Louisville, Chelsey violates the law's "exact same service" requirement because she only participates in, and offers and creates photographs and writes blogs celebrating, opposite-sex weddings. App. 352–54; *id.* at 760–65 (explaining exact same service rule as to Chelsey); Defs.' MSJ 7 ("Chelsey's intent … violate[s] the Accommodations Provision.").

Louisville also prohibits Chelsey from having her current policy and practice of only photographing, editing, blogging about, and participating in opposite-sex weddings. *See, e.g.*, App. 356–62. Louisville even calls Chelsey's "business model … discriminatory." Defs.' Br. in Resp. to Prelim. Inj. (Defs.' MPI Resp.) 8, ECF No. 15–1. To Louisville, Chelsey's policy is "plainly discriminatory" and violates the law. *Id.* at 10. *See id.* at 11 ("[o]n its face … [Chelsey's] policy discriminates based on sexual orientation"); Order 7 (explaining Louisville bans Chelsey's policy); App. 762–63 (Chelsey policy is "discrimination"); *id.* at 356–59 (same).

And Louisville bans Chelsey's statements explaining why she can only promote certain messages about marriage. Order 21; App. 360–62, 428–29; Defs.' MPI Resp. 5 (Chelsey's desired statements "discriminat[e] against same-sex couples"); Defs.' Mot. for Protective Order 2, ECF No. 64 (admitting "Plaintiffs' … statement violates the Fairness Ordinance"); *id.* at 5 (same); Defs.' Resp. to Pls.' Mot. to Compel Discovery 6, ECF No. 66 (same). Louisville's law also arguably bans Chelsey from explaining her religious beliefs on marriage because some might view those beliefs as "unwelcom[ing]." Metro Ord. ¶ 92.05(B).

With these clear pronouncements, Louisville's law at least arguably forbids Chelsey's desired activities, as this Court already held. Order 7.

### 3.    Chelsey faces a credible threat of enforcement.

Chelsey also faces a credible threat because Louisville's law prohibits her constitutional activities and Louisville actively enforces the law.

When non-moribund laws arguably prohibit plaintiffs' desired activities, the Supreme Court and the Sixth Circuit presume a credible threat of enforcement. *See, e.g.*, *SBA List*, 573 U.S. at 162; *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (seeing "no reason to assume" a "newly enacted law will not be enforced"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979); *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) ("[C]ourts do not closely scrutinize the plaintiff's complaint for standing" in First Amendment pre-enforcement cases.); *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1396 (6th Cir. 1987) (standing where "statutory language of the Ordinance" applied to plaintiff).

This presumption applies here. Louisville admits it "actively enforces" its law. Defs.' MSJ 9. Indeed, Louisville has for two years defended its right to enforce its law against Chelsey in this litigation, and Louisville claims a compelling need to regulate Chelsey and an inability to grant even one religious exemption. Defs.' MSJ 24–28; App. 822 (agreeing "a single instance of discrimination … needs to be corrected"). It is "more than a little ironic that [Louisville] would suggest [Chelsey] lack[s] standing and then, later in the same brief, label [Chelsey] as a prime example of ... the very problem [its law] was intended to address." *Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009). Louisville's words match its deeds. Louisville has investigated more than 100 public accommodations since 2010. Statement of Stip. Fact (Stip.) 1.

Faced with this credible threat, Chelsey operates under a reasonable threat of prosecution and reasonably chilled her constitutional activities. See Decl. ¶¶ 425–54 (limiting her advertising, exiling herself from a referral group, and declining to

8

explain "a more comprehensive expression of [her] religious beliefs"). And "[i]t is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994); Order 8 (same).[5]

In fact, this Court and many others agree that speakers like Chelsey have standing to challenge laws like Louisville's. Order 6–10; *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1171–75 (10th Cir. 2021); *TMG*, 936 F.3d at 749–50; *Brush & Nib Studio, LC v. City of Phoenix* (*B&N*), 448 P.3d 890, 900–02 (Ariz. 2019). Unable to distinguish these, Louisville relies on an outlier—one unpublished, out-of-circuit case involving a law that had allegedly "never been enforced" and did not allow "testers." *Updegrove v. Herring*, 2021 WL 1206805, at *3 (E.D. Va. Mar. 30, 2021). That case was wrongly decided.[6] It's also different. Louisville actively uses testers and enforces its law. *See infra* § I.A.4.

Louisville also denies any enforcement threat, saying  "the text of the Ordinance is at odds with any suggestion that it is targeted at individuals like Chelsey." Defs.' MSJ 9. But Louisville admits that Chelsey's business is a public accommodation under its law. *See* App. 899; *supra* § I.A.2. And Louisville concedes that its law's "clear terms" cover Chelsey's business because the law applies to "a commercial photography business that provides services to the public and advertises on the Internet." Defs.' MPI Resp. at 9. These admissions distinguish this case from *Plunderbund Media, L.L.C. v. DeWine* where the prosecuting officials

---

[5] Both the Denial and Unwelcome Clauses of the Publication Provision chill Chelsey from posting her statement. Order 21–23 (making this point); Decl. ¶¶ 445–54.
[6] *Updegrove* contradicts *SBA List* and other cases and was decided on admittedly wrong facts. After the court dismissed the case, and pending an appeal, defendants filed an affidavit admitting that "certain statements" of non-enforcement in a declaration "were not accurate" when made and defendants had actually "received eight complaints" of sexual orientation discrimination. Decl. of R. Thomas Payne, II, *Updegrove v. Herring*, Civ. No. 20-cv-01141-CMH-JFA, ECF No. 66.

"expressly affirmed that the law" did not cover the plaintiffs. 753 F. App'x 362, 372 (6th Cir. 2018). Defs.' MSJ 9 (citing same). *See Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (when party is "an object of" statute, there is "ordinarily little question" that statute causes injury) (cleaned-up).

Louisville turns a blind eye to its admissions, the undisputed facts, and precedent to impose unnecessary standing requirements on Chelsey. For example, Louisville denies standing because "[n]o discrimination complaints have been filed" against Chelsey. Defs.' MSJ 8. But Chelsey need not "first expose" herself "to actual … prosecution" to challenge Louisville's law. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 9–11 (1988) (standing "before any enforcement proceedings were initiated"). Louisville's "active[] enforce[ment]" of its law bolsters Chelsey's standing. Defs.' MSJ 9; App. 894–96 (admitting complaint paragraphs 303 and 304); Stip. 1. Courts find standing even before a law is enforced against anyone. *See Am. Booksellers Ass'n, Inc.*, 484 U.S. at 392 (standing "before the statute became effective"); *Babbitt*, 442 U.S. at 302 (standing where penalty "has not yet been applied and may never be applied"); *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 696 (6th Cir. 2015) (similar).

