# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVSION

CHELSEY THE PHOTOGRAPHY
STUDIO LLC and CHELSEY NELSON,

                    Plaintiffs,

v.                                          Case No. 3:19-cv-00851

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, *et al.*,

                    Defendants.

---

**BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY
AND AMERICAN CIVIL LIBERTIES UNION SUPPORTING DEFENDANTS**

---

COREY M. SHAPIRO, Ky. Bar No. 96897
HEATHER GARNAREK, Ky. Bar No. 95113
American Civil Liberties Union
    Foundation of Kentucky
325 W. Main Street, #2210
Louisville, Kentucky 40202
Telephone: (502) 581-9746
corey@aclu-ky.org
heather@aclu-ky.org

LINDSEY KALEY, N.Y. Bar No. 5324983*
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
lkaley@aclu.org


*\* Admitted Pro Hac Vice*

*Counsel for* Amici Curiae

# TABLE OF CONTENTS

STATEMENT OF *AMICI CURIAE* .................................................................... 1

SUMMARY OF ARGUMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 4

I.    REFUSING TO PROVIDE TO SAME-SEX COUPLES THE SAME
PHOTOGRAPHY SERVICES THAT ARE OFFERED TO THE PUBLIC AT
LARGE IS DISCRIMINATION BASED ON SEXUAL ORIENTATION AND
VIOLATES THE ANTIDISCRIMINATION ORDINANCE. ................................. 4

II.    THE FREE SPEECH CLAUSE DOES NOT AUTHORIZE A BUSINESS TO
ENGAGE IN DISCRIMINATION PROHIBITED BY A REGULATION OF
CONDUCT THAT INCIDENTALLY AFFECTS EXPRESSION. .......................... 6

    A.    The Antidiscrimination Ordinance Regulates Commercial Conduct and
Affects Expression Only Incidentally. .................................................... 6

    B.    Any "Compelled Expression" Is Incidental to the Law's Regulation of the
Conduct of Sales and Does Not Alter the First Amendment Analysis. ............... 10

    C.    The Free Speech Clause Does Not Protect a Public Accommodation's Right to
Publish Its Unlawful Policy of Discrimination. .................................................... 13

III.    THE ANTIDISCRIMINATION ORDINANCE IS FULLY CONSISTENT
WITH THE RELIGION CLAUSES OF THE FIRST AMENDMENT. ................ 14

IV.    THE ANTIDISCRIMINATION ORDINANCE SATISFIES EVEN STRICT
SCRUTINY. .......................................................................................................... 17

    A.    Louisville Has a Compelling Interest in Eradicating Discrimination. .................. 17

    B.    Uniform Enforcement of the Antidiscrimination Ordinance Is the Least
Restrictive Means for Furthering the State's Compelling Interest. ...................... 20

CONCLUSION ...................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Cases**

*303 Creative LLC v. Elenis*,
  No. 19-1413, 2021 WL 3157635 (10th Cir. July 26, 2021) ........................................... 3, 17, 19

*Apilado v. North American Gay Amateur Athletic Alliance*,
  792 F. Supp. 2d 1151 (W.D. Wash. 2011) ............................................................................. 5

*Associated Press v. NLRB*,
  301 U.S. 103 (1937) ............................................................................................................. 7

*Associated Press v. United States*,
  326 U.S. 1 (1945) ................................................................................................................. 7

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
  481 U.S. 537 (1987) ............................................................................................................. 9

*Bible Believers v. Wayne County*,
  805 F.3d 228 (6th Cir. 2015), ............................................................................................. 10

*Brush & Nib Studio, LC v. City of Phoenix*,
  448 P.3d 890 (Ariz. 2019) ........................................................................................... passim

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ........................................................................................................... 17

*Chelsey Nelson Photography LLC v. Louisville/Jefferson City Metro Government*,
  No. 3:19-CV-851, 2020 WL 4745771 (W.D. Ky. Aug. 14, 2020) ........................ 10, 12, 18, 19

*Christian Legal Soc'y v. Martinez*,
  561 U.S. 661 (2010) ............................................................................................................. 9

*City of Cleveland v. Nation of Islam*,
  922 F. Supp. 56 (N.D. Ohio 1995) ..................................................................................... 11

*Claybrooks v. Am. Broad. Companies*,
  898 F. Supp. 2d 986 (M.D. Tenn. 2012). ........................................................................... 11

*Commonwealth v. Beshear*,
  981 F.3d 505 (6th Cir. 2020) .............................................................................................. 15

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
  6 F.4th 1247 (11th Cir. 2021) ............................................................................................. 11

*Elane Photography, LLC v. Willock*,
  309 P.3d 53 (N.M. 2013) ............................................................................................. passim

*Employment Division, Department of Human Resources of Oregon v. Smith*,
    494 U.S. 872 (1990) ........................................................................ 3

*Expressions Hair Design v. Schneiderman*,
    137 S. Ct. 1144 (2017) ............................................................... 13

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) ......................................................... 14, 20

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949) ........................................................................ 6

*Heart of Atlanta Motel, Inc. v. U.S.*,
    379 U.S. 241 (1964) .................................................................. 17, 18

*Heckler v. Mathews*,
    465 U.S. 728 (1984) ...................................................................... 18

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984) ...................................................................... 2, 7

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) ........................................................ 2, 8, 10, 11

*Janny v. Gamez*,
    8 F.4th 883 (10th Cir. 2021) ........................................................ 16

*Katzenbach v. McClung*,
    379 U.S. 294 (1964) ........................................................................ 2

*Lee v. Weisman*,
    505 U.S. 577 (1992) ...................................................................... 16

*Legal Servs. Corp. v. Velazquez*,
    531 U.S. 533 (2001) ........................................................................ 7

