UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:19-CV-00851-BJB-CHL

CHELSEY NELSON PHOTOGRAPHY LLC, et al.,                    Plaintiffs,

v.

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, et al.,    Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a motion for leave to file documents provisionally under seal and for the Court to permanently unseal the same documents filed by Plaintiffs Chelsey Nelson Photography LLC and Chelsey Nelson (collectively, "Plaintiffs").  (DN 124.)   Defendants Louisville/Jefferson County Metro Government ("Louisville Metro"), Louisville Metro Human Relations Commission – Enforcement, Louisville Metro Human Relations Commission – Advocacy, Verná Goatley, Marie Dever, Kevin Delahanty, Charles Lanier, Sr., Leslie Faust, William Sutter, Ibrahim Syed, and Leonard Thomas (collectively, "Defendants") filed a response in which they request that the Court permanently seal several of the documents at issue (DN 125), and Plaintiffs replied.  (DN 126.)  This matter is now ripe for review.

I.    BACKGROUND

Plaintiffs filed this action on November 19, 2019, challenging provisions of Metro's Fairness Ordinance.  (DN 1.)  In 1999 the Jefferson County Fiscal Court passed the Fairness Ordinance.  Metro Ordinance ("MO") § 92.01, *et seq.*  The ordinance provides protections for individuals in employment, housing, and public accommodations and sets out mechanisms for enforcement by the Human Relations Commission ("HRC").  *Id.* at § 92.01, *et seq.*  Plaintiffs challenge the ordinance's Accommodations Provision and Publication Provision.  (DN 47, at

PageID # 1222.)  The Accommodations Provision, in relevant part, prohibits denying an individual "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation" on the basis of his or her "sexual orientation or gender identity."  MO § 92.05(A).  The Publication Provision consists of the Denial Clause and the Unwelcome Clause, which respectively prohibit, in relevant part, places of public accommodation from advertising that they will deny services on the basis of sexual orientation or that an individual's presence at that business is "objectionable, unwelcome, unacceptable, or undesirable" based on the individual's sexual orientation.  *Id.* § 92.05(B).

On March 5, 2021, Plaintiffs moved to for the Court to compel Defendants to produce HRC's case files related to complaints alleging violations of the Fairness Ordinance in public accommodations, housing, and employment.  (DN 63.)  Defendants opposed the motion on various grounds, including their contention that disclosing the case files would require them to violate different confidentiality obligations.  (DN 64, at PageID # 1614–19.)  Specifically, Defendants cited a provision of the Fairness Ordinance providing that HRC has a duty to "[p]ublish or cause to be published conciliation agreements or enforcement agreements" and mandating that "[a]ll other records and information shall be confidential except as reasonably necessary to conduct an investigation and proceeding."  MO § 92.08(B)(7).  (*See* DN 64, at PageID # 1618.)  Defendants also cited the confidentiality provisions Louisville Metro's contracts and the Equal Employment Opportunity Commission ("EEOC") and the Department of Housing and Urban development ("HUD"), through which HRC collaborates with these agencies to investigate alleged instances of employment and housing discrimination.  (DN 64, at PageID # 1614–18.)  Finally, Defendants contended that the EEOC and HUD contracts subjected them to federal regulations that limit public disclosure of certain information gathered in connection with the EEOC's and HUD's resolution

processes. (*Id.* at 1615–18.)  On August 25, 2021, the Court granted in part Plaintiffs' motion to compel and ordered Defendants to produce a limited sample of case files and related documents. (DN 89, at PageID # 2211–12, 2218.)  In order to mitigate Defendants' privacy concerns, the Court issued a protective order which forbade "disclosing any document or information included in the production in any way outside this litigation pending further order of the Court."  (*Id.* at 2212.) The order further permitted Defendants to redact from their production personal identifying information, information about pending complaints, and information HRC received from the EEOC.  (*Id.* at 2212, 2218.)

On September 1, 2021, Plaintiffs moved for summary judgment. (DN 92), and on September 22, 2021, Defendants filed a cross-motion for summary judgment.  (DN 96.)  Both motions were fully briefed as of October 20, 2021.  (*See* DN 104.)  On February 2, 2022, Plaintiffs filed a motion "to supplement the summary-judgment record with newly acquired evidence."  (DN 119, at PageID # 4925.)  In the motion, Plaintiffs request that the Court consider about 170 pages of newly-discovered documents in deciding the Parties' summary judgment motions.[1]  (DN 119, at PageID # 4928.)  Most of the supplemental documents were produced by Defendants from HRC's case files pursuant to the Court's August 25, 2021 order and contain redactions permitted under that order.  (DN 119-1, at PageID # 4946; DN 119-3.)  Plaintiffs filed the motion to supplement and corresponding supplemental documents under seal, (DN 119), and they subsequently filed their reply in support of the motion to supplement under seal.  (DN 121.)  In its March 30, 2022, order, the Court noted that Plaintiff had filed the documents under seal but had not filed a corresponding motion for leave to seal as required by Local Rule 5.6(c).  (DN 122, at

---

[1] This Memorandum Opinion takes no position on the merits of the motion to supplement, and nothing herein should be so construed.

PageID # 5146.)  The Court therefore ordered Plaintiffs to file a motion setting forth the reasons why the documents should be sealed.  (*Id.* at 5147.)

