## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

CHELSEY NELSON PHOTOGRAPHY, LLC ET AL.                                                                  PLAINTIFFS

v.                                                                           No. 3:19-cv-851-BJB

LOUISVILLE/JEFFERSON COUNTY METRO GOV'T, ET AL.                                                         DEFENDANTS

\* \* \* \* \*

### OPINION & ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION TO DISSOLVE PERMANENT INJUNCTION

"Struggles to coerce uniformity of sentiment in support of some end thought essential to their time and country have been waged by many good as well as by evil men." *West Virginia v. Barnette*, 319 U.S. 624, 640 (1943). Eighty years later, the U.S. Supreme Court again barred the state from compelling speech—this time a wedding designer objecting to participating in same-sex weddings rather than a schoolchild opposed to reciting the Pledge of Allegiance. *303 Creative LLC v. Elenis*, 600 U.S. 570. That 2023 decision confirmed this Court's 2022 interpretation of the First Amendment to bar the City of Louisville from enforcing an ordinance prohibiting wedding photographer Chelsey Nelson from stating her traditional (now dissenting) views on traditional marriage or declining to participate in those ceremonies. These disputes, no less than those from earlier but equally fraught moments in our nation's history, posed profound questions about the meaning of speech, the government's authority to demand as well as forbid expression, and the tension in a system of ordered liberty between the common good and individual freedom.

In the meantime, judges on this court and the Supreme Court addressed seemingly more mundane questions about the role of the judiciary and the rights of litigants. Could litigants like Nelson, seeking as little as $1 in damages, obtain relief in court against state governments and others who restricted their constitutional rights? And when may a local government, responding to changed circumstances, escape the judgment of a federal court? Those are the questions left to answer in the wake of decisions like *303 Creative* and *Uzuegbunam v. Preczewski*: Nelson is back in this Court for $1 in damages because she silenced her speech in response to the threat of local enforcement, and the City is back asking the Court to revisit and dissolve its prior rulings.

1

# I. Background

As described in previous opinions in this long-running case, Chelsey Nelson[1] is a wedding photographer who creates expressive art that hews to a traditional Christian view of marriage. *See Chelsey Nelson Photography, LLC v. Louisville/Jefferson County Metro Gov't*, 624 F. Supp. 3d 761, 774 (W.D. Ky. 2022). Her work reflects her belief that God designed marriage as "a covenant between one man and one woman." *Id.* (quoting Declaration of Chelsey Nelson (DN 92-2) ¶ 83). For that reason, Nelson refuses to photograph same-sex weddings. *Id.* (citing Nelson Decl. ¶¶ 332–77). Nelson is candid about her views and how they limit her artistic expression. Her website connects her work and her faith, and states clearly why she does not photograph same-sex weddings. *Id.* (citing Nelson Decl. ¶¶ 60–61).

That approach is at odds with the "Fairness Ordinance" enacted by the Louisville Metro Council. Since the late 1990s, Louisville's human-rights laws have included two provisions that limit Nelson's freedom to express her beliefs about marriage. First, an Accommodations Provision "bars the denial of goods and services to members of protected classes." *Id.* at 775 (citing Louisville Metro Ordinance § 92.05(A)). Second, a Publication Provision "bars Nelson from writing and publishing any indication or explanation that she wouldn't photograph same-sex weddings, or that otherwise causes someone to feel unwelcome or undesirable based on his or her sexual orientation or gender identity." *Id.* (citing Louisville Metro Ordinance § 92.05(B)).

Nelson sued Louisville,[2] seeking a declaration that these provisions of the Fairness Ordinance violated the First Amendment's Free Speech and Free Exercise clauses as well as Kentucky's Religious Freedom Restoration Act. *Id.* (citing Complaint (DN 1) at 50–51). She also asked for a permanent injunction forbidding the City from enforcing these clauses against her or her business, plus both compensatory and nominal damages to redress the chilling effect she and her business suffered before filing suit. Complaint at 50–51.

In the meantime, Nelson sought a preliminary injunction barring Louisville from enforcing these two Fairness Ordinance provisions while the Court adjudicated her claims. Preliminary Injunction Motion (DN 3) at 2–3. Based almost entirely on her likelihood of success on the merits, the Court granted the preliminary injunction. *Chelsey Nelson Photography LLC v. Louisville/Jefferson County Metro Gov't*, 479 F.

---

[1] Unless otherwise specified, the use of "Nelson" in this opinion refers to both Chelsey Nelson herself and her business, Chelsey Nelson Photography, LLC.

[2] Unless otherwise specified, the use of "Louisville" or "the City" in this opinion refers to all relevant Defendants.

Supp. 3d 543 (W.D. Ky. 2020). But the district judge then presiding over the case held that Nelson lacked standing to sue for compensatory damages because she couldn't connect any business harm to the Fairness Ordinance, or for nominal damages because they wouldn't redress the ordinance's "past chill." *Id.* at 553 (quotation marks omitted).