Next, Louisville claims that standing hinges on Chelsey being "asked to provide services for a same-sex wedding." Defs.' MSJ 9. Not so. Courts have found standing in similar cases without relying on this. *See 303 Creative LLC*, 6 F.4th at 1171–75; *TMG*, 936 F.3d at 749–50; *B&N*, 448 P.3d at 900–02. And Chelsey alone controls whether she violates the law: whether to post her statements, how to operate her business, whether to offer only opposite-sex wedding photographs, and whether to decline requests for same-sex wedding photographs. Louisville also initiates complaints without service denials—through testers and from activity on social media and advertisements. *Infra* § I.A.4; App. 758 (investigating Scooter Triple B's for sign without knowledge of actual denial of service); *id.* at 482–84

10

(listing "discriminatory advertising" settlements). To be sure, private third parties can file complaints as well. But they can do so merely after seeing objectionable signs. App. 811, 813. And Louisville must investigate those complaints. Metro Ord. § 92.09(C)–(D); Defs.' MSJ Ex. 9 PageID #4012, ECF No. 97–9 (confirming mandatory investigation and conciliation attempts). That supports standing. Order 9–10; *SBA List*, 573 U.S. at 164 (standing for similar administrative system).

These enforcement mechanisms distinguish this case from *Hyman v. City of Louisville*, 53 F. App'x 740 (6th Cir. 2002). Defs.' MSJ 10 (citing same). There, the physician's prosecution risk depended on receiving an employee application from a homosexual where the physician did not have "an immediate or projected need to hire a new employee." *Hyman*, 53 F. App'x at 744. Here, Chelsey already adopted her policy and posted her statement. So absent the injunction, Louisville or any person seeing Chelsey's statement could investigate and prosecute Chelsey now.

Chelsey's risks have even increased after her position became "well known." *Contra* Defs.' MSJ 10. She continues to receive requests.[7] Decl. ¶¶ 480–81. And Louisville has investigated a public accommodations after looking through "social media and seeing some of the hubbub" and sent testers to public accommodations based on "information was received from news media." App. 742, 757. Louisville also accepts complaints from citizens and public interest non-profits acting as testers. App. 743, 868–71. Around the country, activists target well-known religious businesses. *Supra* n.1. Likewise, it is irrelevant that Louisville "had never even heard of Chelsey before she filed this lawsuit." *Contra* Defs.' MSJ 8. Louisville investigates and prosecutes previously unknown entities regularly. App. 824 (admitting no prior knowledge of Scooter Triple B's); *id.* at 836 (admitting testers "are randomly calling places … they've never heard of before").

---

[7] And Chelsey continues to book clients. Chelsey Nelson's Decl. in Supp. of Pls.' Combined Mot. for Summ. J. Resp. and Reply ¶ 4. *Contra* Defs. MSJ 6–7.

Despite these risks to Chelsey, Louisville insists she lacks standing because of the law's "modest civil fines" and lack of criminal penalties. Defs.' MSJ 11. But Louisville has expensive tastes—for Louisville, a "$10,000" fine counts as "modest."[8] *Id.* at 10. That's crippling for a small-business owner like Chelsey. *Mobil Oil Corp. v. Att'y Gen. of Va.*, 940 F.2d 73, 75 (4th Cir. 1991) (standing to challenge law with $2,500 penalty). Louisville's financial focus overlooks other harmful penalties—forcing Chelsey to create photographs and blogs that violate her faith or banning her business altogether. K.R.S. § 344.230(2)–(3) (remedies include "cease and desist" orders and "[a]dmission" to service); Metro Ord. § 92.08(B)(8) (incorporating same). And finally, Chelsey's "threat … need not stem from a criminal action." *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014). *Accord SBA List*, 573 U.S. at 165–66 ("administrative action … may give rise to harm").

Louisville's theory also ignores that investigations alone harm Chelsey. Decl. ¶¶ 423–435, 450, 452. *SBA List*, 573 U.S. at 165–66 (threat of investigation created harm). That's because Louisville's investigative process is onerous, requiring Chelsey to respond to complaints under oath, produce documents, and testify as a witness. Metro Ord. § 92.08(B)(5); *id.* at § 92.09(D). And Chelsey must cooperate in the investigation or risk a default judgment with penalties like "a fine" or an "order[] basically to be stopped." App. 748.

In the end, Louisville demands too much for standing. Chelsey need only show a "substantial risk" of harm, *SBA List*, 573 U.S. at 158. Chelsey's risk of harm is at least substantial. So she has standing.

---

[8] Louisville tries to rewrite its law to include a "limit[] [on] the amount of any fines." Defs.' MSJ 10. But damages for "humiliation and embarrassment" and "costs actually incurred" have no inherent limit. *Id.* These terms set the floor, not the ceiling. That's why settlement payments often exceed $10,000. *See* App. 457 ($11,750); *id.* at 463 ($23,000); *id.* at 467 ($21,000).

### 4.   Many other factors confirm the credible threat.

Four more factors confirm Chelsey's standing. *See* Order 8–9 (identifying four factors); *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016) (same).

*First*, Louisville has a history of enforcing its law and does so "actively." Order 8–9; Defs.' MSJ 9; App. 894–96 (admitting complaint paragraphs 303 and 304). Since 2010, Louisville has investigated over 100 public accommodations.[9] Stip. 1. That history is more than enough. *See Holder v. Humanitarian Law Project* (*HLP*), 561 U.S. 1, 16 (2010) (standing with "several" past prosecutions); *Online Merchants Guild v. Cameron*, 995 F.3d 540, 550–51 (6th Cir. 2021) (standing with two past prosecutions).

*Second*, Louisville never disavows prosecuting Chelsey. *See* Order 9; *Kiser*, 765 F.3d at 609; *Platt*, 769 F.3d at 452. To the contrary, Louisville actively defends its authority to do so. Defs.' MSJ 24–29; App. 424 & 430 (publicizing Louisville's intent to defend law despite injunction); *Harrell v. Fla. Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010) ("an intent to enforce the rule may be inferred" from law's defense).

*Third*, Louisville's law is easy to enforce against Chelsey. Order 9. Louisville posts its complaint form online "[t]o make it convenient for a person wanting to file a complaint to do so at their leisure." App. 830. *See also id.* at 835, 854–55, 891–92; *Platt*, 769 F.3d at 452 (online complaint form bolstered standing). Louisville also accepts complaints over the phone. App. 830. Most of the complaints come from complainants who "walk in off the street or who [have] made an inquiry over the phone and ha[ve] been encouraged to come file a complaint." App. 744; *id.* at 831 ("Most of the complaints we receive come from phone calls.").

This easy complaint-process swells "the universe of potential complainants." *SBA List*, 573 U.S. at 164. For example, any person claiming to be aggrieved may

---

[9] Louisville also received about 180 public accommodation complaints from 2006–2019. App. 446–47, 450, 455, 462, 468, 471, 477, 485, 488, 879, 883. Louisville does not dispute the accuracy of these publicly available numbers. App. 896.

file a complaint. Metro Ord. § 92.09(A). "Person" includes individuals, Louisville officials, and associations, corporations, "any other legal … entity," and their "members." *Id.* at § 92.02 (defining persons). Persons living outside of Louisville can submit complaints. App. 733. So can a person "associat[ed] with someone from a protected class" even if the person was not denied because of their own characteristics. *Id.* at 806. And a person need not be denied a service to file a complaint—seeing an objectionable sign is enough. *Id.* at 811, 813.