*Madsen v. Women's Health Ctr.*,
    512 U.S. 753 (1994) ........................................................................ 9

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*,
    138 S. Ct. 1719 (2018) .......................................................... passim

*Messenger v. State*,
    41 N.W. 638 (Neb. 1889) .............................................................. 4

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) .................................................................. 7, 12

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue,*
   460 U.S. 575 (1983) ............................................................ 6

*Monclova Christian Acad. v. Toledo-Lucas Cty. Health Dep't,*
   984 F.3d 477 (6th Cir. 2020) .......................................... 15

*Newman v. Piggie Park Enters., Inc.,*
   390 U.S. 400 (1968) ............................................................ 2

*Norwood v. Harrison,*
   413 U.S. 455 (1973) ............................................................ 7

*Ohralik v. Ohio State Bar Ass'n,*
   436 U.S. 447 (1978) ............................................................ 6

*Pacific Gas & Electric Co. v. Public Utilities Commission of California,*
   475 U.S. 1 (1986) ............................................................ 12

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rel.,*
   413 U.S. 376 (1973) ...................................................... 6, 14

*R.A.V. v. City of St. Paul,*
   505 U.S. 377 (1992) ............................................................ 5

*Resurrection Sch. v. Hertel,*
   11 F.4th 437 (6th Cir. 2021) .......................................... 15

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
   487 U.S. 781 (1988) .......................................................... 20

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) ...................................................... 9, 17

*Romer v. Evans,*
   517 U.S. 620 (1996) ............................................................ 1

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
   547 U.S. 47 (2006) ........................................................ 8, 13

*Swanner v. Anchorage Equal Rights Comm'n,*
   874 P.2d 274 (Alaska 1994) ........................................ 18, 20

*Tandon v. Newsom,*
   141 S. Ct. 1294 (2021). .................................................. 14

*Telescope Media Group v. Lucero,*
   936 F.3d 740 (8th Cir. 2019) .................................... passim

*Telescope Media Group v. Lucero*,
 No. 16-cv-04094, 2021 WL 2525412 (D. Minn. Apr. 21, 2021) ............................................. 19

*United States v. Burke*,
 504 U.S. 229 (1992) ....................................................................................................... 20

*United States v. O'Brien*,
 391 U.S. 367 (1968) ......................................................................................................... 6

*Updegrove v. Herring*,
 No. 20-cv-1141, slip op. (E.D. Va. Mar. 30, 2021) .................................................. 19

*Ward v. Rock Against Racism*,
 491 U.S. 781 (1989) ....................................................................................................... 10

*Washington v. Arlene's Flowers, Inc.*,
 441 P.3d 1203 (Wash. 2019) .................................................................................. 17, 19

*Wisconsin v. Mitchell*,
 508 U.S. 476 (1993) ......................................................................................................... 8

## Statutes

42 U.S.C. § 3604(c) (1988) .................................................................................................. 13

Ky. Acts § 446.350 ................................................................................................................ 3, 17

Louisville/Jefferson Cty. Metro Gov't, Ky., Ordinance § 92.05 ................................... 1, 4, 14, 15

## STATEMENT OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with approximately two million members dedicated to defending the principles of liberty and equality embodied in the Constitution. The ACLU of Kentucky is one of the ACLU's statewide affiliates with over five thousand five hundred members. As organizations that advocate for First Amendment liberties as well as equal rights for lesbian, gay, bisexual, transgender, and queer ("LGBTQ") people, the ACLU, the ACLU of Kentucky, and their members have a strong interest in the application of proper standards when evaluating constitutional challenges to civil rights laws. The ACLU and the ACLU of Kentucky have appeared as either counsel-of-record or *amicus curiae* in a number of cases in which businesses providing wedding-related services challenge public accommodations laws on First Amendment grounds, as well as cases implicating related issues in Kentucky.

## SUMMARY OF ARGUMENT

Plaintiffs Chelsey Nelson Photography and Chelsey Nelson (together, "the Photography Studio") seek a constitutional right to operate a business open to the public that denies equal service to same-sex couples, in violation of the antidiscrimination provisions of Louisville's Metro Ordinance § 92.05 (hereinafter, "the Antidiscrimination Ordinance" or "the Ordinance"). Louisville/Jefferson Cty. Metro Gov't, Ky., Ordinance § 92.05(A), (B). Like other public accommodation laws, the Antidiscrimination Ordinance bars businesses that are open to the public from refusing service to customers based on certain aspects of the customers' identities— including, in Louisville, their sexual orientation. *Id*. Such laws help ensure LGBTQ individuals have equal opportunity to participate in the "transactions and endeavors that constitute ordinary civic life in a free society." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Louisville unquestionably has the authority to prohibit businesses within its borders from

discriminating against LGBTQ people in the sales of goods and services to the general public. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995). The Photography Studio argues, however, that because the services it sells are "expressive" and because Ms. Nelson objects to marriage for same-sex couples on religious grounds, the First Amendment entitles the Photography Studio to discriminate based on sexual orientation. What is more, the Photography Studio seeks a right to post on its website and tell prospective customers that it will not provide the same services to same-sex couples in violation of Louisville law.