On April 18, 2022, Plaintiffs filed the instant motion in which they clarify that they had filed their motion to supplement and corresponding supplemental documents under seal because they had been designated as confidential by Defendants.  (DN 124, at PageID # 5154.)  In the motion, Plaintiffs request that the documents remain provisionally under seal to afford Defendants an opportunity to request that they be permanently sealed, and they argue that the documents should in fact be unsealed.  (*Id.*)  On May 2, 2022, Defendants filed a response to the motion in which they indicate that they do not seek to seal all documents Defendants filed in connection with Plaintiffs' motion to supplement and that their request only pertains to the documents produced from HRC's case files.  (DN 125, at PageID # 5162–63.)  Defendants specifically argue that the documents should be filed with their current redactions as permitted under the Court's August 25, 2021 order "and even the redacted case files should be maintained under seal."  (*Id.* at 5166.)

## II.     LEGAL STANDARD

It is well-established that a "strong presumption" exists in favor of keeping court records open to the public.  *See, e.g.*, *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176–79 (6th Cir. 1983).  The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "only the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)).  To meet this burden, the party seeking a seal must show: (1) a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly tailored.  *Id.*; *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589,

593–94 (6th Cir. 2016). "[O]nly trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." *Shane*, 825 F.3d at 308 (citation and internal quotation marks omitted). The Sixth Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.' " *Id.* at 305–06 (quoting *Baxter Int'l., Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, in ruling on a motion to seal, the Court is required to make "specific findings and legal conclusions 'which justify nondisclosure to the public.' " *Rudd*, 834 F.3d at 594 (quoting *Brown*, 710 F.2d at 1176).

### III.  DISCUSSION

Plaintiffs' supplemental documents include: (1) thirteen HRC case files with the redactions permitted under the Court's August 25, 2021 order and additional redactions on three pages that Plaintiffs applied "as a courtesy to protect the privacy of a minor"; (2) an HRC complaint filed against Teen Challenge of Kentucky, Inc. ("Teen Challenge") that Plaintiffs retrieved from a website and filed with redactions to individual addresses and telephone numbers; and (3) unredacted archived newspaper articles. (DN 119-1, at PageID # 4947.) Plaintiffs' position is that the current redactions are appropriate, except that two of the case files, which the Parties stipulate as involving complaints against Teen Challenge and another business, Scooter's Triple B ("Scooter's"), should be produced in unredacted form and filed in the record. (DN 124, at PageID # 5155.) Defendants' position is that the redactions permitted under the Court's August 25, 2021 are appropriate and further that the redacted case files should be sealed entirely. (DN 125, at

PageID # 5166.)   Defendants also oppose Plaintiffs' demand for production and filing of unredacted versions of the Teen Challenge and Scooter's case files.  (*Id.* at 5167.)

### a. Confidential Case Files

In their brief, Defendants cite the contractual and statutory confidentiality obligations previously Court addressed in its August 25, 2021 order. (DN 125, at PageID # 5165–66.) Defendants assert that, "in light of the above-cited laws and contractual requirements, identifying information was appropriately redacted from the case files and even the redacted case files should be maintained under seal." (*Id.* at 5166.)  With the exception of the two case files discussed further below, Plaintiffs do not object to these redactions.[2]  (DN 124, at PageID # 5157.)  However, Plaintiffs oppose the request to seal the redacted documents.  (*Id.*)  Plaintiffs argue that "[t]hird parties filing discrimination complaints with Louisville have a limited expectation of privacy." (*Id.* at 5176.)  Plaintiffs further argue that "current redactions solve any privacy concerns."  (*Id.* at 5176–77.)

Assuming *arguendo* that Louisville Metro's contracts with the EEOC and HUD provide that information contained in the case files be kept confidential, this would not constitute a compelling reason to restrict the public right of access.  In its August 25, 2021 order, the Court made clear that these contracts do not govern the scope of discovery in federal court, but recognized that forcing Louisville Metro to violate their confidentiality obligations would impose a burden on Defendants.  (DN 89, at PageID # 2207.)  Consequently, the Court substantially limited the scope of production and granted the protective order in part to assuage that burden.  (*Id.* at

---

[2] The Court notes the presumption that the public has the right to access judicial records does not vanish simply because, as here, all parties in the case agree that certain records should be sealed.  *Rudd*, 834 F.3d at 595 (noting that although the defendant did not object to the plaintiff's motion to seal, his lack of objection did not waive the public's First Amendment and common law right of access to court filings); *Shane*, 825 F.3d at 305 ("A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody.").

2207, 2209, 2212.)  However, "there is a stark difference between so-called 'protective orders' entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other." *Shane*, 825 F.3d 299 at 305.  "While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed.R.Civ.P. 26 and 'is circumscribed by a long-established legal tradition' which values public access to court proceedings." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996) (quoting *Brown*, 710 F.2d at 1177)).  And when it comes to sealing, a "confidentiality agreement . . . does not bind the court in any way." *Brown*, 710 F.2d at 1180.  *See Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1006 (S.D. Ohio 2015) (finding that a confidentiality provision in a redemption agreement between a defendant and a third party "may have been sufficient to justify the protective order, [but] it is insufficient to justify filing documents on the court's docket under seal").