After discovery, both sides filed cross-motions for summary judgment on the remaining claims.[3] The Court held that Nelson had standing, *Nelson*, 624 F. Supp. 3d at 776–81, the dispute was ripe for preenforcement review, *id.* at 781–82, and the Accommodation Provision burdened Nelson's speech by both compelling and punishing speech, *id.* at 782–91. The City's proffered justifications, moreover, failed strict scrutiny under both the First Amendment and the KRFRA. *Id.* at 792–800, 803–07. Likewise for the Publication Provision. *Id.* at 800–03. Based on those conclusions, the Court entered a declaratory judgment that both the First Amendment and the Kentucky Religious Freedom Restoration Act barred the City from enforcing the Accommodations and Publication Provisions of the Fairness Ordinance against Nelson. *Id.* at 808. And, consistent with her requested relief and the preliminary injunction, the Court permanently enjoined Louisville and its agents from:

1. "invok[ing] Metro Ordinance § 92.05(A) to compel Nelson to provide her wedding photography services for same-sex wedding ceremonies or otherwise express messages inconsistent with Nelson's beliefs" or
2. "invok[ing] Metro Ordinance § 92.05(B) to prohibit Nelson from posting statements on her website or making similar statements on her studio's website, on her studio's social-media sites, or to prospective clients."

*Id.*

Both sides appealed. Nelson asked the Court of Appeals to reverse the dismissal of her nominal-damages claim, and Louisville asked it to vacate the permanent injunction. *See Nelson v. Louisville-Jefferson County Metro Gov't*, Nos. 22-5884/5912, 2024 WL 1638860, at *1 (6th Cir. Apr. 16, 2024). But before the Sixth Circuit resolved the appeal, "three notable developments occurred." *Id.*

---

[3] "Nelson abandoned her claims against all individual defendants and against the Human Relations Advocacy Commission. She also abandoned all federal claims against the Enforcement Commission, but continue[d] to assert the KRFRA claim against it. The Court therefore grant[ed] summary judgment" to the City "with respect to the abandoned claims." *Chelsey Nelson Photography*, 624 F. Supp. 3d at 776 n.3.

In two respects, time vindicated Nelson. In March 2021, the Supreme Court held in *Uzuegbunam v. Preczewski* that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." 592 U.S. 279, 292; *accord Nelson*, 2024 WL 1638860, at *1. And in June 2023, the Court held that the First Amendment's Free Speech clause barred enforcement of a Colorado law similar to Louisville's Fairness Ordinance against a wedding website-design business. *See 303 Creative*, 600 U.S. at 579–80 ("The government" cannot "force … artists, speechwriters, and others whose services involve speech to speak what they do not believe on pain of penalty."); *accord Chelsey Nelson Photography*, 624 F. Supp. 3d at 789 ("The shield against compelled speech would be flimsy indeed if the government could simply exclude a non-conforming speaker from her avocation.").

But a third development threatened to cut against her. In April 2023, three months before the appeal was argued, Nelson "disclosed that she had moved outside Kentucky" to Tallahassee, Florida. *Nelson*, 2024 WL 1638860 at *1 (quotation marks omitted).

As a consequence of these developments, the Court of Appeals received three rounds of supplemental briefing. In response to *Uzuegbunam* and *303 Creative*—two decisions that cut decidedly *against* its position—Louisville nevertheless asked to "reverse" the summary-judgment grant, "vacate the injunction," and remand the case. Brief for Louisville (6th Cir. DN 28) at 53. But when Louisville got wind of Nelson's move south, it changed tack. The City filed a new motion asking the Court of Appeals "to remand this case … with a direction to vacate the injunction" (without ruling on it) or else "remand this case … to conduct discovery and make new findings regarding Nelson's standing." Brief for Louisville (6th Cir. DN 60-1) at 7.

The Court of Appeals granted this last motion. Given the "unsettled facts introduced by Nelson's move to Florida" and the new, nearly-on-all-fours decisions from the Supreme Court, the Court of Appeals decided that the district court should first chart the way forward. *Nelson*, 2024 WL 1638860, at *2 (quotation marks omitted). So the Court granted the motion to remand, vacated the dismissal of Nelson's nominal-damages claim, and remanded for this Court "to address in the first instance whether Nelson's claims for injunctive relief are moot and whether under *Uzuegbunam* she can maintain her claim for nominal damages." *Id.* The Court of Appeals "express[ed] no opinion on these issues, or on the merits." *Id.* And the court opted to "leave in place the injunction prohibiting Louisville from enforcing the Ordinance against Nelson." *Id.*

Consistent with the Court of Appeals' mandate, each party filed new motions on remand. Nelson moved for summary judgment (DN 159) on her resurrected

nominal-damages claim. And she also moved to supplement the summary-judgment record (DN 178) with new evidence about Louisville's enforcement of the Fairness Ordinance. For its part, Louisville moved to dissolve (DN 161) the permanent injunction (DN 130) that the Court of Appeals left "in place," *Nelson*, 2024 WL 1638860, at *2.