Any member of Louisville's enforcement commission can also file complaints based on discriminatory actions they witness or hear about, reports in the news, or "discriminatory advertising" they see. Metro Ord. § 92.09(A); App. 352, 475, 740–41. In fact, Louisville officials filed a complaint against a public accommodation after "scrolling through social media" and seeing "controversial things … on Facebook." *Id.* at 757, 784, 819.

And Louisville uses and permits many kinds of testers to initiate complaints. *TMG*, 936 F.3d at 750 (testers support standing). For example, Louisville can file complaints through information developed by their "testers"—employees posing as customers to bait discriminatory acts by public accommodations. App. 740–43; *id.* at 742 (testers test public accommodations); *id.* at 858. Louisville officials can pose as testers on their own initiative. *Id.* at 740. Testers from non-profit organizations located outside Louisville can file complaints. *Id.* at 868–71 (noting testers from Lexington Fair Housing Council supported complaint). And Louisville has no policy preventing "a private citizen, from going around and engaging in testing activity, and then filing a complaint[.]" *Id.* at 743.

Overlooking these many pathways for complaints, Louisville counters that only someone "'aggrieved by an unlawful practice'" can file complaint. Defs.' MSJ 9. But that's not a real limitation. *SBA List* found that the public could easily file complaints even though they only could do so with "knowledge of the purported

14

violation." 573 U.S. at 164. *See 303 Creative*, 6 F.4th at 1169, 1174 (standing to challenge similar law when enforceable by those "alleging discrimination"). In any event, almost anyone qualifies as "aggrieved" because individuals, organizations, Louisville officials, and all sorts of testers can complain. And Louisville must investigate and attempt to resolve every filed complaint no matter who files it or its merits. Metro Ord. § 92.09(C)–(D); Defs.' MSJ Ex. 9 PageID #4012.

*Finally*, Louisville stresses that Chelsey's desired activities violate its law and intends to enforce the law. *Supra* § I.A.2–3. True, Chelsey "has not received any warning letters." Defs.' MSJ 9. But a formal letter isn't necessary here. Louisville clearly states its intent to enforce its law against Chelsey, which gives her standing. *See Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998) (standing because the "City clearly states in its answer that it fully intends to prosecute anyone who violates the provisions of the ordinance"); *Mich. State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1184 (6th Cir. 1986) (similar).

Chelsey could challenge the law if she met only one of the above factors. *Online Merchants Guild*, 995 F.3d at 550 (each factor need not "be established"); *Hargett*, 791 F.3d 684 at 695 (standing based only on no disavowal). But she meets all four. That seals her standing.

### B.   Chelsey has standing to challenge the Accommodations and Publication Provisions because they are intertwined.

In addition to meeting the requirements to independently challenge the Accommodations and Publication Provisions, Chelsey can challenge the former provision because the merits of both provisions are intertwined.

Whether the Publication Provision can constitutionally ban Chelsey's desired statements depends on whether the Accommodations Provision can constitutionally ban Chelsey's policy and compel her to celebrate same-sex marriage. *See Bigelow v. Virginia*, 421 U.S. 809, 822 (1975) (invalidating abortion advertisement restriction

because it "pertained to constitutional interests"). This Court and Louisville acknowledge this intertwinement. Order 21 ("[T]he constitutionality of the Publication Provision … depends on the constitutionality of the Accommodations Provision …."); Defs.' MSJ 20 ("Just as there is no constitutional right to discriminate, there is no concomitant right to advertise an illegal policy of discrimination"). When issues are intertwined like this, courts address the merits of those issues. *Accord TMG*, 936 F.3d at 757 n.5; *B&N*, 448 P.3d at 926.[10]

*Gratz v. Bollinger* proves the point. 539 U.S. 244 (2003). There, the Court held an aspiring transfer student had standing to challenge a freshman admissions policy for which he was no longer eligible. *Id.* at 261–67. The criteria for freshman admissions and transfer students considered race to enhance diversity, which was exactly what the plaintiff argued was never justified. *Id.* at 267. So the two policies implicated "the same set of concerns," which created standing to challenge both. *Id.*

As this Court and Louisville recognize, Chelsey's claims are even more intertwined. Chelsey necessarily has standing to challenge the Accommodations Provision because she has standing to challenge the Publication Provision.

## C.   Chelsey has competitor standing because Louisville's law burdens her compared to her competitors.

In addition to standing based on enforcement and chill, Chelsey has standing because Louisville's laws give her competitors an unfair competitive advantage. *See, e.g.*, *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 281 (6th Cir. 1997) (standing when regulation burdened firearm manufacturers and dealers but not their

---

[10] *Cf. Schultz v. United States*, 529 F.3d 343, 350 (6th Cir. 2008) (evaluating merits of two separate but intertwined statutes because plaintiff had standing to challenge one of the statutes); *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996) (explaining claim intertwinement in pendent jurisdiction case and noting the "finding on the first issue necessarily and unavoidably decides the second").

competitors); *XY Plan. Network, LLC v. United States Sec. & Exch. Comm'n*, 963 F.3d 244, 251 (2d Cir. 2020) (summarizing competitor-standing doctrine).

Specifically, Louisville's law burdens Chelsey but not her direct competitors—other wedding photographers in Louisville's wedding market and other boutique editing companies. Decl. ¶¶ 105, 109–16, 503; App. 606, 657. Without an injunction, Chelsey cannot operate her business efficiently because she must limit her advertising to avoid attracting requests to promote same-sex weddings and engagements, cannot participate in referral groups, and would de-publish her Facebook page. Decl. ¶¶ 432, 435–36, 492. Chelsey also cannot promote her business to the public or advocate for her religious beliefs as she desires because she cannot post a statement explaining her religious reasons for celebrating only opposite-sex weddings or explain these beliefs to persons who ask her to promote same-sex weddings. Decl. ¶¶ 440–54.

In contrast, other Louisville wedding photographers and boutique editors who compete with Chelsey do not face these burdens because they photograph and edit opposite-sex and same-sex weddings. App. 365, 538–39, 613, 661. *See Magaw*, 132 F.3d at 281 (competitor standing where regulation "restricted the operation" of firearm "businesses in various ways" but not their competitors); *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (competitor standing when law forces business to "lose sales to rivals" or to "expend more resources to achieve the same sales"). This gives Chelsey another basis for standing to challenge Louisville's law.

**D.    Chelsey brings ripe challenges against the Accommodations and Publication Provisions because they forbid her activities according to Louisville.**

Chelsey's claims are also ripe because Louisville's law injures her. Ripeness and standing come to the same question in this case: whether Chelsey has suffered

an injury. *See Winter*, 834 F.3d at 687 (evaluating standing and ripeness together); *Platt*, 769 F.3d at 451 (same); Order 6 (same). She has. *See supra* § I.A.