The Supreme Court has never accepted arguments by businesses open to the public that the First Amendment allows them to avoid complying with antidiscrimination laws. *See Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 n.5 (1968) (citing *Katzenbach v. McClung*, 379 U.S. 294 (1964)). Nor can businesses evade antidiscrimination laws and trigger heightened scrutiny by characterizing their services as "expressive conduct." The Antidiscrimination Ordinance is content- and viewpoint-neutral; it does not restrain or alter the exchange of ideas; and it does not compel businesses to speak a state-selected message. The implications of the Photography Studio's arguments are far-reaching. If the Free Speech Clause were to bar a state from applying an antidiscrimination law to the provision of wedding photography because it involves expression, then photography companies could refuse to serve interracial or interfaith couples, women, Muslims, Black people, or any other group the company's owner objects to serving. *See Brush & Nib Studio, LC v. City of Phoenix* ("*B&N*"), 448 P.3d 890, 938–39 (Ariz. 2019) (Timmer, J., dissenting). And under the Photography Studio's proposed rule, because numerous sellers provide goods or services that involve expression (including stationers, printers, and other producers of custom products), a wide range of businesses could claim a First Amendment exemption from generally applicable

regulations of commercial conduct. *See 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1181 (10th Cir. 2021), *petition for cert. filed* (U.S. Sept. 24, 2021) (No. 21-476). Indeed, "unique goods and services are where public accommodation laws are most necessary to ensuring equal access." *Id.*

The Photography Studio's Free Exercise and Establishment Clause claims fail for the same reasons as its free speech claim. Under *Employment Division v. Smith*, 494 U.S. 872 (1990), the Antidiscrimination Ordinance is valid, facially neutral, and generally applicable regulations. *Id.* at 879. There is no indication that the Ordinance cannot or would not be applied neutrally to the Photography Studio. And the Ordinance does not require Ms. Nelson to participate in religious ceremonies, or compel agreement with any state-sanctioned religious exercise. Ms. Nelson's "religious and philosophical objections" to the marriages of same-sex couples do not entitle her business "to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018). Granting such an exemption, even for sincere religious objections, would severely undermine the Antidiscrimination Ordinance's purpose of protecting equal opportunity to participate in the marketplace. *See id.*

Finally, even if the Antidiscrimination Ordinance substantially burdens Ms. Nelson's sincerely held religious beliefs triggering Kentucky's Religious Freedom Restoration Act ("KRFRA"), and if strict scrutiny applied to the Photography Studio's free speech and free exercise claims, applying the Ordinance to the Photography Studio's provision of commercial services would still be constitutional. The Antidiscrimination Ordinance furthers Louisville's compelling interest in eradicating invidious discrimination and is the least restrictive means of achieving that goal. *See 303 Creative*, 6 F.4th at 1178–82. As the Supreme Court of Nebraska explained in one of the earliest public accommodation decisions, a barber opening a shop to the

public cannot say, "You are a slave, or a son of a slave; therefore I will not shave you."

*Messenger v. State*, 41 N.W. 638, 639 (Neb. 1889) (internal quotation marks omitted). The

Photography Studio's asserted First Amendment objections run counter to the basic principle,

reflected in over a century of public accommodation laws, that all people should receive equal

service in American commercial life.

## ARGUMENT

I. **REFUSING TO PROVIDE TO SAME-SEX COUPLES THE SAME PHOTOGRAPHY SERVICES THAT ARE OFFERED TO THE PUBLIC AT LARGE IS DISCRIMINATION BASED ON SEXUAL ORIENTATION AND VIOLATES THE ANTIDISCRIMINATION ORDINANCE.**

Although framed as a constitutional challenge to the Antidiscrimination Ordinance, the

Photography Studio's brief avows that its proposed course of conduct is not discriminatory. The

Photography Studio argues its refusal is not based on sexual orientation because it will provide

*other* services to same-sex couples; it just will not photograph their weddings. Pls.' Br. 1, 2, 4,

ECF No. 92-1. But the Antidiscrimination Ordinance—like other public accommodation laws—

do not merely prohibit a complete denial of *all* services to a customer. Rather, the Ordinance

prohibits businesses from denying "the *full* and *equal* enjoyment" of "goods, services, . . . and

accommodations" made available to the general public to a customer because of their sexual

orientation or other protected characteristic. Metro Ord. § 92.05(A). As the Supreme Court of

New Mexico explained in a virtually identical case that is noticeably absent from the

Photography Studio's briefing, "[I]f a restaurant offers a full menu to male customers, it may not

refuse to serve entrees to women, even if it will serve them appetizers." *Elane Photography, LLC

v. Willock*, 309 P.3d 53, 62 (N.M. 2013).

The Photography Studio objects to providing a *service* to an entire class of customers:

same-sex couples seeking photography services for their weddings. The Photography Studio

asserts that it is denying services based on the message of a same-sex couples' wedding, but the so-called message they object to is the identity of the couple being served. If a business needs to know *who* the service is for to decide whether it will provide those services, that is identity-based discrimination. Thus, for example, a company refusing to provide wedding photography for interracial or Jewish couples would be discriminating based on race or religion, not basing a decision about any "message" inherent in the product itself, even if the company said it did so because it disapproved of those unions. *See Telescope Media Grp. v. Lucero* ("*TMG*"), 936 F.3d 740, 769 (8th Cir. 2019) (Kelly, J., concurring in part and dissenting in part); *B&N*, 448 P.3d at 938 (Timmer, J., dissenting); *Elane Photography*, 309 P.3d at 78 (Bosson, J., concurring). "Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 390 (1992).