On the other hand, specific legal authority mandating confidentiality is indicative of a potentially compelling reason for sealing.  Indeed, information covered by "statutory or regulatory privilege" is among the categories of information that the Sixth Circuit recognizes as typically sufficient to overcome the presumption of public access.  *Shane*, 825 F.3d at 308.  The Court notes that, as was discussed in its August 25, 2021 order, the federal laws Defendant cites are largely irrelevant to their case file disclosures, in part because the laws only apply to cases in which the EEOC or HUD was involved.  (*See* DN 89, at PageID # 2206, 2208.)  Here, Defendants do not identify which, if any, of the thirteen cases at issue involved these agencies, and all that is apparent on review of Plaintiffs' supplemental documents is that many cases likely did not.  For example, it is reasonable to conclude that the six case files involving charges of discrimination based on sexual orientation or gender identity are unaffected by the federal confidentiality laws because

neither EEOC nor HUD regulated such practices during the relevant period.  *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754, 207 L. Ed. 2d 218 (2020).  The only clearly applicable statutory protection covering HRC's case files is the provision of the Fairness Ordinance mandating that, aside from conciliation and enforcement agreements, "[a]ll other records and information shall be confidential except as reasonably necessary to conduct an investigation and proceeding."  MO § 92.08(B)(7).  Defendants have represented that this provision advances "the important policy interests relating to effective enforcement of anti-discrimination laws . . . ."  (DN 66, at PageID # 1822.)  The Court has recognized that Defendants' interest in protecting classes of individuals from discrimination targeted by the Fairness Ordinance is "unquestionably compelling."  (DN 49, at PageID # 1220.)  To the extent that public disclosure of HRC's confidential case files will frustrate the Fairness Ordinance's enforcement scheme, the Court finds that Defendants have established a compelling reason for sealing.

Defendants have also identified potential third-party interests in maintaining the confidentiality of HRC's case files, noting that "[a]ll documents pertain to allegations of discrimination by third parties who have no involvement in this litigation."  (DN 125, at PageID # 5166.)  Of course, the fact that the documents concern third-party complaints is not on its own a compelling reason for restricting the public right of access.  *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 787 (E.D. Mich. 2019) ("[T]he cases where the sealing of information has been upheld concerned clearly personal and impertinent details associated with third parties, such as personal identifying information of crime victims or financial records of a bank's customers.").  Rather, a party who wishes to seal such documents bears the burden of "showing that 'disclosure will work a clearly defined and serious injury.' "  *Id.* at 307 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

Here, Defendants suggest that public disclosure would be injurious because "[m]ost of these documents contain descriptions of incidents which complainants describe as personally humiliating and which respondents maintain did not occur, or did not occur as described by the complainants" and because "[c]ertain of the documents include descriptions of sensitive incidents involving minor children."  (DN 125, at PageID # 5166.)  Upon review of the supplemental documents, the Court finds that they contain information implicating third-party privacy interests that constitute a compelling reason for sealing. This includes certain personal identifying information that courts in this circuit routinely seal: "addresses, phone numbers, and names of third parties." *Ewalt v. GateHouse Media Ohio Holding II, Inc.*, No. 2:19-CV-4262, 2021 WL 4841064, at *2 (S.D. Ohio Oct. 18, 2021).  Additionally, in several instances, the supplemental documents reveal individuals' sexual orientation and gender identity, information that is highly personal. *See Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998) ("Our sexuality and choices about sex, in turn, are interests of an intimate nature which define significant portions of our personhood. Public[]ly revealing information regarding these interests exposes an aspect of our lives that we regard as highly personal and private.").  In some instances, individuals' disability status is revealed.  The respondent businesses also have an interest in confidentiality, as the supplemental documents reveal that specific businesses had been charged with unlawful discrimination, and in some cases reveal allegations of repugnant behavior.  Most of the cases included in the supplemental documents concluded with a finding of no probable cause.  Publicizing these unfounded allegations will not only expose individuals to reputational damage, but also creates risk that local businesses will suffer financial harm should the allegations affect consumer choice. The risk of harm to innocent third parties stemming from intrusion upon their privacy rights constitutes a compelling reason for sealing. *Shane*, 825 F.3d at 308; *Brown*, 710 F.2d at 1179.

9

The next step is determining how the reasons for sealing measure up compared with the public interest in access. At minimum, "[t]he public has a strong interest in obtaining the information contained in the court record." *Shane*, 825 F.3d at 305 (quoting *Brown*, 710 F.2d at 1180). Beyond that, the particular circumstances of a case may strengthen that interest; "the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* at 305. "The inverse is true, too. The lesser the public interest in the litigation's subject matter, the lesser the showing necessary to overcome the presumption of access." *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS-CHL, 2017 WL 3220470, at *5 (W.D. Ky. July 28, 2017). Here, the subject matter of this litigation heightens the presumption of access. The legal issues presented require constitutional review of a statute, a quintessential matter of great public interest. *See Shane*, 825 F.3d 305 ("Sometimes, the public's interest is focused primarily upon the litigation's result—whether a right does or does not exist, or a statute is or is not constitutional."); *Caudill*, 2017 WL 3220470, at *5 ("Although the Court rejects Caudill Seed's argument that there is no public interest in this lawsuit, *see infra* Part I(A)(3), the public's interest in this litigation is less than it would be in a case involving constitutional rights, among other things."). Any ruling on the merits will have far reaching effects and implicate the rights of all Americans. Indeed, the United States Supreme Court recently agreed to review an appeal challenging the constitutionality of public accommodation law that parallels the Fairness Ordinance on First Amendment grounds similar to those raised here. *303 Creative LLC v. Elenis*, 142 S. Ct. 1106, 212 L. Ed. 2d 6 (2022).