## II. NELSON'S SUPPLEMENTAL SUMMARY-JUDGMENT MOTION

### A. Nelson's prospective and retrospective claims

From the beginning, Nelson alleged that the Fairness Ordinance injured her in two distinct ways—by causing a present, ongoing injury that warranted prospective relief, on the one hand, and by causing a past, complete injury that warranted retrospective relief, on the other.

Her complaint alleged that the Fairness Ordinance's Accommodation Provision, Metro Ordinance § 92.05(A), compelled her to speak contrary to her beliefs, ¶¶ 221–24, and that its Publication Provision, § 92.05(B), required her to advertise speech she couldn't in good conscience create, ¶¶ 225–26, 245–48, 256–57. The Ordinance thus "force[d] [her] to decide between continuing to offer" services consistent with her beliefs while risking "the constant threat of prosecution" or else "leaving the wedding industry altogether." ¶ 227.

As to injunctive relief, this present and continuing threat of enforcement, Nelson asserted, warranted a forward-looking injunction that would free her to speak consistent with her beliefs. ¶ 323. The Court agreed and granted both preliminary and permanent injunctions. That equitable relief, which remains in effect, is not implicated by Nelson's supplemental summary-judgment request.

The pending motion, rather, addresses Nelson's damages request. Her complaint alleged that the threat of prosecution had already chilled her speech and thus caused constitutional injury. *See, e.g.*, ¶¶ 236–39, 255, 258–59. To redress these past, complete injuries to her business and to her constitutional rights, Nelson sought compensatory and nominal damages under 42 U.S.C. § 1983. ¶¶ 4, 323. Yet neither damages claim survived. The compensatory-damages claim, as explained, failed because Nelson didn't show enough connection between any business losses and the Fairness Ordinance. *Nelson*, 479 F. Supp. 3d at 553. Nelson hasn't asked to revisit the ruling dismissing that claim, which remains intact.

But her nominal-damages claim failed for a different, non-merits reason: the District Judge rejected it before discovery because, under then-existing Sixth Circuit law, "[n]o readily apparent theory" explained "how nominal damages might redress past chill." *Id.* (quoting *Morrison v. Board of Education of Boyd County*, 521 F.3d 602, 610 (6th Cir. 2008)). The Court held that Nelson lacked standing to pursue

5

nominal damages—even though she had shown everything else necessary to seek retrospective relief—for lack of redressability.

While Nelson waited for the Sixth Circuit to decide her appeal of that dismissal ruling, the Supreme Court clarified that nominal damages may redress past injuries. So the Sixth Circuit vacated the initial dismissal of Nelson's claim for nominal damages and instructed this Court to consider on remand whether that claim could proceed.

### B. Nelson's supplemental summary-judgment motion

Nelson has now moved for summary judgment on that claim. Consistent with its past holdings, as well as intervening Supreme Court and Sixth Circuit precedent, the Court finds that Nelson suffered a past injury that nominal damages would redress. So summary judgment is warranted.

### 1. The undisputed record indicates Nelson suffered a complete injury.
The parties do not seriously dispute (at this stage, anyhow) that Nelson suffered a First Amendment injury. For good reason: Nelson offered plenty of evidence the first time around that the Fairness Ordinance burdened her speech—and the City doesn't offer any countervailing evidence now that would create a genuine issue of disputed fact.

The complaint explained that "[t]o avoid punishment" under the Accommodation Provision, Nelson decided to "limi[t] the promotion of" her business, ¶ 236, ignore opportunities posted online, ¶ 237, and "refrai[n]" from advertising to grow her business, ¶¶ 238–39. Likewise, although Nelson wanted to share her faith-based view of marriage on her website and drafted messages to do so, ¶ 255, *see* DNs 1-2, 1-3, she chose to censor herself rather than risk prosecution under the Publication Provision, Complaint ¶¶ 258–59.

Sworn testimony later reiterated that account. "Before filing this lawsuit," Nelson testified, she chilled her speech "by limiting the promotion" of her business "in social media" and elsewhere "for fear of being prosecuted" under the City's ordinance. Declaration of Chelsey Nelson (DN 92-2) ¶¶ 425, 435–37, 450; *see also* ¶¶ 452–54. A supplemental declaration submitted on remand explained that only after the Court entered a preliminary injunction, after ten months of self-censorship, did Nelson post the statements she'd previously kept quiet. Supplemental Declaration of Chelsey Nelson (DN 159-1) ¶¶ 15–18, 23; *see* Nelson Decl. ¶ 60.

For its part, the City has always maintained that if Nelson had published her photography policy and reasons for it, that would violate the Fairness Ordinance. Louisville's Response to Nelson's Motion for Summary Judgment (DN 97) at 12 ("[T]here is no dispute that Chelsey's statement on her website" after the preliminary

injunction "violates the Ordinance."). Although Louisville defended the constitutionality of its law and denied that actual enforcement was imminent, it agreed that the statements Nelson wished to publish "violat[e] the Publication Provision." *Id.* at 7. And the City never disputed that Nelson refrained from saying more because of her fear of Fairness Ordinance enforcement.