There are also no relevant disputed or missing facts here. The law bars Chelsey from only participating in weddings, photographing, and blogging consistent with her faith, from adopting that policy, and from posting a statement explaining her beliefs or that policy. *Supra* § I.A.1–2. Chelsey provided her policy, her statement, and examples of what she can and cannot do. Decl. ¶¶ 50, 208–409, 446–47. And Louisville has conceded that its law forbids them. *Supra* § I.A.2.

This is far from an "abstract and hypothetical dispute." Defs.' MSJ 12–14. This Court already found Louisville's law violated Chelsey's rights on a less-developed record. Order 11–22. Courts have rejected Louisville's missing-facts argument in similar cases. *303 Creative LLC*, 6 F.4th at 1172, 1176 (ripe record with "clear examples" of website designs). And Louisville admitted that "there are no complicated or nuanced questions of interpretation at issue" here. Defs.' Mot. for Protective Order 5. That's why— without more facts—Louisville calls Chelsey's violations "undisputed" (Defs.' MSJ 7), and amici agree, ACLU Br. 2 (saying Chelsey's "intent … violates" the law). This litigation has gone on for two years and everyone in it—this Court, the parties, amici, and experts—has had enough facts to determine that Louisville's law forbids Chelsey's activities. Nothing has changed.

Still, Louisville poses irrelevant or already answered questions to conjure up ripeness concerns. Defs.' MSJ 13–14. For example, it is undisputed that Chelsey believes all weddings are religious events. Decl. ¶ 379. It is therefore irrelevant whether she is forced to participate in a same-sex wedding with "no religious component"—even that would violate her beliefs.[11] Defs.' MSJ 14. Likewise, it is

---

[11] Alternatively, for her participation claim only, this Court could enjoin Louisville from forcing Chelsey to participate in any same-sex wedding with prayer. *See* Decl. ¶ 171 (describing Chelsey's participation in past weddings); *B&N*, 448 P.3d at 900–01 (tailoring relief based on record).

undisputed that Chelsey creates everything "custom for each client," only creates "positive and uplifting" photographs and blogs, and declines to create certain wedding photographs because of their messages. Decl. ¶¶ 117, 151, 345–376, 395. Yet Louisville still insists Chelsey violates the law. *Supra* § I.A.2. So Chelsey breaks the law if she declines to "document" a same-sex wedding or declines because she "insists on making the wedding photos conform to her own vision." Defs.' MSJ 14.

In the same way, it is irrelevant whether a "same-sex couple" found another photographer or experienced any "degree" of "harms." *Id.* Those questions go to damages, not liability. According to Louisville, Chelsey violates the law regardless of whether the same-sex couple found another photographer or had any non-monetary harm. And damages are just one of the penalties Louisville can impose. *See* Metro Ord. § 92.08(B)(8).

In the end, no matter how Louisville tries to confuse things, it has admitted that Chelsey violates its law if she engages in her desired activities and has litigated for two years to restrict her activities. No more facts are needed. This Court should address the merits.

## II.    Louisville's law violates the First Amendment by compelling and restricting Chelsey's speech based on content and viewpoint.

Louisville's law violates the First Amendment by compelling and restricting Chelsey's speech based on content and viewpoint as this Court held. In arguing otherwise, Louisville never mentions this Court's prior opinion. *See* Defs.' MSJ 14–20. But this decision was correct. Louisville's law (A) compels Chelsey's speech, (B) compels and restricts Chelsey's speech based on content and viewpoint, and (C) endangers all speakers in Louisville.

### A.    The Accommodations Provision compels Chelsey's speech.

Louisville's law compels Chelsey to speak messages she disagrees with. This Court concluded that Chelsey's photographs and blogs are speech, that Louisville "can't compel speech when it violates the speaker's religious … principles," but the Accommodation Provision compels Chelsey to promote messages she disagrees with. Order 4, 13–18. Louisville does not dispute the three-part test for identifying compelled speech or any of Chelsey's facts. MSJ 6–15.

Instead, Louisville argues that its law "does not regulate the content of Chelsey's speech," does not tell Chelsey "how to frame her shots or edit photographs," and "regulates conduct." Defs.' MSJ 15, 18. This Court already rejected these arguments. Order 4; *id.* at 18 nn.121–122.

Other courts have too. For example, the public-accommodations law in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston* did not dictate the color of parade floats or words on any banner. 515 U.S. 557, 561–63 (1995). But the law still applied "in a peculiar way" to "speech itself" when it forced parade organizers to admit an LGBT group into the organizer's parade. *Id.* at 572–73. Louisville's argument overlooks that facially speech-neutral laws trigger strict scrutiny when applied to "speech itself." *Id. HLP*, 561 U.S. at 28 (law "directed at conduct" triggered scrutiny as applied because "the conduct triggering coverage … consists of communicating a message").[12] Same goes for anti-discrimination laws. *See Groswirt v. Columbus Dispatch*, 238 F.3d 421, *2 (6th Cir. 2000) (unpublished); *Johari v. Ohio State Lantern*, 76 F.3d 379, *1 (6th Cir. 1996) (unpublished); *TMG*, 936 F.3d at 752; *B&N*, 448 P.3d at 914; *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 441–42 (S.D.N.Y. 2014); MSJ 9 (citing cases from the Eleventh Circuit and this district).

---

[12] *See also Cohen v. California*, 403 U.S. 15, 18 (1971) (breach of peace law applied to words on jacket); *Hess v. Indiana*, 414 U.S. 105, 107 (1973) (disorderly conduct law applied to spoken words); *Cantwell v. Connecticut*, 310 U.S. 296, 303–07 (1940) (breach of peace law applied to playing record).

Here, the undisputed facts prove that Louisville's law applies to Chelsey's "speech itself," *Hurley*, 515 U.S. at 573—her photographs, editing, and blogs, MSJ 10 n.4 (collecting evidence on this topic). Louisville's "same-service rule" forces her to photograph, edit, and blog about same-sex weddings in a positive and uplifting way because she always photographs, edits, and blogs about opposite-sex weddings in "a positive and uplifting way." Decl. ¶ 151. *See also* App. 383; MSJ 8 n.3. And because there's no question that Chelsey's photographs, edits, and blogs are speech, Louisville's law applies to compel Chelsey's speech.

These cases and undisputed facts nullify *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013). Like Louisville, *Elane* confuses a law's text with how it applies to speech. *Id*. at 68 (law could compel photographs because it "applies not to Elane Photography's photographs but to its business operation"). As such, *Elane* contradicts *Hurley* and the cases cited above. This Court and others refuse to follow *Elane* for that reason. Order 18; *TMG*, 963 F.3d at 752; *B&N*, 448 P.3d at 916–17.

To avoid this outcome, Louisville says "a same-sex couple's wedding is not Chelsey's parade." Defs.' MSJ 17–18. Chelsey pre-empted this argument. MSJ 10 (citing cases). And *Hurley* disposes of the argument. The speech in *Hurley* was the parade organizer's speech even though "the parade's overall message is distilled from the individual presentations along the way." 515 U.S. at 577. In the same way, Chelsey's photographs and blogs are her speech—they "tell[] a story"—even though she photographs others. Order 17. She custom makes everything, retains "ultimate editorial control," and follows a unique artistic process for each photograph and blog she creates. Decl. ¶¶ 117, 208–327; App. 113, 121, 401–10. Under Louisville's theory, a biographer does not speak when writing about someone else's life. That's not the law. *See* Order 18; *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 794 n.8 (1988) (protecting professional fundraiser's speech on charity's behalf because he had "independent First Amendment interest in [his] speech").