The Photography Studio's hypotheticals about what will follow from permitting Louisville to enforce its Antidiscrimination Ordinance, *see* Pls.' Br. 12, either do not actually implicate the Ordinance or misrepresent the relevant case law. A baker does not need to include homophobic text on a cake, and a print company is not required to produce signs with a particular message, if they would not write that text for any customer, regardless of identity. Further, the Antidiscrimination Laws do not make "political belief" a protected class, so the Ordinance does not require environmentalists or Democratic speechwriters to write speeches for "climate change deniers" or Republican politicians if they would refuse to publish such messages regardless of the requester's identity.[1]

---

[1] Likewise, the Photography Studio misconstrues the holding in *Apilado v. North American Gay Amateur Athletic Alliance*, 792 F. Supp. 2d 1151 (W.D. Wash. 2011), to argue gay softball leagues would be forced to admit heterosexuals, but overlooks that there, the court

**II.    THE FREE SPEECH CLAUSE DOES NOT AUTHORIZE A BUSINESS TO ENGAGE IN DISCRIMINATION PROHIBITED BY A REGULATION OF CONDUCT THAT INCIDENTALLY AFFECTS EXPRESSION.**

### A.    The Antidiscrimination Ordinance Regulates Commercial Conduct and Affects Expression Only Incidentally.

When confronted with First Amendment challenges to neutral laws that regulate commercial conduct and affect speech only incidentally, the Supreme Court has applied minimal scrutiny and upheld the law.[2]

### 1.    Generally applicable laws that regulate commercial conduct and do not target speech receive minimal First Amendment scrutiny.

"[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). The First Amendment is not infringed when the government enforces a generally applicable regulation of commercial conduct against an "expressive" business. Even newspaper publishers, whose very product is protected speech, can be subject "to generally applicable economic regulations" without implicating the First Amendment. *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 581 (1983). "The fact that the publisher handles

---

recognized a right to associate for *expressive associations*, *id.* at 1160, which simply does not apply to a commercial business open to the public—nor does the Photography Studio claim such a right. Additionally, the Photography Studio's hypothetical about newspaper ads ignores that it is well established that it does not violate the First Amendment to prohibit discrimination in personal ads in a newspaper. *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 389 (1973).

[2] Even outside the commercial context, the Supreme Court has applied the deferential test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), to determine whether regulation of expressive conduct violates the Constitution. Whether the Antidiscrimination Ordinance is evaluated under the commercial conduct cases or *O'Brien*, the result is the same: The Ordinance is a permissible regulation of conduct that does not violate the First Amendment.

news while others handle food does not . . . afford the publisher a peculiar constitutional sanctuary in which he can with impunity violate laws regulating . . . business practices." *Associated Press v. United States*, 326 U.S. 1, 7 (1945); *Associated Press v. Nat'l Labor Relations Bd.*, 301 U.S. 103, 132 (1937). In contrast, a law specifically requiring a newspaper to print particular content (or forbidding the same) directly intrudes on the First Amendment. *See, e.g.*, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Accordingly, the Supreme Court has uniformly rejected expressive businesses' challenges to laws against discrimination. *See TMG*, 936 F.3d at 762–63 (Kelly, J., concurring in part and dissenting in part) (citing *Norwood v. Harrison*, 413 U.S. 455, 469–70 (1973)); *Masterpiece Cakeshop*, 138 S. Ct. at 1723–24. For example, in *Hishon*, a law firm argued that applying Title VII to require it to consider a woman for partnership "would infringe [its] constitutional rights of expression or association." 467 U.S. at 78. Although a law firm's work product is speech, *see, e.g.*, *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545 (2001), the *Hishon* Court dismissed the law firm's First Amendment defense, holding that there is "no constitutional right . . . to discriminate." 467 U.S. at 78 (citations omitted). By contrast, a law specifically targeting a law firm's speech by, for example, preventing it from bringing cases that "challenge existing welfare laws," would "implicat[e] central First Amendment concerns." *See, e.g.*, *Velazquez*, 531 U.S. at 547–48.

The Photography Studio asserts that its photography and blog are protected speech. Pls.' Br. 7–8. But the Antidiscrimination Ordinance does not tell the company how to frame its shots, edit its photographs, which moments to capture, or what to include on its blog; it regulates only the sale of services to the public. Businesses that provide photography services to the public are just as subject to generally applicable regulations of their commercial conduct as newspapers and

law firms. As the Supreme Court of New Mexico held, where "[a photography studio] is a public accommodation, its provision of services can be regulated" consistent with the First Amendment, "even though those services include artistic and creative work." *Elane Photography*, 309 P.3d at 66; *see also id.* at 59, 71 ("[T]here is no precedent to suggest that First Amendment protections allow such individuals or businesses to violate antidiscrimination laws."). In the same way, a video game business, though producing artistic expressions, is not exempt from the Fair Labor Standards Act's prohibition against hiring child laborers, neither is a tattoo parlor exempt from a health code regulation governing the disposal of needles.

Thus, even though the Photography Studio's work product involves creativity, that "hardly means" that any regulation of its business operations "should be analyzed as one regulating [its] speech rather than conduct." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.* ("*FAIR*"), 547 U.S. 47, 62 (2006). The relevant question is not the nature of a business's product, but whether the Antidiscrimination Ordinance targets expression or prohibits a course of conduct. Here, it prohibits conduct: discrimination in the provision of goods and services. *See id.* (finding no "abridgement of freedom of speech" when a law "make[s] a course of conduct illegal" even where "the conduct was in part initiated, evidenced, or carried out by means of language" (internal quotation marks omitted)).

2.  The Antidiscrimination Ordinance is content- and viewpoint-neutral, so there is no reason to apply strict scrutiny.

"[F]ederal and state anti-discrimination laws" are "an example of a permissible content-neutral regulation of conduct." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993). Public accommodation laws do not "target speech or discriminate on the basis of its content"; they prohibit "the act of discriminating against individuals in the provision of publicly available goods, privileges, and services." *Hurley*, 515 U.S. at 572; *see also Christian Legal Soc'y Chapter*

*of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 694–95 (2010)

(antidiscrimination policies are "textbook viewpoint neutral"); *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987).