Additionally, transparency is most important at this stage of litigation, when the merits of the case are being decided. *Shane*, 825 F.3d at 305. *See Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, No. 3:19-CV-778-DJH-CHL, 2020 WL 6946577, at *3 (W.D. Ky. Nov. 25,

2020) (public interest in access was "especially strong" for a document "offered in support of a motion for summary judgment, which will result in a ruling on the merits as a matter of law"). When documents are filed in support of a motion for summary judgment, "the public would have a substantial interest in knowing what evidence exists (or does not exist) that would show that [a defendant] engaged in [actionable] conduct." *Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *6 (W.D. Ky. June 26, 2018). *See Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (holding that documents filed in support of a motion for summary judgment in a civil case are entitled to a more rigorous standard); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) (same); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (same). Defendants argue that the portions of the Parties' briefs discussing HRC's case files provide the public with sufficient information to understand the basis of the Court's forthcoming summary judgment ruling. (DN 125, at PageID # 5167.) While the Court agrees that the Parties' briefs include substantial discussion of the case files, this fact only increases the public interest in accessing the underlying documents. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 939 (6th Cir. 2019) (citing *Shane*, 825 F.3d at 305) (finding that court records subject to the public right of access include "sealed or redacted pleadings, briefs, or other documents that the parties have filed with the court, *as well as any reports or exhibits that accompanied those filings*") (emphasis added). As the Second Circuit has explained, in an adversarial system, "pleadings, complaints, and briefs—while supposedly based on underlying evidentiary material—can be misleading. Such documents sometimes draw dubious inferences from already questionable material or present ambiguous material as definitive." *Brown v. Maxwell*, 929 F.3d 41, 52 (2d Cir. 2019). Especially considering that HRC ordinarily enforces the Fairness Ordinance under a cloak of secrecy, "[t]he public has an interest in ascertaining what

evidence and records . . . [are] relied upon in reaching [the Court's] decisions." *Shane*, 825 F.3d at 305. *See Brown*, 710 F.2d at 1180 ("[C]ommon sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know.").

On balance, the Court finds that Defendants' interest in maintaining the confidences of prehearing complainants and the third-party privacy interests outweigh the public's right of access, but that those interests are sufficiently protected by the narrowly tailored redactions already applied to the supplemental documents. These redactions anonymize third-party identities without concealing any substantive information for which the documents were offered. Courts in this circuit consistently find that similar redactions to personal identifying information strikes the proper balance between protecting third-party privacy and preserving the public right of access, and the Court likewise so finds here. *See, e.g.*, *In re Flint Water Cases*, No. 516CV10444JELMKM, 2021 WL 1877018, at *2 (E.D. Mich. Apr. 21, 2021) (citing *Brown*, 710 F.2d at 1179) ("Sixth Circuit precedent supports such a sealing *so long as the redactions are narrowly tailored to seal only the personally identifying information*.") (emphasis added); *United States v. Brown*, No. 322CR00033BJBCHL1, 2022 WL 1274411, at *2 (W.D. Ky. Apr. 28, 2022); *Ewalt*, 2021 WL 4841064, at *2; *NFocus Consulting Inc. v. Uhl*, No. 2:20-CV-5106, 2020 WL 6791232, at *2 (S.D. Ohio Nov. 19, 2020); *Doe #1 by & through Lee v. Sevier Cty., Tenn.*, No. 3:17-CV-41, 2017 WL 888395, at *2 (E.D. Tenn. Mar. 1, 2017) (denying motion to seal and directing defendants to file redacted versions of minors' records).

Defendants have not met their burden of showing that sealing the confidential case files in their entirety is justified. Defendants suggest that the current redactions do not sufficiently anonymize the documents because "the documents contain other details regarding incidents which may allow members of the public to identify the complainants or respondents." (DN 125, at

PageID # 5166.)  The sole example they cite is a determination letter on a complaint "setting forth [the] date and name of event at which alleged discrimination occurred." (*Id.*)  All that is apparent from that letter and surrounding case file documents is that the complainant was employed by an unnamed vendor that serviced a particular sporting event that took place nearly ten years ago on October 27, 2012.  (DN 119-3, at PageID # 5022–29.)  Defendants have not explained how a member of the public could trace the identity of the complainant from this attenuated information nor have they provided any basis from which the Court may conclude that disclosure of the information will result in serious injury. *See Kiwewa v. Postmaster Gen. of United States*, No. 18-3807, 2019 WL 4122013, at *2 (6th Cir. Mar. 26, 2019) ("[The plaintiff]'s assertion that his minor children could be identified through their shared last name and would suffer harm is too attenuated to constitute a compelling reason to seal the record. His children were not named or otherwise mentioned in the record.").  Therefore, the Court will deny Defendants' request to seal the confidential case files in their entirety and will order them unsealed with the redactions as filed.