On this record, and without serious disagreement from the City, the Court has no trouble finding that Nelson's speech was chilled and that the law treats such self-censorship as a complete First Amendment injury. *Kareem v. Cuyahoga County Board of Elections*, 95 F.4th 1019, 1027 (6th Cir. 2024).

**2. The Court's earlier holdings confirm this conclusion.** Before appeal, this Court twice held that the Ordinance chilled Nelson's expression in violation of the First Amendment.

At the preliminary-injunction stage, the Court found that Nelson had "undeniably alleged" a "subjective chill" due to the "credible threat of prosecution" she already faced. *Chelsey Nelson Photography LLC v. Louisville/Jefferson County Metro Gov't*, 479 F. Supp. 3d 543, 551 (W.D. Ky. 2020) (quotation marks omitted). And at the summary-judgment stage, the Court found that Nelson had proven her case: based on uncontested evidence, she faced a "fear of prosecution amount[ing] to a constitutional injury chilling her speech." *Chelsey Nelson Photography, LLC v. Louisville/Jefferson Cnty. Metro Gov't*, 624 F. Supp. 3d 761, 781 (W.D. Ky. 2022); *see also id.* ("Nelson has shown a credible fear of enforcement and this law's concomitant chill on her speech."). This chill abridged her speech rights. *Id.* ("[S]elf-censorship" is "a harm that can be realized even without an actual prosecution.") (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). And that restriction didn't come close to passing strict scrutiny, because "[t]he government has no permissible interest in suppressing even offensive views merely from being uttered." *Id.* at 801 (citing *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 548 U.S. 617, 638 (2018)).

Louisville insinuates, throughout its briefing on remand, that the question of past chill has *not* already been decided. *See* Motion to Dissolve, at 11–12. Any *ongoing* injury that supported injunctive relief, it contends, is distinct from the *past* injury that Nelson now seeks to redress through damages. *Id.* at 12. This distinction doesn't help the City. The same facts that supported the need for prospective injunctive relief—suppression of one's own speech for fear of violating an unconstitutional ordinance—likewise establish a complete First Amendment violation and injury warranting retrospective relief. A plaintiff suffering "continuing, present adverse effects" may seek "injunctive relief," *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974), and so may a plaintiff who fears "imminent" future

7

harm, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). The "past injuries" themselves, of course, are generally redressed by "compensatory relief," not forward-looking relief like injunctions. *Murthy v. Missouri*, 603 U.S. 43, 59 (2024).

**3. Intervening precedent confirms that Nelson suffered a complete injury redressable by nominal damages.** The Supreme Court's intervening decision in *303 Creative* confirms this Court's earlier judgment in Nelson's favor. A government may not force a speaker to choose between "speak[ing] as the State demands or fac[ing] sanctions for expressing her own beliefs." 600 U.S. at 589. And just as Louisville may not "force ... artists" like Nelson "whose services involve speech to speak what they do not believe," *id.* at 589, neither may it forbid Nelson from communicating her beliefs to customers.

The previous term, moreover, the Supreme Court also vindicated Nelson's position regarding the availability of nominal damages to remedy such a violation. In *Uzuegbunam*, the Court held that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." 592 U.S. 279, 292 (2021). Indeed, nominal damages "are ... awarded by default" in such cases. *Id.* at 290. And they're not just "symbolic" either; "[b]ecause nominal damages are in fact damages paid to the plaintiff, they ... independently provide redress" for past injuries. *Id.* at 290–91. That holding solves the redressability problem that Nelson first faced.

Soon thereafter, the Sixth Circuit coupled these two propositions to hold that a credible threat of unconstitutional enforcement that creates a chilling effect constitutes a "retrospective harm" that "nominal damages redresses." *Kareem*, 95 F.4th at 1027 (citing *Uzuegbunam*, 592 U.S. at 279). This decision eliminates any doubt about Nelson's standing to seek nominal damages because a state actor unconstitutionally chilled her speech.

**4. Louisville's efforts to distinguish Supreme Court and Sixth Circuit caselaw are unavailing.** Louisville raises two objections to the otherwise straightforward application of *303 Creative*, *Uzuegbunam*, and *Kareem* to Nelson's nominal-damages request. Neither argument is persuasive.

*First*, the City insists that *Uzuegbunam* doesn't fully establish Nelson's entitlement to nominal damages. *See* Motion to Dissolve (DN 161) at 13. As Louisville points out, *see* Motion to Dissolve at 13, *Uzuegbunam*'s "holding concerns only redressability," *Uzuegbunam*, 592 U.S. at 292. In that case, the City observes, the lead plaintiff was a Christian college student who tried to share his faith but was threatened with disciplinary action under a "campus policy [that] prohibited distributing written religious materials." *Uzuegbunam*, 592 U.S. at 283. A second

student plaintiff, "Joseph Bradford, decided not to speak about religion" at all because of the trouble Uzuegbunam encountered. *Id.* at 284.