Louisville tries to wiggle out from *Hurley* by claiming that extending it beyond "a private association … on a parade route" would "create a standard that could not withstand long term application" by requiring courts to decide "which businesses are sufficiently artistic." Defs.' MSJ 18 (quotation marks omitted). Not so. "While drawing the line between speech and conduct can be difficult," the Supreme Court's "precedents have long drawn it, and the line is long familiar to the bar." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2373 (2018) (cleaned-up). And here "the line [Chelsey] asks this Court to draw isn't a difficult one" because "among those expressive art forms, long-protected by the First Amendment, is photography." Order 15–16; *id.* at 7 nn. 44–45 (collecting cases). Not even Louisville disputes that Chelsey's photographs and blogs are speech.

Returning to the well, Louisville attempts to distinguish *Hurley* again by arguing that "any compulsion to speak is incidental," citing *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* (*FAIR*), 547 U.S. 47 (2006). That case dealt with compelled access to rooms, but "an empty hotel room" is not "speech." Order 26–27. And the law "neither limit[ed] what law schools may say nor require[d] them to say anything." *FAIR*, 547 U.S. at 60. *FAIR* is inapplicable here because Louisville's law regulates Chelsey's speech—her photographs and blogs. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 457 n.10 (2008) (distinguishing *FAIR* from situation when law forces someone "to reproduce another's speech against their will" or "co-opt[s] [their] own conduits for speech"); *Netchoice, LLC v. Moody*, 2021 WL 2690876, at *9 (N.D. Fla. June 30, 2021) (same).

That Louisville's law directly regulates Chelsey's speech separates this case from the other cases Louisville cites. Some cases (like those involving antitrust law or hiring decisions) did not involve speech at all. *Contra* Defs.' MSJ 15. Other examples (like newspaper publishers, video-game companies, and tattoo parlors) do not involve compelled speech. *Id.* 15–16. In the end, Chelsey's theory is limited.

22

Anti-discrimination laws and other generally applicable laws can still regulate business's *conduct* (i.e., labor laws and health codes) and non-expressive services (i.e., renting hotel rooms and selling hamburgers). Order 26 nn. 167–68. But such laws cannot compel businesses to create and convey speech. As applied to Chelsey, that's exactly what Louisville's law does and why it violates the First Amendment.

### B.   The Accommodations and Publication Provisions compel and restrict Chelsey's speech based on content and viewpoint.

The Accommodations and Publication Provisions apply here based on content and viewpoint because they compel and restrict Chelsey's speech based on what she says (or wants to say), alter Chelsey's photography and blog content, and require access only to certain viewpoints. MSJ 13–15.

Rather than engage this logic though, Louisville repeats that its Accommodations Provision does not facially "draw[] distinctions based on content." Defs.' MSJ 16. Then, moving to the Publication Provision, Louisville claims "there is no concomitant right to advertise an illegal policy of discrimination." *Id.* at 20.

Louisville makes two mistakes. First, Louisville again overlooks that its law regulates based on content and viewpoint *when applied* to Chelsey's photographs and blogs. *See HLP*, 561 U.S. at 26–27 (law facially regulating conduct still content-based as-applied); *Hurley*, 515 U.S. at 578 (same when anti-discrimination law applied to "content of … expression"); *supra* n.12. And as applied to Chelsey, Louisville's law does exactly that. *See, e.g.*, App. 360–61, 365, 428–29, 762; MSJ 13–14 (citing other record examples).

Second, Louisville prematurely (and incorrectly) calls Chelsey's desired statements discriminatory. Defs.' MSJ 19–20. Chelsey's right to post her statements depends on her right to control the content of her photography and blogs. *Supra* § I.B (explaining intertwinement). Because she can do the latter, she can post the

former. *TMG*, 936 F.3d at 757 n.5 (state could not ban film studio's statement); *B&N*, 448 P.3d at 926 (same as to art studio's statement).

With the focus properly on how Louisville's law applies to Chelsey, *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974) and *Pacific Gas & Electric Co. v. Public Utilities Commission of California* (*PG&E*), 475 U.S. 1 (1986) control. Louisville's law alters the content of Chelsey's speech, applies because she speaks only some messages, favors some views of marriage over Chelsey's, awards access to people to speak opposing views, and restricts Chelsey's speech based on content and viewpoint. MSJ 12–15. Louisville cannot distinguish *Tornillo* and *PG&E* because its law *applies* to Chelsey based on the content and viewpoint of her speech. *Cf. Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 655 (1994) (distinguishing the "access rules" in *Tornillo* and *PG&E* from the "must-carry rules" which "are content neutral *in application*" (emphasis added)). That triggers strict scrutiny.

### C.   Louisville does not dispute its law endangers all speakers.

Chelsey's claims are limited and well-accepted: anti-discrimination laws cannot compel speech based on content and viewpoint. While Chelsey's theory is limited, Louisville's arguments have no limiting principle and threaten all speakers.

Under Chelsey's theory, laws can still target and be triggered by discriminatory *conduct* or force people to engage in *conduct*, e.g., congregating outside certain buildings. Order 26 nn. 167–68. *Contra* Defs.' MSJ 17. And her theory does not upend "longstanding bans on discriminatory advertisements in employment, housing, and public accommodations." Defs.' MSJ 20. Louisville already applies Chelsey's theory to housing by prohibiting investigations into First Amendment activity. App. 948. Indeed, Louisville can still restrict speech that threatens to engage in illegal, *constitutionally unprotected* conduct, just not legal, constitutionally protected speech. *United States v. Williams*, 553 U.S. 285, 298

(2008) (explaining this). So Chelsey's theory is neither "unworkable" nor "expansive," especially as applied to photographs and blogs. *Contra* Defs.' MSJ 1.

Meanwhile, Louisville concedes it can compel businesses to "provide goods or services involving speech to customers."[13] Defs.' MSJ 15. *See* MSJ 12–13 (explaining danger of Louisville's logic). Worse still, Louisville now argues that its interest in compelling speech is "most necessary" when creative businesses—like website designers—offer "unique goods and services." Defs.' MSJ 26 (quotations omitted). Put differently, Louisville's inverted rule is the more unique the speech, the greater the government's power to compel. That rule is dangerous and unprecedented.

## III. The Accommodations and Publication Provisions violate the First Amendment because they are not neutral nor generally applicable.

Louisville's law violates Chelsey's free-exercise rights because it is not neutral or generally applicable as applied. Louisville counters that its law does not evince "animosity" to Chelsey, treats religious and secular activities the same, and "applies uniformly." Defs.' MSJ 21–22. But this ignores the stated interests in Louisville's law and how the law's text and application undermine that interest.