Seeking to avoid the minimal scrutiny the Supreme Court has applied to generally applicable regulations of commercial conduct, the Photography Studio argues that the Antidiscrimination Ordinance is content- and viewpoint-based because it tolerates only viewpoints "celebrating" a same-sex couple's marriage. Pls.' Br. 13–15. But the Ordinance would *also* prohibit a photography studio from selling wedding photography services to *same-sex* couples while denying those same services to *heterosexual* couples. Instead, the Ordinance prohibits businesses from refusing to provide goods and services on grounds of customers' sexual orientation, regardless of business' views on marriage or any other subject. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623–24 (1984); *see also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 (1994) (reasoning that "the fact that [an] injunction cover[s] people with a particular viewpoint does not . . . render the injunction content or viewpoint based").

The Photography Studio also argues that the Antidiscrimination Ordinance is content-based because it is triggered by the business's decision to offer wedding photography services as opposed to photographing other subject matters, such as "pet photography." Pls.' Br. 14. But the Photography Studio misunderstands how the Ordinance's equal-treatment requirements work; it applies to all photography services, *including* pet photography. A company may not refuse to provide pet photography services for a Black customer if the company would provide the same for a white customer. That is, the Antidiscrimination Ordinance requires a company to provide a service only to the extent that it would provide the same service to similarly situated customers without regard to sexual orientation (or race or religion). The relevant inquiry is not whether

*application* of a law would cause businesses to create products reflecting content to which they object. The question is whether the *law itself* draws distinctions based on content. The Ordinance does not "target speech or discriminate on [that] basis." *Hurley*, 515 U.S. at 572.[3]

The Photography Studio ignores the unanimous decision in *Elane Photography*, 309 P.3d at 62–63, and relies on the sharply divided rulings in *TMG*, 936 F.3d 740, and *B&N*, 448 P.3d 890, and the district court's order in this case. Pls.' Br. 10–11, 13. Those cases wrongly reasoned that antidiscrimination laws as applied to commercial wedding services were content-based because they required the creation of products related to the topic of same-sex weddings. But as the dissent correctly notes in *TMG*, "just because the [videographers] want to sell services that are in some manner 'expressive' does not mean that [the State's] content-neutral regulation of those services suddenly becomes content based." 936 F.3d at 775–76. Content-neutral regulations of even pure speech are common and uncontroversial. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 797–98 (1989) (holding municipal noise regulation did not violate free speech rights of music performers).

### B. Any "Compelled Expression" Is Incidental to the Law's Regulation of the Conduct of Sales and Does Not Alter the First Amendment Analysis.

The Photography Studio's objection that the Antidiscrimination Ordinance compels it to express a message with which it disagrees, Pls.' Br. 8–10, 13–14, does not alter the analysis. The Ordinance requires no state-mandated messages. Just as it would not impermissibly "compel speech" for a state to prohibit a photography studio that offers corporate headshots to the public from refusing to provide the same portraits for female employees that it provides for male

---

[3] The Photography Studio relies on *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015), to argue that the Antidiscrimination Ordinance is content- and viewpoint-based. Pls.' Br. 14–15. However, there was no law at issue in *Bible Believers*, let alone a public accommodations ordinance. Instead, the court discussed the standard for "silencing a speaker due to crowd hostility," which is not at issue here. 805 F.3d at 248.

employees, Louisville does not impermissibly "compel speech" by requiring that the Photography Studio offer same-sex couples the same services it offers heterosexual couples. The Ordinance does not compel the creation of any content, let alone content on a particular topic.

The Photography Studio's reliance on *Hurley*, Pls.' Br. 6, 9, 10, 12, is also misplaced. *Hurley* involved a "peculiar" application of a public accommodation law to a privately organized and "inherent[ly] expressive[]" parade. 515 U.S. at 568, 572. The Court found this application impermissible because, instead of regulating conduct with only an incidental effect on expression, it regulated nothing *but* expression—the content of the private parade sponsor's speech. *Id.* at 573. Here, the Photography Studio is a business providing services to the public, not a private expressive association. *Hurley* itself distinguished the standard application of public accommodation laws to such businesses as constitutional. *See id.* at 578.[4] To expand *Hurley*'s holding would put courts in the impossible "business of deciding which businesses are sufficiently artistic to warrant exemptions from non-discrimination laws." *Elane Photography*, 309 P.3d at 71. Such a result would be contrary to Supreme Court precedent and create an

---

[4] The other compelled speech cases that the Photography Studio cites in their motions for summary judgment and preliminary injunction are not on point. Pls.' Br. 9; ECF No. 3-1. For example, although both *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247 (11th Cir. 2021), and *City of Cleveland v. Nation of Islam,* 922 F. Supp. 56 (N.D. Ohio 1995), involved public accommodations, neither proposed extending *Hurley's* holding to commercial businesses open to the public, as are at issue here. The court in *Coral Ridge Ministries* declined to apply Title II to Amazon's program where it, not the customer, is paying charities. 6 F.4th at 1256. And in *Nation of Islam*, cited in the Photography Studio's MPI, ECF No. 3-1 at 11, the city was not permitted to decline to lease a space to a speaker who wished to separate attendees by gender—though it acknowledged the speaker may be violating the public accommodations law. *Nation of Islam*, 922 F. Supp. at 59. Both scenarios—a business's donations to charity and a public speech—are more akin to the expressive parade at issue in *Hurley* than the provision of wedding photography services to the public. Additionally, the second case cited in their MPI did not deal with applying antidiscrimination laws to businesses acting as public accommodations. *Claybrooks v. Am. Broad. Companies*, 898 F. Supp. 2d 986, 998–99 (M.D. Tenn. 2012).

unworkable standard. Indeed, characterizing the Antidiscrimination Ordinance as compelling speech based only on the service provided by the business would create the very "limitless principle" that the Photography Business claims to be concerned about. Pls.' Br. 12.[5]

This case is also dramatically different from cases in which the Supreme Court struck down content-based laws that required businesses to publish particular messages. In *Tornillo*, a statute required newspapers that published attacks on political candidates to allow the candidates free space for a written reply in the newspaper itself. 418 U.S. 241. And in *Pacific Gas & Electric Co. v. Public Utilities Commission of California*, 475 U.S. 1 (1986), a state agency ordered a utility company to mail the newsletter of an environmental group to its customers. Both the challenged laws favored opposing speech in a content-based way: The right of reply was triggered by certain content, and the regulation imposed a content-based penalty. Here, the Antidiscrimination Ordinance requires just that businesses open to the public offer the same goods and services to heterosexual couples as they do to same-sex couples. Any effect on speech is entirely incidental. *See TMG*, 936 F.3d at 772–73 (Kelly, J., concurring in part and dissenting in part); *B&N*, 448 P.3d at 932 (Bales, J., dissenting); *Elane Photography*, 309 P.3d at 63–70.