### b. Teen Challenge and Scooter's Case Files

Plaintiffs request that the Court order Defendants to "quickly produce Scooter Triple B's and Teen Challenge case files in unredacted form so that they can be refiled unredacted." (DN 124, at PageID # 5156.)  In support of their request, Plaintiffs exemplify how details related to those cases have already been disclosed to the public in Louisville Metro's public records and media reports. (*Id.* at 5157.)  Defendants oppose the request, noting that they "already complied with the Court's August 25, 2021 Memorandum Opinion and Order (Doc. 89) by producing the files with personal identifying information redacted." (DN 125, at PageID # 5167.)  Defendants argue that producing the case files without redactions "serves no meaningful purpose" because "Plaintiffs have apparently had no trouble identifying the complainants and respondents for those

case files and have already described the documents as part of the . . . case files in briefs that will soon become part of the public record." (*Id.*)  In reply, Plaintiffs dispute that their request is superfluous, as "[r]edacted case files conceal information; unredacted case files don't." (DN 126, at PageID # 5177.)  Plaintiffs reference a provision of the Court's March 30, 2022 Memorandum and Order Regarding Sealing Confidential Information advising that "[e]xcept as stated in Federal Rule of Civil Procedure 5.2, redaction is considered by the Court to be the same as sealing information."  (DN 126, at PageID # 5177) (quoting DN 123, at PageID # 5150.)    Finally, Plaintiffs argue that Defendants failed to "give 'reasons and legal citations' to justify concealment" of the information redacted from the relevant case files.  (DN 126, at PageID # 5177) (quoting *Shane*, 825 F.3d at 305–06).

Plaintiffs' demand for unredacted versions of the case files raises a potential independent issue, namely, whether the public right of access extends to the redacted information.  The Court's order providing that "redaction is considered by the Court to be the same as sealing information," (DN 123, at PageID # 5150), commonly applies to a situation where a party has filed a redacted document that is available to the public and separately presents an unredacted version to the Court, either by filing it under seal or submitting it for *in camera* review.  This is the type of redaction is contemplated by the Court's Local Rules, which define sealed documents as those filed pursuant to an order permitting sealing "in conjunction with a motion for leave to seal or a previously-filed redacted document."  L.R. 5.6(b).  Under such circumstances, the public right of access to the unredacted version is presumed, and any information concealed by redactions is properly considered to have been sealed.  *In re Opiate Litig.*, 927 F.3d at 939 (citing *Shane*, 825 F.3d at 305) (finding that court records subject to the public right of access include "sealed or redacted pleadings, briefs, or other documents that the parties have filed with the court, as well as any

reports or exhibits that accompanied those filings").  What is left somewhat ambiguous is whether the presumption of openness extends to unredacted versions of court documents are never placed filed in the record or otherwise presented to the court.

"Although it is undisputed that the public has a right to copy and inspect 'judicial records,' it is less clear what standards are to be used to determine at what point various documents, memoranda, and other materials developed during the pretrial stages of litigation become part of the judicial record."  Debra T. Landis, Annotation, *Public Access to Records and Proceedings of Civil Actions in Federal District Courts*, 96 A.L.R. Fed. 769 (1990).  For example, the Second Circuit has set forth a threshold test for courts to determine whether a document filed in a court is a "judicial document."  *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)) ("In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.' ").  *See Trump v. Deutsche Bank AG*, 940 F.3d 146, 150–51 (2d Cir. 2019) (finding that individual names redacted from letter filed in the record did not constitute a "judicial document").  The Sixth Circuit's sealing standard is broader, providing that the right of public access is triggered at the adjudicative stage, and "[t]he line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record."  *Shane*, 825 F.3d at 305 (citing *Baxter*, 297 F.3d at 545).  In applying this standard, district courts often, both explicitly and implicitly, treat redactions to court filings as partial seals even when unredacted versions are not separately in the court record under seal.  *See, e.g.*, *Bureau of Consumer Fin. Prot. v. Fifth Third Bank, N.A.*, No. 1:21-CV-262, 2021 WL 4848883, at *2 (S.D. Ohio July 8, 2021) ("Should a party wish to make any such redaction, it shall file an unredacted version of its briefing on the Motion for Judgment on the Pleadings under seal, and file a redacted version on the public docket. However, if a party seeks to redact any

material in such briefing beyond that described above, the party must seek leave to do so."); *Athan v. United States Steel Corp.*, No. 17-CV-14220-TGB-DRG, 2021 WL 805430 (E.D. Mich. Mar. 3, 2021) (finding that FLSA agreement settlement is a judicial document subject to public right of inspection and "should not be sealed, or even partially redacted, unless the parties make a showing that overcomes the presumption of public access."); *Fassa v. P&E Express Inc.*, No. 2:21-CV-542, 2022 WL 1158596, at *1 (S.D. Ohio Mar. 28, 2022) (finding, with respect to an FLSA settlement agreement, that it was not a "rare instance where a partial redaction was permissible"); *Polch v. Paul F. Vanek, Jr., M.D., Inc.*, No. 1:20-CV-01436, 2020 WL 6383186, at *2 (N.D. Ohio Oct. 30, 2020); *David v. Kohler Co.*, No. 115CV01263STAJAY, 2019 WL 6719840, at *4 (W.D. Tenn. Dec. 10, 2019).  *See also Rui He v. Rom*, No. 1:15-CV-1869, 2016 WL 909405, at *3–4 (N.D. Ohio Mar. 10, 2016) ("The parties must redact social security numbers, bank account numbers, and dates of birth . . . Should Defendant want additional protections, it must make a specific showing to this Court.").  However, the Court has found no controlling caselaw explicitly deciding that information redacted from a particular document during discovery and at the time of filing that has not been disclosed to the court constitutes "information contained in the court record." *Brown*, 710 F.2d at 1180.  Nevertheless, Sixth Circuit precedent and other, persuasive authority provide sufficient guidance for the Court to conclude that redacting a document filed in the Court record is a restriction on the public right of access indistinguishable from sealing and subject to the same heightened standard.