Nelson, the City contends, more closely resembles Bradford than Uzuegbunam in this fact pattern: rather than speak and get in trouble, Nelson *declined* to speak and *avoided* trouble. *See* Motion to Dissolve at 12–14. To Louisville, that makes all the difference. Rather than assume Bradford's self-censorship counted as "a past, completed injury," or that his knowledge of Uzuegbunam's troubles put him at enough risk of enforcement, the Supreme Court decided the redressability question alone (whether nominal damages were available) and remanded for the district court to decide whether Bradford suffered an injury that warranted such relief. *Id.* at 293 n.*. *Uzuegbunam* says nothing about what *counts* as "a completed violation of a legal right," the City emphasizes—only that if one is established, nominal damages may redress it. *Id.*

But Nelson doesn't rely on *Uzuegbunam* to show that she suffered an injury. That she did is clear from the summary-judgment record, the law of the case, and intervening precedent. She instead relies on *Uzuegbunam* for its holding about *redressability*: its answer to Judge Walker's (and the mandate's) question whether nominal damages can provide that retrospective relief for her injury. Louisville's response thus misses the point. The City's attempt to distinguish *Uzuegbunam* on First Amendment grounds doesn't matter given Nelson's invocation of its holding on redressability.

*Second*, Louisville likens Nelson's case to a pre-*Uzuegbunam* decision, *Morrison*, 521 F.3d 602. This precedent, according to the City, shows Nelson has no "injury-in-fact" and cannot get "nominal damages [for] past chill." Motion to Dissolve at 14 (quoting *Morrison*, 521 F.3d at 610). But the City is wrong on both fronts. In that case, a Christian high-school student named Timothy Morrison wanted to share with his classmates his view that homosexuality is wrong. But he kept quiet because school policy prohibited him from "making stigmatizing or insulting comments regarding another student's sexual orientation." *Morrison*, 521 at 605. The Sixth Circuit held that "allegations of chill, without more, fail to substantiate an injury-in-fact." *Id.* at 610.

Louisville attempts to squeeze Nelson into Morrison's shoes, arguing that she suffered "no injury-in-fact … because there was no proof of 'concrete harm.'" Motion to Dissolve at 14 (quoting *Morrison*, 521 F.3d at 609–10). But this runs into the same problem as before. Timothy Morrison couldn't show injury-by-chill because he identified no "specific action on the part of the defendant" amounting to a credible threat of enforcement. *Id.* at 609–10. Not so for Nelson, who pleaded—and then proved—subjective chill *and* a credible threat of enforcement based on the City's past

9

actions. *See Nelson*, 624 F. Supp. 3d at 777 (applying *McKay v. Federspiel*, 823 F.3d 862, 868–69 (6th Cir. 2016)).

And if any doubt persisted about whether protected speech chilled by a credible threat of enforcement yields a complete injury, the Sixth Circuit's decision in *Kareem* dispels it. The City resists this analogy, arguing that the law at issue in *Kareem* involved stiffer penalties and sterner enforcement than its Fairness Ordinance. Motion to Dissolve at 14–15. But what matters for Nelson's case is *Kareem*'s holding that a subjective chill caused by a credible threat is a past injury that warrants retrospective relief. *See* 95 F.4th at 1027. *Kareem* is not necessary to establish that Nelson faced a credible threat from the Fairness Ordinance before 2022; that much is well established on the undisputed facts and binding law, *see* above at 6–8. The principle *Kareem* recognized, not the specific facts of that case, is what underscores Nelson's entitlement to retrospective relief here.

The City also cites *Morrison* for the proposition that "nominal damages cannot redress 'past chill'" even after *Uzuegbunam* because that Supreme Court decision never held that nominal damages could redress chilled speech specifically. Motion to Dissolve at 14 (quoting *Morrison*, 521 F.3d at 609–10). This is another distinction that makes no difference. Although *Uzuegbunam* didn't address past chill *in particular*, it reasoned that nominal damages redressed one complete violation of a closely related legal right—actual enforcement of a speech restriction. That's because of the broader "principle" that nominal damages may redress *any* "completed violation of a legal right." 592 U.S. at 292. And chilled speech, no less that actual enforcement, may "b[e] sufficient to establish an injury in fact under the First Amendment." *Kareem*, 95 F.4th at 1025–26.

\* \* \*

The undisputed summary-judgment record, this Court's prior rulings, and binding Sixth Circuit and Supreme Court precedent therefore all confirm that Nelson suffered a complete First Amendment injury remediable by nominal damages. So Nelson is entitled to summary judgment on this claim.

### III. LOUISVILLE'S MOTION TO DISSOLVE

While its appeal was pending, Louisville asked the Sixth Circuit to remand the case without deciding any of the questions presented on grounds that the case had become moot. *See generally* Motion to Remand (6th Cir. DN 60-1). As the City saw things, after Nelson moved to Tallahassee, she could no longer "establish a credible threat of enforcement." *Id.* at 3. Before moving, she'd never "traveled out-of-state to provide photography services." *Id.* And Louisville represented that it had never "enforced its public accommodations law against a non-resident." *Id.*

The Court of Appeals remanded—but didn't itself address whether the case or appeal was moot. Rather, it asked this Court "to address in the first instance whether Nelson's claims for injunctive relief are moot." *Nelson*, 2024 WL 1638860, at *2 ("Given the intervening developments, in particular the 'unsettled facts' introduced by Nelson's move to Florida, the 'district court is best positioned to resolve' in the first instance the continued vitality of Nelson's claims.") (citing *FemHealth USA, Inc. v. Williams*, 83 F.4th 551, 557 (6th Cir. 2023)).[4]

So Louisville moved on remand for the Court to "dissolv[e] the permanent injunction … pursuant to Fed. R. Civ. P. 60(b), dismissing Nelson's claims for injunctive relief as moot." Motion to Dissolve at 1.