For free-exercise claims, courts identify a law's general interest, compare regulated religious conduct to exempted conduct, then ask whether the latter undermines the law's interest. MSJ 15–16 (citing collecting cases). A law that treats religious conduct worse than comparable secular conduct must pass strict scrutiny. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).

Apply that analysis here. Louisville claims an equal interest in "rooting out all forms of discrimination," including sexual orientation, age, sex, and familial-status discrimination. App. 390; MSJ 16 n.10; Defs.' MSJ 26 ("every single instance

---

[13] This includes the argument about political speech and affiliation. *See* MSJ 12 n.6; Eugene Volokh, *Bans on Political Discrimination in Places of Public Accommodation and Housing*, Reason (Oct. 18, 2021), https://bit.ly/3AXf2vL.

of discrimination" is problematic). But the Accommodations and Publication Provisions undermine that interest by allowing all age or familial-status discrimination, most sex discrimination, and many exemptions. MSJ 16–18. Louisville permits these secular exemptions but bans "even one religious" objection for Chelsey.[14] Defs.' MSJ 28–29. But Chelsey doesn't endanger Louisville's anti-discrimination interests because she doesn't discriminate. Decl. ¶¶ 395, 409. So Louisville triggers strict scrutiny by treating Chelsey's religious conduct worse than comparable secular conduct that undermine Louisville's interests.

Louisville admits its law does not cover age, familial-status, or most sex discrimination by public accommodations. Defs.' MSJ 21. That's decisive because Louisville relies on its interest in ending "all forms" of discrimination to justify regulating Chelsey. App. 390. Even so, Louisville claims "the lack of coverage … is not the same as an exemption." Defs.' MSJ 21. That's wrong. A law is not neutral or generally applicable when its "lack of coverage" for certain activities undermines the government's interests, like it does here. *See, e.g.*, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 544 (1993) (ordinance banned religious practice but did not regulate hunters' disposal of animals or improper garbage disposal by restaurants which undermined sanitation interests); *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 479–82 (6th Cir. 2020) (regulation closed schools but kept "gyms, tanning salons, office buildings" and casinos open which undermined COVID-19 prevention interests).

And here, the "differences in protected characteristics across different categories of an antidiscrimination law" matter because of Louisville's asserted interests. *Contra* Defs.' MSJ 21. Louisville admits that its anti-discrimination interest applies to "all forms" of discrimination, including age, familial-status, and

---

[14] For this reason, it is irrelevant (and futile) that Chelsey never exposed herself to prosecution by asking for a "religious exemption" before filing suit. Defs.' MSJ 5.

sex discrimination. App. 390; MSJ 16 n.10. By failing to protect these types of discrimination, Louisville's law is neither neutral nor generally applicable.

Louisville responds that "the difference in protected characteristics" is "reasonably related" to its interests because "community members file" employment age-discrimination complaints and housing familial-status discrimination complaints. Defs.' MSJ 21 (citing App. 883). But persons cannot file age or familial-status discrimination complaints against public accommodations—those aren't protected classes. Metro Ord. § 92.05(A). That Louisville receives more complaints for age, sex, and familial-status discrimination than for sexual-orientation discrimination just shows how much Louisville undermines its anti-discrimination interests by not regulating age, sex, and familial status in public accommodations.

And Chelsey need not produce "evidence" that Louisville "grants discretionary exemptions." *Contra* Defs.' MSJ 21. She only needs to show "a formal mechanism for granting exceptions" exists, not that "any exceptions have been given." *Fulton*, 141 S. Ct. at 1179. She has done so. MSJ 16–17. Louisville applies its laws to allow businesses to deny requests for secular reasons—business-related reasons or because the businesses does not create the requested product. *Id.*

Louisville tries to distinguish these exemptions by arguing they "were never violations in the first place." Defs.' MSJ 22. But that's the point. Louisville treats religion unfairly by allowing secular (but not religious) justifications for denials. For example, Louisville allows tattoo parlors and t-shirt designers to decline requests for goods they have never made in the past. MSJ 16–17. But Louisville condemns Chelsey for declining photographs celebrating same-sex weddings even though she has never created such photographs before and would decline such requests no matter who asks her.[15] Decl. ¶ 408. In this way, Louisville has "sole discretion" to

---

[15] Louisville also criticizes Chelsey for supposedly being inconsistent by not asking clients about "premarital sex." Defs. MSJ 5. There's no inconsistency. *See, e.g.,*

grant exemptions, treats Chelsey worse than others, and violates Chelsey's free exercise. *Fulton*, 141 S. Ct. at 1878. *See Sherbert v. Verner*, 374 U.S. 398, 401 (1963) (free exercise violation for "good cause" exception). *Contra* Defs.' MSJ 21.

This conclusion is consistent with *Kissinger v. Board of Trustees of Ohio State University*, 5 F.3d 177 (6th Cir. 1993). Defs.' MSJ 21 (citing same). There, the school protected its educational interests in "the use of live animals" by requiring all graduates to take a live animal course and giving no "particularized exemptions." *Kissinger*, 5 F.3d at 178–180. The school's interest and its policy aligned. Here, Louisville's interests and its law don't match because the law—as written and as applied—has many exemptions (or "lacks coverage"). "This ad hoc application of the anti-discrimination policy stands in marked contrast to *Kissinger*." *Ward v. Polite*, 667 F.3d 727, 739 (6th Cir. 2012).

**IV.  The Accommodations Provision violates the First Amendment because it compels Chelsey' to participate in and celebrate religious ceremonies she objects to.**

Louisville's law also compels Chelsey to participate in and attend ceremonies she objects to. MSJ 18–19.

Louisville counters that its law just requires Chelsey "to be physically present" at same-sex weddings and that Chelsey does not sell "[p]articipation in religious services" as a service. Defs.' MSJ 23. But Louisville ignores the facts: Chelsey considers all weddings to be religious and Louisville's same-service rule forces Chelsey to serve as a witness to the union, stand to recognize the marriage, obey the officiant, and bow her head in prayer because she does so at opposite-sex weddings. Decl. ¶ 379; MSJ 19. Chelsey's compelled participation exists even if she

---

Expert Decl. of Professor Dennis Burk ¶ 22, *Arlene's Flowers, Inc. v. Ferguson*, No. 13-cv-05094-RMP, https://bit.ly/3jgOL5I (explaining theological position that creative professionals need not question opposite-sex couples when "it is not immediately apparent whether the marriage would be biblically permissible").

is "hired." *Contra* Defs.' MSJ 23. On-duty officers and paid officiants cannot be forced to attend religious ceremonies. *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018) (cannot force clergy to officiate wedding ceremonies); *Marrero-Méndez v. Calixto-Rodríguez*, 830 F.3d 38, 45 (1st Cir. 2016) (cannot require officer to "merely" attend events with prayer).

Louisville's cases don't prove otherwise. They involved no coercion. *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 788 F.3d 580, 589 (6th Cir. 2015) (no evidence of coerced "partake[ing] in religious activity of any kind"). Or *voluntary* attendance. *Town of Greece v. Galloway*, 572 U.S. 565, 589 (2014); *Fields v. City of Tulsa*, 753 F.3d 1000, 1010–12 (10th Cir. 2014). By contrast, Louisville's law coerces Chelsey's participation and demands attendance because she cannot "photograph any moments of the wedding ceremony … during [her] absence." Decl. ¶¶ 386–94.