Even where, unlike here, a law requires entities to speak particular words or provide access for third-party speakers, the Supreme Court has rejected First Amendment challenges if the law regulates conduct and any compulsion to speak is incidental. In *FAIR*, a coalition of law

---

[5] The decisions in *TMG*, 936 F.3d 740, *B&N*, 448 P.3d 890, and *Chelsey Nelson Photography LLC v. Louisville/Jefferson City Metro Government*, 479 F. Supp. 3d 543 (W.D. Ky. 2020), mistakenly invite courts to apply different First Amendment standards based on the nature of the services sold. Such a shifting standard is neither consistent with precedent nor susceptible to clear or uniform application. Indeed, advocates for treating custom wedding cakes as protected speech failed to articulate a workable test when questioned at oral argument, and the Supreme Court declined to grant them such an exemption. *See* Oral Arg. Tr. 11–19, *Masterpiece Cakeshop*, 138 S. Ct. 1719.

schools argued that a law requiring them to provide equal access both to military and non-military recruiters compelled them to endorse military recruiters' message of discrimination embodied in the Don't Ask, Don't Tell policy; the schools particularly objected on First Amendment grounds that they would have to send e-mails and post bulletin board messages on those recruiters' behalf. 547 U.S. at 52–54, 61–62. The Supreme Court rejected the claim, reasoning that "[a]s a general matter, the [law] regulates conduct, not speech. It affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id.* at 60; *cf. Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1150–51 (2017) (explaining that a law requiring a restaurant to charge $10 for sandwiches would not unconstitutionally compel speech despite the fact that the restaurant will "have to put '$10' on its menus or have its employees tell customers that price").

### C. The Free Speech Clause Does Not Protect a Public Accommodation's Right to Publish Its Unlawful Policy of Discrimination.

Just as there is no constitutional right to discriminate, there is no concomitant right to publish a policy of discrimination. The Supreme Court has explicitly disapproved of businesses posting signs saying "no goods or services will be sold if they will be used for gay marriages," as they would "impose a serious stigma on gay persons." *Masterpiece Cakeshop*, 138 S. Ct. at 1728–29. In *FAIR*, the Court explained that the government "can prohibit employers from discriminating in hiring on the basis of race. The fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." 547 U.S. at 62. Otherwise, longstanding bans on discriminatory advertisements in employment, housing, and public accommodations would have to be struck down on free speech grounds. *See, e.g.*, 42 U.S.C. § 3604(c) (1988); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S.

376, 389 (1973) ("Any First Amendment interest . . . is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity."). Accordingly, the Free Speech Clause does not authorize the Photography Studio to publish a notice on its website of its intent to discriminate.

## III. THE ANTIDISCRIMINATION ORDINANCE IS FULLY CONSISTENT WITH THE RELIGION CLAUSES OF THE FIRST AMENDMENT.

### A.  The Antidiscrimination Clause is Neutral and Generally Applicable.

Citing exemptions to other provisions of the Antidiscrimination Ordinance, the Photography Studio's asserts that the Ordinance violates the Free Exercise Clause because it is not neutral and generally applicable. Pls.' Br. 15–17. Yet the Antidiscrimination Ordinance challenged here contains *no* exemptions. The Photography Studio cites examples where public accommodations may decline service due to business-related reasons or because they would not produce the goods for any customer, Pls.' Br. 16–17, but none of the examples exempts discriminatory behavior, as the business would not offer the service to anyone, regardless of identity. Accordingly, the Ordinance is generally applicable as it does not contain a mechanism for offering individualized, discretionary exemptions (or any exemptions at all), *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021), nor does it "treat *any* comparable secular activity more favorably," *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

The Photography Studio instead claims that the Antidiscrimination Ordinance has created exemptions through the exclusion of "rooming or boarding house[s]" from the definition of public accommodations, Metro Ord. § 92.02, and the Ordinance's failure to prohibit discrimination based on age or family status in public accommodations, while prohibiting discrimination on those bases in employment and housing, respectively.[6] Pls.' Br. 16–17.

_____

[6] Despite the Photography Studios' claims otherwise, discrimination based on sex is

14

However, the Photography Studio is not a boarding house and does not seek to discriminate on those bases, so they do not undermine the general applicability of the Antidiscrimination Ordinance. *Resurrection Sch. v. Hertel*, 11 F.4th 437, 457 (6th Cir. 2021) (holding appropriate comparators for determining if a law is generally applicable are "secular actors regulated by the specific order," not a broader set of secular businesses).[7] These are not exemptions, they merely reflect "inherent differences in housing, employment, and public accommodations and the historical discrimination sought to be eradicated in those different areas." Defs.' Br. 21, ECF No. 97, and the same coverage would apply to the Photography Studio "if they had chosen to engage in that activity." *Hertel*, 11 F.4th at 458.[8]

### B. The Antidiscrimination Ordinance Does Not Compel the Photography Studio to Participate in Religious Ceremonies.

The Photography Studio contends that the Antidiscrimination Ordinance violates the First Amendment's Establishment and Free Exercise Clauses ("Religion Clauses") by compelling it to "participate in and attend ceremonies she objects to." Pls.' Br. 18. But the Ordinance does no such thing. It does not require that Ms. Nelson "serve as witness to the union, stand to recognize the marriage, obey the officiant, and bow her head in prayer." *Id*. at 19. It only requires that the Photography Studio offer the same *photography* services to same-sex and heterosexual couples.