One might reason that there is no right of access to an unredacted version of a document that has been offered to a court solely in redacted form because the redacted information cannot be considered as a basis for any court decision.  Under that logic, because the redacted information was never placed before the Court, the redactions do not offend "[t]he public [] [] interest in

ascertaining what evidence and records [courts] have relied upon in reaching our decisions." *Shane*, 825 F.3d at 305. However, there is a consensus among circuit courts that the public right of access is not limited to documents a court has relied upon in a particular ruling. *See, e.g.*, *In re Opiate Litig.*, 927 F.3d at 939 (citing *Shane*, 825 F.3d at 305); *Shane*, 825 F.3d at 305 (stating that the public right of access "rests on several grounds," and, in part, "the public's interest is focused not only on the result, but also on the conduct giving rise to the case"); *AmerGen Energy Co., LLC by & through Exelon Generation Co., LLC v. United States*, 115 Fed. Cl. 132, 139–40 (2014); *United States v. Kravetz*, 706 F.3d 47, 58 (1st Cir. 2013) (rejecting the notion that the presumption of public access turns on whether the documents at issue "actually played a role in the court's deliberations"); *Lugosch*, 435 F.3d at 123 (quoting *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D. Cal. 1984)) (rejecting that "different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving the motion," and stating that " '[i]f the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision . . . documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision' ") (emphasis in original). Thus, while judicial reliance on a document stands to mitigate or heighten the public interest in access under particular circumstances, it does not define the breadth of the presumption of openness.

Litigants might assume that their capacity to decide which documents they file in the court record includes discretion to withhold impertinent information within the individual documents they choose to file. In other words, redacted portions of a document offered for its unredacted portions are no different than a separate document that a party chooses not to offer. *Cf. Allen v. City of New York*, 420 F. Supp. 2d 295, 303 (S.D.N.Y. 2006) ("While it is possible that the

presumption of access should not apply where a party appends wholly irrelevant material to its summary judgment papers, that is certainly not the case here.").  In the Court's view, omitting documents that were exchanged during discovery is not the same as selectively altering documents placed in the record.  *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002) ("Selective information is misinformation.").  Under Rule 5, "discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing." Fed. R. Civ. P. 5(d).  When a litigant does offer discovery documents for the Court's consideration, the Rules "explicitly provide when redaction may be used." *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 452 (D. Minn. 2011) (citing Fed. R. Civ. P. 5.2).  Specifically, Rule 5.2 requires parties to redact from filings "individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number." Fed. R. Civ. P. 5.2(a).  The Rule authorizes judges to permit more extensive redactions but does not "affect the limitations on sealing that are otherwise applicable to the court." Fed. R. Civ. P. 5.2 advisory committee note to 2007 amendment.  Notwithstanding this provision, the Rules "do not grant parties the power to unilaterally redact information on the basis of relevance." *Bartholomew*, 278 F.R.D. at 452. *See* Fed. R. Civ. P. 5.2 advisory committee note to 2007 amendment ("Parties must remember that any personal information not otherwise protected by sealing or redaction will be made available over the internet.").

Several district courts have written critically of the use of redactions in the discovery context due to a preference for evidentiary completeness. *See, e.g.*, *Bartholomew*, 278 F.R.D. at 451–52 (D. Minn. 2011) ("Thus, courts view 'documents' as relevant or irrelevant; courts do not, as a matter of practice, weigh the relevance of particular pictures, graphics, paragraphs, sentences, or words, except to the extent that if one part of a document is relevant then the entire document

is relevant . . . ."); *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2372, 2002 WL 33003691, at *5 (W.D. Tenn Jan. 30, 2002) (quoting *In re Medeva Securities Litigation*, 1995 U.S. Dist. LEXIS 21895, at *8 (C.D. Cal. May 30, 1995) ("Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured."); *Osborn v. Griffin*, No. CV 11-89-WOB-CJS, 2013 WL 12176851, at *8 (E.D. Ky. July 17, 2013) (quoting *Medtronic* at *5). These considerations parallel those at issue in the sealing context. *See Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 837 (6th Cir. 2017) (explaining that the public right of access serves to "increase public confidence in and understanding of the judicial system, and diminish the possibility of injustice, incompetence, perjury, and fraud"); *Shane*, 825 F.3d at 306 (due to excessive sealing, "both the general public and the class were able to access only fragmentary information about the conduct giving rise to this litigation, and next to nothing about the bases of the settlement itself"); *Brown*, 710 F.2d at 1180 (observing that "common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know"); *ACLU of Tennessee, Inc. v. City of Memphis*, No. 2:17-CV-2120-JPM-JAY, 2021 WL 8268126, at *3 (W.D. Tenn. Sept. 29, 2021) (finding that the movant had not "shown that the interest in redacting outweighs the public interest in accessing the complete judicial record"); *In re Elec. Gearshift Litig.*, 377 F. Supp. 3d at 794 ("[E]ven if the report was made in confidence, any present interest Chrysler may have in maintaining its confidentiality is outweighed by the public's interest in full disclosure of it as an item of evidence in this case.").