**A. Nelson's claims are not moot.** Requests to vacate a judgment based on mootness, when raised in the appellate courts, are considered under the rubric of the *Munsingwear* doctrine. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). That caselaw addresses whether to vacate a decision that has—through no fault of the losing party—become moot on appeal. *Ford v. Wilder*, 469 F.3d 500, 506 (6th Cir. 2006). When mootness is asserted as the basis for vacatur in the trial court, however, Rule 60(b) applies. *See U.S. Bancorp Mortgage Co v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994).

The provision most relevant to achieving post-judgment relief under Rule 60(b) is likely its catch-all provision, Rule 60(b)(6), which authorizes a court to vacate a judgment for "any other reason that justifies relief." *See Gillispie v. Warden*, 771 F.3d 323, 331 (6th Cir. 2014).[5] Relief under this provision is hardly automatic; the moving

---

[4] Just as mootness in federal district court is tethered to standing in federal district court, *see Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013), appellate mootness is tied to *appellate* standing. But the relevant injury is the appellant's—not the plaintiff's. *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427, 432–33 (2019). And the injury must be caused not by the appellee's primary conduct but the judgment below. Put another way, "an appealing litigant" needs "an actual or imminent injury that is fairly traceable to the judgment below and that could be redressed by a favorable ruling" on appeal. *Id.* at 432–33 (cleaned up). The City never contends on remand that it's no longer affected by the judgment; rather, it insists that *Nelson* is now too attenuated from the judgment, injunction, and declaration she previously obtained. And the Court of Appeals, at least on the record then before it, declined to find the appeal moot or vacate the injunction.

[5] Louisville fails to point to a specific provision of Rule 60(b) as a basis for vacatur. But other courts to consider the question have settled on Rule 60(b)(6). *See Valero v. Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000); *Hall v. Louisiana*, 884 F.3d 546, 551 (5th Cir. 2018). Some have acknowledged too that when the judgment consists of an injunction, Rule 60(b)(5) may be an appropriate tool. *See Valero*, 211 F.3d at 118 n.2. Yet given Louisville's failure to demonstrate mootness in the first place, or even to cite any particular

party bears the burden of demonstrating, by clear and convincing evidence, the presence of "exceptional or extraordinary circumstances where principles of equity mandate relief." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015); *Info-Hold, Inc. v. Sound Merch.*, 538 F.3d 448, 454 (6th Cir. 2008). This marks a difference from the standard governing *Munsingwear* vacatur in the courts of appeals, where a party seeking vacatur need only withstand "the twin considerations of fault and public interest." *Ford*, 469 F.3d at 506 (quotation marks omitted). And in the district court, where "principles of equity" take pride of place in the Rule 60(b) analysis, trial judges retain "especially broad" discretion, and their decisions whether to grant such motions receive abuse-of-discretion review on appeal. *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014).

For a party in the City's position, however, vacatur of a final judgment based on mootness demands another daunting task: establishing mootness is itself a significant barrier for movants to overcome. The City must show that events since the case's filing have deprived Nelson of a "personal stake in the outcome of the lawsuit." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016). On this score, as well, "the party asserting mootness" bears the "burden to defeat jurisdiction with a mootness objection." *Kentucky v. Yellen*, 54 F.4th 325, 340 n.10 (6th Cir. 2022).

The Court of Appeals characterized the facts surrounding the City's mootness argument as "unsettled" and ordered this Court to consider them in the first instance. *See Nelson*, 2024 WL 1638860, at *2 (citing *FemHealth*, 83 F.4th at 557). Consistent with that mandate, the parties duly conducted targeted discovery on remand, and presented competing but reconcilable versions of Nelson's situation in connection with the Rule 60(b) motion and response.

Based on those submissions, the Court finds several facts responsive to the mandate. First, Nelson continues to operate her wedding-photography business—notwithstanding that she now lives in Florida. Chelsey Nelson Photography LLC remains a Kentucky entity, organized under Kentucky law, and headquartered in Kentucky. Chelsey Nelson's Decl. in Support of Plaintiffs' Response to Defendants' Motion to Dissolve (DN 168-1) ¶¶ 3–5. The LLC continues to pay Kentucky taxes, ¶ 73, and enter contracts governed by Kentucky law, ¶ 42. Nelson's past marketing efforts, network of "personal and professional contacts," and "personal connection to Louisville" allow her to drum up business here. ¶ 8. Her website, ¶¶ 13–17, her Instagram account, ¶¶ 25–27, her marketing and search-engine strategies, ¶¶ 29–31, 44–47, and her work with outside marketing help, ¶¶ 32–36, all seek customers in

---

provision or application of Rule 60(b), nothing turns on its failure to demonstrate an exceptional circumstance as Rule 60(b)(6) (but not 60(b)(5)) requires.