Nor does protecting Chelsey violate the Establishment Clause, as Louisville suggests. Defs.' MSJ 23–24. Louisville's cases are irrelevant or distinguishable. *See Braunfeld v. Brown*, 366 U.S. 599 (1961) (finding no Establishment Clause violation); *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144–45 & n.11 (1987) ("accommodat[ing] religious practices" can be done "without violating the Establishment Clause" and distinguishing *Caldor*); Carl H. Esbeck, *Do Discretionary Religious Exemptions Violate the Establishment Clause?*, 106 Ky. L.J. 603, 612–21, 623 n.123 (2018) (distinguishing *Texas Monthly*, *Lee*, and *Caldor* and explaining *Cutter*'s exemption). The Supreme Court also rejects Louisville's "nonbeneficiary" harm argument. *Hobby Lobby Stores, Inc.*, 573 U.S.at 729 n.37; *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.*, 565 U.S. 171, 195–96 (2012). And Louisville's logic would eviscerate the Free Exercise Clause, invalidate KRFRA, and tank Louisville's own religious exemptions. *See* Metro Ord. § 92.04(A) (allowing religious housing exemptions); *id.* at § 92.07(A) (same for employment). Louisville just misstates the Establishment Clause.

29

**V.    Chelsey can challenge Louisville's law under KRFRA because it substantially burdens her religious beliefs.**

Chelsey also meets the three elements to prove a KRFRA violation. MSJ 19 (detailing elements); Defs.' MSJ 29–30 (not disputing test).

Louisville's law substantially burdens Chelsey's faith because it bars her from creating photographs, writing blogs, or posting statements consistent with her faith. *Supra* § I.A.2 (explaining this point); MSJ 19–20 (same). These burdens exist though Chelsey has not faced "enforcement action" or "been asked by a customer." *Contra* Defs.' MSJ 29. Louisville's law puts Chelsey to a "stark choice": "forsake [her] religious convictions" or face "severe" penalties. *B&N*, 448 P.3d at 920. That's a substantial burden. *Id. Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013) (substantial burden in "choos[ing] between saving their companies and following the moral teachings of their faith").

For these reasons, Chelsey can raise KRFRA in this "pre-enforcement" case. *Contra* Defs.' MSJ 29. Nothing in the law's text restrict KRFRA's use to "a defense to government" action. *Contra id.* Courts in this district agree. *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 913 (W.D. Ky. 2020) (finding Louisville's restrictions on church gatherings violated KRFRA before they were enforced).

Finally, Louisville confuses state sovereign immunity with Eleventh Amendment immunity. Defs.' MSJ 29–30. Eleventh Amendment immunity applies to states, not Louisville. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). *Contra* Defs.' MSJ 29–30 (citing cases with state-law claims against states). That's true no matter how Kentucky defines state sovereign immunity. *Fletcher-Hope v. Louisville-Jefferson Cnty. Metro Gov't*, 2019 WL 498853, at *4 (W.D. Ky. Feb. 8, 2019) (explaining immunity differences). Though state-sovereign immunity sometimes bars state-law claims for damages, Chelsey only seeks declaratory and injunctive relief under KRFRA, as Kentucky law allows. *Ruplinger*

*v. Louisville/Jefferson Cnty. Metro Gov't*, 607 S.W.3d 583, 585 (Ky. 2020) (KRFRA remedy limited to "declaratory judgment enjoining Louisville[]").[16]

## VI.   The Accommodations and Publication Provisions fail strict scrutiny.

Because Louisville's law violates Chelsey's constitutional and KRFRA rights, the law must pass strict scrutiny. Louisville must prove that applying its law to Chelsey is narrowly tailored to serve a compelling interest. MSJ 20–24.

As for Louisville's asserted interest in ending discrimination (App. 390), that interest does not apply here. Louisville never disputes that Chelsey only objects to creating certain messages, not to serving certain people. MSJ 11–12 (explaining this distinction). So Louisville can still end discrimination without punishing Chelsey. Order 26–27 (making this point).

In any event, Louisville must "identify an actual problem," *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011) (cleaned up), before it can claim a "compelling reason why it has a particular interest in deny an exception" to Chelsey. *Fulton*, 141 S. Ct. at 1882. And actual problems require actual evidence. Louisville has none. *Contra* Defs.' MSJ 24–26 (relying on general statements). Louisville is unaware of any case where a person has been denied access to a wedding photographer because of sexual orientation. App. 385; MSJ 21 n.12. Despite producing almost forty years of history, Louisville cannot muster *a single example* of this ever happening. Defs.' MSJ Ex. 2, ECF No. 97-2 (reports from 1985–1993); Defs.' MSJ Ex. 3, ECF No. 97-3 (public hearing testimony).

---

[16] Chelsey agrees to dismiss all claims against the individual defendants and the Advocacy Commission. Chelsey also agrees to dismiss her constitutional claims against the Enforcement Commission. But since the Enforcement Commission is the "government," the Enforcement Commission is a proper KRFRA defendant. *See* KRFRA § 446.350; *Lexington Fayette Urban Cnty. Hum. Rts. Comm'n v. Hands on Originals, Inc.*, 2017 WL 2211381, at *8 (Ky. Ct. App. May 12, 2017) (Lambert, J., concurring) (applying KRFRA against a local commission).

Neither can Louisville's proffered expert, Professor Netta Barak-Corren. Barak-Corren did not audit professionals in Louisville, has no evidence about how Louisville professionals would react to a ruling favoring Chelsey, has no evidence about how the public reacts to district court cases, has no evidence about how her study might apply today in Louisville, and cannot compare the studied states' demographics to Louisville's. Pls.' Mot. to Exclude Testimony of Netta Barak-Corren (Mot. to Exclude) 17–19, ECF No. 90.[17] *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (1989) (findings of discrimination in a general industry had "little probative value in establishing" discrimination in particular industry). In almost 2,000 interactions with wedding professionals, *only one* explicitly declined a same-sex wedding request because he or she "only does traditional weddings." Mot. to Exclude at 25. That professional is not in Louisville and is not identified as a baker, florist, or photographer. Barak-Corren found no explicit decline by a photographer. Barak-Corren never even measures the effect of speech-based exemptions. *Id.* at 22–24. Nothing justifies Louisville alleged need to regulate Chelsey.

If anything, Barak-Corren's study undermines Louisville's alleged interest. That study alleges that *Masterpiece* did not change professionals' willingness to provide services for same-sex weddings in some jurisdictions in Texas. *Id.* at 10–11. But those are the exact jurisdictions similar to Louisville, i.e. they both have anti-discrimination laws and RFRAs. So Barak-Corren's study suggests that ruling for Chelsey would not affect Louisville professionals at all.