---

prohibited in public accommodations, under a separate provision. Metro Ord. § 92.05(C).

[7] The Photography Studio cites *Monclova Christian Academy v. Toledo-Lucas County Health Department*, 984 F.3d 477 (6th Cir. 2020)*, reh'g denied* (Jan. 6, 2021), as controlling precedent regarding relevant comparators when determining laws' general applicability, but the Sixth Circuit has since held that *Monclova's* interpretation of earlier precedent, *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020), "is incorrect" on that point, and "as this issue was brought to the attention of the court and ruled upon in the earlier case, we must follow *Beshear* rather than *Monclova*." *Hertel*, 11 F.4th at 457 (internal quotation marks omitted).

[8] Even if the "hybrid rights" claim asserted by the Photography Studio existed—and the Photography Studio acknowledges that such a claim does not, Pls.' Br. 18—there is none here because the Photography Studio's free speech claim fails.

The Photography Studio's citation of *Masterpiece Cakeshop* for the proposition that requiring clergy to perform the wedding of any couple, whether same-sex or heterosexual, violates the Free Exercise Clause, *see* Pls.' Br. 18, demonstrates this point. The Antidiscrimination Ordinance does not apply to clergy, and neither Ms. Nelson nor the Photography Studio is a member of the clergy performing a marriage ceremony. *See Masterpiece Cakeshop*, 138 S. Ct. at 1727. The Photography Studio is a commercial enterprise offering its services to the public and does not receive the same exemptions. The Court in *Masterpiece Cakeshop* also anticipated and rejected the argument that its reasoning applies beyond clergy: to hold that commercial services qualify as participation in the ceremony would raise a host of issues "that seem all but endless." *Id*. at 1723.[9]

Adopting such a broad definition of "participation"—and extending the rules applicable to clergy to all businesses—would, as the Supreme Court has noted, mean that "a long list of persons who provide goods and services for marriages and weddings might refuse to do so for gay persons, thus resulting in a community-wide stigma inconsistent with the history and dynamics of civil rights laws that ensure equal access to . . . public accommodations." *Id*. at 1727. The Religion Clauses do not require that result. The Antidiscrimination Ordinance leaves the Photography Studio to decide "[t]he degree to which [photographers] voluntarily involve[] [themselves] in an event outside the scope of services [they] must provide to all customers on a non-discriminatory basis." *Washington v. Arlene's Flowers, Inc.*, 441 P.3d 1203, 1213 (Wash.

---

[9] The Photography Studio cites cases that are inapplicable to support its argument that the Antidiscrimination Ordinance violates the Religion Clauses because they involve instances of coercion and mandatory participation in religious acts, where the Ordinance requires no such participation. *See Lee v. Weisman*, 505 U.S. 577, 580, 599 (1992) (public school included prayers by clergy in graduation ceremonies and "young graduates who object[ed] [we]re induced to conform"); *Janny v. Gamez*, 8 F.4th 883, 893 (10th Cir. 2021) (parole conditioned on participation in a religious program).

2019), *petition for reh'g filed*, No. 19-333 (U.S. July 27, 2021).

## IV. THE ANTIDISCRIMINATION ORDINANCE SATISFIES EVEN STRICT SCRUTINY.

Although, as shown above, application of the Antidiscrimination Ordinance fails to trigger strict scrutiny, application of the Ordinance would be constitutional even if strict scrutiny applied. Likewise, even assuming the Antidiscrimination Ordinance substantially burdens the Photography Studio owner's sincerely held religious beliefs, the Ordinance survives strict scrutiny, and therefore does not violate KRFRA. K.R.S. § 446.350.

### A. Louisville Has a Compelling Interest in Eradicating Discrimination.

Antidiscrimination laws ensure "society the benefits of wide participation in political, economic, and cultural life." *Roberts*, 468 U.S. at 625; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733–34 (2014). In *Masterpiece Cakeshop*, the Supreme Court affirmed that it is "unexceptional" that the "law can protect gay persons, just as it can protect other classes of individuals, in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public." 138 S. Ct. at 1728. And the Court has recognized repeatedly that the government has a compelling interest in "eliminating discrimination and assuring its citizens equal access to publicly available goods and services." *Roberts*, 468 U.S. at 624. "[P]ublic accommodations laws help ensure a free and open economy" and "the commercial nature" of the Photography Studio provides Louisville with a governmental interest "absent when regulating non-commercial activity." *303 Creative*, 6 F.4th at 1179.

Contrary to the Photography Studio's suggestion, the harm of being refused service because of one's identity is not erased just because a customer might be able to obtain goods elsewhere. *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964) (reasoning antidiscrimination laws "vindicate the deprivation of personal dignity that surely accompanies

denials of equal access to public establishments" (internal quotation marks omitted)). "The government views acts of discrimination as independent social evils even if the prospective [customers] ultimately find" the goods or services they sought. *Swanner v. Anchorage Equal Rights Comm'n*, 874 P.2d 274, 283 (Alaska 1994).