The Federal Rules also provide various mechanisms to contextualize evidence offered only in partial form. *See, e.g.*, Fed. R. Evid. 106; *United States v. Howard*, 216 F. App'x 463, 472–73 (6th Cir. 2007) (explaining that Rule 106 "allows a party who is prejudiced by an opponent's

introduction of part of a document, or a correspondence, or a conversation, to enter so much of the remainder as necessary to explain or rebut a misleading impression caused by the incomplete character of that evidence") (internal citations and quotations omitted); Fed. R. Civ. P. 502(a) (setting forth conditions for waiver of privilege protection through selective disclosure within particular subject matter); Fed. R. Civ. P. (d) ("The court may order that a filing be made under seal without redaction. The court may later unseal the filing or order the person who made the filing to file a redacted version for the public record."). By operation of these rules, when a litigant places a redacted document in the record, it is fair to say that the unfiled, unredacted version of the document is subject to judicial scrutiny and, by extension, the public right of access. This conclusion is consistent with the expansive scope of the public right of access recognized by the Sixth Circuit. *See* David Konarske, Jr., *Transparency as Justice: The Ethics of Public Attorneys and Judicial Seals*, 14 ALB. GOV'T L. REV. 102, 112–13 (2021) (noting that "the Sixth Circuit is outlier in its requirements for judicial seals").

In *Shane*, the Court reviewed an appeal of a district court decision finally approving a class action settlement agreement. 825 F.3d at 302. The district court had previously granted preliminary approval of the settlement agreement and issued deadlines for class members to be notified of the agreement and to exercise their right to opt out. *Id.* at 304. During the interim period, "[c]lass members who sought to examine the court record or the bases for the settlement agreement, however, found that most of the key documents were either heavily redacted or, as in the case of [an expert]'s report, completely sealed." *Id.* Some class members sought to unseal the record on grounds that access to court filings were necessary for them to assess the fairness of the settlement agreement, but the district court denied their request and issued its opinion finally approving the settlement agreement. *Id.* In its analysis, the Sixth Circuit did not distinguish

documents that had been "heavily redacted" from those that were "completely sealed." *Id.* Rather, the court focused more generally on the expansive scope of "documents placed under seal in this case" and that "the general public and the class were able to access only fragmentary information about the conduct giving rise to this litigation." *Id.* at 306. The court found that the district court improperly sealed the documents based only on its perfunctory finding of "good cause shown." *Id.* In reversing the decision, the court emphasized that "the parties or the third parties themselves remain free on remand to demonstrate—on a document-by-document, line-by-line basis—that specific information in the court record meets the demanding requirements for a seal." *Id.* Thus, while the Sixth Circuit did not directly address the issue presented here, it is highly significant to the Court's analysis that *Shane* made explicit that *every line of every document* filed in the record is subject to the presumption of openness.

Subsequently, in *In re National Prescription Opiate Litigation*, a multidistrict litigation action against pharmaceutical companies engaged in the sale of prescription opiates, the Sixth Circuit reviewed a protective order that "authorized the parties to file pleadings, motions, or other documents with the court that would be redacted or sealed to the extent they contained" controlled substance monitoring data produced by the Drug Enforcement Administration, which was involved in the case as an interested party. 927 F.3d 919, 925 (6th Cir. 2019). The court also separately considered whether "the district court erred in permitting pleadings and other documents to be filed under seal or with redactions." *Id.* at 923. In doing so, the court articulated the public right of access in the broadest terms, finding that it extended to "sealed or redacted pleadings, briefs, or other documents that the parties have filed with the court, as well as any reports or exhibits that accompanied those filings." *Id.* at 939. As applied to the record below, the court specified:

> "These documents include, *but are not limited* to, the DEA's
> Amended Brief in Support of Objections (R. 717), John J. Martin's
> Declaration (R. 663-1), and *any pleadings* filed *under seal or with
> redactions*. On remand, the district court shall conduct a full review
> of court documents filed *under seal or with redactions*, and it shall
> *in each instance* reevaluate whether *redaction or seal* is necessary
> in light of the proper legal standards as set forth in this opinion."

*Id.* at 939 n.14 (emphasis added).

In its references to "redacted" documents, the court did not draw any distinction between those that are separately offered in unredacted form under seal and those of which unredacted versions are never filed in the record. *But see David*, 2019 WL 6719840, at *4 n.3 (noting that in lieu of filing settlement agreement under seal, "the parties have requested leave to file the agreement with redactions" and citing *In re Opiate Litig.*, 927 F.3d at 940 as supporting that "[s]ealing and redaction are simply two sides of the same coin."). The Court declines to infer some intended carveout in spite of the plain terms of the Sixth Circuit's explicit directive that documents cannot be "filed under seal or with redactions" without a finding that the applicable legal standard is satisfied. *In re Opiate Litig.*, 927 F.3d at 939 n.14.