Louisville. A principal reason for her move was her husband's new job in Florida, not her own professional abandonment of the Kentucky market. Supplemental Decl. ¶ 7.

For its part, Louisville points out that Nelson has photographed only a few weddings since she moved, that her "office" in Louisville is just a box at a UPS store, and that—aside from her personal efforts—her marketing campaign in Louisville has amounted to no more than paying a "consultant" $30 for 30 minutes of time. Motion to Dissolve at 6. That much appears true. Given these facts, the City advances the legal position that Nelson should no longer fear enforcement of the Fairness Ordinance. In its view, that means she no longer has standing to pursue a preenforcement challenge, now has a moot rather than live dispute with the City, and doesn't need an injunction anymore. *Id.* at 5. But Nelson's move leaves the parties not far at all from where they were before. Now, as then, Nelson photographs weddings in Kentucky. Now, as then, Louisville contends she should not be able to photograph only opposite-sex weddings and may not explain that her decision to the public. And now, as then, Louisville maintains that the First Amendment allows it to enforce its law and continues to litigate vigorously against Nelson's website and photography. By itself, where Nelson *lives* makes no difference. So long as she continues to do business here, the facts and reasoning that justified a preenforcement injunction before the appeal still obtain today. *See generally Nelson*, 624 F. Supp. 3d at 807. As discussed below, anyone who's tussled with the City's lawyers this long and who continues to do business in and around Louisville might reasonably look askance at the City's assurances that enforcement is unlikely.

Resisting this conclusion, the City makes a halfhearted effort to disclaim any intent to enforce the Ordinance against Nelson. In a discovery response, Louisville took the position that "[s]ubject to" its discovery objections, "based on the information … presently available to Defendants, they would not investigate a complaint or otherwise take enforcement action against [Nelson] for alleged violations" of the Fairness Ordinance. Amended Responses to Plaintiffs' First Set of Renewed Interrogatories (DN 161-9) at 4–7; *see also* Motion to Dissolve at 7 ("Louisville … does not aim to police the worldwide web for compliance with the [Ordinance]."); Reply (DN 169) at 5 ("[A] Florida resident does not have a continuing interest in a constitutional challenge to Louisville Metro's local public accommodations law."). Yet Louisville does not repudiate the position it has defended through five years of litigation—that Nelson's statements about her views on marriage and the speech she will and won't agree to create are clearly proscribed. *See, e.g.*, First Brief for Appellants (6th Cir. DN 28) at 40 (arguing that a "portion of Nelson's marketing statement … violates the Publication Provision"); *Chelsey Nelson Photography*, 624 F. Supp. 3d at 780 ("[T]he City … maintains that 'exempting even one religious

objector can' defeat [its] nondiscrimination objectives.") (quoting Response to Motion for Summary Judgment (DN 97) at 29).

"A case does not automatically become moot when a defendant suspends its challenged conduct." *Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 243 (2024). Instead, "'voluntary cessation does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *West Virginia v. Environmental Protection Agency*, 597 U.S. 697, 720 (2022) (quoting *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701, 719 (2007)). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 568 U.S. at 91. This makes mootness based on voluntary cessation a "formidable burden." *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 190 (2000).

Too formidable for Louisville to carry on this record, as it turns out. Louisville's recent change of position (seemingly too late and too light for a true change of heart) is not "absolutely clear." *Parents Involved*, 551 U.S. at 719. The Fairness Ordinance remains on the books, as it has since the 1990s. *Chelsey Nelson Photography*, 624 F. Supp. 3d at 775. Other than Louisville's remand reversal, all objective indicators suggest the City has both the power and will to enforce the Ordinance against people like Nelson. *See id.* at 777–80. Indeed, Louisville apparently still "actively enforces" the Ordinance. *Id.* at 777 (citations omitted). Any citizen aggrieved by a purported breach of the Fairness Ordinance can still file a complaint. *See id.* at 778–80. And despite *303 Creative*, Louisville still won't concede that the First Amendment protects Nelson from compelled expression. On the contrary, months after learning that Nelson had moved to Tallahassee, Louisville's mayor announced in an interview that the City would continue to enforce the Ordinance after *303 Creative*, including against Nelson. Supplemental Appendix in Support of Plaintiffs' Motion for Summary Judgment (DN 168-5) at 306–07. Nothing in Louisville's informal disavowal would prevent the City from making good on that promise tomorrow.