Changing gears, Louisville mentions that preventing "dignitary harms" and ensuring access to public accommodations justifies regulating Chelsey. Defs.' MSJ 25–26. But these interests do not justify restricting or compelling speech or forcing participation in religious ceremonies. *Hurley*, 515 U.S. at 574, 578–79 (protecting

---

[17] This motion and its exhibits are incorporated by reference. Fed. R. Civ. P. 10(c).

content-based choices, including ones that others consider "misguided, or even hurtful"); *id.* at 577–78 (rejecting "enviable vehicle" access argument); *Boos v. Barry*, 485 U.S. 312, 322 (1988) (rejecting dignity concerns as basis for restricting speech); *Tornillo*, 418 U.S. at 256–58 (rejecting "compulsory access law"). Plus, Chelsey doesn't discriminate, and there's no photography-access problem in Louisville. People can easily understand and respect speakers like Chelsey who want the freedom to control what they say. *Masterpiece*, 138 S. Ct. at 1727 ("[G]ay persons could recognize and accept without serious diminishment to their own dignity and worth" declining to speak or participate in weddings).

Louisville's law is also massively underinclusive as to these interests. MSJ 21–22. Private homeowners, employers, and public accommodations can deny access for many discriminatory reasons and post whatever they want about age, sex, or familial status. *Id.* at 17, 21–22. Even restaurants, hotels, and motels—which cannot deny services "because of sex"—can lawfully post sexist signs like "No Women Allowed" without penalty. Metro Ord. § 92.05(C) (no equivalent Publication Provision). Louisville never responds to this under-inclusivity.

Lacking evidence or compelling interests, Louisville retreats to supposed slippery slopes—that protecting Chelsey will lead to widespread sexual-orientation discrimination. Defs.' MSJ 27–28. This argument "echoes the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006). Slippery slopes don't count as evidence; strict scrutiny demands "a more precise analysis." *Fulton*, 141 S. Ct. 1881.

Louisville also equates Chelsey's activities to discrimination based on race. Defs.' MSJ 27. This Court rejected that type of equivalence. Order 20 n.133 (explaining "Chelsey's suit does not present [that] question"). And for good reason. Louisville's hypothetical involves a status-based decline. But Louisville does not

dispute that Chelsey only objects to messages, not people. Decl. ¶¶ 396–409. The Supreme Court has also explained that the state's interests are higher in prohibiting race discrimination—which is a "recurring evil"—than sexual-orientation discrimination. *Compare Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 868 (2017) (racial bias "implicates unique historical, constitutional, and institutional concerns") *with Obergefell v. Hodges*, 576 U.S. 644, 657 (2015) (objections to same-sex marriage are held "in good faith by reasonable and sincere people"). Louisville's hypothetical is just a different case. And Louisville creates the real slippery slope problem. Under its theory, Louisville can compel any speaker. *See supra* § II.C. Louisville encourages courts to tolerate government hostility towards religion. App. 920–26. And Louisville never considers the harm to religious communities and persons in refusing to grant any religious exemptions. *Id.*

Besides no compelling interest, Louisville's law lacks narrow tailoring. Louisville must show that it considered and rejected alternatives more tailored to its interests. *See* MSJ 22–23 (collecting cases). But Louisville admits that it "do[es] not currently possess any information regarding what alternative measures those legislators may have considered." App. 950. That admission decides strict scrutiny.

What's more, many better alternatives exist. MSJ 22–24. Louisville calls some alternatives "unworkable" because it is "difficult … to define what constitutes an 'expressive' business." Defs.' MSJ 27. Louisville also claims that exempting some wedding businesses could violate "the establishment clause." *Id.* But many places (including Kentucky and Louisville for sex-based discrimination) apply their laws only to non-expressive businesses without problems. MSJ 23–24. And Louisville could write its law to protect artists without creating Establishment Clause violations. *See 303 Creative*, 6 F.4th at 1204 (Tymkovich, C.J., dissenting) (offering this proposal). Finally, there's nothing "shocking" about a voluntary certification program. *Contra* Defs.' MSJ 28. Louisville already has a similar program. MSJ 23.

34

While Louisville claims "[n]one" of these proposals "would accomplish [Louisville's] compelling interest" (Defs.' MSJ 27), there's no evidence for this since Louisville never considered them. Louisville cannot infringe Chelsey's rights based on speculation—particularly when many other jurisdictions manage to protect constitutional rights and stop discrimination without any trouble.

## VII.   The Unwelcome Clause is facially overbroad, vague, and allows unbridled discretion.

The Publication Provision's Unwelcome Clause is facially vague, overbroad, and grants unbridled discretion. Louisville does not dispute this. But Louisville says Chelsey does not have "standing" as to this Clause because her statement violates the law.[18] Defs.' MSJ 12. But the terms "objectionable, unwelcome, unacceptable, [and] undesirable" are so vague that anyone could file a complaint based on *any portion* of Chelsey's statements. MSJ 24–25 (explaining vagueness). What's more, Louisville misstates the law. Even if Chelsey engages in "clearly proscribed" speech, she still "may have a valid overbreadth claim." *HLP*, 561 U.S. at 20. She can also bring a vagueness claim because the law grants too much enforcement power. *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. District of Columbia*, 846 F.3d 391, 409–10 (D.C. Cir. 2017). So this Court can and should enjoin the Unwelcome Clause under any of these theories.

## Conclusion

The undisputed facts show that Louisville's law violates Chelsey's rights many times over. This Court should grant Chelsey's summary-judgment motion, declare her constitutional and statutory rights, and permanently enjoin Louisville.

---

[18] Framed as "standing," Louisville really objects to Chelsey's Unwelcome Clause claim on the merits. *See HLP*, 561 U.S. at 15–16, 21–22 (finding standing and then addressing vagueness merits); *303 Creative*, 6 F.4th at 1171–75, 1189 (same). Chelsey has standing to challenge the Unwelcome Clause. *Supra* § I.A & n.5.

Respectfully submitted this 20th day of October, 2021.


By:  s/ Bryan D. Neihart

Ryan Bangert
TX Bar No. 24045446*
Jonathan A. Scruggs
AZ Bar No. 030505*
Katherine L. Anderson
AZ Bar No. 033104*
Bryan D. Neihart
AZ Bar No. 035937*
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ  85260
Telephone: (480) 444-0020
rbangert@adflegal.org
jscruggs@adflegal.org
kanderson@adflegal.org
bneihart@adflegal.org


Hailey M. Vrdolyak
IL Bar No. 6333515*
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
hvrdolyak@adflegal.org

David A. Cortman
GA Bar No. 188810*
**Alliance Defending Freedom**
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@adflegal.org

Joshua D. Hershberger
KY Bar No. 94421
**Hershberger Law Office**
P.O. Box 233
Hanover, IN 47243
Telephone: (812) 274-0441
josh@hlo.legal

*Attorneys for Plaintiffs*


* Admission *Pro Hac Vice*


Attorneys for Plaintiffs


36

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of October, 2021, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record who are registered users of the ECF system.

By: s/ Bryan D. Neihart

Bryan D. Neihart
AZ Bar No. 035937*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: 480-444-0020
bneihart@ADFlegal.org

*Attorney for Plaintiffs*
* Admitted *Pro Hac Vice*