Contrary to the Photography Studio's argument, Pls.' Br. 21, Louisville's compelling interest in eradicating discrimination in the provision of goods and services justifies any attendant restrictions, even if they are characterized as restrictions on speech. *Chelsey Nelson Photography LLC v. Louisville/Jefferson City Metro Government*, 479 F. Supp. 3d 543 (W.D. Ky. 2020), recognizes that the eradication of discrimination in the provision of goods and services is a compelling government interest. *Id.* at 559 (ensuring same-sex couples "will not be turned away" is "unquestionably compelling" (internal quotation marks omitted)). But by concluding that this interest does not apply in the context of businesses that provide services to create custom expressive products, this Court misunderstood the nature of the harm addressed by laws against discrimination. "The argument that victims of discrimination are free to go elsewhere carries little force. Antidiscrimination laws . . . were passed to guarantee equal access to *all* goods and services otherwise available to the public." *TMG*, 936 F.3d at 777 (Kelly, J., concurring in part and dissenting in part); *see also Heckler v. Mathews*, 465 U.S. 728, 739 (1984) ("[D]iscrimination itself . . . can cause serious non-economic injuries."); *Heart of Atlanta Motel*, 379 U.S. at 292 (Goldberg, J., concurring) ("Discrimination is not simply dollars and cents, hamburgers and movies; it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public . . ." (internal quotation marks omitted)). Indeed, Louisville's interest in protecting equal access to services like those provided by the Photography Studio is even stronger *because* the services are "unique,"

Pls.' Br. 2, as that means they are "inherently not fungible." *See 303 Creative*, 6 F.4th at 1180

("LGBT consumers may be able to obtain wedding[] . . . services from other businesses; yet,

LGBT consumers will never be able to obtain wedding-related services of the same quality and

nature as those that Appellants offer.").

The Photography Studio also contends that its conduct is not discriminatory, so

Louisville's compelling interest in prohibiting discrimination does not apply. Pls.' Br. 20. But

refusing to offer services to same-sex couples on the same basis as it does other clients *is*

discrimination. *See supra* Part I. Further, if businesses like the Photography Studio are not

required to comply with Louisville's Ordinance, same-sex couples will likely face discrimination

in the marketplace when they seek services. The Photography Studio's assertion that there is no

"actual problem" of businesses discriminating against same-sex couples seeking wedding

services, Pls.' Br. 21, is belied by the many businesses in recent years seeking court approval to

do just that. *See generally Masterpiece Cakeshop*, 138 S. Ct. 1719; *Arlene's Flowers*, 441 P.3d

1203; *303 Creative*, 6 F.4th 1160; *Nelson Photography*, 479 F. Supp. 3d 543; *Updegrove v.

Herring*, No. 20-cv-1141, slip op. (E.D. Va. Mar. 30, 2021), *appeal docketed*, No. 21-1506 (4th

Cir. Apr. 30, 2021); *B&N*, 448 P.3d 890; *Elane Photography*, 309 P.3d 53; *see also TMG*, No.

16-cv-04094, 2021 WL 2525412, at *3 (D. Minn. Apr. 21, 2021) (describing the case as "a

smoke and mirrors case or controversy from the beginning, likely conjured up by Plaintiffs to

establish binding First Amendment precedent rather than to allow them to craft wedding videos,

of which they have made exactly two").

Finally, exemptions to *other* provisions of the law do not undermine Louisville's

compelling interest in prohibiting discrimination in public accommodations, particularly as the

Antidiscrimination Ordinance contains *no* exemptions. *See supra* Part III(A). To be clear, the

question is not whether there is a compelling governmental interest in denying the Photography Studio an exemption, *see Fulton*, 141 S. Ct. 1868 at 14–15, because the Ordinance has no existing, discretionary exemptions that are available to others that Louisville has refused to extend to the Photography Studio. While there are exceptions to other provisions of the law, they are neither applicable to this situation, given the public accommodation provisions contain no exemptions, nor comparable to the exemption sought here.

### B. Uniform Enforcement of the Antidiscrimination Ordinance Is the Least Restrictive Means for Furthering the State's Compelling Interest.

Because the most carefully tailored way to ensure equal treatment in commercial services is to prohibit discrimination, the Antidiscrimination Ordinance is "precisely tailored" to achieve its interest. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988). Every instance of discrimination "causes grave harm to its victims." *United States v. Burke*, 504 U.S. 229, 238 (1992). Because of the harms associated with each instance of discrimination, there is simply no "numerical cutoff below which the harm is insignificant." *Swanner*, 874 P.2d at 282.

The Photography Studio also contends that the Antidiscrimination Ordinance is not narrowly tailored because Louisville could choose, as it alleges other jurisdictions have done, to not apply to "activity protected by the First Amendment" or "individuals and small businesses that celebrate weddings." Pls.' Br. 23. But the Antidiscrimination Ordinance is tailored to *Louisville's* interest, which it achieves by applying the Ordinance to the extent that businesses offer goods and services to the general public. And the existence of unrelated exceptions, as described above, does not undermine the compelling governmental interest in uniform enforcement of the Ordinance here, where there are no applicable exemptions.

Because it is narrowly tailored to serve a compelling interest in eradicating discrimination in the commercial market, the Antidiscrimination Ordinance would satisfy strict scrutiny review.

## **CONCLUSION**

The Photography Studio's motion for summary judgment should be denied and

Defendants' cross-motion for summary judgment should be granted.

Respectfully submitted,

**/s/ *Lindsey Kaley***
LINDSEY KALEY, N.Y. Bar No. 5324983*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
lkaley@aclu.org


Corey Shapiro, Ky. Bar No. 96897
Heather Gatnarek, Ky. Bar No. 95113
American Civil Liberties Union Foundation of
Kentucky
325 W. Main Street, #2210
Louisville, Kentucky 40202
Telephone: (502) 581-9746
corey@aclu-ky.org
heather@aclu-ky.org


*Counsel for Amici Curiae*

Dated: October 27, 2021

* Admitted *Pro Hac Vice*