Based on the Sixth Circuit precedent and the other considerations discussed above, the Court concludes that the Court's March 30, 2022 order is generally an accurate statement of law: "Except as stated in Federal Rule of Civil Procedure 5.2, redaction is considered by the Court to be the same as sealing []."[3]  (DN 123, at PageID # 5150.)   This is not to say that redactions should never be permitted in court documents; they are often a useful tool in safeguarding the public's right of access. *See, e.g.*, *Lipman v. Budish*, 974 F.3d 726, 754 (6th Cir. 2020).  However, parties

---

[3] The terms of the Court's March 30, 2022 Memorandum and Order Regarding Sealing Confidential Information would remain in full force, even if the Court's interpretation of the law is incorrect.  The Court's mandate that "[e]xcept as stated in Federal Rule of Civil Procedure 5.2, redaction is considered by the Court to be the same as sealing information,"  (DN 123, at PageID # 5150), was not an application of the law on sealing in this circuit, but rather was among "Procedure[s] Required to Obtain Leave to File Under Seal in This Case."  (*Id.* at 5149.)  Imposing such procedures is well within the discretion of the court. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978) (holding that "every court has supervisory power over its own records and files").

are not permitted to file "redacted pleadings, briefs, or other documents" without seeking leave of the Court and making a sufficient showing "to adequately explain 'why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary.' " *In re Opiate Litig.*, 927 F.3d at 940. *See Amodeo*, 44 F.3d at 147 ("[I]t is proper for a district court, *after weighing competing interests*, to edit and redact a judicial document in order to allow access to appropriate portions of the document.") (emphasis added).

The Court now turns to the redactions to the Teen Challenge and Scooter's case files at issue here. In support of their request for unredacted versions of the case files to be produced and filed, Plaintiffs note that many of the documents in the Scooter's case file have already been publicized and that both cases were covered in media publications and have been discussed in the Parties' filings in this case. (DN 124, at PageID # 5156–57.) Plaintiffs therefore argue that the third parties involved in these cases "have even less privacy interest than the average complainant." (*Id.*) Defendants do not dispute this argument and agree that portions of Plaintiffs' briefs "identifying the complainants and respondents . . . [and] describe[ing] the documents as part of the Scooter Triple B and [Teen Challenge] case files" should be made public. They nonetheless argue that the Scooter's and Teen Challenge case files should remain redacted because they "complied with the Court's August 25, 2021 Memorandum Opinion and Order (Doc. 89) by producing the files with personal identifying information redacted." (DN 125, at PageID # 5167.)

In its August 25, 2021 order, the Court compelled Defendants to produce a portion of HRC's case files, subject to a protective order prohibiting disclosure outside of this litigation and permitting Defendants to apply certain redactions to their production. (DN 89, at PageID # 2212.) The Court never suggested that the terms of the protective order were permanent nor that they

would continue to apply outside the discovery context.  (*Contra id.*) (providing that the protective order was effective "pending further order of the Court").  The Court did not find, nor even consider, whether information that Defendants were permitted to redact pursuant to the protective order could properly be sealed.  Indeed, without having reviewed the documents or the redactions that Defendants would apply thereto, the Court had no basis for any such finding.  Here, the only reason Defendants offer for maintaining redactions to the Teen Challenge and Scooter's case files filed in support of Plaintiffs' summary judgment motion is that those redactions were permitted during discovery, which "conflate[s] the standards for entering a protective order under Rule 26 with the vastly more demanding standards for sealing off judicial records from public view." *Shane*, 825 F.3d at 307.  *See Lipman*, 974 F.3d at 754 ("Defendants' sole argument for sealing Plaintiffs' brief is that it contains information derived from a deposition that Defendants designated as confidential under a protective order.").

Applying the more rigid standard set forth in *Shane*, the Court finds no compelling reason for sealing a majority of the redacted portions of the Scooter's and Teen Challenge case files.  The Scooter's case file comprises thirty-seven pages, nearly all of which contain redactions.  The redactions appear to be limited to instances where Scooter's is identified by name, Scooter's business address, and a signature on Scooter's conciliation agreement with HRC that appears to identify a representative for Scooter's.  Scooter's identity as the respondent in the case and its address are both available in the public record, and therefore, there is no compelling reason for redaction.  Additionally, under the Fairness Ordinance, HRC has a duty to "[p]ublish or cause to be published conciliation agreements or enforcement agreements," MO § 92.08(B)(7), and Defendants have provided no reason why public disclosure of the individual who executed the conciliation agreement would result in serious injury.  Therefore, there is no compelling reason for

redaction.  The Teen Challenge case file comprises forty-five pages of documents, nearly all of which contain redactions.  Redactions cover excerpts from newspaper articles and websites and a press release statement.   As this information was disclosed in the public record, there is no compelling reason for redaction.  The remaining redactions appear to be limited to identifying information for the parties involved in the case.  The identities of the parties involved in the Teen Challenge are a matter of public record, and therefore, there is no compelling reason for redaction.  Because defendants have failed to meet their burden of showing a compelling reason for any redactions to the Teen Challenge and Scooter's case files, they will not be partially sealed. Defendants will order Defendants to file unredacted versions of these case files as set forth below.

IV.    **ORDER**

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

1.   Defendants' request to permanently seal DN 119-3 (DN 125) is **DENIED**.

2.   Plaintiffs' motion to unseal DN 119 and 121 (DN 124) is **GRANTED**.

3.   The Clerk of Court is directed to unseal DN 119 and accompanying exhibits and DN 121.

4.   On or before **June 30, 2022**, Defendants shall file unredacted versions of the documents

   filed at DN 119-3, PageID # 4984–5021 and DN 119-3, PageID # 5073–5118.


Colin H Lindsay, Magistrate Judge

United States District Court

June 1, 2022

cc:  Counsel of record