That conclusion answers the mandate's call to determine whether "claims for injunctive relief" are moot. They're not. At times, however, the City seems to go further, suggesting that Nelson's whole case is moot. *See* Motion to Dissolve at 8–9, 14. But Nelson's continued pursuit of nominal damages forecloses such a finding. The Supreme Court has long recognized that when a plaintiff can't get prospective relief, mootness turns on whether the plaintiff claims damages. *See, e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). If the plaintiff still has a live claim that can redress some injury, then the court may still "grant any effectual relief" and the plaintiff retains "a legally cognizable interest in

14

the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation marks omitted). This was true in the Court of Appeals and remains true today.

**B. Vacatur is inappropriate in any event.** And even had Louisville established that any of Nelson's claims are moot, vacatur under Rule 60(b)(6) would not be appropriate. That's because the City has failed to show how its situation is "unusual" or "extreme" such that "principles of equity *mandate* relief." *Gillispie*, 771 F.3d at 331 (emphasis in original). What besides the mere fact of mootness, in other words, warrants a trial court revisiting this final judgment among the many thousands of others that might be characterized as somehow moot or obsolete? For example, Louisville has pointed to no gamesmanship by Nelson, whose contention that she moved to Florida because of her husband's new job the City has nowhere refuted. *See* Supplemental Decl. ¶ 7. Nor has it explained how "the public interest would be served by a vacatur." *Bancorp*, 513 U.S. at 26. The judgment in this case—including the declaratory judgment, separate from the injunction Louisville challenges—is "not merely the property of private litigants" but instead "valuable to the legal community as a whole." *Id.* (quotation marks omitted). As Louisville's mayor himself has said, answering the questions presented by this case is important for Louisville's government and people alike. Supplemental Appendix at 306–07.

Nor do the City's invocations of *Munsingwear* and *Bancorp* as alternative bases for vacatur apply here. *Munsingwear* is a doctrine for courts of appellate, not original, jurisdiction. The Sixth Circuit has squarely rejected Louisville's argument. In *Gillispie*, Ohio sought vacatur in the district court on *Munsingwear* grounds, thinking that decision "obligated" the district court "to vacate its order" just as it might a court of appeals. 771 F.3d at 330. "But that conclusion," the Sixth Circuit replied, "does not follow. *Munsingwear* and *Bancorp* concern an appellate court's duty, under certain circumstances, to vacate an order that has become moot on appeal. Those cases do not address whether the district court should vacate the same order in later proceedings on remand." *Id.* at 330–31.

In some circumstances, of course, an injunction may be equitably modified based on changed circumstances rather than dissolved entirely as moot. *See, e.g., Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). But the City has neither moved for relief under any theory other than Rule 60(b) nor proposed any modification for the Court to consider. And to the extent its request might be characterized as grounded in equitable principles, Louisville invokes only the same mootness concerns addressed above—not any other reason supporting such a maneuver.

In short, the City seems to say both that it has no plans to enforce the Ordinance against Nelson (in which case the injunction poses little burden) and that

the injunction is a serious enough burden to warrant extraordinary relief (in which case the City's disavowal of enforcement seems curious indeed). The first assertion underscores the lack of any basis for relief under Rule 60(b), while the second underscores the City's failure to demonstrate mootness. So the Court denies its motion for relief from the judgment and dissolution of the injunction under Rule 60(b).

## IV. NELSON'S MOTION TO SUPPLEMENT THE RECORD

Last, a housekeeping motion. After the close of the first round of discovery in this case, back in 2022, Louisville continued to produce documents in response to Nelson's initial requests—mostly files from cases where Louisville has enforced its public-accommodation laws. *See* Motion to Supplement (DN 119) at 1. But Nelson didn't have those documents until after she moved for summary judgment, so she didn't rely on them in that motion. For the same reason, the Court didn't rely on that evidence in granting summary judgment. *See* Text Order Denying Motion to Supplement as Moot (DN 131).

But on remand, Nelson renewed her motion. *See* Renewed Motion to Supplement the Summary Judgment Record (DN 178). As she sees things, adding all the documents produced in discovery to the summary-judgment record will facilitate appellate review. *See* Motion to Supplement at 5 (citations omitted). For its part, Louisville objects on relevance grounds. *See* Response to Motion to Supplement (DN 120).

Whether to admit this "additional proof" lies within the Court's "discretion." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971). And one reason to do so is "to ensure that the record on [appellate] review is complete." *Oaks v. Allstate Insurance*, 2007 WL 38375, No. 05-cv-191, at *4 (E.D. Ky. Jan. 5, 2007).

As before, the Court does not rely on this evidence. With or without this evidence, the Court would grant Nelson's motion for summary judgment and deny Louisville's motion to dissolve. The Court does, however, find this new evidence relevant. And the Court sees little risk of prejudice under the circumstances, where the new evidence is no surprise to Louisville, concededly fell within the scope of the original discovery, and plays no role in the disposition of the substantive motions now pending. So the Court will grant Nelson's motion to supplement the record.

## ORDER

For the reasons stated above, the Court grants Nelson's supplemental motion for summary judgment (DN 159), denies Louisville's motion to dissolve (DN 161), and grants Nelson's motion to supplement the record (DN 178). A separate final judgment will follow. *See* FED. R. CIV. P. 58.

Benjamin Beaton, District Judge
United States District Court

September 30, 2025